UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL STEIN and RANDALL REITZ,<br><br>    Plaintiffs,<br><br>  v.<br><br>PEDRO A. CORTÉS, in his official capacity as Secretary of the Commonwealth; and JONATHAN MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation,<br><br>    Defendants. | No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs Jill Stein and Randall Reitz (collectively "Plaintiffs"), by and through their attorneys, Montgomery McCracken Walker & Rhoads LLP, Emery Celli Brinckerhoff & Abady LLP, and Lawrence Otter, Esq., and for their Complaint for declaratory and injunctive relief against Pedro A. Cortés, in his official capacity as Secretary of the Commonwealth; and Jonathan M. Marks, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation, hereby allege as follows.

## INTRODUCTION

1.  The Pennsylvania election system is a national disgrace.  Voters are forced to use vulnerable, hackable, antiquated technology banned in other states, then rely on the kindness of machines.  There is no paper trail.  Voting machines are electoral black sites: no one permits voters or candidates to examine them.

2.      After election day, voters are equally helpless to make sure their votes are counted.  The Election Code requires 27,474 voters in 9,158 districts to bring notarized petitions to county boards, in time for shifting, divergent, and secret deadlines known to no one except, perhaps, 67 separate county election boards.  In court recounts, voters must pay exorbitant fees, and (according to boards of elections) should only one voter fail to sign a single petition in a single district anywhere in the State, no one can seek a recount anywhere.

3.      This labyrinthine, incomprehensible, and impossibly burdensome election regime might make Kafka proud.  But for ordinary voters, it is a disaster.

4.      In the 2016 presidential election, rife with foreign interference documented by American intelligence agencies and hacks of voter rolls in multiple states, voters deserve the truth.  Were Pennsylvania votes counted accurately?  That truth is not difficult to learn: simply count the paper ballots in optical scan districts, and permit forensic examination of the electronic voting systems in DRE districts.  This can be done in days, by top experts, if necessary at the Stein campaign's expense, under the supervision of election officials, and without endangering a single vote.

5.      A majority of  machines voted for Donald Trump in Pennsylvania.  But who did the people vote for?  Absent this Court's intervention, Pennsylvanians will never know that truth.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1357; and 42 U.S.C. § 1983.

7.       This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is in this district is proper pursuant to 28 U.S.C. § 1391(b).

2

## PARTIES

9.      Plaintiff Jill Stein is the Green Party presidential candidate for the November 2016 election, and her name appeared on the ballot in Pennsylvania.

10.     Plaintiff Randall Reitz is a voter in the State of Pennsylvania, and voted in the 2016 presidential election.

11.     Defendant Pedro Cortés is the Secretary of the Commonwealth and is being sued in his official capacity.  In his capacity as Secretary of the Commonwealth, Mr. Cortés heads the Pennsylvania Department of State ("DoS") and is the chief election official in Pennsylvania.

12.     Defendant Jonathan Marks is the Commissioner of the Bureau of Commissions, Elections, and Legislation in the DoS, and is being sued in his official capacity.  In his capacity as Commissioner, Mr. Marks oversees the administration of elections in Pennsylvania and is responsible for planning, developing, and coordinating statewide implementation of the Pennsylvania Election Code.

13.     Both defendants enforce and implement the Pennsylvania Election Code.

## FACTUAL ALLEGATIONS

*Voting Machines in Pennsylvania: Vulnerable, Hackable, Dangerous*

14.     The State of Pennsylvania relies primarily on direct electronic recording ("DRE") machines to record the vote.  A majority of counties representing approximately 72% of registered voters in Pennsylvania use DRE machines.

15.     Thirty-five other states require that DRE machines leave a paper trail that voters can check and verify before their votes are recorded.  Yet DRE machines in Pennsylvania do not leave a paper trail accessible to voters or to anyone else.  Voters touch boxes on a screen, get no paper confirmation of their vote, and hope their votes were counted accurately.

16.     A minority of counties in Pennsylvania use optical scan machines to count the paper ballots of voters.

17.     Experts have repeatedly documented in peer-reviewed and state-sponsored research that both DRE and optical scan machines, which are essentially computers with reprogrammable software, have serious cyber security problems.  In just a few seconds, anyone can install vote-stealing malware on a voting machine that silently alters the electronic records of every vote.  Absent a thorough, sophisticated forensic examination by computer experts, it is not possible to determine the absence of malicious software hiding within many thousands of lines of legitimate software code.

18.     Whether voting machines are connected to the Internet is irrelevant. Sophisticated attackers such as nation-states have a developed a variety of techniques to attack non-Internet-connected systems.  In addition, DRE machines contain software and removable media that come from central county election management systems, which are connected to the Internet.  For a sophisticated party, hacking these voting machines is child's play.

19.     Pennsylvania's DRE voting systems are particularly vulnerable.  As a number of leading experts have testified, Pennsylvania's DREs are antiquated and vulnerable to hacking and malware.  These include, merely by way of example:

      a.   the iVotronic touch-screen DRE used in 25 counties, including Allegheny (Pittsburgh), representing over 2.8 million Pennsylvania voters, or more than 1/4 of registered voters in Pennsylvania;

      b.   the Shouptronic full-face DRE used in Philadelphia and 5 other counties, representing about 2.3 million or just under 1/4 of registered voters in Pennsylvania;

  c. The Diebold/Premier Accuvote TSX touch-screen DRE used in Lehigh and 15 other counties, representing approximately 851,000 or 8% of registered voters in Pennsylvania; and

  d. the Sequoia AVC Advantage full-face DRE used in Montgomery and Northampton counties, representing approximately 729,000 or 7% of Pennsylvania's registered voters.

20. Pennsylvania's DRE voting machines are so unreliable that they were decertified by California and abandoned by legislative action in New Mexico and other states in favor of paper-ballot optical scan systems.

21. Even worse, for counties that use DRE machines, there is no paper ballot.  It is impossible for voters to verify even a single DRE vote on a piece of paper.

22. These DRE machines are the electronic equivalent of storing paper ballots in a giant, poorly guarded warehouse.  Top computer experts believe their use in Pennsylvania is not only irresponsible, but reckless.

*Foreign Interference in the 2016 Election*

23. The danger caused by these machines is exacerbated in the context of the 2016 presidential election.

24. The 2016 presidential election has been subject to unprecedented cyber attacks intended to interfere with the election.

25. Attackers infiltrated the voter registration systems of Illinois and Arizona, and stole voter data.

26. Attackers attempted to breach election offices in more than 20 other states.

27. Attackers broke into the email system of the Democratic National Committee.

28.     The Director of Intelligence and Department of Homeland Security are "confident" that a foreign government engaged in hacking "to interfere with the US elections process."

### *The Pennsylvania Election Code: A Fraud on the Voter*

29.     Faced with this clear and present danger to democracy in Pennsylvania, presidential candidate Jill Stein called upon voters to seek recounts throughout the State, to make sure their votes were counted accurately and that the vote and election result in Pennsylvania had integrity.

30.     In an extraordinary grassroots response, thousands of voters responded, seeking recounts all over the State.

31.     These voters have been stymied, however, by a patchwork of antiquated and fundamentally unfair election laws that make the promise of a recount in Pennsylvania illusory.

32.     Unless the vote is decided by 0.5% or less, there is no right to a statewide recount. Nor may candidates themselves seek a recount.

33.     Rather, voters have two routes to seek recounts.  Both are impossibly burdensome, and one, essentially a sham.

<u>County Board Recounts</u>

34.     The first is 25 P.S. § 3154, which permits voters to request recounts from their county board of elections.

35.     In order to request a county board recount, three voters in a single election district (also known as a precinct) must sign a petition "that an error, although not apparent on the face of the returns, has been committed therein."  25 P.S. § 3154(e).

36.     That petition must be "verified by affidavit," in front of a notary.  *Id.*

37.     That petition by three voters in a district can only activate a recount *in that district*.

38.     Pennsylvania has 9,158 election districts in 67 counties.

39.     In order for voters to request a statewide recount in Pennsylvania, 27,474 voters evenly spread throughout 9,158 districts must sign petitions, get them notarized, and bring them to their local county board of elections.

40.     Some of these counties are over 1,000 square miles in size.  The distance to travel to a board of elections in a given county is often substantial.

41.     The deadlines for voters to accomplish this herculean feat are, at best, short. Either the deadline is "prior to the completion of all of the returns for the county," 25 P.S. § 3154(e), or "[a]t the expiration of five (5) days after the completion of the computation of votes," 25 P.S. § 3154(f).  (If the fifth day lands on a holiday or weekend, it is moved to the first weekday.)

42.     Until last week, the Pennsylvania DoS apparently had not given guidance to the 67 boards of elections as to which one of these two deadlines applies; counties arbitrarily picked one deadline or another.

43.     Every county counts votes at its own pace.  Counties complete the count on different dates.  Therefore the deadlines for county board recounts vary from county to county, and from election to election.

44.     It is impossible for voters to know when a county will reach "the completion of all of the returns for the county."

45.     Election boards do not give notice of this date in advance.

46.     Election boards often give no notice of this date even *after* it has passed. Counties may (or may not) post unofficial election results on the Internet.  But that does not show that the county has complied with all of the procedural requirements for "the completion of all of the returns," including the signatures of all members of the county board.

47.     Election boards also often give no notice of the 5-day period following computation of the vote.

48.     Voters are therefore left to guess when the deadline might be to request a Section 3154 recount in any county.  It is a guessing game, and voters are often wrong.

49.     Even the Pennsylvania DoS, which in theory supervises the county boards of elections, has no idea and does not publish when the 67 counties complete computation of the votes, or when the 5-day period ends.

Court-Ordered Recounts

50.     The second method for voters to request recounts is the court-ordered recount under 25 P.S. § 3261 (for districts that use paper ballots, such as optical scan districts) and 25 P.S. § 3262 (for districts that have no paper ballots, such as DRE districts).  These are filed in county Courts of Common Pleas.

51.     This method is even more of a sham than the county-board recount.

52.     In a court-ordered recount, again three voters in a single election district must sign a verified petition.

53.     The petition must allege that "upon information which they consider reliable, they believe that fraud or error . . . was committed" in the canvassing or the computation of the votes. 25 P.S. §§ 3261(a), 3262(a)(1).

54.     In addition, every single petition must be accompanied by a deposit of $50 in cash or a $100 bond.  25 P.S. §§ 3261(b), 3262(a.1).

55.     In total, 27,474 voters must verify 9,158 petitions in 9,158 districts and pay $457,900 in order to request a statewide recount.

56.     In addition, county courts typically treat every petition as a separate court filing, with additional and often onerous court filing fees of over $100 or even $200 per petition.

57.     For DRE precincts, the deadline to file is the later of 20 days after election day, or "5 days after the completion of the computational canvassing of all returns" by the county board, which again, is unknown to voters, or even to the DoS.  25 P.S. §§ 3262(f), 3263(a)(1).

58.     For optical scan precincts, the deadline to file is the later of 4 months after election day, or "5 days after the completion of the computational canvassing of all returns" by the county board, which again, is unknown to voters, or even to the DoS.  25 P.S. §§ 3261(f), 3263(a)(1).

59.     Even worse, 25 P.S. § 3263 provides that, in any court-ordered recount, unless a petitioner "pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation," "a recount or recanvass shall include *all* election districts in which ballots were cast for the office in question," and "petitions . . . must be filed in *each* election district in accordance with this act."  25 P.S. § 3263(a)(1)(i)(A-B).

60.     The Republican Party of Pennsylvania, at least one board of elections, and apparently one Court of Common Pleas, interpret this section to require that 27,474 voters in Pennsylvania must verify 9,158 petitions in 9,158 districts, and if even a single district anywhere in the State has only two petitioners instead of three, or if a single petitioner pays less than $50, then *no one* in the State is entitled to a recount in *any* district, *anywhere*.

9

61.     If this is correct, then the court-ordered recount statute is a sham in any statewide election.  It is impossible for 27,474 voters evenly distributed in 9,158 election districts in 67 counties to file recount petitions with these deadlines, or perhaps any deadlines.

The Recount Procedure

62.     "Any candidate, attorney or watcher present at any recount of ballots or recanvass of voting machines shall be entitled to examine . . . the voting machine and to raise any objections regarding the same, which shall be decided by the county board, subject to appeal, in the manner provided by this act."  25 P.S. § 2650(c).

63.     Notwithstanding this language, none of the county boards in the 2016 election have permitted the candidates to "examine" the DRE voting system, notwithstanding multiple requests from Dr. Stein.  Nor has a Pennsylvania court permitted such an examination.

64.     In DRE counties, there is nothing to "count."  There is no paper ballot.  All a candidate or a voter can do to ensure the integrity of the vote is examine the DRE voting system.

65.     In optical scan counties, assuming voters have somehow overcome all the many statutory obstacles in their path, the county board "shall recount all ballots using manual, mechanical or electronic devices of a different type used for the specific election."  25 P.S. § 2650(e)(3)(i).  The county board only counts the ballots for the specific districts for which the required number of voters submitted notarized petitions in time.

The Contest Procedure

66.     Pennsylvania law also permits voters to claim the "election is illegal" in a filing in Commonwealth Court.  25 P.S. § 3456.  At least 100 voters must petition, and 5 of them must set forth affidavits alleging that the "election was illegal and the return thereof not correct, and that the petition to contest the same is made in good faith."  25 P.S. § 3457.

67.     The contest proceeding, however, must be filed within 20 days of the election, 25 P.S. § 3456, *i.e.*, before there is any meaningful opportunity to recount the vote, recount the ballots, or recanvass the machines, and before the election is even certified.

68.     This early deadline makes almost any contest petition all but impossible, unless the court agrees to hold the proceeding in abeyance pending development of a fuller record.

69.     Unless the court agrees to put a contest proceeding on hold, petitioners are forced to put on an election challenge before the results have *even been certified*, and if the case is dismissed for lack of evidence at that early stage, would have no recourse later even if evidence later established that the election and the result were a fraud.

70.     In short, the contest statute is designed to prevent voters from contesting elections in any meaningful way.  Unless the Commonwealth Court agrees to delay the contest, the statute is illusory and itself is another fraud on the Pennsylvania voter.

71.     There appears to be no statute governing when or under what circumstances the Commonwealth Court should or will delay a contest proceeding.

***November 2016: Voters Throughout Pennsylvania Attempt to Demand Recounts***

72.     Notwithstanding the stacked deck of the Pennsylvania Election Code, thousands of voters in over 350 election districts in some 25 counties rallied to file contest petitions throughout the State, primarily before county boards.

73.     Nevertheless, and as a result of a byzantine and unfair Election Code, an indifferent, confused, and even hostile board of election bureaucracy, and the concerted effort of the Republican Party to do everything possible to stop voters from learning if their votes counted, this grassroots effort has fallen well short of a statewide recount, and well short of any

recount necessary to ensure the integrity of the vote in Pennsylvania.  This is so for at least nine reasons:

74.     *First*, it was impossible in a short time period for 27,474 voters evenly distributed in 9,158 election districts to file recount petitions, or even any number close to 27,474 voters. The Election Code makes these statewide recounts impossible.

75.     *Second*, voters did not know, and could not learn from election boards, the DoS, or any government body in Pennsylvania, when recount petitions were due.  Almost no one published the information, and when voters called election boards, board representatives typically did not answer, or did not know, or gave incomplete, contradictory, or false information.  In addition, when the Stein campaign contacted DoS, DoS released multiple summaries of deadlines in various counties that were woefully incomplete, confusing, contradictory, and even false.  In truth, even DoS had little idea when the deadlines to file recounts were in the 67 counties.

76.     *Third*, one source of this confusion is that counties take different approaches to the requirements for completing the initial computation of votes.  In some counties, the members of the board of elections sign the unofficial results when they are computed, as the Election Code requires; in other counties, they do not.  The public has no way of knowing whether the unofficial results have been signed and the initial computation of votes formally completed.

77.     *Fourth*, and compounding the problem, on November 28, even as voters were filing recount petitions throughout the State, DoS suddenly released a guidance email instructing election boards not to accept recount petitions filed after the vote had been computed, even if the petitions fell within 5 days after computation of the vote.

78.    *Fifth*, county boards often did not tell voters whether their petitions were accepted, or they accepted the petitions, only to decide later that the petitions were untimely and would be rejected.

79.    As a result of the above, hundreds of recount requests have apparently been rejected by county boards on timeliness grounds, often without the knowledge of the voters who filed them.  Those recounts are apparently not going forward, without notice to anyone.

80.    *Sixth*, some county board officials sent voters to file Section 3261/3262 petitions in the Courts of Common Pleas.  In some cases, the petitions were timely filed at the county board and should not have been sent to court.  At court, one or more prothonotaries falsely told petitioners that no fee was required under Section 3262, and on information and belief, some voters did not pay the fee and their petitions were or will be rejected.

81.    *Seventh*, on information and belief, some voters could not and therefore did not pay the court fees, and therefore did not file Section 3262 petitions.

82.    *Eighth*,  notwithstanding repeated requests from Dr. Stein, no county board or court has permitted Dr. Stein's representatives to examine any of the DRE voting systems, even at her campaign's expense and under government supervision.  Absent that kind of review, no one—not the Pennsylvania voter, not the candidates, not the citizens of this country—can have sufficient confidence that votes on those machines were counted accurately.

83.    *Ninth*, counsel for the Republican Party and Donald Trump have done everything possible to stymie, quash, and shut down every effort by regular citizens to make sure their votes were properly counted.  The Republican Party/Trump (i) argued in Montgomery Court of Common Pleas that unless 27,474 voters filed recount petitions in 9,158 election districts, *no* court-ordered recount could happen *anywhere* in the State; (ii) successfully argued in

Montgomery Court of Common Pleas and before the Philadelphia Board of Elections that neither voters nor Dr. Stein has any right to examine the DRE voting system; (iii) claimed that voters must file a fee much greater than $50 in a court-ordered recount; and (iv) repeatedly argued that *Bush v. Gore* precluded any recount anywhere in Pennsylvania short of a statewide recount, even though a statewide recount is utterly impossible.

### *The Contest Proceeding*

84.    On November 28, 2016, even while hundreds of voters were filing petitions for recounts throughout the State, over 100 Pennsylvania voters filed a contest petition on the last possible day to preserve their right to pursue the contest pending the development of a fuller record in, *inter alia*, recounts throughout Pennsylvania.

85.    The voters asked that the Commonwealth Court hold the contest petition in abeyance pending recounts and developments before the county boards, and a fuller record.

86.    The Commonwealth Court denied the request, and instead scheduled argument on dispositive motions as well as a hearing on December 5, one week after the petition.

87.    The voters then requested a short continuance, until December 8, to at least have a few more days for the record to develop in light of recounts and recount proceedings throughout the State.

88.    In response, and after briefing from, *inter alia*, the Republican Party/Trump, the Commonwealth Court denied the request to continue argument on dispositive motions, and kept an argument date of December 5.

89.    In addition, the Republican Party/Trump requested that the Court impose a $10 million bond on these voters.

90.     On December 2, the Court imposed a $1 million bond on the voters, in order for them to proceed with the case.

91.     These voters could not possibly post an exorbitant $1 million bond.

92.     As a result, the voters were forced to withdraw the contest proceeding.  The request for withdrawal stated: "Your Honor: Petitioners are regular citizens of ordinary means.  They cannot afford to post the $1,000,000 bond required by the Court.  Accordingly, the petition is withdrawn."

***Pennsylvania Compared to Other States***

93.     On information and belief, no recount process in this country is as byzantine, labyrinthine, confusing, burdensome, and unfair, as in Pennsylvania.

94.     For example, in Michigan, to request a state-wide recount, a candidate need only submit a sworn petition alleging fraud or mistake in the outcome of the election, without further specifics, to the Michigan Secretary of State.  That petition must specify the election precincts in which a recount is requested, and the candidate must pay a deposit of $25 or $125 per precinct, depending on the election results.  The state board of canvassers then supervises a statewide recount of all ballots in all districts specified in the petition.

95.     In Wisconsin, to request a state-wide recount, a candidate need only submit a verified petition to the Wisconsin Election Commission stating that she was a candidate for the office in question, believes that a mistake or fraud has been committed, and state that she requests a statewide recount.  That verified petition, accompanied by payment of the estimated cost, triggers a state-wide recount, by hand, of all the paper receipts from DRE machines and a recount, by hand or automatically in each county's discretion, of the optical scan ballots

96.     Pennsylvania also has among the most vulnerable, outdated, and unsecure voting machines in the country.  Pennsylvania is also among a very few states where the great majority of voters vote without the ability to check any paper trail.

97.     As a result of the Pennsylvania Election Code, and the conduct of defendants, DoS and the 67 county boards, the voters of Pennsylvania do not have voting rights remotely equal to the rights of voters in the great majority of (if not all) other states.

98.     As a result, Pennsylvania voters have been, are being, and—absent relief from this Court—will continue to be deprived of their fundamental right to vote.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983; Fourteenth Amendment, Equal Protection**

99.     Plaintiffs incorporate by reference the foregoing as if set forth word for word.

100.    Acting under color of state law, Defendants, by the above, are maintaining and implementing a system of voting that denies Pennsylvania voters the right to vote.

101.    Defendants, acting under color of state law, have deprived and severely burdened and threatened to deprive and severely burden Pennsylvania voters, including Plaintiff Randall Reitz, of their fundamental right to vote.  The state's interest does not justify that severe burden.

102.    This burden falls unequally on smaller political parties, such as the Green Party; their candidates, such as Jill Stein; and their members.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983; Fourteenth Amendment, Due Process**

103.    Plaintiffs incorporate by reference the foregoing as if set forth word for word.

104.    Acting under color of state law, Defendants, by the above, are maintaining and implementing a system of voting that is fundamentally unfair and that denies and severely

16

burdens the right to vote and that violates substantive Due Process under the Fourteenth Amendment to the United States Constitution.

105.     As a result, Pennsylvania citizens, including Plaintiff Randall Reitz, will be denied the right to vote.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983; First Amendment

106.     Plaintiffs incorporate by reference the foregoing as if set forth word for word.

107.     Acting under color of state law, Defendants, by the above, are maintaining and implementing a system of voting that is fundamentally unfair and that denies and severely burdens the right to vote and that violates the First Amendment to the United States Constitution. The state's interest does not justify that severe burden.

108.     As a result, Pennsylvania citizens, including Plaintiff Randall Reitz, will be denied the right to vote.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask that the Court:

1. Declare that defendants:

    a.  Violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by unreasonably burdening the right to vote of all Pennsylvania citizens;

    b.  Violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by instituting a fundamentally unfair process that denies and severely burdens the right to vote;

    c.  Violated the First Amendment to the United States Constitution by effectively denying the right to vote of all Pennsylvania citizens;

2. Declare applicable sections of the Pennsylvania Election Code in violation of Equal Protection, Due Process, and the First Amendment in statewide elections, both on their face and as applied in this election;

3. Declare that the rights and privileges of Plaintiffs and other citizens will be irreparably harmed without the intervention of this Court to secure those rights for the exercise thereof in a timely and meaningful manner;

4. Enjoin preliminarily and permanently the Defendants, their agents, officers and employees, to:

    a.  Institute an immediate recount of papers ballots in optical scan counties in Pennsylvania;

    b.  Permit plaintiffs a reasonable time to do a thorough, forensic examination of a reasonable sample of DRE voting systems in Pennsylvania;

5. Enjoin permanently the Defendants, their agents, officers and employees from enforcing applicable sections of the Pennsylvania Election Code that violate Equal Protection, Due Process, and the First Amendment in future statewide elections;

6. Award Plaintiffs disbursements, costs, and attorneys' fees; and

7. Grant such other relief as the Court deems just and proper.

Dated: December 5, 2016

Respectfully submitted,

Gregory M. Harvey
PA Attorney ID 4445
Montgomery McCracken Walker & Rhoads LLP
123 South Broad Street
Philadelphia, PA 19109
Phone: 215-772-7684
Fax: 215-772-7620
Email: gharvey@mmwr.com

/s
Ilann M. Maazel*
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
Phone: 212-763-5000
Fax: 212-763-5001
Email: imaazel@ecbalaw.com

Of counsel:
Andrew G. Celli*
Alison E. Frick*
Douglas E. Lieb*
* Not admitted in E.D. Pa.; motion for
pro hac vice admission forthcoming

Lawrence M. Otter, Esq.
PA Attorney ID  31383
PO Box 575
SILVERDALE, PA 18901
267-261-2984
Email: larryotter@hotmail.com

19