# Exhibit 36

# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO
ALISON FRICK
DAVID LEBOWITZ
HAYLEY HOROWITZ
DOUGLAS E. LIEB
ALANNA SMALL
JESSICA CLARKE

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE
(212) 763-5000
FACSIMILE
(212) 763-5001
WEB ADDRESS
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
DIANE L. HOUK

November 30, 2016

Deputy Commissioner Fred Voigt
County Board of Elections
City Hall, Room 142
1400 John F Kennedy Blvd.
Philadelphia, PA 19107

Dear Mr. Voigt:

We represent presidential candidate Jill Stein, in support of hundreds of Philadelphia voters who have sought a recount in Philadelphia of the 2016 vote for President and Senate. I write to explain why the Commission has the authority and the duty to permit forensic examination by independent experts of the election management computers and a sampling of the electronic voting machines and removable media used in the 2016 general election.

One of the statutory duties of the Commission is "to inspect systematically and thoroughly the conduct of primaries and elections in the several election districts of the county to the end that primaries and elections may be honestly, efficiently, and uniformly conducted." 25 P.S. 2642(g). To that end, the Commission has broad powers, including the power

(g) to inspect systematically and thoroughly the conduct of . . . elections in the several election districts of the county to the end that . . . elections may be honestly, efficiently, and uniformly conducted;

(i) To investigate election frauds, irregularities and violations of this act; and

(o) To perform such other duties as may be prescribed by law.

25 Pa. Stat. Ann. § 2642 (West).

***Candidates Are Statutorily "Entitled" to "Examine" the DRE Electronic Voting System***

The rights of candidates during recounts are equally broad: "Any candidate, attorney or

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

watcher present at any recount of ballots or recanvass of voting machines *shall be entitled to examine . . . the voting machine and to raise any objections regarding the same*, which shall be decided by the county board, subject to appeal, in the manner provided by this act." 25 P.S. 2650(c) (italics added.)  The statute does not define "examine," but plainly an examination is considerably more searching than watching a recanvass.  To examine means "to inspect closely," to "test the condition of," to "inquire into carefully."  http://www.merriam-webster.com/dictionary/examine.

Philadelphia of course uses a DRE electronic voting system.  Jill Stein is entitled under the statute to "test the condition" of the DRE system, and to "inspect" it "closely."  That necessarily *requires* a forensic examination of the DRE software, removable media, and electronic management system.  The only way to "test the condition" of the DRE system is to examine the software and electronic audit logs of the system.  "Paperless DRE voting machines do not create any physical record of each vote, so forensic examination of the equipment is the only way to assures that the machines were not manipulated in a cyberattack."  Halderman Affidavit (attached to the petitions) ¶ 15.  An observer watching a recanvassing is like a doctor watching a patient.  In neither case can anyone give a clean bill of health.  It would be election malpractice.

Finally, there is no reason why a forensic examination should itself compromise the vote tally.  As an initial matter, a great deal of the examination can be done simply by examining the central election management system, before deciding whether it is even necessary to examine the machines themselves.

The statute is plain, as is the duty of the Board.  Ms. Stein, by her representatives, is entitled to examine the DRE voting system used in Philadelphia.  We have top computer experts ready to do so, on one day's notice, under the supervision of the Board.  Ms. Stein will even pay for these experts.  The only thing standing between a voter and the election result is the DRE system.  The system must be examined.

### *In a Voter-Initiated Recount, the Board Can Also "Open" the DRE System*

As noted, entirely independent of the method of the recount, candidates have the statutory right to examine the DRE electronic voting system.  In addition, the Board itself can engage in this sort of audit as part of the recount.

Under 25 P.S. 3154(e)(4), in a voter-initiated recount where, as here, electronic voting systems without paper records were used, the procedure used for the recount or recanvass shall be "*similar* to the procedure specified in [Section 3154(e)(1)] for voting machines."  "Similar" is not defined.  The procedure specified for voting machines in Section 3154(e)(1) is to "(A) make a record of the number of the seal upon the voting machine and the number on the protective counter or other device; (B) make visible the registering counters of such machine; and (C) without unlocking the machine against voting, recanvass the vote cast on the machine."  25 P.S. 3154(e)(1)(i)(A)-(4).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

The definition of "voting machines" in the act refers to the old style mechanical lever machines, not to electronic voting machines. See Article XI ("Voting Machines") & 25 P.S. 3001. It is noteworthy that Section 3154(e)(1) prohibits unlocking a voting machine only "against *voting*"; a machine can be unlocked for any other reason. Similarly, a DRE electronic voting system can be "unlocked," opened, examined, as long as it does not itself interfere with the computation of the vote.

In addition, unlike a lever voting machine, visual inspection of the outside of a paperless direct recording electronic voting machine like the Shouptronic used in Philadelphia cannot yield any useful information. A meaningful examination requires access to the electronic components that record and tally votes: electronic firmware, software, audit logs, and the contents of removable media that move back and forth between election management computers and DREs—in other words, a forensic examination by computer scientists who have studied electronic voting systems.

***The Supreme Court of Pennsylvania Gives the Board Broad Power to Permit Forensic Examination of the DRE System***

"Nothing can be more vital towards the accomplishment of an honest and just selection than the ascertainment of the intention of the voter." *Appeal of McCracken*, 370 Pa. 562, 566 (1952). Mere canvassing of the DRE voting machines is insufficient to fulfill the Board's "apparent and impelling" duty to ascertain[] *for whom* votes were cast." *McCracken*, 370 Pa. at 566 (emphasis in original). As the Pennsylvania Supreme Court held, "[i]n the computation of the vote, [the Board's] functions are not limited to those of a humanized adding machine. The Board is not a multiple comptometer." *Id.* at 565. Rather, "canvassing and computing necessarily embrace acts of discretion." *Id.*; *see In re Recount of Ballots of Rome Twp., Crawford Cty.*, 397 Pa. 331, 332 (1959) (the Pennsylvania Election Code is "a *highly remedial statute* which should be *liberally construed* in order to secure a proper computation of the votes cast at an election.").

"There could scarcely be a duty more apparent and impelling on an Election Board than that of ascertaining *for whom* votes were cast." *McCracken*, 370 Pa. at 565. In counties with optical scan ballots, the Board can fulfill that "impelling" duty by manually counting the papers ballots. Montgomery County, though, has no paper ballots. Without paper verification, the *only* way for the Board to fulfill that duty is to permit a complete, sophisticated forensic analysis by computer experts of DRE machines, removable media, and the election management computers used to program the machines and tally results.

"The needs of our democracy require accurate and rapid ascertainment of the people's will. And it is for that reason that the Legislature has entrusted the County Board of Elections with plenary powers in the administration of the election code." *McCracken*, 370 Pa. at 565. In this case, in this election, and with these machines, the only way to ensure the integrity of the vote in this county is a comprehensive forensic exam.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

### *Conclusion: The Board Should and Must Permit A Forensic Examination of the DRE System*

We therefore request that, as part of the recanvass and recount scheduled to commence on December 2, 2016, the Commission permit forensic examination of the DRE electronic voting system. In addition, and in support of this request, attached please find the affidavits of leading computer experts Harri Hursti, Daniel Lopresti, Ronald Rivest, Poorvi Vora, and Dan Wallach, all of which speak to the vulnerabilities of electronic voting systems, including the DRE system used in Philadelphia in the 2016 election.

Respectfully submitted,

/s/

Ilann M. Maazel*

* *pro hac vice* pending