**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF**
**PENNSYLVANIA**

JILL STEIN and RANDALL REITZ ) No.: *2:16-cv-06287-PD*

              **Plaintiffs,** )

   *v.* )

                                )

PEDRO A. CORTES,  et al. )

            **Defendants** )

**FILED**

DEC - 6 2016

LUCY V. CHIN, Interim Clerk
By_____Dep. Clerk

## MOTION TO COMBINE CASES

NOW COME, Jeffrey Cutler, Plaintiff in a related case requests this case be combined

with case 1:16-cv-1159/case 16-3164 to the United States Court of Appeals for the Third Circuit

of Pennsylvania which was dismissed on 10NOV2016 for **JURISDICTIONAL DEFECT**.  Both

cases involve rigging elections, civil rights violations and a relationship to the President Elect

Donald Trump.  Jeffrey Cutler is an elected official and resident of Pennsylvania and

documented previous organized voter fraud in Pennsylvania.  If case 1:16-cv-1159 is flawed

because of **JURISDICTIONAL DEFECT**, then case *2:16-cv-06287-PD* is also flawed by

**JURISDICTIONAL DEFECT**. The decision for Case 16-3164  was written by the sister of

President Elect Donald Trump.  Because of this relationship both cases should be heard

together or decided together by the Supreme Court of the United States.

Respectfully submitted:

*Jeffrey Cutler*

By:                                06 Nov 2016
P.O. Box 2806
York, PA  17405-2806
(215) 872-5715

Date: 06NOVEMBER2016

No. 16-3164

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

Before the Honorable Fisher, Shwartz
and Barry
(Opinion filed October 13, 2016)

EAST LAMPETER TOWNSHIP,

Plaintiff-Appellee,

v.

JEFFREY CUTLER,

Defendant-Appellant.

On Appeal From The United States District Court
For The Middle District of Pennsylvania

Honorable Sylvia Rambo
Senior United States District Judge

U.S.D.C. No. 16-1159

---

PETITION FOR REHEARING
EN BANC

---

JEFFREY CUTLER
Jeffrey Cutler, *pro se*
215-872-5715 (phone)
eltaxcollector@gmail.com

I.   STATEMENT OF REASONS FOR EN BANC REVIEW

The opinion in this case holds that once a judge has found possible Deficiencies against a defendant's case, a corrupt government entity may compel a defendant to loose all rights to fair and equitable trial. This is an unprecedented expansion of government power to force defendants who have never been convicted of anything to and must accept the King's law. The Court has previously struggled in deciding the point in the justice process at which the government's interest an individual's right to integrity and privacy. Friedman v. Boucher, 580 F.3d 847 (9th Cir. 2009); United States v. Kriesel, 508 F.3d 941 (9th Cir. 2007); United States v. Kincade, 379 F.3d 813 (9th Cir. 2004)(en banc). This case presents a question of exceptional importance that should be decided by this Court sitting en banc. Fed. R. App. P. 35(a)(2).

The majority opinion also squarely conflicts with this Court's prior opinions that persons arrested have more rights than persons being persecuted by corrupt government entities. In Friedman, 580 F.3d 847, and United States v. Scott, 450 F. 3d 863 (9th Cir. 2006). In Friedman, this Court held that the government could not constitutionally profile a non-detained alleged offender charged with any offenses. In Scott, this Court held that the government could not search a pretrial releasee without probable cause. Both cases rejected the argument that pretrial defendants can constitutionally be searched for evidence without a warrant or probable cause. Consideration by the full Court is necessary to secure and maintain uniformity of this Court's decisions. Fed. R. App. P. 35(a)(1).

II.   PROCEDURAL BACKGROUND

Mr. Cutler was charged in Mandamus. On June 19, 2015 (case 15-05424), judge Wright was assigned to the case. Mr. Cutler was charged with 3 main counts. Mr. Cutler hired a lawyer and paid him $7,000. Mr. Cutler filed a cross complaint pro se in common pleas court on June 30, 2015 (case 15-05682). Nothing was done until on January 4, 2016 Mr. Cutler requested Judge Wright

be assigned to case 5682, as a related case and continuity but Judge Brown was assigned. Judge Miller was assigned prior to the start of the case. Mr. Cutler was elected to the position of tax collector in the election of November 2013. After taking his "**Oath of Office** and on December 31, 2013 Mr. Cutler filed a pro se challenge to Obamacare, case 1:13-cv-2066 to defend the constitution of the United States and his constituents that are Amish. Mr. Cutler had hired Fulton bank to assist him with the collection process, an institution with 16 Billion in Assets under management and over 80 locations in which tax payers could pay their taxes at the time the agreement was made. The bank hours vary by location but generally exceed 40 hours per week spread over 6 days. On November 11, 2015 the American Freedom Law Center filed a Petition for Writ of Certiorari for his case against Obamacare (1:13-cv-2066, 14-5183. 15-632). The United States Government declined to respond to the petition. In December of 2015 East Lampeter Township filed an Injunction against Mr. Cutler in an attempt to remove him from office and alter the outcome of the election of 2013. The township manager had committed an act of mail fraud (complaint #1773989) and misrepresentation in the verification in the support of the injunction. The lawyer for Mr. Cutler requested an additional payment of $ 5,000. Judge Wright based on the injunction ordered that Mr. Cutler personally had to be in attendance at a location and that the tax bills must be altered. In December 2015 Mr. Cutler noted unexplained intrusions in his apartment, and some surveillance equipment was installed. Also in December 2015 all three vehicles of Mr. Cutler were vandalized at various times in the apartment complex where he resides. A police report was filed for each incident with the East Lampeter Police Department. This even included a Swastika being keyed on the door of his Dodge vehicle. Mr. Cutler does not outwardly demonstrate he is Jewish. The estimate of damage exceeds $ 5,000.00 On January 6, 2016 Mr. Cutler published a Youtube video about the challenge          in          the          Supreme          Court (https://www.youtube.com/watch?v=mgCle8F_zUk), and uses it to leave

comments about the fighting for religious freedom including this case.    On Sunday January 10, 2016 in the early morning Mr. Cutler was stopped in the parking lot of his apartment complex by 2 Officers of the Pennsylvania State Police for DUI.  Mr. Cutler had drank less than $ 10.00 worth of beer and driven less than 1.5 miles to his apartment complex.  Mr. Cutler was tested with a breath analyzer and it recorded a number under the legal limit.  Mr. Cutler was still transported in handcuffs to Lancaster General Hospital and blood was drawn.  Mr. Cutler requested an additional tube of blood to be drawn, but that request was not honored.  Mr. Cutler has been sent bills for drawing blood on January 10, 2016.  Also on January 10, 2016, Mr. Cutler recorded an intruder in his apartment while he was not present and in Philadelphia.  On January 11, 2016 the United States Supreme Court declined to hear the Petition for Writ of Certiorari for his case against Obamacare (15-632).

On January 20, 2016 Judge Miller was directed to handle case 15-5424 with no other explanation given and Judge Wright only transferred this case, not any other cases.  On February 2, 2016 Mr. Cutler formally requested by letter to the East Lampeter Township police chief that the Swastika "keyed" on Mr. Cutler's vehicle be upgraded to a hate crime, since conversations with 2 different police officers in the East Lampeter Township police force failed to get the desired result.  To date there has been no reporting of any progress on any investigation in this matter. On February 22, 2016 Judge Miller dismissed case 15-5682 without PREJUDICE.    On March 17, 2016 Judge Miller dismissed case 15-5682 with PREJUDICE.  It was essentially dismissed for improper service, (not being served by the Sheriff), even though a provision in the law allows a non-sheriff service if the sheriff office is involved.  It should be noted that presently the sheriff is on administrative leave and his legal fees are being paid by Lancaster County. In March 2016 Mr. Cutler went to an office of the FBI and talked to Joesph A. Milligan (special agent) and played the recording from his apartment of January 10, 2016.  **On April 15, 2016**

**Count I and Count II of the Reasons for Mandamus were withdrawn** by
East Lampeter Township by stipulation. The lawyer for Mr. Cutler informed
him that there was going to be a trial for Count III in 30 days (essentially an
amended complaint) and Mr. Cutler informed the lawyer that to ask for an
extension, jury trial and to subpoena a list of witnesses. The lawyer told Mr.
Cutler that a jury trial was not possible or an extension and refused to send
subpoenas to his list of witnesses. He was terminated from the case by Mr.
Cutler. Mr. Cutler filed a pro se challenge to the case and a request for an
extension but it was stricken by judge Miller. Judge Miller also un-terminated
the lawyer Mr. Cutler had terminated in the case 15-5424. On June 6, 2016
the Agenda for the East Lampeter Supervisors meeting item 7a was
"Consideration of Memorandum of Understanding with the FBI". On June 16,
2016 Mr. Cutler filed a **Move Order** to federal court pro se (case 16-1159) and
a Stop order in Lancaster court of Common Pleas. Case number 16-1159 was
remanded back to Lancaster in one day. A trial was held on June 17, 2016
without Mr. Cutler or the court being notified, of the remand order. Mr. Cutler
filed a motion to reconsider the order to remand. On July 18, 2016 Mr. Cutler
filed an appeal pro se with the USCA third circuit case number 16-3164. On
July 21, 2016 Mr. Cutler emailed the lawyer of record for case 15-5424 that he
was not authorized to file anything in case 15-5424 without his written consent,
and he had made an error in an unauthorized filing he mailed to Mr. Cutler on
July 12. 2016, item 9. Mr. Cutler requested he correct the public record. As
of this date no correction has been made. This filing was also a request to
withdraw. On September 15, 2016 Mr. Cutler found a notice of move out
inspection for Monday September 18, 2016 on the doorknob outside the
apartment. On September 27, 2016 High Inc. (the largest holder of real estate
in East Lampeter Township) at the request of East Lampeter Township filed a
motion to evict Mr. Cutler from the apartment complex where he resides for
failing to sign a lease that allows the complex to allow the East Lampeter
Police to perform warrantless search or seizure and violate Mr. Cutler's Fourth

Amendment rights, which have been violated many times. A hearing at the District Justice office (MJ-02302-LT-0000158-2016) on October 18, 2016 found Mr. Cutler guilty even though he noted the complex filed the motion prior to the move out date, did not serve it properly, Mr. Cutler noted the representative from High Inc. made false statements to the court, and the third witness subponeaed failed to show up (Joesph A. Milligan, FBI Special Agent). No contempt of court citation was issued. On October 20, 2016 Mr. Cutler went to the office of Joesph A. Milligan, FBI Special Agent, and met with him outside the building and asked why he failed to be present at the hearing. He stated he never received the subpoena. He confirmed that a receipt received from the district Justice office for sending out the subpoenas signified this could be a case of mail fraud and obstruction of justice. Since Mr. Cutler has become the Tax Collector of East Lampeter Township and Lancaster County have conspired to not pay half the cost of postage and printing as required by law of the approximately 5465 tax bills sent out each year, and pay no other office costs or legal fees, as an effort to be able to RIG elections after the fact. In fact Mr. Cutler has spoken to at least one individual that is presently 86 years old that many years ago he was transported by bus to Philadelphia to vote for Frank Rizzo. It is apparent from the Wikileaks releases being made pubic that government officials have a long established dislike for religion and want to change the First Amendment. It should be noted that both J. King and Seth Rich are both deceased.

Mr. Cutler had hired Fulton bank to assist him with the collection process, an institution with 16 Billion in Assets under management and over 80 locations in which tax payers could pay their taxes. The bank hours vary by location but generally exceed 40 hours per week spread over 6 days.

**BASIS FOR MANDAMUS**

**COUNT I – FAILURE TO BE IN ATTENDANCE**

6.     Section 72 P.S. § 5511.13 of the Local Tax Collection Law provides:

> the tax collector shall in person, or by some person duly authorized, be in attendance for the purpose of receiving and receipting for taxes on at least three days of each week during the last two weeks of the period or periods during which discounts are allowed, at his residence or some other appropriate place, to be designated by him in the tax notice. 72 P.S. 5511.13.

7.     Tax notices sent by Cutler do not indicate when and where Cutler will be in attendance for the purpose of receiving and receipting taxes as required by 72 P.S. 5511.13.

8.     Tax notices sent by Cutler to taxpayers list a post office box located outside the Township as his address. In particular, Cutler lists an address of P.O. Box 26, East Petersburg, PA 17520 on tax notices sent to Township residents. True and correct copies of tax notices sent by Cutler in 2014 and 2015 are attached hereto and incorporated herein as Exhibit "A".

9.     Tax notices sent by Cutler in 2014 and 2015 state an address of "EAST LAMPETER BRANCH 528 GREENFIELD ROAD" printed under the text "OFFICE HOURS:

10.    No Fulton Bank locations exist within East Lampeter Township.

11.    Tax notices sent by Cutler in 2015 list "six of over 80 Fulton Bank locations that accept payment of this tax bill." See Exhibit "A".

12.    Tax notices sent by Cutler to taxpayers are sent in envelopes indicating a separate post office box located outside the county. In particular, Cutler lists an address of P.O. Box 2806, York, PA 17405-2806 on tax notice envelopes. A true and correct copy of a tax notice envelope sent by Cutler is attached hereto and incorporated herein as Exhibit "B".

13.    Upon information and belief, Cutler has never maintained office hours at any of the various addresses listed on the tax notices Cutler sent to taxpayers.

## COUNT I – FAILURE TO BE IN ATTENDANCE

6.   Section 72 P.S. § 5511.13 of the Local Tax Collection Law provides:

the tax collector shall in person, or by some person duly authorized, be in attendance for the purpose of receiving and receipting for taxes on at least three days of each week during the last two weeks of the period or periods during which discounts are allowed, at his residence or some other appropriate place, to be designated by him in the tax notice. 72 P.S. 5511.13.

7.   Tax notices sent by Cutler do not indicate when and where Cutler will be in attendance for the purpose of receiving and receipting taxes as required by 72 P.S. 5511.13.

8.   Tax notices sent by Cutler to taxpayers list a post office box located outside the Township as his address. In particular, Cutler lists an address of P.O. Box 26, East Petersburg, PA 17520 on tax notices sent to Township residents. True and correct copies of tax notices sent by Cutler in 2014 and 2015 are attached hereto and incorporated herein as Exhibit "A".

9.   Tax notices sent by Cutler in 2014 and 2015 state an address of "EAST LAMPETER BRANCH 528 GREENFIELD ROAD" printed under the text "OFFICE HOURS: PAY AT ANY FULTON BANK." See Exhibit "A".

10.   No Fulton Bank locations exist within East Lampeter Township.

11.   Tax notices sent by Cutler in 2015 list "six of over 80 Fulton Bank locations that accept payment of this tax bill." See Exhibit "A".

12.   Tax notices sent by Cutler to taxpayers are sent in envelopes indicating a separate post office box located outside the county. In particular, Cutler lists an address of P.O. Box 2806, York, PA 17405-2806 on tax notice envelopes. A true and correct copy of a tax notice envelope sent by Cutler is attached hereto and incorporated herein as Exhibit "B".

13.   Upon information and belief, Cutler has never maintained office hours at any of the various addresses listed on the tax notices Cutler sent to taxpayers.

14.   Letters received by the Township from Cutler are on Township letterhead, with a stated address of 2250 Old Philadelphia Pike, Lancaster, PA 17602. Cutler has indicated in at least one such letter to the Township that "the physical address for tax payments is: Fulton Bank Lockbox Dept., Jeffrey Cutler Tax Collector, 1695 State Street, East Petersburg, PA 17520." A true and correct copy of a letter from Cutler is attached hereto and incorporated herein as Exhibit "C".

15.   Business cards distributed by Cutler also indicate the Township Office address as the Tax Collector address, and display the Township's trademark logo in addition to an "Obamacare Violates the 1st and 5th Amendments" advertisement. A true and correct copy of Cutler's business card is attached hereto and incorporated herein as Exhibit "D".

16.   Cutler does not, and has never, maintained an office at the Township Office located at 2250 Old Philadelphia Pike, Lancaster, PA 17602.

17.   To date, Cutler has failed to designate an office address or office hours on tax notices as required by Local Tax Collection Law.

**COUNT II – FAILURE TO APPOINT DEPUTY TAX COLLECTOR**

18.    Local Tax Collection Law requires that "a tax collector shall, with the approval of a taxing district and the tax collector's surety, appoint a deputy tax collector who shall collect and settle taxes during any incapacitation of the tax collector." 72 P.S. § 5511.22.

19.    On December 5, 2014, Cutler's bonding surety sent Cutler a letter requesting that Cutler appoint a deputy tax collector and explaining the legal requirement to do so. A true and correct copy of a letter from the bonding surety is attached hereto and incorporated herein as Exhibit "E".

20.    On June 2, 2015, Township received a copy of a letter from the Office of the County Treasurer to Cutler explaining the requirement and procedure for appointing a deputy tax collector and indicating Cutler's failure to do so. A true and correct copy of the letter from the county Treasurer is attached hereto and incorporated herein as Exhibit "F".

21.    To date, no deputy tax collector has been appointed by Cutler in violation of the Local Tax Collection Law.

**COUNT III – FAILURE TO KEEP ACCOUNTS AND RECORDS**

22.    Local Tax Collection Law requires that "the tax collector shall keep a correct account of all moneys collected by him as taxes . . ." 72 P.S. § 5511.25.

Below is the notice mailed and addressed to the defendant, showing the court clearly estalishes the proper jurisdiction. So since the court and post office identify the York address as the proper jurisdiction it is correct.

OFFICE OF THE CLERK

**MARCIA M. WALDRON**
**CLERK**

**UNITED STATES COURT OF APPEALS**
FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE
215-597-2995



July 22, 2016

Jeffrey Cutler
67 Cambridge Village
P.O. Box 2806
York, PA 17405

# GOVERNMENT BULLIES

## By RAND PAUL

Copyright © 2012 by Rand Paul
All rights reserved. In accordance with the U.S. Copyright Act of 1976, the scanning, uploading, and electronic sharing of any part of this book without the permission of the publisher is unlawful piracy and theft of the author's intellectual property. If you would like to use material from the book (other than for review purposes), prior written permission must be obtained by contacting the publisher at permissions@hbgusa.com. Thank you for your support of the author's rights.

Center Street
Hachette Book Group
237 Park Avenue
New York, NY 10017

www.CenterStreet.com

Printed in the United States of America

RRD-C

First edition: September 2012

10  9  8  7  6  5  4  3  2  1

Center Street is a division of Hachette Book Group, Inc. The Center Street name and logo are trademarks of Hachette Book Group, Inc.

The Hachette Speakers Bureau provides a wide range of authors for speaking events. To find out more, go to www.HachetteSpeakersBureau.com or call (866) 376-6591.

The publisher is not responsible for websites (or their content) that are not owned by the publisher.

Library of Congress Control Number: 2012942779
ISBN: 9781455522750

* * *

Imagine that it is 5 a.m. on a hazy morning in April. The sun has not yet risen and you are still in bed, resting and thinking about the laborious day ahead working on your farm. But instead of being wakened by your alarm clock, you are yanked out of bed by a government agent. Imagine your day beginning with an unannounced government raid—two U.S. marshals and a state trooper, storming your farm with a warrant and loaded weapons in hand.

You would no doubt be wondering what you had done wrong, how this abrupt intrusion had come about and why. Yet you would soon learn that you had been the target of a yearlong sting operation conducted by the federal government.

This might sound like the trailer for some upcoming action movie. It is not. It is precisely what happened to Amish farmer Daniel Allgyer.

Daniel Allgyer, his wife, Rachel, and their eight children live in a town called Kinzers in Lancaster County, Pennsylvania. Like most Amish families, they live simple lives while operating their dairy farm, Rainbow Acres Farm. They run a small agricultural business from their farm, where they sell fresh cheese, butter, milk, and produce. You might be wondering what made the seemingly innocent Amish dairy farmer

---

Allgyer a target worthy of federal search and seizure. Was Mr. Allgyer committing violent crimes? Was he selling drugs from his home? Was he housing criminals?

No, Daniel Allgyer was selling fresh raw milk to hundreds of buyers throughout the Northeast. Amish dairy farms operate under the guidelines of *Ordnung*, a set of rules long accepted and obeyed by the Amish community. The guidelines include certain limitations on everyday living and prohibit or limit the use of power-line electricity, telephones, automobiles, and modern dress. The Amish live their daily lives without many of the modern technological conveniences most Americans have come to rely on. Due to these simple standards of living, it should be no surprise that the dairy products produced by Rainbow Acres Farm were not pasteurized or treated with modern production methods. Their milk was raw.

The raw milk market is a significant one—there are over ten million raw milk consumers in our country. Mr. Allgyer was a very well-known and well-respected dairy farmer throughout the Northeast. Countless people depended on his farm for their dairy. Liz Reitzig began buying raw milk from Allgyer when her daughter was having a hard time digesting pasteurized milk. She became a regular customer of Rainbow Acres Farm, saying, "We like the way they farm, we love their product. It is super-high-quality and they are wonderful. It is just a wonderful arrangement."

But the Food and Drug Administration disagrees—the agency does not think the sale of raw milk is wonderful. In fact, this federal agency has gone to extreme measures to make acquiring this product incredibly difficult.

In 1987, the FDA banned the interstate sale of raw milk.

---

Since then, the agency has vowed to do everything it can to regulate this business. If it was within the FDA's jurisdiction, the agency would ban the sale of raw milk altogether. "It is the FDA's position that raw milk should never be consumed," said Tamara N. Ward, spokeswoman for the FDA.

There are potential problems if a corporation wanted to distribute raw milk nationally, but these problems don't necessarily apply to family businesses, farms, and co-ops that distribute and share at local, state, and regional levels. No one is saying we should mass-produce raw milk commercially. The FDA fails to recognize this important distinction.

The agency insists on taking a strong stance opposing the sale of raw milk. A stance so strong that the FDA saw fit to spend taxpayer dollars to fund a yearlong sting operation to prosecute an Amish dairy farmer. The food freedom blog hartkeisonline.com described Allgyer's operation:

> Federal regulators often cite food safety concerns to justify their actions that shut down private enterprises. Let's look at Dan Allgyer's track record. At the time of his farm's closure, he was farming around 100 acres. He provided an impressive range of nutrient dense foods to his club members: raw milk, grass-fed meats, soy-free chickens/eggs to nearly 500 families. *Never, in 6 years, did a club member report a food borne illness from trading directly with Dan* [emphasis added].

According to the ten-page complaint that was filed against Allgyer, the FDA began to investigate Rainbow Acres Farm in late 2009. An investigator located in Baltimore used aliases to

sign up for a Yahoo! user group for Rainbow Acres' customers. The investigator began placing orders for raw milk and would have these orders delivered to a private residence in Maryland.

Because the orders were being sent from the Pennsylvania farm to a residence in Maryland, it became a federal violation and thus—you guessed it—under the jurisdiction of the FDA. This was the plan from the beginning of this sting operation—that by crossing state lines, the distribution of the milk would come under the interstate commerce clause, thus making Daniel Allgyer a lawbreaker. After months of surveillance, investigators visited Rainbow Acres Farm. Allgyer turned them away, telling them they did not have the proper documentation to search his property. This angered the FDA, so they returned two months later, at the crack of dawn, with a warrant and weapons in tow to startle and arrest Mr. Allgyer. Pete Kennedy, president of the Farm-to-Consumer Legal Defense, tells us that "[undercover sting operations] happen quite a bit. It is almost like they treat raw milk as crack. It has happened in a number of states and at the federal level."

During the raid of Rainbow Acres Farm, investigators found coolers labeled "to be delivered" to various towns in Maryland. This raid led to a cease-and-desist order from the FDA. The agency demanded that Allgyer stop selling his dairy products across state lines. But instead of ceasing all business, Allgyer formed a club of sorts. He made customers sign an agreement stating that they supported and understood the operations of his farm and were not trying to entrap the owners, and he qualified all members to become shareholders in the farm's produce, paying only for the farmer's labor. Raw milk advocates hoped this agreement would allow Rainbow Acres to evade the FDA's definition of "commerce," thus tak-

ing the matter out of the federal government's purview altogether. You cannot have commerce with yourself. If you are a part owner in the cow in question, then the commerce clause doesn't apply—you are simply receiving what is already yours.

Not surprisingly, this tactic didn't save Allgyer from the FDA's wrath. The agency filed suit against Rainbow Acres Farm. Judge Lawrence F. Stengel ruled that Allgyer could no longer ship raw milk to other states. Most of Allgyer's customers reside outside Pennsylvania, so due to this court ruling he was required to shut down his farm. Putting Rainbow Acres Farm out of business was the FDA's ultimate goal throughout this entire saga.

This case goes far beyond the debate about the health factors that come with consuming raw milk. This prosecution by the FDA and ruling by Judge Lawrence completely disregards individual liberties. This scenario acts as proof that the FDA now has jurisdiction over private property use. A Rainbow Acres Farm customer describes this outrageous situation, stating his disbelief: "I cannot believe in 2012 our federal government is raiding Amish farmers at gunpoint all over a basic human right to eat natural food. In Maryland they force taxpayers to fund abortions, but God forbid we want to drink the same raw milk that our grandparents and great-grandparents drank."

The majority opinion holds that the compulsory extraction of DNA unquestionably implicates Mr. Pool's right to personal security embodied in the Fourth Amendment. <u>United States v. Pool</u>, 2010 U.S. App. LEXIS 19133, *10, No. 09-10303 at p. 14023 (Sept. 14, 2010).[7]

Based on the judicial determination of probable cause for the crime charged. the majority opinion employs the "totality of circumstances" test, even though Mr. Cutler has not been convicted of a crime.

The dissenting opinion notes that no circuit has ever before approved such a warrantless search or seizure before an individual has been convicted of any crime, and would hold that the government failed to justify a Fourth Amendment exemption of this magnitude. <u>Id.</u>, at *62, p. 14055. It emphasizes that the Supreme Court has upheld searches as a condition of release under the "totality of circumstances" test only after an individual has been convicted of a crime and hence has a lowered privacy interest. <u>Id.</u>, at *63, p. 14055. The dissenting opinion points out that the majority and concurring opinions conflict with both <u>Friedman</u> and <u>Scott</u> in holding that a probable cause determination, rather than a conviction, constitutes the "watershed event" that results in a diminished expectation of privacy. <u>Id.</u>, at *69, p. 14058. In addition, the decision in <u>Friedman</u> squarely forecloses the government's reliance on using the DNA samples of pretrial defendants to solve past and future crimes. <u>Id.</u>, at *74,

## III. ARGUMENT

This Case Presents Issues of Exceptional Importance.

A. Amendment 1 of the United States Constitution is absolute when it says

"to petition the Government for redress of grievances". Because the government has put such a high threshold and cost in allowing these grievances to be heard, criminal acts by a government entities in violation of the basic rights are being ignored despite the majority's attempt to limit its application to defendants for whom it has been found acceptable by a judge, there is no such limitation in the Amendment itself. Even when significant illegal activities such as mail fraud (complaint #1773989) exist and making false statements to the court exist. As in previous item 12 <u>BASIS FOR MANDAMUS</u> in Count I, it is obvious the township withdrew the arguments by stipulation and now try to use it to exclude everything. This is a Fraud on the court. **<u>This is not a defect in jurisdiction, only an interpretation of the Judges of a defect in jurisdiction</u>**. From the movie "Miracle on Thirty Fourth Street", who is the real Santa Claus.

B. Amendment 1 of the United States Constitution is absolute when it says **<u>"CONGRESS SHALL MAKE NO LAW respecting an establishment of religion, or prohibiting the free exercise thereof</u>**: The government has a history of persecuting the Amish. East Lampeter Township also has singled out the Amish and been involved in a previous federal lawsuit 97-cv-5034. The religious exemption within Obamacare allows the government to send a swat team to enforce religious practices. The supporting documentation of this is the Writ of Certiorari for case 15-632, prepared by the American Freedom Law Center and Robert Muise. Kinzer Pennsylvania is only a couple of miles from East Lampeter Township.

The history in Circuits highlights the sensitive and contentious nature of this issue. This Court has previously struggled over cases challenging things like the seizure of DNA samples from convicted defendants. In United States v. Kincade, 379 F. 3d 813 (9th Cir. 2004), the en banc Court addressed the constitutionality of things such as DNA profiling felons on supervised release for a narrow range of serious "qualifying federal offenses." Five members of the Court applied the totality of the circumstances test to conclude that DNA profiling of convicted felons on supervision was constitutional. Yet in this case a decision of moumental importance can be decided without even without consideration.

In Friedman, this Court held, "The warrantless, suspicionless, forcible extraction of a DNA sample from a private citizen violates the Fourth Amendment." 568 F.3d at 1130. Friedman directly precludes the majority's holding that the government can constitutionally compel DNA from Mr. Pool. It is axiomatic that a three-judge panel may not overturn Ninth Circuit precedent. Nichols v. McCormick, 929 F.2d 507, 510 n.5 (9th Cir. 1991).

This Court considered Mr. Friedman a "private citizen" despite the fact that he had previously been convicted of sex offenses and was in custody charged with Because Mr. Friedman had previously been convicted and was in

custody, there is no rationale by which he had more Fourth Amendment rights

than Mr. Pool. As in Friedman, the search in Mr. Pool's case is warrantless and

suspicionless. Further, it is forcible: the government "may use or authorize the use of such means as are reasonably necessary to detain. restrain, and collect a DNA

sample from an individual who refuses to cooperate in the collection of the

sample." 42 U.S.C. § 14135a(a)(4)(A). Mr. Pool's pretrial liberty would depend

on his submission to DNA testing, and he is subject to pro secution and

punishment for failing to cooperate. 42 U.S.C. § 14135a(a)(5)(A).

The majority opinion in Pool attempts to distinguish Friedman on the

ground that Mr. Pool's DNA furthers the government's interest in establishing his

identity. Yet, the only "identity" at issue is the attempt to identify Mr. Pool as a

suspect in other crimes. The dissenting opinion correctly points out that the burden is on the government to support the search. and that it failed to do so. Pool, at *70-71, p. 14060.

The majority opinion attempts to distinguish Friedman on the basis that here the "government has probable cause to believe that Pool committed the crime," but it elides the distinction, also present in Friedman, between cause to arrest someone for any crime. and cause to search someone for evidence of a specific crime. In Friedman, the government had probable cause against the person they wanted to DNA test – he was in custody for new offenses. However, this Court clearly held that despite Friedman's status as an inmate, a convicted sex offender, and a criminal defendant, the government could not constitutionally DNA test him without a warrant or probable cause. 580 F.3d at 858.

"[A] statute does not trump the Supreme Court's holdings regarding 'programmatic' searches

compel this conclusion." Pool, at *58, p. 14052. However, the DNA statute does not constitute a

"programmatic" search because of its law enforcement purpose. Indianapolis v. Edmond, 531 U.S. 32 (2000)

(programmatic search with primary purpose of crime control unconstitutional); cf. Florida v. Wells, 495 U.S.

1. 4 (1990) (inventory search that protects owner's property. insures against claims of lost, stolen, or

vandalized property, and guards

police from danger constitutional); Colorado v. Bertine. 479 U.S. 367. 374 n.6 (1987) (same).  The

panel did not look at any facts in this case because there were no facts to look at. There is no method

by which law enforcement or lower courts can reconcile that the cases to can comply with the law. The

issue must be resolved by the en banc Court.

2. United States v. Scott, 450 F.3d 863 (9th Cir. 2006)

In Scott, this Court considered whether the police may conduct a search based on less that probable

cause of an individual released while awaiting trial. Scott, 450 F.3d at 864. This Court held that the

defendant's privacy interest was not diminished by his status as a pretrial releasee. Id. at 873-74. The Court

stated that the dissent's inability to see a constitutionally relevant distinction "between someone who has

been convicted of a crime and someone who has been merely accused of a crime but is still presumed

innocent, overlooks both common sense and our caselaw."  En banc review is merited.

IV. CONCLUSION

1. The limitation of an elected official to petition the Government for redress of grievances" violates the U.S. Constitution amendment 1.

2. The ability of the United States Government to collect or access penalties FOR FAILURE to comply with established tenets or teachings of such sect or division of ANY religion is in violation of the U.S. Constitution amendment 1

3. Warrantless search or seizure before an individual has been convicted of any crime, is in violation of the U.S. Constitution amendment 4.

4. The prevention of equal treatment in federal court is in violation of the U.S. Constitution amendment 5.

5. The prevention of the right to a jury trial is in violation of the U.S. Constitution amendment 6.

6. The prevention of the ability to call witnesses is in violation of the U.S. Constitution amendment 6.

7. The prevention of a jury trial in a civil matter exceeding a $ 20.00 fine is in violation of the U.S. Constitution amendment 7.

8. The prevention of equal treatment in state court is in violation of the U.S. Constitution amendment 14.

For the reasons set forth above, we respectfully request that the Court grant this petition for rehearing en banc.

Dated: October 24, 2016

Respectfully submitted,

JEFFREY CUTLER
PRO SE

24/oct/2016

Jeffrey Cutler, *pro se*
215-872-5715 (phone)
eltaxcollector@gmail.com
P.O. Box 2806
York, PA 17405

Case 2:16-cv-06287-PD   Document 16   Filed 12/06/16   Page 17 of 21
Case: 16-3164    Document: 003112444804    Page: 16    Date Filed: 10/24/2016

Case: 16-3164    Document: 003112434269    Page: 1    Date Filed: 10/13/2016

**CLD-003**                                                    **October 6, 2016**
## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### C.A. No. 16-3164

EAST LAMPETER TOWNSHIP

    VS.

JEFFREY CUTLER, Appellant

    (M.D. Pa. Civ. No. 16-cv-1159)

Present:    FISHER, SHWARTZ and BARRY, Circuit Judges

    Submitted is

    1)    By the Clerk for possible dismissal due to a jurisdictional defect;

    2)    Appellant's motion for partial summary judgment;

    3)    Appellee's response to Appellant's motion for partial summary judgment;

    4)    Appellee's motion to dismiss appeal; and

    5)    Appellant's response to Appellee's motion to dismiss appeal

in the above-captioned case.

                Respectfully,


                **Clerk**

MMW/ACT/mlr

Case 2:16-cv-06287-PD Document 16 Filed 12/06/16 Page 18 of 21
Case: 16-3164 Document: 003112444804 Page: 17 Date Filed: 10/24/2016

Case: 16-3164 Document: 003112434269 Page: 2 Date Filed: 10/13/2016

EAST LAMPETER TOWNSHIP
    VS.
 JEFFREY CUTLER, Appellant
C.A. No. **16-3164**
Page **2**

---

## ORDER

Appellee's motion to dismiss the appeal is granted, and the foregoing appeal is dismissed
for lack of appellate jurisdiction. Appellant appeals from the District Court's orders
entered June 16, 2016, remanding this matter to state court, and June 22, 2016, declining
to reconsider that ruling. We lack jurisdiction under 28 U.S.C. § 1447(d) to review
remand orders that are authorized under 28 U.S.C. § 1447(c)—i.e., those based on a lack
of subject matter jurisdiction or on "any defect," meaning a conclusion that removal was
not authorized by law. See Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224,
229-30 (2007); Cook v. Wikler, 320 F.3d 431, 434-35 (3d Cir. 2003). The District Court
concluded, on motion from the opposing party, that remand was appropriate because the
notice of removal was untimely and venue was improper. The District Court's remand
for these reasons was thus based on a "defect" under § 1447(c) and a conclusion that
removal was not authorized by law. See Cook, 320 F.3d at 435-36. We also lack
jurisdiction over the District Court's order denying reconsideration of the remand order.
Agostini v. Piper Aircraft Corp., 729 F.3d 350, 356 (3d Cir. 2013). Appellant's motion
for partial summary judgment is denied.

By the Court,

**s/Maryanne Trump Barry**
Circuit Judge

Dated: October 13, 2016
MLR/JK/cc: Susan P. Peipher, Esq.
            Jeffrey Cutler

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3164

_____

EAST LAMPETER TOWNSHIP

v.

JEFFREY CUTLER,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 1-16-cv-01159)
District Judge:  Honorable Sylvia H. Rambo

_____

Present: SMITH, Chief Judge, McKEE, AMBRO, FISHER, CHAGARES,
JORDAN, HARDIMAN, GREENAWAY, Jr., VANASKIE, SHWARTZ,
KRAUSE, RESTREPO and BARRY,[*] Circuit Judges

_____

**SUR PETITION FOR REHEARING
WITH SUGGESTION FOR REHEARING EN BANC**

_____

The petition for rehearing filed by appellant in the above-entitled case having been

submitted to the judges who participated in the decision of this Court and to all the other

available circuit judges of the circuit in regular active service, and no judge who

concurred in the decision having asked for rehearing, and a majority of the judges of the

circuit in regular service not having voted for rehearing, the petition for rehearing by the

panel and the Court en banc, is hereby denied.


                                 BY THE COURT:

                                 s/ Maryanne Trump Barry
                                 Circuit Judge

DATED: November 10, 2016

mlr/cc: Susan P. Peipher, Esq.
        Jeffrey Cutler

---

* The vote of Senior Judge Barry is limited to panel rehearing only.

2

CLERK-S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CO-932
Rev. 4/96

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 40.5(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk-s records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO ALL COUNSEL**

Rule 40.5(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.    RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case: [Check appropriate box(e-s) below.]

☐   (a)   relates to common property

☒   (b)   involves common issues of fact

☐   (c)   grows out of the same event or transaction

☐   (d)   involves the validity or infringement of the same patent

☒   (e)   is filed by        pro se litigant

2.    RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

Check box if new case is related to a dismissed case:   ☒

3.    NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):
UNITED STAES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

4.    CAPTION AND CASE NUMBER OF RELATED CASE(E-S). IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

EAST LAMPETER TOWNSHIP          v.        JEFFREY CUTLER          C.A. No. 1:16-cv-1159 /16-3164

06NOV2016

DATE          Signature of Plaintiff /Defendant (or counsel)