IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN, et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 |
| Defendants. | : | |

## ORDER

AND NOW, this            day of                  , 2016, upon consideration of

the motion for a preliminary injunction and the opposition of the defendants

Secretary of the Commonwealth Cortés and Commissioner Marks, it is hereby

ORDERED that the motion is DENIED.


BY THE COURT:


_____
PAUL DIAMOND,  J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JILL STEIN , et al.                          :
Plaintiffs,                                  :          CIVIL ACTION
                              v.             :

PEDRO A. CORTÉS, in his capacity as          :
Secretary of the Commonwealth, et al.        :          NO. 16-6287
              Defendants.                    :

## RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Defendants Secretary Pedro A. Cortés and Commissioner Jonathan Marks oppose plaintiffs' motion for preliminary injunction and incorporate by reference the attached memorandum of law.

Wherefore, this Court should grant the relief as set forth in the proposed order.

Respectfully submitted,

BRUCE R. BEEMER
Attorney General

/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009
Kenneth Joel
Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
215-560-2127; fx: 717-772-4526

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN , et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

A month after the election and just days before the Commonwealth intends to communicate its official election results to Congress, Plaintiffs—the Green Party candidate for President of the United States who garnered less than 1% of the Pennsylvania vote—and a Pennsylvania resident who cast his vote in last month's election, abandon the well-settled state-law processes for seeking a recount or contesting an election to run to this Court to upend the Presidential election. Plaintiffs have improperly delayed in their quest. They also lack standing and cannot meet any of the required elements needed to secure the extraordinary relief that they seek. Their Motion must be denied.

**I. PROCEDURAL HISTORY**

Jill Stein, the Green Party's presidential candidate for the November 2016

election, and Randall Reitz, a Pennsylvania voter in the 2016 presidential election, filed a complaint on December 5, 2016, alleging a violation of equal protection rights and substantive due process rights as well as a violation of First Amendment rights. We do not qualify the rights at issue as "plaintiffs' rights" because plaintiffs do not specify violation of their rights but, instead, try to advocate the rights of Pennsylvania voters generally.  The plaintiffs' claims all focus on their purported inability to confirm that the votes of non-parties were properly counted in the recent election.  They sue Pedro A. Cortés in his official capacity as Secretary of the Commonwealth of Pennsylvania, and Jonathan Marks, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation.  On December 6, 2016, the plaintiffs moved for an expedited emergency hearing and for a preliminary injunction that would compel the defendants to order a hand count of all ballots in all precincts that use optical scan machines and a forensic examination of "a small sample of the election management systems computers." ECF 5 at 44-45.

On December 6, 2016, this Court granted the motion to intervene of President-Elect Donald Trump; Vice President-Elect Michael Pence; all of the Pennsylvania Electors of President-Elect Donald Trump and Vice President-Elect Michael Pence; Donald J. Trump for President, Inc.; and the Republican Party of Pennsylvania.  This Court then required defendants and intervenors to respond to

the motion for preliminary injunction by December 8, 2016, and scheduled a hearing for December 9, 2016, four days after the complaint was filed and more than a month after the general election.

The defendants now respond in opposition to the motion and in anticipation of the evidentiary hearing scheduled for tomorrow—just four calendar days before December 13, 2016, which is the "safe harbor" date for the selection of presidential electors. *See* 3 U.S.C. § 5.  As explained below, the plaintiffs have unreasonably delayed in bringing this action.  Put simply, the plaintiffs' "emergency" is of their own making and only serves to upset a well-settled and long-established voting process.  In their haste, the plaintiffs have failed to show that they are irreparably harmed; and, if they succeed, the harm to the Commonwealth—and the voting public—far outweighs any speculative claim of harm.  And, finally, the plaintiffs' constitutional challenges are baseless.  For any of the reasons that follow, the plaintiffs' "Emergency" Motion must be denied.[1]

## II.    FACTS ALLEGED

The entirety of the plaintiffs' challenge is based on the speculation that Pennsylvania's direct-recording electronic ("DRE") machines, which have been used for years, might have been hacked by foreign interests and that the votes cast

---

[1] Secretary Cortés will timely respond to the complaint—either by an Answer with Affirmative Defenses or Rule 12 Motion—as allowed by the Federal Rules of Civil Procedure.  Additionally, the defendants reserve the right to present additional arguments based on the evidence elicited at Friday's hearing.

by multitudes of Pennsylvanians were altered.  Beyond this, the plaintiffs argue that the county-based recount petitions of 25 P.S. § 3154 as well as court-ordered recounts under 25 P.S. §§ 3261 and 3162 are shams.  The plaintiffs characterize Pennsylvania's recount procedures as unconstitutionally burdensome and attack the Commonwealth's voting systems as providing voting rights not equal to the rights of voters in other states.

The Pennsylvania Election Code, enacted in 1937, was amended in 1980 to allow for the use of electronic voting systems.  *See* 25 P.S. §§ 3031.1 - 3031.22. The Secretary of the Commonwealth is charged with the duty "to examine and re-examine voting machines, and to approve or disapprove them for use in this State, in accordance with the provisions of [the Election Code]."  25 P.S. § 2621(b). Section 1105-A(b) of the Election Code, 25 P.S. § 3031.5(b), specifically requires that the Secretary of the Commonwealth examine all electronic voting systems used in any election in Pennsylvania and that the Secretary make and file a report stating whether, in the Secretary's opinion, the electronic voting system can be safely used by voters and meets all of the applicable requirements of the Election Code.  Before a voting system can even be examined by the Secretary, however, it must first be examined and approved at the federal level to federal standards.  *See* 25 P.S. § 3031.5(a).

The Secretary certifies the electronic voting systems, but each of Pennsylvania's sixty-seven counties independently selects and purchases the certified voting system that best meets its needs.  *See* 25 P.S. §§ 2642(c); 3031.4(a); 3031.8.

*The voting systems:*

The Election Code contemplates the certification and use of both DRE and optical-scan electronic voting systems.  *See* 25 P.S. § 3031.1.  As the Pennsylvania Supreme Court explained just last year:

> Optical scanners (akin to standardized testing methods) and punch card voting allows voters to mark selections on a paper ballot that is subsequently scanned and counted by an automatic tabulation device. In contrast, DREs display an electronic ballot on a screen and allow an individual to vote using a button, dial, or touch screen.

*Banfield v. Cortés*, 110 A.3d 155, 159-60 (Pa. 2015).

A total of 50 counties in Pennsylvania use DREs, while the other 17 counties use an optical scan voting system.  Exh. D1 (Map Exhibit).  Most of the voting systems were first certified in 2005 and 2006.  In 2012, then-Secretary of the Commonwealth Carol Aichele re-examined all of the DREs in detail, and re-certified that each voting system meets all of the requirements of the Pennsylvania Election Code and can be safely used by voters.  *See Voting System Reports*, Pa. Dep't of State, http://www.dos.pa.gov/VotingElections/OtherServicesEvents/

Pages/Voting-Systems.aspx (last visited Dec. 7, 2016).   In their pleading, the plaintiffs speculate that the DRE machines could be hacked and that votes may be altered and that there would be no way to detect this change.   At Friday's hearing, the defendants will present evidence demonstrating that the plaintiffs' fears are nothing more than rank speculation and that they are not tethered to reality.

The Election Code provides for a recount procedure and a re-canvassing procedure; the legislature presumably chose not to provide for a forensic examination of DRE's or of county central computers.   The November 2016 post-election general reconciliation checklist is a recent example of the many security measures taken to ensure the integrity of the voting process.   Exhibit D2.   Evidence presented at the hearing of December 9, 2016, will show security measures against hacking including "parallel testing" of electronic voting machines.

The Election Code allows for challenges to be filed with the county boards of elections or the courts of common pleas for the county whose returns are at issue.   The board, at any time prior to the completion of the computation of all the returns for the county, may recount or recanvass the votes: (1) on its own motion; (2) where there is a discrepancy in the election returns; or (3) upon the petition of three voters in an election district where there appears to be a discrepancy in the votes.   25 P.S. § 3154(e).   Moreover, within five days of the computing of all returns by the board, three qualified electors of the election district may petition

the court of common pleas to conduct a recount or recanvassing of the returns.  25 P.S. § 3263(a)(1).

Besides a recount or recanvass, the Election Code also provides for an election contest.  The classes of election contest are set forth in the Election Code. 25 P.S. § 3291.  A contest regarding presidential electors is a Class II election contest.  *Id*.  An election contest questions the process itself, such as method of balloting, tabulations of results and returns.  *Appeal of Lord*, 41 A.2d 661, 662 ("The contest of an election is a remedy given to the people when the expression of their choice of a public officer has been frustrated by fraud or mistake").  Defects in ballots or the mechanical failure of voting system are examples of matters that have been addressed in election contests.  *See In re Gen. Election of Nov. 4, 1975*, 71 Pa. D. & C.2d 68, 82 (Pa. Pike Com. Pl. 1975) (contest filed where voting machines allegedly failed to record votes cast); *In re Wallingford-Swarthmore Sch. Dist. Election*, 66 Pa. D. & C.2d 616, 618 (Pa. Del. Com. Pl. 1974) ("one of the machines used, failed to operate properly;" "[a]n internal mechanical malfunction made it impossible to pull the Republican Party lever.").

Commonwealth Court has jurisdiction over a contest of a statewide election. 42 Pa.C.S. § 764(a).  A Class II contest must be commenced by the petition of at least 100 electors who voted in the election and filed within twenty days after the day of the election.  25 P.S. §§ 3351, 3456.  The petition must set forth the cause of

the complaint showing why it is claimed that the election is illegal.  25 P.S. § 3456.

The plaintiffs tried this route; however, they abandoned it.

## III.      ARGUMENT

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections" because "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (further quotations omitted).  "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58, 364 (1997); *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)).  As decided shortly before the election by Judge Pappert, Pennsylvania's "Election Code contains numerous provisions designed to maintain and uphold the integrity of the vote." *Republican Party of Pennsylvania v. Cortés*, No. CV 16-05524, 2016 WL 6525409, at *2 (E.D. Pa. Nov. 3, 2016).

### A.    The High Standard For Injunctive Relief

The grant of injunctive relief is an "extraordinary remedy which should be

granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback and Conserve Program, Inc*., 42 F.3d 1421 (3d Cir.1994) (quoting *Frank's GMC Truck Ctr. v. General Motor Corp*., 847 F.2d 100, 102 (3d Cir.1988)), *cert. den'd*, 514 U.S. 1103 (1995).

   "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see* Fed. R. Civ. P. 65(a). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted). "The moving party bears the 'heavy burden' of showing that these elements weigh in favor of a preliminary injunction."  *Pennsylvania Democratic Party v. Republican Party of Pa*, No. CV 16-5664, 2016 WL 6582659, at *3 (E.D. Pa. Nov. 7, 2016) (citing *Republican Party of Pa. v. Cortés*, No. 16-5524, 2016 WL 6525409, at *4 (E.D. Pa. Nov. 3, 2016) (citing *Ferring Pharms., Inc. v. Watson Pharms., Inc*., 765 F.3d 205, 210 (3d Cir. 2014), and *Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980)).

   Indeed, the movant must establish the likelihood of success on the merits of its causes of action and the likelihood that it will suffer irreparable injury if the

requested relief is not granted before the court can even consider public interest and the balance of hardships. *Tenafly Eruv Assoc. v. Borough of Tenafly*, 309 F. 3d 144 (3d Cir. Oct. 24, 2002); *see also Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197 (3d Cir.1990). Plaintiffs must demonstrate all four factors before an injunction will issue. *AT&T v. Winback* 42 F.3d 1421, 1427 (3d. Cir. 1994).

Further, in the Third Circuit—even when the claim involves putative First Amendment issues—"[e]stablishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc*., 809 F.2d 223, 226 (3d Cir. 1987); *see also Conchatta, Inc. v. Evanko*, 83 F. App'x 437, 442 (3d Cir. 2003) (collecting cases) ("plaintiff must *show* irreparable harm in order to obtain preliminary injunction" and, even in the First Amendment context, a plaintiff must do more than make an "assertion of First Amendment rights" to satisfy the irreparable harm standard instead, the plaintiff "must show a chilling effect on free expression") (further quotations and citations omitted).

"Although Plaintiffs need not prove their case with 'airtight certainty,' the moving party nevertheless "bears a heavy burden on a motion for a preliminary injunction." *Republican Party v. Cortes*, 2016 WL 6525409, at *3 (quoting *Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980)). The "primary purpose of a preliminary injunction is maintenance of the status quo." *Acierno v. New Castle*

12

*Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).   Accordingly, "when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy," *Repub. Party v. Cortés*, 2016 WL 6525409, at \*3 (quoting *Punnett v. Carter*, 621 F.2d at 582).

In short, the plaintiffs must demonstrate that the exigencies of the situation demand such relief, and that the facts and law are clearly in their favor.  With these standards in mind, we now turn to Plaintiffs' "Emergency" Motion.

### B.    Plaintiffs Lack Standing

Jill Stein and Randall Reitz cannot establish constitutional standing—they do not even allege in their complaint or their motion for emergency relief that they have suffered an "injury in fact" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler,* 547 U.S. 332*,* 342 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) (internal quotation marks omitted)).   "In assessing standing, our

13

primary project is to separate those with a true stake in the controversy from those asserting "the generalized interest of all citizens in constitutional governance." *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc*., 454 U.S. 464, 483 (1982) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 223 n.13 (1974)).

Jill Stein cannot show injury in fact.  She does not and cannot) reasonably allege that she is a registered Pennsylvania voter (because she is not) and, absent that, she has absolutely no right to seek a recount or a forensic audit.  Further, she received close to 50,000 votes in Pennsylvania.  While this total constitutes less than 1% of the votes cast in the Commonwealth, it nonetheless refutes any inference that Pennsylvania registered voters were denied the right to vote for her or her party. *See* http://www/e;ectopmretirms/[a/gpv/ENR_NEW).[2]  What's more, the challenges mounted, even if successful, will provide her with no meaningful relief.  Put bluntly, there is no way that a forensic examination or a recount will flip Pennsylvania to her and she has no legally cognizable interest in flipping Pennsylvania to Secretary Clinton or any other candidate on the ballot.

The standing of co-plaintiff Reitz is equally deficient.  First, he avers that he actually voted in Pennsylvania and he has alleged no facts to demonstrate that his

---

[2] Nationally, Dr. Stein received about 1% of the vote, which compares favorably to the total she received in the Commonwealth and reflects that the votes cast in Pennsylvania were accurately counted.

vote was not counted.  Further, to the extent that he suspects Russian hackers somehow flipped his vote—from whom to whom he does not say—this is nothing more than rank speculation.  Further, he lacks the ability to assert the constitutional rights of others.  *See*, *e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) (collecting cases and concluding that a "closely related principle is that constitutional rights are personal and may not be asserted vicariously").  And, regardless, a forensic audit of DRE machines in other counties will not aid him and he had the opportunity, to pursue a recount in his home county.

Beyond this, the fact is that the Election Code permits an election contest. *See* 25 P.S. §§ 3291-3474.  In short, if a sufficient number of electors file the appropriate petition and affidavits, and ultimately prove their case, an election may be successfully contested.  *Id*.  Plaintiffs tried to take advantage of that process; however, they abandoned their effort.  While they complain about the bond imposed, the reality is that a process whereby the election throughout the entire Commonwealth would be litigated would be costly and the plaintiffs' choice to abandon this option does not transform their disputes into constitutional claims. Nor does it allow them to end-run this long-established process.

In the end, all the plaintiffs do is speculate that maybe the votes of Reitz and of non-parties may not have counted. Further, the plaintiffs cannot even logically speculate that a recount could determine whether Reitz's vote was properly

15

counted because, according to the speculative declarations, the malware would have disappeared after the election and, with its disappearance, there would be nothing to find.  The two plaintiffs do not and cannot plausibly or sanely allege personal injury at all, let alone an injury "likely to be redressed by the requested relief."  *See Allen v. Wright*, 468 U.S. 737, 751 (1984).  Plaintiffs' lack of Article III standing means that they cannot succeed on the merits of their claims and this Court must deny their motion for preliminary injunction.

Notably, just yesterday, the District Court in Michigan issued a decision in a case, brought by Stein and others, that is eerily similar to this case and, thus, the reasoning there is particularly fatal to the plaintiffs' position here.  Specifically, the Michigan Court of Appeals concluded that Stein lacked standing to pursue her demand for a state-wide recount because she had no reasonable chance of winning the election.  Exh. D3--*Stein v. Thomas*, No. 16-14233, Slip Op. at 2 (E.D. Mich., December 7, 2016).  Perhaps recognizing this, Stein tried to morph her complaint into the same theories here—that there is some constitutional right to have the votes counted fairly.

The District Court in Michigan flatly rejected such arguments and concluded that it requires "facts amounting to an actual impact on the right to vote.  There is no case law recognizing the independent federal right to a recount that either this Court or the parties have come across, in the absence of actual deprivation of

16

voting rights.  Rather, Plaintiffs' asserted right to a recount is just a restatement of her right to participate in a fair election, free from tampering or mistake.  But, to date, Plaintiffs have not presented evidence of tampering or mistake.  Instead, they present speculative claims going to the vulnerability of the voting machinery—but not actual injury.  Because mere potentiality does not amount to a claim that the vote was not fairly conducted, Plaintiffs' new claims are insufficient to maintain the existing TRO."  *Id*. at 6-7.  And, in conclusion:  "invoking a court's aid to remedy that problem in the manner Plaintiffs have chosen—seeking a recount as an audit of the lection to test whether the vulnerability led to actual compromise of the voting system—has never been endorsed by any court, and would require, at a minimum, evidence of significant fraud or mistake—and not speculative fear of them." *Id*. at 7.

### C.    Plaintiffs Have Not Included All Appropriate Parties

Plaintiffs have sued only Secretary Cortés and Commissioner Marks.  Their challenges, however, seek to conduct an audit of software provided by third party contractors.  It is not fair to allow access to such software without the involvement of the owners of the rights to that software.  This type of failure made news last year when law enforcement sought an order to have an Apple iPhone unlocked— which in turn led to Apple's asserting its rights.  Perhaps plaintiffs Stein and Reitz were aware of their failure when they narrowed their requested relief in the

pending motion to forensic investigation of central computers in six counties. That focus is misleading, because software is accessible in those central computers. Additionally, the plaintiffs demand a recount and also a forensic audit of computers that may be in the control and custody of the 67 counties. Plaintiffs have failed to join these needed county parties.

Accordingly, the extraordinary relief of a temporary restraining order plaintiffs seek cannot be granted. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed.Cir.1996) (noting the "general rule that a court may not enter an injunction against a person who has not been made a party to the case before it"); *see also Scott v. Donald*, 165 U.S. 107, 117  (1897) ("[t]he decree is also objectionable because it enjoins persons not parties to the suit"); *Banks v. Good,*. No. CV 06–253, 2011 WL 2437061, *2-3 (W.D. Pa. Apr. 20, 2011), *adopted*, 2011 WL 2418699 (W.D. Pa. Jun. 14, 2011) (citing cases) (same).

### D.    Equity Bars Plaintiffs' Request For Injunctive Relief

"As Judge Pappert recently stated in rejecting the RPP's belated request for Election Day injunctive relief: "[t]here was no need for this judicial fire drill and Plaintiff[ ] offer[s] no reasonable explanation or justification for the harried process [it] created." *Pennsylvania Democratic Party v. Republican Party of Pennsylvania*, No. CV 16-5664, 2016 WL 6582659, at *4 (E.D. Pa. Nov. 7, 2016)

(quoting *Cortés*, 2016 WL 6525409, at *4).  As in the above two cases, the same situation obtains here.

Jill Stein's nomination papers had to be filed no later than August 1, 2016. There was an objection period and no objections were filed.  Thus, by the middle of August—at the absolute latest—Jill Stein knew that she would be on the November 8 general election ballot for the office of President of the United States. From that time until the election, Stein did nothing to challenge the reliability of the DREs used in the Commonwealth.[3]  Months after Jill Stein became a presidential candidate in Pennsylvania and weeks after announcement of the preliminary election result—with only days before the "safe harbor" date for the selection of presidential electors—plaintiffs seek to alter Pennsylvania law and the status quo.  President-elect Trump is the president elect.  That is the status quo. Plaintiffs' eleventh-hour gambit must be rejected.

Plaintiffs attempt to justify their unnecessary delay by detailing how they tried unsuccessfully to use the processes available under the Election Code for recounting and re-canvassing.  Yet the Election Code does not provide, for example, for access to the central computers of the counties' boards of election.

---

[3] While the defendants deny that Stein would have been entitled to relief had she filed then, at least there could have been due consideration of her position and, if she were successful, a remedy could have been crafted before the election.

The Election Code does not provide for the relief that plaintiffs seek.  That is not new.  Yet plaintiffs delayed until this week to initiate their federal challenge.

"An unreasonable delay in seeking an injunction negates the presumption of irreparable harm." *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 582 (E.D. Pa. 2005).  And, in election challenges, courts have recognized that "any claim against a state election procedure must be expressed expeditiously." *Bowes v. Indiana Sec'y of State*, 2014 WL 6474097, *3 (S.D. Ind., Nov. 19, 2014) (citing *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (citing, in turn, *Williams v. Rhodes*, 393 U.S. 23 (1968))).  Delay in seeking a preliminary injunction "at least suggests that the status quo does not irreparably damage" the moving party. *Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991); *Am. Beverage Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 610-11 (W.D. Pa. 2013).

Indeed, as in the recent case before this Court, plaintiffs have "contrived to transform this litigation into a mad scramble."  That reason alone is sufficient to deny the requested relief, given the importance of the continuity in the change of administrations. *Pa Democratic Party v. Republican Party of Pa*, No. CV 16-5664, 2016 WL 6582659, at *5 (E.D. Pa. Nov. 7, 2016) (citing *Cortés*, 2016 WL 6525409, at *1 (citing unreasonable delay as a basis for denying injunctive relief)); *Smart Vent Prods., Inc. v. Crawl Space Door Sys., Inc*., No. 13-5691, 2016 WL

4408818, at *12 (D.N.J. Aug. 16, 2016) (delay "knocks the bottom out of any claim of immediate and irreparable harm").

### E.   Plaintiffs Cannot Demonstrate Injury—Let Alone Irreparable Harm

Without irreparable injury, Plaintiffs cannot receive the extraordinary relief that they seek.  "In order to demonstrate irreparable harm[,] the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989). "[A]n irreparable injury is one that is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate." *FMC Corp. v. Control Solutions, Inc.*, 369 F.Supp.2d 539, 573 (E.D.Pa.2005) (citations and internal quotations omitted).  Here, Plaintiffs rely on the typical claim that they have alleged a constitutional violation and, therefore, there must be irreparable harm.  Plaintiffs misunderstand the law.

The Third Circuit has made clear that a plaintiff seeking injunctive relief must do more than assert a constitutional violation.  For example, in *Conchatta, Inc. v. Evanko*, 83 Fed. Appx. 437 (3d Cir. 2003), the Third Circuit canvassed its precedent and, as it relates to the irreparable harm prong, explained:

> Our court has held that a plaintiff must show irreparable harm in order to obtain a preliminary injunction.  *Adams v. Freedom Forge*, 204 F.3d 475, 484 *3d Cir. 2000); *Instant Air Freight Co. v. C.F. Air Freight*, 882 F.2d 797, 800 (3d Cir. 1989); *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir. 1987).  "We have repeatedly insisted that the

> use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Adams*, 204 F.3d at 487.   While other circuits relax the irreparable harm requirement in First Amendment cases, our Court requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm.   In *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989), we observed that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." Instead, we wrote, "plaintiff[] must show a chilling effect on free expression." *Id*.

*Conchatta*, 83 Fed. Appx. at 442.   *See also Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (noting that even in a First Amendment claim, a plaintiff must show a real or immediate danger to their rights in the near future).

Plaintiffs have not factually alleged, let alone proven, that there was hacking or use of malware in county central computers.   At Friday's hearing, the Secretary will submit evidence showing security measures that safeguard our election and revealing that plaintiffs' speculation is just that.

### F.    Plaintiffs Cannot Succeed on the Merits.

Not only do plaintiffs lack standing for this Court to even reach the merits, not only have they failed to include third parties with proprietary rights and who conduct the recounts and control the computers that they seek to audit, and not only have plaintiffs caused extensive unnecessary delay—but also the claims alleged are without merit.   Their premise is without support and their rationale is circular.   They speculate that all DREs are vulnerable so as to deny all registered

Pennsylvanians the right to vote.  That is precisely the faulty premise of plaintiffs in *Banfield v. Cortés*, 110 A.3d 155 (2015).

Last year, the Pennsylvania Supreme Court addressed the substantive due process and equal protection claims challenging the Election Code in *Banfield v. Cortés*, 110 A.3d 155 (2015).[4]  Interestingly, plaintiffs cite to *Banfield* and acknowledge that the Pennsylvania Supreme Court upheld the constitutionality of one of the two challenged regulations.  ECF 4 at 39 n. 15.  They try to distinguish *Banfield* by relegating it to a footnote and assert that the case did not apply the U.S. Constitution and that it was not dispositive because the court did not consider foreign interference with this election or the combined effect of the challenged practices.   True, *Banfield* was decided based on Pennsylvania's Constitution, not the U.S. Constitution.  That, however, is a difference without a distinction because the standard is the same.  *See Commonwealth v. Wallace*, 97 A.3d 310, 320 (Pa. 2014) (same standard for due process); *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991) (same standards for equal protection); *Commonwealth by Preate v. Cancer Fund of America, Inc.*, 620 A.2d 647, 649-51 (Pa. Cmwlth. 1993) (using the same standard for First Amendment claim).

---

[4] Moreover the question of the existence of voter fraud in Pennsylvania was also recently fully adjudicated as a myth.  *See Applewhite v. Commonwealth,* 2014 Pa. Commw. Unpub. LEXIS 756 (finding no evidence of voter fraud or integrity in elections as a compelling or legitimate state interest for the Voter ID Law).

Indeed, *Banfield's* analysis is based on federal case law: "[w]e find persuasive the decisions of federal circuit courts that have held that DREs that register votes electronically without a voter-verified ballot do not severely restrict the right to vote." *Id*. at 266.[5] And the decision in *Banfield* was issued after a full examination by the Court and a sound rejection of the same unsupported (and unsupportable) opinions offered by the plaintiffs' experts here.

Moreover, plaintiffs lack an iota of proof to support their speculation and they circularly argue that they need information to get information. The plaintiffs have the burden of demonstrating that they can meet the requirements for a requested injunction at the "commencement of the litigation," and must do so "separately for each form of relief sought." *Friends of the Earth*, at 170, 184-85. Plaintiffs ask for the injunctive relief in the desperate hope that a forensic audit may prove their case even though they must factually allege an existing injury for

---

[5] *Banfield* relies on several other federal cases such as *Weber v. Shelley*, 347 F.3d 1101, 1106-07 (9th Cir. 2003), which emphasized that state officials have the power to substantially regulate the election process as it is "the job of democratically-elected representatives to weigh the pros and cons of various balloting systems." Refusing to interfere with this discretion, the *Weber* Court found that "[s]o long as their choice is reasonable and neutral, it is free from judicial second-guessing." *Banfield* at 266. (citing *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975) (providing that "[v]oting device malfunction [and] the failure of election officials to take statutorily prescribed steps to diminish what was at most a theoretical possibility that the devices might be tampered with ... fall far short of constitutional infractions")).

them to file their lawsuit.  And, as explained previously, that injury has to be particularized as to the plaintiffs, not as to Pennsylvanians or all Americans.

If plaintiffs are entitled to access central computers in multiple counties, based simply on their unfounded suspicions, then so would be every single voter who suspects for any reason whatsoever that her vote was not properly counted, and this challenge could be reasserted after each and every election.  Significantly, the plaintiffs argue that what they are looking for—in terms of evidence of hacking—may not even exist because sophisticated malware may be designed to disappear after it has done its job.  In other words, the plaintiffs want to audit machines even though they concede that there may be no evidence of anything when they look.  This is the epitome of a fishing expedition and cannot be sanctioned in the context of a presidential election and a last minute attempt to derail Pennsylvania's election results.  Indeed, just yesterday, Judge Fletman in Philadelphia denied Stein's attempt to have a forensic audit because state law simply does not allow for it. Exh. D4.

The legislature has provided for Commonwealth defendants to secure the voting process, including the vote counting.

As it relates to the claims for a recount, the fact is that since 1937 Pennsylvania has placed the responsibility for elections at the county level. Further, the General Assembly has in place provisions allowing for an automatic

recount if the vote is close enough—which, here, it was not.  To ensure that a voter's vote was properly counted, the Election Code allows for that voter to seek redress before the County Board of Elections and the County Common Pleas Court.  This certainly is a rational system because it allows for the prompt validation of a voter's vote.  By contrast, the plaintiffs' desire would allow a single voter anywhere in the Commonwealth to demand a recount of the entire Commonwealth.  This would impose significant burdens—administrative and financial—on the Commonwealth and the 67 counties.[6]

Moreover, the Election Code provides a process to contest an election.  Indeed, the plaintiffs tried this route but abandoned it.  Plaintiffs should not be permitted to shop around and transform their speculation into last minute constitutional claims.  *See Stein v. Thomas*, *infra*.

Despite their failure to meet multiple factors required for their sought-after relief, plaintiffs also attempt to impose a higher standard than applicable for their claims.  Election regulations should be found constitutional if they are "reasonable, neutral, and do not work a severe restriction on the right to vote." *Weber,* 347 F.3d at 1106.

---

[6] The plaintiffs' logic—that if a voter has an interest in the outcome of the election he/she should be permitted to get a recount—can certainly be extended in any federal election because a voter in Alaska may have an interest in the Presidency or the balance of power in the Senate or the House.  All legislation requires line-drawing and this is no different.

Plaintiffs assert speculation layered upon speculation to claim the certification and use of the DREs directly interferes with the right to vote because maybe there was hacking impliedly by current incarnations of Boris and Nathasha of Bullwinkle fame.  Yet they present "no evidence that any Pennsylvania county using DREs had experienced lost or miscounted votes, tampering of their election result, or malfunction preventing voters from casting their vote." *Banfield*, 110 A.3d at 176.  *Banfield* was decided last year.  The new presidential election only changes the images of speculation, not facts relevant to Pennsylvania's Election Code.

### G.  Plaintiffs' Proposed Injunctive Relief Is Harmful.

Plaintiffs speculate, without any proof, that voting machines were hacked to falsify votes (of Reitz and non-parties).  If their speculation were correct, then they allege criminal activity—the type of criminal activity to be investigated by law enforcement, indeed federal law enforcement.  *See* Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Unlawful Use of Computers and Other Computer Crimes, 18 Pa.C.S. § 7611.  The proposed "relief," subverting the criminal justice system and perhaps homeland security, thus irreparably harms the defendants and the public by contaminating, or at a minimum "complicating," a potential criminal investigation of national import.  Even if plaintiffs' speculation were based in fact, the proposed injunctive relief could place the public at risk.

## IV.    CONCLUSION

This Court should deny plaintiffs' motion for preliminary injunctive relief.

Respectfully submitted,

BRUCE R. BEEMER
Attorney General

/s/ Sue Ann Unger
_____

Office of Attorney General                    Sue Ann Unger
21 S. 12th Street, 3rd Floor                   Senior Deputy Attorney General
Philadelphia, PA 19107                         Attorney I.D. No. 39009
215-560-2127; fx: 717-772-4526                 Kenneth Joel
                                               Chief Deputy Attorney General

28

## CERTIFICATE OF SERVICE

I, Sue Ann Unger, hereby certify that the defendants' attached document has been filed electronically on December 8, 2016, and is available for viewing and downloading from the Court's Electronic Case Filing System.  Counsel for the parties has been served through that system.  Others who have moved to participate have been also been served as noted below:

By First Class Mail (prepaid)

Jeffrey Cutler
PO Box 2806
York, PA  17045
Movant, *pro se*


By Email
American Center for Law and Justice
Joshua Reed, Esq.
Joshua@reedpalaw.com


/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
215-560-2127; fx: 717-772-4526