IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN, et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 |
| Defendants. | : | |

ORDER

AND NOW, this            day of                , 2017, upon consideration of

the Defendants' motion to dismiss the complaint, it is hereby ORDERED that the

motion is GRANTED.  The Complaint is hereby DISMISSED with prejudice.

BY THE COURT:

_____
PAUL S. DIAMOND,  J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JILL STEIN, et al.                          :
    Plaintiffs,                          :          CIVIL ACTION
         v.                          :

PEDRO A. CORTÉS, in his capacity as         :
Secretary of the Commonwealth, et al.       :          NO. 16-6287
    Defendants.                          :

## MOTION OF THE DEFENDANTS
## TO DISMISS THE COMPLAINT

Defendants Pedro A. Cortés, in his capacity as Secretary of the Commonwealth, and Jonathan Marks, in his capacity as Commissioner of Elections, move to dismiss plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (7), and incorporate by reference the attached incorporated memorandum of law.

Wherefore, this Court should grant the relief as set forth in the proposed order.

Respectfully submitted,

BRUCE R. BEEMER
Attorney General

/s/ Sue Ann Unger
_____

Office of Attorney General          Sue Ann Unger
21 S. 12th Street, 3rd Floor         Senior Deputy Attorney General
Philadelphia, PA 19107              Attorney I.D. No. 39009
215-560-2127; fx: 717-772-4526       Kenneth Joel
                                        Chief Deputy Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN, et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

## I.    PROCEDURAL HISTORY

Jill Stein, an unsuccessful minor political body presidential candidate, and Randall Reitz, a Pennsylvania voter, filed a complaint pursuant to 42 U.S.C. § 1983, claiming that Secretary of the Commonwealth Pedro A. Cortés and Commissioner of the Bureau of Commissions, Elections, and Legislation Jonathan M. Marks (collectively "Defendants") impeded their right to vote and, thereby, violated Equal Protection (Count I), Substantive Due Process (Count II), and the First Amendment (Count III).   Plaintiffs characterize Pennsylvania's recount procedures as unconstitutionally burdensome and contend that denials by Pennsylvania courts of recount petitions constitute a denial of their right to vote. They also attack the Commonwealth's voting systems as providing voting rights not equal to the rights of voters in other states.

Plaintiffs seek permanent injunctive relief including permitting experts identified and likely paid for by the Stein recount effort to do forensic examinations of Pennsylvania's DRE voting system, and they challenge the constitutionality of seven sections of the Pennsylvania Election Code:

- The Commonwealth Court's imposition of a $1,000,000 bond to proceed with the Commonwealth Court contest proceeding. *See* 25 P.S. § 3459.
- The requirement that, for an election contest, affidavits from five registered electors be submitted. *See* 25 P.S. § 3457.
- The requirement that a County Board recount petition be supported by verified affidavits from three voters in each precinct in which a recount is sought. *See id.* § 3154(e).
- The deadline for County Board recount petitions. *See id.*
- The requirement that a Common Pleas recount petition must be supported by verified affidavits from three voters in each precinct. *See id.* §§ 3261(a), 3262(a)(i).
- The filing-fee requirement for Common Pleas recount petitions. *See id.* §§ 3261(b), 3262(a)(i).
- The deadline for Common Pleas recount petitions. *See id.* §§ 3262(f), 3263(a)(i).
- The requirement that Common Pleas recount petitions include a qualified petition from  all precincts unless a petition pleads a particular act of fraud or error. *See id.* § 3263(a)(1)(i).

The Republican Party, President-elect Trump, Vice President-elect Pence, their Pennsylvania Electors, Donald J. Trump for President, Inc. (collectively "the Republicans") intervened.

Upon hearing, the Court denied Stein's motion for a preliminary injunction. The Court held that plaintiffs lack standing, and the Court reasoned that the right to have one's vote counted does not encompass the right to have one's vote verified

2

through a mandatory statewide recount.  The Court also noted other jurisdictional defects to the Complaint.  The Court further reasoned that due process limitations on the manner by which elections may be conducted are also separate from any "right" to a mandatory recount and that Pennsylvania's recount procedures are not impermissibly "arbitrary or unreasonable."  The Court explained that "reasonable, nondiscriminatory restrictions" on initiating recounts serve an "important regulatory interest"—ensuring that election challenges are swiftly and fairly resolved to preserve "the integrity of the vote."[1]  [Citation to court's opinion goes here?]  That is the law of the case.

Defendants now move to dismiss the complaint.

## II.    RELEVANT FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' complaint and also the testimony and exhibits introduced at the December 9, 2016 hearing.  Additionally, since this is a constitutional challenge, we provide the relevant statutory provisions of the Election Code.  Of course, the factual allegations of the complaint are taken as true for purposes of this motion only.[2]  This Court may take judicial notice of the facts elicited at the hearing and the provisions of Pennsylvania's Election Code.

---

[1] This Court subsequently granted the intervenors' motion to withdraw.
[2] This Court need not consider Plaintiffs' legal assertions and conclusions in addressing our motion to dismiss.

## A. Alleged facts

Plaintiff Stein's name appeared on the ballot in Pennsylvania as the Green Party presidential candidate.  ECF 1, ¶ 9.  Plaintiff Reitz, registered as an Independent:  (i) voted in the 2016 general election in Montgomery County, Pennsylvania; (ii) was one of the petitioners who petitioned the Commonwealth Court to contest the election results in 2016; and (iii) claims he experienced difficulty in seeking a recount in Montgomery County.  ECF 1, ¶ 10, ECF 9-2 at 2-3.  A majority of Pennsylvania counties use direct electronic recording (DRE) voting machines, while others use optical scan machines.  ECF 1, ¶ 14.  Plaintiffs claim that the DRE machines leave no paper trail.  ECF 1, ¶¶ 15, 17, 21; *but see* Shamos Testimony ECF 57 at 57-58.  Plaintiffs also claim that the DRE machines are theoretically vulnerable to hacking attack.  ECF 1, ¶¶ 17-20.  Hackers have interfered in some other states' voter registration databases and in the Democratic National Committee's email system.  ECF 1, ¶¶ 23-28.  Plaintiffs make no factual allegation, however, that any DRE was hacked in the Commonwealth.[3]

---

[3] The entirety of the Plaintiffs' challenge is based on the speculation that Pennsylvania's direct-recording electronic ("DRE") machines, which have been used for years, might have been hacked by foreign interests and that the votes cast by millions of Pennsylvanians were altered.  At the hearing, Plaintiffs' expert admitted that he had no evidence to back up his speculation that any Pennsylvania voting machine was hacked in such a way so as to alter a single vote.  ECF 57 at 25-26.  In fact, on cross-examination, Plaintiffs' expert admitted that the outcome of the election was probably not altered by any purported hacking.  ECF 57 at 26-

Beyond this, Plaintiffs argue that the county-based recount petitions of 25 P.S. § 3154 as well as court-ordered recounts under 25 P.S. §§ 3261 and 3162 are shams. Pennsylvania provides for an automatic statewide recount when the vote is decided by 0.5% or less. ECF 1, ¶ 32. The Election Code also creates two additional routes for voters to seek recounts under 25 P.S. § 3154 and § 3261. ECF 1, ¶ 33-65. In addition to those processes, Pennsylvania voters—just 100 voters are enough—can contest an election by petitioning the Commonwealth Court to claim the election is illegal. ECF 1, ¶ 66-71; 25 P.S. § 3351. The petition must include specified language that the "election was illegal and the return thereof not correct, and that the petition to contest the same is made in good faith." ECF 1, ¶ 66; 25 P.S. § 3351. Notably, this allegation must be sworn to under oath and, given the seriousness of a contest and the ramifications of a successful contest, the party raising the contest must post a bond. 25 P.S. § 3459.[4] Thousands of Pennsylvania voters were unsuccessful in their attempts to file local contest petitions to have a recount in November 2016. ECF 1, ¶¶ 72-83. One group of more than 100 voters contested the election in Commonwealth Court. ECF 1, ¶¶ 84-92. That court imposed a $1 million bond in order for the petitioners to proceed, and the petitioners withdrew their petition. ECF 1, ¶ 92.

---

27. And, Dr. Shamos described Plaintiffs' scenarios about as likely as androids living among us. ECF 57 at 64.

[4] Here, the Stein contest did not provide the required five affidavits.

5

Other states have different voting machine requirements and different recount processes.  ECF 1, ¶¶ 15, 93-98.

### B. Pennsylvania's Relevant Statutory and Constitutional Provisions

The Pennsylvania Election Code, enacted in 1937, was amended in 1980 to allow for the use of electronic voting systems.  *See* 25 P.S. §§ 3031.1 - 3031.22. The Secretary of the Commonwealth is charged with the duty "to examine and re-examine voting machines, and to approve or disapprove them for use in this State, in accordance with the provisions of [the Election Code]."  25 P.S. § 2621(b). Section 1105-A(b) of the Election Code, 25 P.S. § 3031.5(b), specifically requires that the Secretary of the Commonwealth examine all electronic voting systems used in any election in Pennsylvania and that the Secretary make and file a report stating whether, in the Secretary's opinion, the electronic voting system can be safely used by voters and meets all of the applicable requirements of the Election Code.  Before a voting system can even be examined by the Secretary, however, it must first be examined and approved at the federal level to federal standards.  *See* 25 P.S. § 3031.5(a).

The Secretary certifies the electronic voting systems, but each of Pennsylvania's sixty-seven counties independently selects and purchases the certified voting system that best meets its needs.  *See* 25 P.S. §§ 2642(c), 3031.4(a), 3031.8.

*The voting systems:*

The Election Code contemplates the certification and use of both DRE and optical-scan electronic voting systems.  *See* 25 P.S. § 3031.1.  As the Pennsylvania Supreme Court recently explained:

> Optical scanners (akin to standardized testing methods) and punch card voting allows voters to mark selections on a paper ballot that is subsequently scanned and counted by an automatic tabulation device. In contrast, DREs display an electronic ballot on a screen and allow an individual to vote using a button, dial, or touch screen.

*Banfield v. Cortés*, 110 A.3d 155, 159-60 (Pa. 2015).

The Election Code allows for challenges to be filed with the county boards of elections or the courts of common pleas for the county whose returns are at issue.  The board, at any time prior to the completion of the computation of all the returns for the county, may recount or recanvass the votes:  (1) on its own motion; (2) where there is a discrepancy in the election returns; or (3) upon the petition of three voters in an election district where there appears to be a discrepancy in the votes.  25 P.S. § 3154(e).  Moreover, within five days of the computing of all returns by the board, three qualified electors of the election district may petition the court of common pleas to conduct a recount or recanvassing of the returns.  25 P.S. § 3263(a)(1).  Before a recount or recanvassing can occur, political parties and candidates must receive reasonable notice.  25 P.S. §§ 3261(c), 3262(b).

Besides a recount or recanvass, the Election Code also provides for an election contest.  The classes of election contest are set forth in the Election Code.  25 P.S. § 3291.  A contest regarding presidential electors is a Class II election contest.  *Id*.  An election contest questions the process itself, such as method of balloting, tabulations of results and returns.  *Appeal of Lord*, 41 A.2d 661, 662 ("[t]he contest of an election is a remedy given to the people when the expression of their choice of a public officer has been frustrated by fraud or mistake").  Defects in ballots or the mechanical failure of voting system are examples of matters that have been addressed in election contests.  *See In re Gen. Election of Nov. 4, 1975*, 71 Pa. D. & C.2d 68, 82 (Pa. Pike Com. Pl. 1975) (contest filed where voting machines allegedly failed to record votes cast); *In re Wallingford-Swarthmore Sch. Dist. Election*, 66 Pa. D. & C.2d 616, 618 (Pa. Del. Com. Pl. 1974) ("one of the machines used, failed to operate properly;" "[a]n internal mechanical malfunction made it impossible to pull the Republican Party lever").

Commonwealth Court has jurisdiction over a contest of a statewide election.  42 Pa.C.S. § 764(a).  A Class II contest must be commenced by the petition of at least 100 electors who voted in the election and filed within twenty days after the day of the election.  25 P.S. §§ 3351, 3456.  The petition must set forth the cause of the complaint showing why it is claimed that the election is illegal.  25 P.S. § 3456.

The Pennsylvania Constitution provides that votes are private.  Pa. Const. art. VII, § 4 ("secrecy in voting [shall] be preserved").

## C. Evidentiary Hearing Record

On December 9, 2016, the parties appeared before this Court and a hearing was held.   During that proceeding, evidence—testimony and exhibits—was introduced.  Other exhibits and affidavits were introduced in plaintiffs' motion for a preliminary injunction, and the responses of Defendants and the Republican intervenors.  Below are the exhibits that Defendants presented and key facts and legal background—as found by this Court in its opinion denying Plaintiffs' emergency motion—derived from the hearing.

Exhibit D1 (ECF 42-1):  the various electronic voting systems by county in Pennsylvania showing a total of 50 counties use DREs, while the other 17 counties use an optical scan voting system.

Exhibit D2 (ECF 42-2):   November 2016 post-election general reconciliation checklist--an example of the many security measures taken to ensure the integrity of the voting process.

Exhibit D3 (ECF 42-3):  the Eastern District of Michigan Order Dissolving Temporary Restraining Order that had permitted a recount of Michigan's presidential vote.

Exhibit  D4 (ECF 42-4):  the Philadelphia County Court of Common Pleas' affirmance of the decision of the Philadelphia Board of Electors denying a forensic examination of Philadelphia's electronic voting system.

Exhibit D5 (introduced at the hearing):  shows the qualifications and report of Defendants' expert—Michael I. Shamos Ph.D., J.D.

Exhibit D6 (introduced at the hearing): in 2012, then-Secretary of the Commonwealth Carol Aichele examined all of the DREs in detail, and re-certified that each voting system meets all of the requirements of the Pennsylvania Election Code and can be safely used by voters.

Only 0.82% of Pennsylvania voters cast their ballots for Dr. Stein, who does not allege that a recount might change the election results.… Fifty-four Pennsylvania Counties used one of six DRE machine models. . . . Seventeen Counties used paper ballots that were then counted using optical-scan machines. . . . Four Counties used both DRE and optical-scan machines. (*See id*.) . . . With Dr. Stein's financial, legal, and organizational support, Pennsylvania voters have pursued [recounts and forensic analysis of voting machines] in judicial and administrative proceedings across the Commonwealth.

ECF 55, 2016 WL 7188624, at *2.

State law sets out the procedures by which voters may contest an election. *See* 25 P.S. §§ 3291, 3351, 3456; 42 Pa. C.S. § 764. To initiate an election contest, one hundred or more voters must file a petition in the Pennsylvania Commonwealth Court within twenty days after Election Day and supplement that petition with at least five affidavits that the "election was illegal and the return thereof not correct." 25 P.S. §§ 3456–3457. The petitioners must also post a bond "conditioned for the payment of all costs which may accrue in said contested nomination or election proceeding." *Id*. § 3459.

Pennsylvania law provides two additional methods by which voters may seek a recount and recanvass. First, voters may petition their County Board of Elections. *See id*. § 3154(e). County Board petitions must be supported by affidavits from three voters in an individual precinct that fraud or error not apparent on the face of the returns has occurred. *See id*. The petition must be filed "prior to the completion of the computation of all of the returns for the county." *Id*. If the Board rejects the request for recount or recanvass, the aggrieved petitioners may appeal the Board's decision to the Common Pleas Court. *See id*. § 3157(a); *Rinaldi v. Ferret*, 941 A.2d 73, 76-77 (Pa. Commw. Ct. 2007).

10

Second, voters may petition the Common Pleas Court for a recount or recanvass.  *See* 25 P.S. §§ 3261–3262. Three voters in the same precinct must verify that fraud or error not apparent from the returns was committed in the vote tabulation. See id. § 3261(a). These petitioners must remit a $50 cash payment or a $100 bond. See id. § 3262(b.2). Unless the petitioners plead fraud or error with particularity and offer prima facie evidence supporting that allegation, they must also file qualified petitions in every single precinct in which ballots were cast for the office in question. *See id.* § 3263(a)(1)(i)-(ii). To contest a statewide election in the Common Pleas Court without evidence of fraud, three petitioners must file affidavits from voters in over nine thousand precincts. . . . These petitions must be filed within five days after completion of the County Board's computation of the vote. *See* 25 P.S. § 3263(a)(1); *Rinaldi,* 941 A.2d at 77.

ECF 55, 2016 WL 7188624, at *2.

[Stein's supported petitioners' Commonwealth Court filing lacked] any of the five required affidavits"  . . . and did not include any allegation that hacking had actually occurred. "   . . . [When the Commonwealth Court ordered the posting of a bond, it] stated that it would modify the amount of the bond for good cause, [and the] petitioners never asked the Commonwealth Court to reduce the size of the bond.

ECF 55, 2016 WL 7188624, at *3.

While some counties refused Stein's supported petitioners, and others were still considering petitions, Philadelphia, Allegheny, and Lehigh Counties completed recanvasses, while Chester County concluded its hand recount; no state court ordered forensic review of DREs.  ECF 55, 2016 WL 7188624, at *3.

In 1980, Pennsylvania amended its Election Code to permit the use of DRE machines.  *See* 25 P.S. §§ 3031.3, *et seq*.  The Code requires the Commonwealth Secretary to "examine and re-examine voting machines" and to make a determination as to whether they meet federal standards and can be safely used.  *Id*. §§ 2621(b), 3031.5(a).

11

> In 2012, Secretary Cortés's predecessor certified each of Pennsylvania's six DRE machine models as reliable and secure. . . . The Secretary similarly certified as safe Pennsylvania's optical-scan machines. *See* 25 P.S. §§ 2621(b), 3031.5(a). Plaintiffs allege that these certifications notwithstanding, the DRE and optical-scan machines' possible vulnerabilities have abrogated their right to vote.

ECF 55, 2016 WL 7188624, at *4.

The Court found that plaintiffs present no credible evidence that tampering with voting machines occurred or could occur. The Court found that Defendants presented credible evidence, through Dr. Shamos' testimony, that showed security measures against hacking, including "parallel testing" of electronic voting machines, showed the extreme unlikelihood that Pennsylvania's DREs were hacked:

> Dr. Shamos made clear . . . that, given Pennsylvania's highly dispersed system of taking and tabulating votes and the numerous integrity checks provided by law and practice, no such "hack" could be effected.
>
> The Commonwealth employs many thousands of DRE machines (4,200 in Allegheny County alone). (*See* Hr'g Tr. 62:20-24.) Before Pennsylvania's DRE machines are first put into use, independent testing authorities check them for malware. (*See* Hr'g Tr. 62:12-24.) These authorities also conduct "a forensic examination of the code" for any software updates for the DRE machines. (Hr'g Tr. 74:4-17.) The Commonwealth again tests the machines before each election; any machine with a malware infection will fail the test. (*See* Hr'g Tr. 49:13-16.) If malware is on the machine after the election, examiners may compare "hash functions" to determine if the "malware is still there." (Hr'g Tr. 49:23-50:3.)
>
> Even if the malware were specially programmed (as Plaintiffs conjure) to activate only on Election Day and delete itself when its

12

work concludes (a programming feat Dr. Shamos has never seen accomplished), it would be detected by "parallel testing"—a process by which County employees conduct a simulated test vote on specially sequestered machines. (Hr'g Tr. 49:16-22, 55:22-56:20.) Allegheny County conducted parallel testing during the 2016 election and did not report any irregularities. (*See* Hr'g Tr. 85:15-20.)

Dr. Shamos also described the insuperable logistical difficulties involved in installing malware on each of Pennsylvania's many thousands of DRE machines. Because DREs do not connect to the Internet, hackers cannot upload malware onto them remotely. . . . Physically hacking DREs to influence an election is practically impossible. …

Dr. Shamos credibly explained that any attempts to place malware onto the DRE machines through other methods would also fail. . . . Moreover, because each Pennsylvania County uses a different central election management computer system, there is no single location through which hackers could introduce malware that would infect all of Pennsylvania's DRE machines. (*See* Hr'g Tr. 59:21-24, 60:17-61:2.) Instead, hackers would have to attack separately the systems of each of the fifty-four Counties that use DRE machines.

Finally, Dr. Shamos clearly and credibly explained that suggestions of foreign hacking influencing the 2016 Election . . . had nothing to do with the integrity of Pennsylvania's voting machines. (*See* Hr'g Tr. 58:24-59:9.)

Although Dr. Shamos acknowledged the theoretical possibility that an individual DRE machine could be hacked, he credibly explained that in light of all of the protections in place, the suggestion of widespread hacking borders on the irrational. (*See* Hr'g Tr. 63:23-64:9)

## III.   ARGUMENT

### A. Introduction

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections" because "as a

practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (further quotations omitted).  "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58, 364 (1997); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citing *Burdick*[, 504 U.S. at 433]; *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)).   As decided shortly before the election by Judge Pappert, Pennsylvania's "Election Code contains numerous provisions designed to maintain and uphold the integrity of the vote."  *Republican Party of Pa. v. Cortés*, No. CV 16-05524, 2016 WL 6525409, at *2 (E.D. Pa. Nov. 3, 2016).

### B. Summary of Argument

Plaintiffs not only lack standing, but their theories are nothing more than speculation and do not warrant invalidating provisions of the Election Code that have been in place for years.   Their speculation also does not alter the Pennsylvania Supreme Court's holdings and rationale in *Banfield v. Cortés*, 110 A.3d 155 (2015).  Finally, their circular argument—that they need to inspect the voting machines to learn if any tampering occurred so that they can allege and prove that tampering occurred—is the epitome of a fishing expedition that cannot

be sanctioned especially where, as here, plaintiffs provide no factual allegation or credible evidence to support their claims and where they have not even sued the various county officials who are responsible for voting machines or those who possess related proprietary information.  Moreover, the proposed relief—allowing Stein's experts access the voting machines and central computers used solely for voting—would harm evidence and the public by contaminating, or at a minimum "complicating," a potential criminal investigation of national import if Plaintiffs' speculation had any reasonable basis.

The challenge to the constitutionality of Pennsylvania's recount and recanvassing procedures fails not only due to lack of standing but also because, as the Senate Majority Caucus amicus brief explains, the complexity and decentralization of the procedures constitute an intentional legislative policy choice to ensure smooth transitions from one election to another.  The complex procedures do not raise a federal constitutional issue.

### C. Applicable Standards

A Rule 12(b)(1) motion is the proper mechanism for raising the issue of standing or of whether Eleventh Amendment immunity bars federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996), (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984) (Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter

15

jurisdiction)).   When a motion to dismiss is based on lack of subject matter jurisdiction in addition to other defenses, "[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case." *Tagayun v. Stolzenberg,* 239 Fed. Appx. 708, 710 (3d Cir. 2007); *see McCurdy v. Esmonde*, No. 02CV4614, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003) ("[w]ithout jurisdiction the court cannot proceed at all in any cause") (citation omitted).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007).   "The concept of standing is drawn directly from Article III, Section 2 of the Constitution ... [and] goes to the very heart of a court's subject matter jurisdiction."   *Schaub v. Geico Ins. Co.*, No. CIV.A. 14-5570 MAS, 2015 WL 3452917, at *2 (D.N.J. May 29, 2015) (citing *In re Franklin Mut. Funds Fee Litig.,* 388 F. Supp. 2d 451, 460 (D.N.J. 2005) (internal citation omitted).

A motion to dismiss challenging the "actual controversy" requirement under the Declaratory Judgment Act and Article III is properly brought under Rule 12(b)(1) because "'standing is a jurisdictional matter.'" *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir.2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.2007)).

16

In deciding a Rule 12(b)(1) motion to dismiss, courts first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claim in issue because that distinction determines "how the pleading must be reviewed." *Constitution Party of Pa.* at 357-58 (citation omitted).   A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the [subject-matter] jurisdiction of the court" because "some . . . jurisdictional defect," e.g., failure to present a justiciable controversy, "is present." *Id.*, 757 F.3d at 358.   In reviewing a facial attack, the court applies the same standard of review used for Rule 12(b)(6) motions—it "'must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'"   *Id*.   When the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is "by definition, a facial attack." *Id*.   (citations omitted).   *Constitution Party of Pa.*, 757 F.3d at 358.   Here, Plaintiffs present a facial challenge, and a factual challenge based on the pleadings alone.   *See Constitution Party of Pa.*, 757 F.3d at 358 (citations omitted) (cited in *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 440-41 (W.D. Pa. 2016).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint takes three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 679; *see also Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."). Finally, "[w]hen there are well-pleaded factual allegations, [the] court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3-4 (3d Cir. Jan. 11,2016). A complaint must "show" such an entitlement with its facts. *Iqbal*, 556 U.S. at 678-79; *see Connelly*, 2016 WL 106159, at *3-4; *Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010); *Phillips v. County of Allegheny*, 515 F. 3d 224, 234-235 (3d Cir. 2008).

In considering a motion to dismiss for failure to join a party under Rule 12(b)(7), the Court first determines whether the party is a necessary party under Rule 19(a). *Moretti v. The Hertz Corp.*, No. CV 14-469-LPS, 2016 WL 1238712, at *2–3 (D. Del. Mar. 29, 2016) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)). A party is necessary if, in the absence of the party, (1) complete relief cannot be afforded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations. *Id.* If the party is necessary under Rule 19(a), the party must be joined, if joinder is feasible. If joinder is necessary, but infeasible, the Court must then determine whether the party is "indispensable" under Rule 19(b). This inquiry requires a balancing of the interests of the plaintiff, the defendant, the absent party, the courts, and the public. *See Feriozzi Co. v. Ashworks*, Inc., 130 F.

19

App'x 535, 538-39 (3d Cir.2005) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968)).  If an absent party is indispensable, the Court must dismiss the action.  *Gen. Refractories Co.*, 500 F.3d at 312.  The movant bears the burden of establishing that dismissal is appropriate based on the failure to join an indispensable party.

Procedurally, this Court has the benefit of having presided over the emergency hearing and it may take judicial notice of its own findings as well as uncontroverted exhibits admitted without objection during the evidentiary hearing.[5] The Third Circuit has reasoned that "a district court's findings and conclusions on a preliminary injunction motion could 'have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court that there is no compelling reason for permitting them to be litigated again." *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (citations omitted) (cited in *McTernan v. City of York, Penn.*, 577 F.3d 521, 530-31 (3d Cir. 2009)).  *Hawksbill* quotes *Commodity Futures Trading Commission v. Board of Trade*, 701 F.2d 653, 657 (7th Cir. 1983):  "findings made in preliminary injunction decisions have preclusive effect 'if the circumstances make it likely that the findings are accurate [and] reliable.'"  126 F.3d at 474 n.11.

---

[5]  The Court may consider such evidence without converting the instant motion to dismiss to a motion for summary judgment.

As in *McTernan*, Plaintiffs had a full opportunity to present their arguments at the hearing on the preliminary injunction "and there is no reason to prolong the inquiry." *McTernan* 577 F.3d at 531. Defendants request that the Court take notice of the uncontroverted exhibits admitted at the evidentiary hearing as well as the Court's own findings, while recognizing that the Court may choose to take notice of either or both of them.

### D. Plaintiffs Lack Standing

The "existence of a case or controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003) (citation omitted); *see also* U.S. Const. art. III, § 2 (jurisdiction of federal courts limited to "Cases" or "Controversies"). To make out Article III standing, a plaintiff has the burden of showing (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Svcs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Stein and Reitz cannot establish constitutional standing—they do not even allege that they have suffered an "injury in fact" that meets any of the criteria delineated above in *Friends of the Earth,* 528 U.S. at 180-81. "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler,* 547 U.S. 332*,* 342 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) (internal quotation marks omitted)). In assessing standing, the courts' "primary project is to separate those with a true stake in the controversy from those asserting 'the generalized interest of all citizens in constitutional governance.'" *Valley Forge Christian Coll. v. Americans United For Separation of Church & State, Inc*., 454 U.S. 464, 483 (1982) (citation omitted).

Stein cannot show injury in fact because she is not a registered Pennsylvania voter and thus has no right to seek a recount or a forensic audit. What's more, the challenges mounted, even if successful, will provide her with no meaningful relief. Put bluntly, she has no injury in fact that could be cured by a forensic examination or a recount in Pennsylvania or a change in the recount/recanvass process.

This Court correctly found that "Dr. Stein is not a Pennsylvania voter and does not allege that a recount will change the Pennsylvania vote total in her favor." The Court also reasoned that "[a]lthough Mr. Reitz is a Pennsylvania voter, he has not alleged that his vote was inaccurately recorded or tallied in the final

Pennsylvania vote count.   Plaintiffs' allegation that voting machines may be "hackable," and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact."  (citing cases). ECF 55, 2016 WL 7188624, at *6.   Thus, the Court concluded that, "[n]either Plaintiff has alleged that she or he has suffered an actual injury".

Further, Reitz lacks the ability to assert the constitutional rights of others. *See*, *e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973) (collecting cases and concluding that a "closely related principle is that constitutional rights are personal and may not be asserted vicariously").

This Court focused on the reasoning in *Broadrick v. Oklahoma*, 413 U.S. at 610-11 (1973)), and concluded that there is no authority to support an invocation of standing based upon plaintiffs' seeking  to protect the rights of all Pennsylvania voters:

> [C]onstitutional rights are personal and may not be asserted vicariously. . . .  Constitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court.".  The Supreme Court's reasoning here is instructive:  First, the Court has held that when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.  Second, even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  Without such limitations ... the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions

23

may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights. *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (citations omitted). The Court astutely cited *Oh v. Phila. Cnty. Bd. of Elections,* No. 08-81, 2008 WL 4787583, at *7 (E.D. Pa. Oct. 31, 2008) ("The prudential principles support that [a losing candidate] cannot rest his claim to relief on the legal rights or interests of the voters. The claim plaintiff alleges on behalf of these voters, even if substantiated, would amount to a ' "generalized grievance" shared in substantially equal measure by all or a large class of citizens' and is not sufficient to confer standing." (quoting *Warth*, 422 U.S. at 499)). *Cf. Pa. Psychiatric Soc'y v. Green Spring Health Svcs., Inc*., 280 F.3d 278, 288 & n.10 (3d Cir. 2002) (suggesting that plaintiff "candidates for public office may be able to assert the rights of voters," but only where the plaintiff herself suffers an injury and voters are "hindered from asserting [their] own rights and share[ ] an identity of interests with the plaintiff").

ECF 55, 2016 WL 7188624, at *8.

Beyond this, the fact is that the Election Code permits an election contest. *See* 25 P.S. §§ 3291-3474.  In short, if a sufficient number of electors file the appropriate petition and affidavits, and ultimately prove their case, an election may be successfully contested.  *Id*.  Reitz did participate in a petition for a recount in Montgomery County, which resulted in a hearing and a denial of the petition.  He also participated as well in the Stein-supported contest petition in Commonwealth Court, which petitioners abandoned.   While they complain about the bond imposed, the reality is that a process whereby the election throughout the entire Commonwealth would be litigated would be costly.  Moreover, Plaintiffs could have sought a reduction in the bond and (the court order setting the bond even

noting that "[u]pon good cause shown, the amount of the bond may be modified"), in the end, their choice to abandon their petition does not transform their disputes into constitutional claims.[6]

In the end, all Plaintiffs do is speculate that maybe the votes of Reitz and of non-parties may not have counted.   Indeed, Plaintiffs cannot even logically speculate that a recount could determine whether Reitz's vote was properly counted because, according to the speculative declarations, the malware would have disappeared after the election and, with its disappearance, there would be nothing to find.[7]   The two Plaintiffs do not and cannot plausibly or sanely allege personal injury at all, let alone an injury "likely to be redressed by the requested relief."   *See Allen v. Wright*, 468 U.S. 737, 751 (1984).   Plaintiffs' lack of Article III standing means that the Complaint must be dismissed.

Moreover, just as plaintiffs did not show that the relief requested at the preliminary injunction hearing would redress their alleged injuries, they cannot show that the relief requested in the complaint will redress their alleged injuries. There is nothing alleged and no evidence of record to even suggest that a more facile process to obtain a recount or audit of any kind would somehow correct an

---

[6]    We further note that the attorneys representing Plaintiffs in this case were the same as those representing Reitz in the contest matter.

[7] Further, because of the requirements for secrecy in voting, Pa. Const. art. VII, § 4, there is no way to tell which ballot was Reitz's ballot and, thus, it would be impossible to determine if his vote was altered.

inaccurately recorded vote. Therefore, the Court's conclusion in its standing analysis for the preliminary injunction motion applies as well to the complaint as a whole. "In sum, because Plaintiffs have alleged speculative injuries that are not personal to them and could not be redressed by the relief they seek (or any relief I could order), they are without standing to bring their claims." ECF 55, 2016 WL 7188624, at *8.[8]

### E.   Plaintiffs Have Failed to Sue Necessary Parties

Stein has sued only Secretary Cortés and Commissioner Marks. The requested relief, however, addresses not only the constitutionality of portions of the Election Code but also inspection of county-controlled voting machines and computers and proprietary information held by third-parties.[9] Defendants have no authority to permit or force the requested access. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir.2001); *see also Snyder v. Millersville Univ.*, No. 07-cv-1660, 2008 WL 5093140, at 12 (E.D. Pa. Dec. 3, 2008) (request for a mandatory injunction necessarily fails where defendants do not have the authority to afford her the desired relief); *Williams v. Doyle*, 494 F.Supp.2d 1019, 1024 (W.D. Wis.

---

[8] This Court, in its Opinion denying Plaintiffs' Motion for Preliminary Injunction, also concluded that it lacked jurisdiction under the *Rooker-Feldman* doctrine and any other number of abstention doctrines.

[9] As such, Plaintiffs seek mandatory equitable relief against Defendants in their official capacities to purportedly remedy alleged past unconstitutional actions. Such affirmative relief is barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. 651 (1974).

2007) ("a claim for injunctive relief can stand only against someone who has the authority to grant it"); *Scott v. DiGuglielmo*, 615 F.Supp.2d 368, 373 -374 (E.D. Pa. 2009); *Libertarian Party of Ind. v. Marion Cnty. Bd. of Voter Regis.*, 778 F.Supp. 1458, 1461 (S.D. Ind. 1991) (plaintiff lacked standing as to certain defendants because they did not have the authority to carry out the relief requested); *McDaniel v. Bd. of Educ. of Chicago,* 956 F.Supp.2d 887, 893 (N.D. Ill. 2013).

Because Stein has failed to join those needed parties, and because an injunction against Defendants cannot provide the relief Stein ostensibly seeks, an injunction cannot be granted.  *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*., 96 F.3d 1390, 1394 (Fed.Cir.1996) (noting the "general rule that a court may not enter an injunction against a person who has not been made a party to the case before it"); *see also Scott v. Donald*, 165 U.S. 107, 117 (1897) ("[t]he decree is also objectionable because it enjoins persons not parties to the suit"); *Banks v. Good*, Civ. A. No. 06–253, 2011 WL 2437061, *2-3 (W.D. Pa. Apr. 20, 2011), *adopted*, 2011 WL 2418699 (W.D. Pa. Jun. 14, 2011) (citing cases) (same).

Another way of assessing Stein's pleading is that the Defendants are not responsible for maintaining the central computers and voting machines, and are not responsible for counting votes.  Indeed, as the Supreme Court made clear over 100 years ago, "[i]n making an officer of the state a party defendant in a suit to enjoin

the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. 123, 157 (1908).  *See also Mexicana v. Indiana*, No. 2:11-cv-0482 (2013 WL 4088690) (N.D. Ind., Aug. 13, 2013) (dismissing constitutional challenge to Indiana's immigration law because the individuals sued had no role in enforcing the provisions challenged).[10]

### F.    Plaintiffs' Constitutional Claims Fail

Not only do Plaintiffs lack standing for this Court to even reach the merits, not only have they failed to include third parties who have proprietary rights and who conduct the recounts and control the computers that they seek to audit, but also the claims alleged are without merit.  As it relates to their claim that the DRE's have been hacked and, thus, have unconstitutionally altered votes, their premise is without support and their rationale is circular.  They speculate that all DREs are vulnerable so as to deny all registered Pennsylvanians the right to vote.  That is precisely the faulty premise of plaintiffs in *Banfield v. Cortés*, 110 A.3d 155 (2015).

---

[10] To be sure, Plaintiffs could have sued the 67 Pennsylvania counties—because they choose and maintain their computers and voting machines, 25 P.S. § 2642(c)—and asserted constitutional challenges.  The Office of Attorney General would have been provided notice, pursuant to Fed. R. Civ. P. 5.1, and it could have intervened to defend the constitutionality of the statute.

A year ago, the Pennsylvania Supreme Court addressed the substantive due process and equal protection claims challenging the Election Code in *Banfield v. Cortés*, 110 A.3d 155 (2015).[11]   Interestingly, Plaintiffs cite to *Banfield* and acknowledge that the Pennsylvania Supreme Court upheld the constitutionality of one of the two challenged regulations.   ECF 4 at 39 n.15. They try to distinguish *Banfield* by relegating it to a footnote and assert that the case did not apply the U.S. Constitution and that it was not dispositive because the court did not consider foreign interference with this election or the combined effect of the challenged practices.   True, *Banfield* was decided based on Pennsylvania's Constitution, not the U.S. Constitution.   That, however, is a difference without a distinction because the standard is the same.   *See Commonwealth v. Wallace*, 97 A.3d 310, 320 (Pa. 2014) (same standard for due process); *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991) (same standards for equal protection); *Commonwealth by Preate v. Cancer Fund of America, Inc.*, 620 A.2d 647, 649-51 (Pa. Cmwlth. 1993) (using the same standard for First Amendment claim).

Indeed, *Banfield's* analysis is based on federal case law:   "[w]e find persuasive the decisions of federal circuit courts that have held that DREs that

---

[11] Moreover the question of the existence of voter fraud in Pennsylvania was also recently fully adjudicated as a myth.   *See Applewhite v. Commonwealth,* 2014 Pa. Commw. LEXIS 756 (unpublished) (finding no evidence of voter fraud or integrity in elections as a compelling or legitimate state interest for the Voter ID Law).

register votes electronically without a voter-verified ballot do not severely restrict the right to vote." *Id.* at 266.[12] And the decision in *Banfield* was issued after a full examination by the Court and a sound rejection of the same unsupported (and unsupportable) opinions offered by the Plaintiffs' experts here.

Moreover, Plaintiffs fail to provide a single factual allegation to support their speculation and they circularly argue that they need information to get information to provide information. The Plaintiffs have the burden of alleging sufficient facts to show a plausible constitutional violation at the "commencement of the litigation," and must do so "separately for each form of relief sought." *Friends of the Earth*, at 170, 184-85. Plaintiffs ask for the injunctive relief in the desperate hope that a forensic audit may prove their case even though they must factually allege an existing injury for them to file their lawsuit. And, as explained previously, that injury has to be particularized as to the plaintiffs, not as to Pennsylvanians or all Americans.

---

[12] *Banfield* relies on several other federal cases such as *Weber v. Shelley*, 347 F.3d 1101, 1106-07 (9th Cir. 2003), which emphasized that state officials have the power to substantially regulate the election process as it is "the job of democratically-elected representatives to weigh the pros and cons of various balloting systems." Refusing to interfere with this discretion, the *Weber* Court found that "[s]o long as their choice is reasonable and neutral, it is free from judicial second-guessing." *Banfield* at 266. (citing *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975) (providing that "[v]oting device malfunction [and] the failure of election officials to take statutorily prescribed steps to diminish what was at most a theoretical possibility that the devices might be tampered with ... fall far short of constitutional infractions")).

If Plaintiffs are entitled to access central computers in multiple counties, based simply on their unfounded suspicions, then so would be every single voter who suspects for any reason whatsoever that her vote was not properly counted, and this challenge could be reasserted after each and every election. Significantly, the Plaintiffs argue that what they are looking for—in terms of evidence of hacking—may not even exist because sophisticated malware may be designed to disappear after it has done its job.  In other words, the Plaintiffs want to audit machines even though they concede that there may be no evidence of anything when they look.  This is the epitome of a fishing expedition and cannot be sanctioned in the context of a presidential election and a last minute attempt to derail Pennsylvania's election results.  Indeed, Stein's attempt to have a forensic audit was denied because state law simply does not allow for it. Exh. D4.

In the end, Plaintiffs assert speculation layered upon speculation to claim the certification and use of the DREs directly interfere with the right to vote because maybe there was hacking by modern, real-life incarnations of Boris and Nathasha. *See Rocky and His Friends* and *The Bullwinkle Show* (ABC and NBC television broadcasts 1959-1964).  Yet they present "no evidence that any Pennsylvania county using DREs had experienced lost or miscounted votes, tampering of their election result, or malfunction preventing voters from casting

their vote." *Banfield*, 110 A.3d at 176.  *Banfield* was decided in 2015.  The new presidential election only changed the images of speculation, not facts relevant to Pennsylvania's Election Code.  As it relates to the claim that the recount process is unconstitutional, again, Plaintiffs' assertions veer wide of the mark. The fact is that since 1937 Pennsylvania has placed the responsibility for elections at the county level.  Further, the General Assembly has in place provisions allowing for an automatic recount if the vote is close enough—which, here, it was not.  There is no argument—nor could there be—that the General Assembly's decision to draw the line at 0.5% for an automatic recount is unconstitutional.  A state-wide recount in a state as large and populous as Pennsylvania certainly will cost the Commonwealth and the 67 non-party counties significant sums of money.  Further, it will take time to conduct such a recount.  Balancing the costs and burdens of such a process with the benefit of doing so and setting the number where a recount may actually result in a different result is certainly rational and good public policy.

Plaintiffs' position is that, under the Election Code, the only way a state-wide recount can occur is if there are three valid petitions filed in each of over 9,000 precincts—in other words, there would need to be 27,000 persons to get a state-wide recount.  The ability to get a recount, however, is not a constitutional right.  Indeed, it is provided for by state law only.  *See Republican Party of Pa.*

*v. Cortés*, No. 16-5524 (E.D. Pa., Nov. 3, 2016) (concluding that there was no constitutional right to have poll watchers but that the ability to do so was created solely by state law); *Stein v. Thomas*, No. 16-14233 (E.D. Mich., Dec. 7, 2016) (concluding that there is no constitutional right to a state-wide recount and that any right was derived solely from state law).

Further, Plaintiffs' argument, if accepted, would mean that if a single voter wanted a recount—no matter the difference between his or her desired candidate and the winner—he or she could demand one by simply filing a petition in a single precinct.  This would not only impose significant burdens— administrative and financial—on the Commonwealth and the 67 counties, but also sabotage the smooth transition from one set of elected officials to another. In other words, Plaintiffs' solution to the non-existent problem is to eliminate any line and impose significant burdens.  This certainly cannot be the right result.[13]

Lost in Plaintiffs' arguments is the fact that the Election Code also provides a process to contest an election.  Indeed, the plaintiffs tried this route but abandoned it.  As this Court has reasoned:

---

[13] Plaintiffs' logic—that if a voter has an interest in the outcome of the election he/she should be permitted to get a recount—can certainly be extended in any federal election because a voter in Alaska may have an interest in the Presidency or the balance of power in the Senate or the House.  All legislation requires line-drawing and this is no different.

The right to have one's vote counted does not . . . encompass the right to have one's vote verified through a mandatory statewide recount. [citation omitted] … No authority suggests otherwise. Courts have explained ballot access restrictions can "limit the field of candidates from which voters might choose." [citations omitted]   Recount restrictions impose no such burden.

Due process limitations on the manner by which elections may be conducted are also separate from any "right" to a mandatory recount. The (rare) decisions that sustain due process challenges to elections involve documented instances of improperly cast ballots, wholesale refusal to count properly cast ballots, direct infringements of the right to cast ballots, or a total failure to conduct the election.  Due process was impugned in these cases because the challenged government actions had impaired or outright barred voters from casting a first, constitutionally protected ballot.

. . .  Pennsylvania's recount procedures are not impermissibly "arbitrary or unreasonable." *Stein v. Thomas*, No. 16-2690, 2016 WL 7131508, at *3 (6th Cir. Dec. 6, 2016). "[T]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Concomitant with the principles of federalism, Pennsylvania has developed its own statutory framework by which voters may challenge elections, a framework courts have applied for decades without any hint that the required procedures might violate the Constitution. *See, e.g., Olshansky v. Montgomery Cty. Election Bd.*, 412 A.2d 552 (Pa. 1980) (bond provision); *In re Recount of Ballots Cast in General Election on Nov. 6, 1973*, 325 A.2d 303 (Pa. 1974) (time limits and verification requirement); *Pfuhl v. Coppersmith*, 253 A.2d 271 (Pa. 1969) (verification provision); *Appeal of Bradley*, 42 A.2d 155 (Pa. 1945) (time limits); *In re Pazdrak's Contested Election*, 137 A. 109 (Pa. 1927) (verification provision). The "reasonable, nondiscriminatory restrictions" on initiating recounts serve an "important regulatory interest": ensuring that election challenges are swiftly and fairly resolved to preserve "the integrity of the vote." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788)); (see also Pa. Senate Majority Caucus Amicus Br. 4, Doc. No. 46.)

ECF 55, 2016 WL 7188624, *11-12.

Despite their failure to meet multiple factors required for their sought-after relief, Plaintiffs also attempt to impose a higher standard than applicable for their claims.  Election regulations should be found constitutional if they are "reasonable, neutral, and do not work a severe restriction on the right to vote." *Weber*, 347 F.3d at 1106; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–90 (2008) (the general rule that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" are not invidious and satisfy the standard set forth in *Harper*. 460 U.S., at 788, n.9, 103 S.Ct. 1564); *see  Anderson v. Celebrezze*, 460 U.S. 780 (1983).

### G. Plaintiffs Cannot Obtain Permanent Injunctive Relief Or Declaratory Relief

We have demonstrated why Stein's complaint must be dismissed.  Since Stein seeks permanent injunctive and declaratory relief, we end by discussing the failures in the complaint as it relates to those two forms of relief.

The grant of injunctive relief is an "extraordinary remedy which should be granted only in limited circumstances."  *Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir.1994) (quoting *Frank's GMC Truck Ctr. v. General Motor Corp.*, 847 F.2d 100, 102 (3d Cir.1988)), *cert. den'd*, 514 U.S. 1103 (1995).

A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *26eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). The plaintiff must demonstrate all of the following four factors: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id*.

Stein's request for permanent injunctive relief fails because Stein cannot show actual success on the merits, she cannot show that the balance of hardships between the parties is in her favor and she cannot show that the public interest would not be disserved by a permanent injunction.

"The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and we have held that under this Act declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72 (1985) (citation omitted). The statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* (citation omitted.). As *Green* points out, "a declaratory judgment is not available in a number of instances." *Id*. The Supreme Court in *Green* cites *Great Lakes Co. v. Huffman*,

319 U.S. 293 (1943) (holding that a declaratory judgment was not available to obtain a determination of the constitutionality of a state tax even though the relevant federal statute prohibited federal courts only from issuing injunctions against the collection of such taxes).  It also cites *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (holding that a declaratory judgment declaring a state criminal statute unconstitutional was unavailable where it would have much the same effect as an injunction prohibiting enforcement of the statute).  As such, *Green* bars Stein's request for a declaratory judgment.  *See also N.J. Educ. Ass'n v. New Jersey*, No. 11-cv-5024, 2012 WL 715284, at *11 (D.N.J. Mar. 5, 2012).

## CONCLUSION

This Court should grant the relief set forth in the attached proposed order.

Respectfully submitted,

BRUCE R. BEEMER
Attorney General

/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009
Kenneth Joel
Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
215-560-2127; fx: 717-772-4526

# CERTIFICATE OF SERVICE

I, Sue Ann Unger, hereby certify that the defendants' attached document has been filed electronically on January 10, 2017, and is available for viewing and downloading from the Court's Electronic Case Filing System.  Plaintiffs' counsel are on the Court's electronic email notice list.  Plaintiffs have thus been served. A copy of the attached document has also been mailed via U.S. Postal Service, first class mail to:

Edwin D. Schindler
4 High Oaks Court
P.O.Box 4259
Huntington, NY 11743-0777

and

Jay Alan Sekulow
American Center For Law & Justice
201 Maryland Ave NE
Washington, DC 20002

/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
215-560-2127; fx: 717-772-4526