1          Division?

2     A.   Correct.

3     Q.   Who, in general terms, are the employees and what is

4          their function?

5     A.   We have employees that work in the voter

6          registration section, the voter absentee section,

7          ballot return section and the administrative arm of

8          it as well.

9     Q.   It is fair so say these are civil servants from

10         throughout the Election Division?

11    A.   Yes.

12    Q.   When there are district by district returns, a

13         member of that return board initials that, correct?

14    A.   Correct.

15    Q.   And that happens with respect to every election

16         district from the county?

17    A.   Correct.

18    Q.   After that happens, those initial district by

19         district returns are compiled into the preliminary

20         results that are in the exhibit you were discussing

21         with Mr. Hicks; is that correct?

22    A.   Yes.

23    Q.   So is it fair to say that it's a two-step process?

24         First district by district initial returns by

25         members of the Election Board, then an announcement

1          and compilation into these results?

2    A.    Right.

3    Q.    And it is mandatory under the statute that those

4          results be signed by the members of the Board of

5          Elections, correct?

6                    MR. HICKS:  Objection.  Calls for a legal

7              conclusion.

8                    THE COURT:  Overruled.

9    BY MR. LIEB:

10   A.    Yes.

11                   MR. LIEB:  If I may have one second to

12             confer with Co-Counsel.

13                   Nothing further, Your Honor.

14                   MR. OPSITNICK:  I have no questions.

15             Nothing further, Judge.

16                   THE COURT:  Thank you very much, Mr.

17             Wolosik.  You may stand down.

18                   MR. HICKS:  Your Honor, at this time, the

19             only other evidence that we would offer are the

20             exhibits that are set forth in the stipulation,

21             and we would move them into evidence at this

22             time.

23                   There is Exhibit 1A, which are the total

24             of 195 petitions that were double-sided copies

25             so I tried to keep the size down.

1          Exhibit 1B is the affidavit of Mr.

2    Halderman that were attached together in some

3    fashion to those 195 petitions.

4          Exhibit 2 are the copies of the Allegheny

5    County website page, which pertains to the 2016

6    general election results, and then a full

7    page or a full three page of the summary report

8    and the first pages of the detailed district

9    report and the detail canvass report.

10          Then Exhibit 3, is the notice that was

11    sent out about the Election's Division

12    decision to recanvass the machine in the 52

13    election districts that were subject of Exhibit

14    1A, as well as the notice that was sent on

15    November 29th to the candidates and political

16    parties on each chair giving them notice of

17    that December 5th 2016 canvassing.

18          We would move those into evidence, and we

19    have already premarked those Exhibits 1A, 1B

20    and 2 and 3.

21          THE COURT:  They are part of the

22    stipulation and there is no objection to them?

23          MR. OPSITNICK:  Correct.

24          THE COURT:  With that, you rest, Mr.

25    Hicks?

1          MR. HICKS:  With that, we would rest.

2          THE COURT:  Mr. Lieb?  Mr. Gaul?  Do you

3     wish to offer any evidence?

4          MR. LIEB:  Your Honor, we had offered with

5     our petition -- and we didn't have a chance to

6     confer with it about opposing counsel, we had

7     offered along with our petition an affidavit of

8     Duncan Buhl, who was a computer scientist and

9     expert in the use and operation of electronic

10    voting systems.

11         We would wish to offer that affidavit into

12    evidence at this time.  As I said, we didn't

13    have a chance to confer with opposing counsel in

14    our stipulation this morning.

15         We would move to offer it into evidence

16         THE COURT:  Well, I have a question.  I

17    have actually looked at it, because you made it

18    part of your petition.  So while you were out

19    here making your stipulation, I read it.

20         So first off, is there any objection to

21    this affidavit?

22         MR. HICKS:  Yes, Your Honor.

23         THE COURT:  I can see by the look on your

24    face, Mr. Hicks, you almost came out of your

25    shoes on that one.

1          MR. HICKS:  We have stipulated as to Mr.

2     Halderman's affidavit, not to the truth of the

3     matter, just because that was one of the

4     documents that was submitted.  This affidavit is

5     being offered clearly is hearsay.  The witness

6     is not here and I don't see any more relevance

7     to the issue in this proceeding.

8          MR. OPSITNICK:  Judge, just a high tech

9     look, if you recall, a fellow, Mr. Nowelt, a

10     fellow from New Jersey said you can fix or hack

11     the lever machines with a ballot.

12               I don't believe that affidavit is

13     relevant to what we are doing here.  It's either

14     we are going to recanvass Monday or we're not.

15          THE COURT:  One of the things that

16     they have asked for, which you haven't agreed to

17     by way of stipulation, is to run some type of

18     forensic tests on the machines again.

19          MR. OPSITNICK:  We submit that was done

20     twice.  Can I recall Mr. Wolosik and have him --

21          THE COURT:  I think we can agree to it.  I

22     read about it in the newspapers and they are

23     trying to reassure everybody on what they do.

24          MR. OPSITNICK:  If I could briefly just

25     have Mark testify as to what happened of the

1    forensic analysis both before and after the

2    election.

3         THE COURT:   There's no evidence, because

4    you haven't produce any evidence, that there was

5    any evidence of tampering or any type of hacking

6    on these machines, which are not connected to

7    the internet.

8         I have read Mr. Buhl's affidavit, but you

9    don't even allege this in your pleading that you

10   have some reason to believe that what happened

11   was some mathematical quirk or anything else

12   that would lead one to believe that the

13   integrity of the electronic machines as being

14   challenged.

15        So, now this affidavit comes out of the

16   blue and is not supported by anything else.  You

17   aren't making that claim in your plea.

18        MR. LIEB:  Your Honor, we understand the

19   purposes of these proceedings would not be to

20   sort of litigate the underlying question of were

21   the returns accurate or not.  That's the purpose

22   of the recanvass.

23        THE COURT:  Well, not if Mr. Buhl's

24   affidavit become magically irrelevant if that's

25   not the purpose of this proceeding.

1          MR. LIEB:  I think we were offering the

2     affidavit to support our argument that under

3     section 2650, which entitles a candidate to

4     examine machines that were used as part of a

5     recanvass that takes place, to explain to the

6     Court what it would mean to examine the

7     machines.

8          THE COURT:  Well, let's hear what Mr.

9     Wolosik has already done to these machines, both

10     prior to the election and after the election.

11          THE WITNESS:  About two months prior to

12     the election -- and we have done this prior to

13     the November 2008 election -- we engage a

14     company by the name of GRB Consulting.

15          We give notice that's required under the

16     Election Code to political parties and bodies

17     and/or groups, organizations that register with

18     the Elections Divisions at least 50 days prior

19     to a primary election.

20          We permit any of those participates to

21     select up to 20 voting machines at random or

22     however they would like to do it.  We pull the

23     firmware chip that is on each voting machine.

24     It's a computer chip and that is actually the

25     machine instructions and that is compared --

1    we're getting a little bit over what I do for a
2    living here.  It's hash code and it compares the
3    firmware instructions that were certified
4    federally and by the Department of State to
5    firmware instructions that are resonant on each
6    machine.
7            We have done that prior to the November
8    2008 election, and have never seen an instance
9    where any of firmware that is on the random
10   selected machines differs from the firmware that
11   was certified by these various --
12           THE COURT:  Did you do that before the
13   primary and general?
14           THE WITNESS:  Yes, we do.  On election
15   day, we engage a certified public accounting
16   firm.  In the past, it's been ParenteBeard.
17   Now, it's Baker-Tilly.
18           Prior to the election, they randomly
19   select a precinct.  They select voting machines,
20   and on election day, they vote these machines to
21   a script and verify that the machines record the
22   votes correctly as entered on the devices from
23   the script that is videotaped, and I think we
24   have done that since the November 2006 election.
25           There has never been an instance where

1    there was any deviation from the script that was

2    voted on election day.  The results have

3    matched.

4         THE COURT:  Those are from the machines

5    from the precincts that are randomly picked?

6         THE WITNESS:  Yes.  I think at least the

7    last two what we call parallel testing on

8    election day, we have given notice of that

9    parallel testing to the same groups or

10   organizations that we give notice of the

11   firmware verification.

12        Finally, we engage a company to verify

13   that our election tabulation network that's

14   housed at the warehouse in the North Side is not

15   connected to the internet.

16        That is done, I think, two or three days

17   prior to the election and the day or two after

18   election day.

19        So those are the three types of testings

20   that we have done.

21        THE COURT:  If this Court permits the

22   canvass to go forward, what would you do so far

23   as any forensic testing of any other machine?

24   Is there a protocol for that?

25        THE WITNESS:  What we would do is use the

1      same protocol that's been approved by the

2      Department of State for the two statewide

3      recount/recanvass that occurred.

4           It was a primary and an election where the

5      statewide results were a half a percent or less,

6      which triggers an automatic recount.

7           The procedure that we followed was we get

8      the results that were gathered on each voting

9      machine has its own flash memory card, and it

10     records the votes cast separately on that

11     machine.

12          We read those into a tabulation database

13     and compare those results to the results that

14     were generated on election night at each polling

15     place that were signed.

16          THE COURT:  That's an internal flash, and

17     that is different than what is registered by the

18     machine itself?  You took a count from another

19     source?

20          THE WITNESS:  Yes, that's correct.

21          THE COURT:  And this flash drive is what?

22     A memory card?

23          THE WITNESS:  It's a memory card.  It's a

24     removable memory card.  Then we compare those

25     results to the results that were generated on

1        election night.

2                    THE COURT:  How many machines did you do

3            that with?

4                    THE WITNESS:  That would have been done

5            for all the machines that were used in those

6            requested districts.

7                    THE COURT:  Okay.  Any questions for Mr.

8            Wolosik?

9                    MR. OPSITNICK:  One question for him.

10                   REDIRECT EXAMINATION

11   BY MR. OPSITNICK:

12    Q.    Mark, you mentioned the pre-election and the

13           election day procedures.

14                   Is there anything post election where an

15           analysis was done?

16    A.    Well, the statute requires that an audit be done of

17           two percent of the votes cast or 2,000 votes,

18           whichever is lesser.

19                   What we do is we use the same protocol

20           that we used in the recount procedure for two close

21           elections where we get the vote totals from the

22           members of card blanche totals.  Tabulate them and

23           them compare them to the results that were posted

24           and gathered on election night, and also hand count

25           any paper ballots that were cast, because those were

1        ultimately tabulated electronically as well.

2                    THE COURT:  Anything else?

3                    MR. LIEB:  May I very briefly inquire.

4                    RECROSS EXAMINATION

5    BY MR. LIEB:

6    Q.   The procedure that you referred to prior to the

7         primary and general election when you examined the

8         firmware, can you approximate how far in advance

9         prior to the election that takes place?

10   A.   60 days.

11   Q.   Approximately, how many voting machines is that

12        process conducted on?

13   A.   20.

14   Q.   Approximately how many voting machines are used in

15        Allegheny County in any given election?

16   A.   Anywhere from 4,200 to 4,500.

17   Q.   The process of examining the firmware is something

18        that the Elections Division does of its own accord?

19        It's not required?

20   A.   That's right.  I think we are the only jurisdiction

21        in the country that does that.

22   Q.   The reason you do, I presume, is because you think

23        it's important to ensure that the firmware running

24        the machines on election day is, in fact, the same

25        as it was initially manufactured and verified and

1        not compromised in any way, correct?

2    A.  That's right.

3    Q.  About how long does the process of examining

4        firmware in this manner take?

5    A.  Two hours.

6    Q.  Approximately, how much does it cost?

7    A.  $6,500 each time it's done.

8    Q.  All tolled for the 20 odd machines?

9    A.  Yes.

10   Q.  So this is something that your Election Division

11       does as a matter of course to examine the voting

12       machines and make sure they are actually tabulating

13       votes, correct?

14   A.  Correct.

15   Q.  Not particularly difficult to avert, is it?

16   A.  No.

17            MR. LIEB:  Nothing further.  Thank you.

18            MR. HICKS:  Just a couple of questions.

19            RECROSS EXAMINATION

20   BY MR. HICKS:

21   Q.  Do we know many machines are potentially impacted by

22       this requested recount for the recanvass that is

23       scheduled for Monday?

24   A.  I do not.

25   Q.  So as you sit here today, you don't know how many

1    actual machines are going to be impacted?

2    A.   I do not.

3    Q.   You said it was $6,500 for 20 machines to do a

4         software analysis?

5    A.   Yes.

6    Q.   Would it be accurate to say that we are at least

7         dealing with a minimum of 52 machines on Monday if

8         you were to do this software analysis?

9    A.   Yes.

10   Q.   Do many of these districts have more than one

11        machine?

12   A.   Yes.

13   Q.   So it's possible that we would be dealing with 104

14        or ever greater?

15   A.   Probably more.

16   Q.   In your estimation, based on the 52 election

17        districts that you saw, would it be accurate to say

18        that there are at least two to three voting machines

19        per district?

20   A.   Yes.

21   Q.   So we are potentially dealing with 150 machines?

22   A.   That's right.

23   Q.   At a cost of $6,500 for just 20, correct?

24   A.   Correct.

25   Q.   We would have to multiple that out and figure out

1          the total cost to the county to be able to do that,

2          correct?

3    A.    Correct.

4    Q.    As part of your budget, have you budgeted to do

5          those types of analysis at a cost of potentially

6          thousands and thousands and thousands of dollars?

7    A.    We have not.

8    Q.    Had the districts that filed their petitions on

9          November 28th posted any cash deposit to pay for any

10         of this type of firmware analysis?

11   A.    They have not.

12              MR. HICKS:  That's all.

13              MR. OPSITNICK:  Judge, I have one

14         follow-up.

15              REDIRECT EXAMINATION

16   BY MR. OPSITNICK:

17   Q.    Mark, the recanvass is scheduled on Monday morning.

18         Is that recanvass intended to include any type of

19         forensic analysis?

20   A.    It is not.

21   Q.    So the cost that Mr. Hicks inquired about would not

22         be incurred come Monday, correct?

23   A.    That is correct.

24   Q.    Rough length of time to recanvass machines in 52

25         districts, how long do you think that will take?

1    A.   Two hours.

2    Q.   Scheduled to start at 10:00, correct?

3    A.   Correct.

4    Q.   So by no later than this time on Monday, they would

5         complete everything?

6    A.   I would think so.

                         RECROSS EXAMINATION

8    BY MR. HICKS:

9    Q.   Mr. Wolosik, but for the petition or the documents

10        that were filed on November 28th, would the board

11        have certified results on November 28th?

12   A.   Yes.

13            THE COURT:  Thank you very much, Mr.

14        Wolosik.

15            I have to make a ruling of what I was

16        doing was discussing the admissibility of Mr.

17        Buhl's sort of contact there that the whole

18        purpose of the exercise was to determine whether

19        or not the affidavit is admissible, and I find

20        that, one, it is hearsay, and it is not

21        admissible for that purpose, and, also, at this

22        time, it is really not relevant and is not part

23        of the record.

24            That was your offer of evidence, I

25        believe.  That was the exhibit that you filed.

1          Anything else that you wish to offer, as
2     far as evidence, Mr. Lieb?
3          MR. LIEB:  No, Your Honor.
4          MR. OPSITNICK:  I have nothing further,
5     Judge.
6          THE COURT:  Mr. Hicks, you are finished
7     with your evidence?
8          MR. HICKS:  My associate here, Mr. Bell,
9     reminded me that I didn't formally enter the
10    stipulations of facts into the record.  So I
11    would offer them into the record.  I thought I
12    had done that.
13         THE COURT:  You read them into the record.
14         MR. HICKS:  There were some that I didn't
15    read as well, but to the extent that I didn't
16    read them, I wanted to make sure certainly those
17    are.
18         THE COURT:  All right.  With that you
19    rest.
20         All right.  You may argue.
21         MR. HICKS:  Your Honor, the Election Code
22    -- the particular section that we are dealing
23    with here is under 1404, and the particular
24    section 1404(e), which deals with provisions for
25    recount or recanvass.

1        THE COURT:  Have you attached that?

2        MR. HICKS:  It's actually attached in the

3    appeal.

4        THE COURT:  Let me get to that before you

5    start reading.

6        MR. HICKS:  It's paragraph 13.  For the

7    record, it's 25PS section 3154E.  We've copied

8    it in particular the first paragraph, but the

9    remaining paragraphs are only to deal with

10   actual recount or recanvass procedure.

11       Our argument here is two-fold.  One the

12   statute has been misconstrued as to what the

13   Supreme Court has said about the election

14   results with regard to recount and recanvass and

15   who is entitled to do them, as well as how they

16   are being conducted.

17       When you take a look 1404(e) you see that

18   there are two requirements that have to be done.

19   One, there has to be a petition of three voters

20   of any district verified by affidavit.  But,

21   more importantly, is really the timing that is

22   at issue in this particular case.

23       It says right there in the middle that if

24   that petition is filed by the voter, the county

25   board shall at any time prior to the completion

1       of the computation of all the returns of the

2       county then summon back the return of the board

3       and give notice to the county parties and

4       candidates and conduct a recount or recanvass.

5             But the operative words are upon at any

6       time prior the completion of the computation of

7       all the returns for the county.

8             Mr. Wolosik testified that that act of

9       completing the computation of all the returns

10      from the county was was November 23, 2016.

11           At that point, the board no longer has any

12      power to come back as a return board.  Their job

13      as a return board was finished.

14           At that point, if there was any recount or

15      recanvass that would have to be filed, then a

16      voter or anyone else who is interested would

17      then fall under the section of the Election Code

18      that deals with recounts or recanvass, which is

19      under section 1701 through 1703, which are the

20      recount and recanvass of either opening up the

21      ballot boxes in the district to count the paper

22      ballots and the provisional ballots, or under

23      Section 1702, which is actually the re

24      canvassing of the voting machine.

25           Those provision require that those types

1     of petitions get filed in the court where the

2     Court fees are paid, cash deposits, whether it

3     be a $50 per box or per voting machine gets paid

4     or $100 per machine or voting box get filed.

5          So that the cost for that type of recount,

6     regardless of how long it may take, there is

7     still time and effort being incurred by the

8     county to do those types of things.

9          The Election Code sets forth those

10    procedures.  Now, these voters could have

11    participated during the actual re canvassing

12    portion that took place three days after the

13    election and went up all the way to November 23,

14    2016.  They chose not to do that.

15         So, at this point, the Election Code is

16    clear that once the board is done with its

17    computation, any effort to try to recount or

18    recanvass has to go under section 1701 to 1703,

19    which requires a petition to be filed in this

20    Court and the deposits to be filed.

21         According to Dr. Stein and her campaign,

22    they are relying on sections 1404(a) and section

23    1404(f) of the Elections Code, which refers to

24    the signing and announcement, but I would argue

25    that the computation and canvassing is separate

1    and apart from whatever the board is required to

2    do.

3         When the legislature tied it to just the

4    completion of the computation and the

5    canvassing, it meant something.

6         I have been doing this now for at least

7    15, 20 years, and we have always look for when

8    does the return board complete its computation,

9    because we know we have five days to then file

10   any other types of recanvass.

11        If they were really concerned about what

12   is going on in particular election, then their

13   candidates and those parties are watching the

14   entire recanvass process and we file a petition

15   with the board at that time so they can be

16   addressed at the board level before that

17   computation is completed.

18        Once the board finishes it duties, it does

19   not have the power to bring itself back into

20   existence to continue to incur recounts or re

21   canvassing without a valid recount petition

22   being filed or an order of this Court being

23   issued authorizing.  That's what is missing in

24   this particular case here.

25        The other thing I wanted to emphasize, and

1    it's not in the appeal, but I think it's because

2    I guess it's something that should not go

3    unnoticed is the fact that we are dealing with a

4    federal election, and we're dealing with the

5    presidential election and the senatorial

6    election, which of coincidentally, each

7    particular appeal, that is the only thing

8    they're focused on.

9        And because we're dealing with the federal

10   election, we also have particular concerns there

11   with regard to both people protection, as well

12   as the Safe Harbor Law that you place under

13   3USC5, which requires that the county and the

14   Commonwealth report the results within a certain

15   periods of time so that the electors for

16   president can go to the electoral college on

17   December 19th.

18       So I appreciate that -- what I am trying

19   to stress is that if Allegheny County and the

20   Stein Campaign feels that Allegheny County

21   should reconvene as the return board, even

22   though it has already completed its computation

23   post the five day period, then Allegheny County

24   will be the only county that will be doing that

25   and create a protection problems with respect to

1          this federal election.

2                  THE COURT:  Well, if they file with the

3          Court, as you said, and it posts Monday, it will

4          still be delayed, you know.  We would still be

5          running up against the electoral college

6          deadline of December whatever it is.

7                  MR. HICKS:  We might be.

8                  THE COURT:  If they had followed of what

9          you described as proper procedure, we still have

10         a delay in the certification of the election,

11         correct?

12                 MR. HICKS:  That is correct.  Then the

13         only thing I want to stress --

14                 THE COURT:  You did not put that in your

15         plead, and it's probably for good reason.  It's

16         not a winner, Mr. Hicks.

17                 MR. HICKS:  I just needed to note that.  I

18         am certain that the Court recognizes the

19         particular differences of this election versus

20         the other one, but I think from the statutory

21         ground, they missed the period of time.

22                 They filed it in wrong place.  They didn't

23         post the bond.

24                 THE COURT:  And you believe that the

25         Election Board doesn't have jurisdiction to do

1        this again?

2                MR. HICKS:  They don't have the authority,

3        correct.  I cited in our appeal cases that go

4        back the 1900's.

5                THE COURT:  The deadline to file was when?

6                MR. HICKS:  November 23rd, before they

7        announced it at 10:30 a.m.

8                THE COURT:  And when were they filed?

9                MR HICKS:  November 28, 2016 starting

10       sometime in the morning and continuing

11       throughout the five days.

12               THE COURT:  So it was five days after

13       that?

14               MR. HICKS:  Correct.

15               THE COURT:  Had they filed, under your

16       theory, with the Court of Common Pleas and

17       followed that section of the Election Code, the

18       recanvass would have been valid and taken place

19       on Monday morning?

20               MR. HICKS:  If they met all the

21       requirements of the Election Code, then, yes.

22               THE COURT:  We still would be recounting

23       on Monday morning.

24               MR. HICKS:  We might have.

25               THE COURT:  Well, had they met all the

1      requirements.  Who would like to go next?

2              MR. OPSITNICK:  Counsel from out of town

3      deferred to me for some reason.

4              Judge, a little bit of context can be made

5      from this.  The Board of Elections was set to

6      meet 10:00 Monday morning to finally certify.

7      None of us at county law Elections Division is

8      aware that this petition filing and affidavit

9      was going to occur until Monday morning when the

10     doors open at 8:30 and the petitions come in.

11             A meeting that convened with Mr.

12     Teskevich, who was there to observe, Mark and

13     myself, I opine whether it's right or wrong,

14     that given the circumstances, let those

15     petitions come in at the Board of Elections or

16     Election Division.  Let's advise the Board of

17     Elections to not certify anything pending a

18     shake down, and as a result that happens, as a

19     result the Board of Elections would meet on

20     Monday the 12th to certify and as long as those

21     results get to Harrisburg that day, because the

22     13th is the first of two key dates that Mr.

23     Hicks mentioned, because the state has to

24     certify or report who these electors will be,

25     and would need get it to the electoral college

1      on the 19th.

2            So perhaps in retrospect, I probably

3      misadvised my client.  I am not happy with that,

4      but that's probably what happened.

5            With that being said, Judge, I am going to

6      try to work my way out of this a little bit

7      because I am somewhat embarrassed.

8            It was timely filed.  The substance of

9      these three affidavit filings for these 52

10     districts were timely filed.  The right

11     allegations were made, and as the Court pointed

12     out, simply not in the right place with the

13     filing requirement and the bond requirement.

14           I think the Court has the power under

15     Section 3157(b) that says the Court shall have

16     full power and authority to hear and determine

17     all matters pertaining to fraud and make such

18     decree as right as justice may require.  I

19     think, Judge, you have some equitable --

20           THE COURT:  Well, that's quite a bit of

21     power.

22           MR. OPSITNICK:  On election night, for the

23     second presidential election in a row, Mr. Hicks

24     went and obtained an order from the elections

25     judge, Judge O'Toole, this time to extend the

1    deadline to file emergency absentee ballots that

2    under the statute have to be in the Elections

3    Division by 8:00 until 9:00, and to the extent

4    the time to challenge those absentee ballots to

5    Thursday afternoon.

6         So if there are provisions of the Election

7    Code that can and have been waived and were

8    waived as recently as November 8th, which was a

9    federal election.

10        I submit to the Court that you permit this

11   recanvass to go on so that nobody will consider

12   appeal.  Nobody will gum up the work.

13   What the Election Division is going to do will

14   be conclude between 10:00 and midday on Monday

15   so the Board of Elections can meet formally and

16   finally certify on the following Monday, the

17   12th, and we'll proceed from there.  Thank you.

18        THE COURT:  Mr. Lieb?

19        MR. LIEB:  So I actually think that Mr.

20   Opsitnick gave his client entirely the correct

21   advice, and the reason he gave his client

22   correct advice is because they are still sitting

23   as the Election Board.

24        As Mr. Hicks pointed out in his

25   presentation, there are a whole host of

1  technical requirements here that contributed to

2  this, and he is aware of the technical

3  requirements.

4      I don't know if Your Honor has the notice

5  of appeal before, but if you look at Paragraph 6

6  and you look at the presentation the appellants

7  are making as to why the voter's petitions were

8  untimely, what the appellants is saying is that

9  the returns from each election district were

10  read and found to be correct and then were added

11  together and they were tabulated and they were

12  unofficially resolved at 10:32.

13      It's their position that once the document

14  that's in Exhibit 2 came out at 10:32, that was

15  the deadline.  That is their position.  That is

16  what was alleged in Paragraph 6 of the notice of

17  appeal.

18      Your Honor, that language directs section

19  3154 (f).  I don't know if Your Honor has 3154

20  (f) before you.

21      THE COURT:  I don't, but you can read it

22  to me.

23      Mr. LIEB:  So it says:  As per the returns

24  from each election district are read, computed

25  and found to be correct or corrected as

1        aforesaid, they shall be recorded on the

2        lengths.  They shall be added together,

3        announced and attested by the clerk who may have

4        computed the entry and signed by the members of

5        the county board.

6            That's the one thing that Mr. Hicks left

7        out of Paragraph 6 because it didn't happen.  We

8        heard the testimony, Your Honor, that for

9        whatever reason is the practice of the Allegheny

10       County Board of Elections to have that signature

11       occur at the same meeting where final results

12       are certified.

13           They certify the preliminary and then they

14       certify the final results of the election in

15       succession, but until that signature happens,

16       the return board is still duty computation.

17           These are official results which, as Mr.

18       Hicks would claim, triggers the deadline are

19       nullity, and the reason they are nullity is

20       because of the legally required action that the

21       county board of elections itself acknowledges it

22       is required to take.

23           The three signatures of the members of the

24       county board of elections hasn't happened yet.

25       Until that happens, we are still -- the board is

1    sit sitting as the return board.  The unofficial

2    results do not exist as a legal matter, and the

3    petitions are still timely.

4         I can walk into the Board of Elections and

5    file petitions right now and they would still be

6    timely, because the requirements that are

7    necessary to shift from being a return board and

8    actually coming up with the unofficial results

9    aren't there.

10        I think, frankly, it's sort of telling

11   that that little thing was omitted from

12   Paragraph 6 of the appeal because I think the

13   appellant knows that all technical requirements

14   have to be satisfied.  That's why we are

15   claiming at 10:32 when the exhibit is generated

16   and the deadline occurred, not when the

17   individual district results come in and the

18   members of the Election Board initialed them.

19        It's a two-step process and until step two

20   step is complete, the return board is still the

21   return board.  There are no returns and they

22   were timely.

23        I think that's the easiest way to resolve

24   this issue.  I think that means they don't have

25   to get into the whole question of what the

1   deadline is under 3154(f)in reference to any

2   admission or recount under 3154(f) precludes the

3   Board of Elections from receiving these

4   petitions.

5           I think there's, to me, no question.  Just

6   read 3154 (f).  The requirements that are

7   necessary haven't been complied with, and we all

8   agree that the requirements need to be complied

9   with which is why they have members of the

10  county election board to see the final return.

11          So the petitions are timely because the

12  return board is still the return board.

13          THE COURT:  Thank you.

14          MR. HICKS:  Your Honor, if I could reply.

15  First of all, as to Mr. Opsitnick's argument,

16  this Court doesn't have the power to extend the

17  deadlines or direct the recount or the

18  recanvass.

19          There are numerous cases from the Supreme

20  Court and Commonwealth Court which says that

21  this Court does not have the equitable power

22  when a person doesn't comply with the Election

23  Code with regard to the place where the recount

24  petition is to be filed.

25          This isn't the first time somebody has

1   filed a recount petition in the Election
2   Division when it's supposed to be filed in the
3   Court.
4       This isn't the first time that there
5   wasn't paid a cash deposit or surety bond, all
6   of which are fatal defects for a recount
7   petition that has not been properly filed.  So I
8   disagree that the Court has equitable power to
9   do that.
10      As to the instance that Mr. Opsitnick
11  mentioned on election day, first off, I didn't
12  agree --
13      THE COURT:  You don't have to speak to it.
14  It's irrelevant.  Judge O'Toole is sitting as
15  the Judge of Elections.  I met with him that
16  day.
17      In fact, as you know, I have was here
18  until around 6:00 that night.  So a long day for
19  all of us.
20      That's Judge O'Toole's ruling.  I have no
21  idea the underlying -- nor do I care what the
22  underlying reason was that Judge O'Toole
23  extended that period of time.  Whatever the
24  facts that were presented, I am sure the
25  Administrative Judge or Orphan's Court of

1    Allegheny County made a fair and equitable

2    decision.   He always does.

3        MR. HICKS:   I just want to put on the

4    record that I actually opposed that.

5        The argument raised by Mr. Lieb actually

6    highlights the issue of these court actions.   If

7    you agree with Mr. Lieb, under his scenario,

8    then because the election results have not been

9    signed and Mr. Opsitnick has now said they are

10   not going to be signed until December 12th, that

11   means throughout this entire period of time,

12   more recount and more recanvass petitions can be

13   filed, and that afterwards and, more

14   importantly, the five day period under section

15   701 through 703 can now being extended until

16   after or up to basically the day before.

17       Because if the certification occurred, as

18   Mr. Opsitnick proposed December 12th, that gives

19   another five days, which means that the recount

20   and recanvass can be filed up to two days before

21   the electors are supposed to be at the electoral

22   college.

23       To me, that signifies the problem with

24   this whole approach.   This county has always

25   gone by the computation when that computation is

1    completed.

2          THE COURT:  Why is it unofficial though?

3    If it says unofficial and it isn't signed, then

4    what is it then?

5          MR. HICKS:  That is the terminology

6    provided under the code.  It becomes official

7    only to see if there are any recount or

8    recanvass petitions filed with the Court, at

9    which point, then the Court takes over and

10   reviews it and determines whether or not there

11   are any issues such as should there be a

12   forensic examination, should the return board be

13   reconvened.

14          We're dealing with, you know, there were

15   basically two ways to do the recount.  One prior

16   to November 23rd of the Election Board and one

17   is with this Court.

18          Basically, they want to not impose or

19   involve this Court until now sometime around

20   December 12th, which is just unworkable.

21          THE COURT:  Anything else?

22          MR. LIEB:  May I be heard, Your Honor?

23          THE COURT:  One last time.  We keep

24   going back and forth and back and forth.  It has

25   to end somehow.

1          MR. LIEB:  He has no argument as to why
2      the reading of the statute that we offered, Your
3      Honor, is in any way incorrect.  The remedy for
4      the problem we are talking about is to move
5      forward the certification date.
6          It's not to read the requirements out of
7      the statute that in order for the return board
8      to stop sitting as the return board, the three
9      members of the county board of elections need to
10     sign.
11         It didn't happen.  It continued to not
12     happen.  We concede it has to happen.  He said
13     that it is going to, you know, cause some
14     constitutional problem if the county board of
15     elections held the certification meeting too
16     close to December 14th.
17         A, this is not the proper forum to take up
18     that challenge.  That, if anything, that should
19     be appealed from a notice saying when they are
20     going to hold a certification meeting.
21         B, surrender or deal with that, not
22     preventing these voters from getting the recount
23     that they timely filed.
24         THE COURT:  The recount is scheduled for
25     10:00 Monday morning?

1              MR. OPSITNICK:  Yes, sir.

2              THE COURT:  Anything else?  I think we're

3       done here.  I will enter an order probably

4       within the next the half hour.  I will draw it

5       up.  Thank you.

6              This Court stand in recess.

7                        - - -

8              (Whereupon, this matter adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T E
 2                  I hereby certify that the proceedings are
 3          contained fully and accurately in the notes taken by
 4          me on the hearing of the herein cause and that this
 5          is a true and correct transcript of the same.
 6
 7
 8              Jennifer M. Cox
                Official Court Reporter
 9
10      The foregoing record of the proceedings upon the hearing
11  of the herein cause is hereby approved and directed to be
12  filed.
13
14              _____
15
16
17
18
19
20
21
22
23
24
25
```