# Exhibit 51

```
 1            IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY
 2                             PENNSYLVANIA
 3
 4                          CIVIL DIVISION
 5
 6      * * * * * * * * * * * * * * *    No. 2016-010508
 7                                  *
 8      IN RE:                      *
 9                                  *
10      RECOUNT AND/OR RECANVASS     *
11      OF THE VOTE FOR PRESIDENT    *
12      OF THE UNITED STATES AND     *
13      FOR UNITED STATES SENATE     *
14      IN THE NOVEMBER 8, 2016      *
15      GENERAL ELECTION             *
16                                  *
17      * * * * * * * * * * * * * * *
18
19
20                     Media, PA, December 7, 2016
21
22                             ***
23
24                          Courtroom 12
25
26                     TRANSCRIPT OF PROCEEDINGS
27
28      BEFORE:   THE HONORABLE JUDGE CHAD F. KENNEY, SR.
29
30                LAWRENCE M. OTTO, ESQUIRE
31                DOUGLAS E. LIEB, ESQUIRE
32                For the Plaintiff
33
34                FRANCIS J. CATANIA, ESQUIRE
35                For the Defendant
36
```

2

1                            INDEX

2                                                      THE
3                     DIRECT CROSS REDIRECT RECROSS  COURT
4
5    ON BEHALF OF THE PLAINTIFF:
6
7    [None]
8
9    ON BEHALF OF THE DEFENDANT:
10
11   [None]
12
13                           EXHIBITS
14                                      MARKED  ADMITTED
15   ON BEHALF OF THE PLAINTIFF:
16
17   [None]
18
19   ON BEHALF OF THE DEFENDANT:
20
21   Board of Elections 1 - Letter          6         7
22   Board of Elections 2 - Certification   7         7
23
24
25
26
27

28

```
1                    P R O C E E D I N G S

2                    December 7, 2016

3              THE CLERK:  -- the Commonwealth of

4    Pennsylvania in the Common Pleas Courts of Delaware

5    County, I now declare this Court is in session.  The

6    Honorable President Judge Chad F. Kenney is presiding.

7    Good morning, Your Honor.

8              THE COURT:  Good morning.

9              ALL:  Good morning, Your Honor.

10             THE CLERK:  You may be seated.

11             THE COURT:  All right.  This is Stein vs.

12   Delco Board of Electors, 10580-16 [sic].  Counsel for

13   the record?

14             MR. OTTER:  Lawrence M. Otter for Ms. Stein.

15             MR. CATANIA:  Your Honor, Francis Catania, ID

16   #41733, counsel for the Bureau and Board of Elections.

17             THE COURT:  All right.

18             MR. OTTER:  Your Honor, as a preliminary

19   matter, I have a Pro Hac Vice Motion for my colleague

20   from New York.  May I present that to the Court?  I --

21             THE COURT:  All right.  And Counsel, you know

22   the rules for filing pro hac vice.  Correct?

23             MR. OTTER:  Yes, it's all --

24             THE COURT:  And they've all been followed?

25             MR. OTTER:  Well --
```

4

1          THE COURT:  Including payment of fees?

2          MR. OTTER:  Yes.  Payment of fees has been

3     done.

4          THE COURT:  All right.  Hand it up.  All

5     right.  And did you have a chance to look at this, Mr.

6     Catania?

7          MR. CATANIA:  Your Honor, I've received this

8     this morning.  I took a cursory look at the Pennsylvania

9     Rule of Civil Procedure 10.12-1.  It appears that Mr.

10    Otter has averred what the rule requires, but I have not

11    given it any in depth review.  I was just curious as to

12    whether any other member of Mr. Lieb's law firm is

13    licensed in Pennsylvania because they're quoted in many

14    national papers making public comments about the

15    Pennsylvania election system.  Just I wanted to know if

16    anyone else there is licensed in Pennsylvania because

17    when I checked, I couldn't find any evidence of it.

18          THE COURT:  And what significance does that

19    have to --

20          MR. CATANIA:  I'm just curious as to how they

21    can opine about Pennsylvania Law without being licensed

22    here.  It goes to --

23          THE COURT:  Well, everybody opines anymore.

24    We're in a nation of opiners, so but in terms of this

25    particular issues, the Pro Hac Vice Motion seems to be

1       in order, so I will allow his admission for this

2       particular hearing.

3               MR. OTTER:  Thank you, Your Honor.

4               THE COURT:  Um-hum.  All right.  And then you

5       want to proceed, Mr. Catania?  I guess we're agreeing to

6       the facts on this --

7               MR. CATANIA:  Your Honor, as --

8               THE COURT:  -- in terms of the --

9               MR. CATANIA:  That's a --

10              THE COURT:  -- filing of the petition and the

11      Election Board --

12              MR. CATANIA:  Your Honor, as --

13              THE COURT:  -- deciding it did not have

14      jurisdiction?

15              MR. CATANIA:  As a preliminary matter, Ms.

16      Hagan received a Notice of Attend and a Notice to

17      Produce today.  She is here.  She was asked to bring

18      with her the unofficial returns of the 2016 General

19      Election for President of the United States and the

20      United States Senate.

21              THE COURT:  Well, we're not there yet.  We're

22      not there yet.

23              MR. CATANIA:  Oh, I'm just telling you --

24              THE COURT:  I know that, but what -- is she --

25      she's here.

1          MR. CATANIA:  Right.

2          THE COURT:  And whatever she brought she

3    brought and we'll discuss that when we get to it.  Right

4    now, we're discussing the Board's decision to not accept

5    the petitions.

6          MR. CATANIA:  Your Honor, the Election Board

7    did not make any decision on the matter that brings us

8    here today.  What happened was there were some things

9    filed with Ms. Nethane's [ph] office, which included a

10   petition by Sharon Pennock, one of the Petitioners today

11   that was returned to her because as Ms. Hagan will

12   testify, she believes that there was nothing that she

13   was able to do since she received the application on the

14   28th of November and the election had been certified on

15   the 23rd of November.  We believe the application itself

16   or the petition itself, Your Honor, on the 28th was

17   filed by an attorney and not any of the three

18   Petitioners.

19         THE COURT:  All right.  So what's your

20   position, Mr. Catania?

21         MR. CATANIA:  If we want to mark this, we're

22   happy to hand it in.  This is what was returned to the

23   Petitioners after it was dropped off at the Bureau of

24   Elections on Monday, November 28.  It was sent back to

25   them with the cover letter which indicated that --

1               MR. OTTER:  We'll stipulate to that, Your

2     Honor.

3               THE COURT:  All right.  So we can admit that.

4               THE CLERK:  What do you want this marked as?

5               MR. CATANIA:  Board of Elections 1.

6               THE COURT:  That's fine.

7               MR. CATANIA:  And the only other document that

8     I offered to stipulate to was our official certification

9     of the election which is a 30 page document.  I have

10    shown to Mr. Lieb and Mr. Otter.  It's evidence of the

11    action taken by the three board members at the Board of

12    Elections meeting on November 23.  We would offer that

13    as Board of Elections 2.

14              THE COURT:  Okay.

15              MR. OTTER:  No objection.

16              MR. CATANIA:  And our position, Your Honor, is

17    that any relief requested under Section 3154 was unable

18    to be offered by the Bureau of Elections when they

19    received that petition on Monday, November 28, because

20    their jurisdiction no longer existed after they

21    certified on the 23rd of November.

22              THE COURT:  All right.  Go ahead, Mr. Otter.

23              MR. OTTER:  Your Honor, I defer to my

24    colleague for [inaudible].

25              THE COURT:  For the record?

8

1           MR. LIEB:  Yes, Your Honor.  Douglas Lieb,

2     Emery, Celli, Brinckerhoff & Abady for the Appellants,

3     Jill Stein and Sharon Pennock.  Under the Supreme Court

4     of Pennsylvania's Decision in In Re: Contest of the 2003

5     General Election for the Office Prothonotary --

6           THE COURT:  Will you keep your voice up,

7     please?

8           MR. LIEB:  Yes, Your Honor.  Under that

9     Pennsylvania Supreme Court Decision, the procedural

10    validity of the Board's Certification of the election

11    results is a prerequisite to the denial of a petition as

12    untimely.  So if the Board properly certified the

13    election results on the day that they were certified, we

14    would acknowledge that the petitions were untimely.  The

15    question that we wish to explore through the testimony

16    of Ms. Hagan and through other evidence adduced to this

17    hearing is whether, in fact, all of the necessary

18    procedural requirements for that certification were

19    complied with, making it a valid certification of the

20    results and thus resolving the question of whether the

21    petitions were or were not timely.

22          THE COURT:  Um-hum.  All right.  So do you

23    have any basis to challenge the procedures that were

24    taken?  Do you have any witnesses?  Do you have any

25    evidence?  Do you have anything to indicate that the

9

1      procedures taken to come to the certification were

2      improper?

3              MR. LIEB:  Well, so the reason we served a

4      Notice to Appeal on Ms. Hagan was so that she could

5      provide the testimony, Your Honor.  It has been our

6      understanding that for instance in Allegheny County, the

7      Board of Elections does not sign the computation of the

8      results prior to certification and then wait five days

9      as required by the Election Code before certifying.

10     Now, obviously, that is not of itself evidence that the

11     Delaware County Board of Elections would not do the same

12     thing.  But, you know, we had served a Notice to Produce

13     for the signed computation of the returns. It's our

14     understanding that there is no such document.  And in

15     our view, the Election Code is clear that the way this

16     is supposed to work is there's the computation.  The

17     computation gets completed, it gets signed by the

18     members of the Board of Elections, then there's a five

19     day waiting period, and then and only then can

20     certification occur.  So in the absence of a signed

21     computation and on the basis of the evidence that some

22     other Boards of Elections at least have a practice of

23     not completing that signed computation, we think it's

24     proper to explore whether there was a signed computation

25     of the results and whether there was a five -- whether

1    there was a wait of five days between that signed

2    computation and the certification as required by Section

3    1404(f) of the Election Code.

4            THE COURT:  So you're saying, okay, Judge,

5    it's untimely, but the only reason it's untimely is

6    because the foundation is certification and you're

7    saying it's an improper certification?

8            MR. LIEB:  Yes, in essence.  I think what

9    we're saying is that it is -- it would -- a petition is,

10   in fact, timely, if there is not a proper certification.

11           THE COURT:  All right.  Not a proper

12   certification, Mr. Catania.

13           MR. CATANIA:  Your Honor, procedurally, their

14   ability to challenge the certification evaporated on the

15   second day after the certification happened.  The

16   Election Code in 3157 sets forth that any decision of

17   the Election Board has to be appealed from that second

18   day.  That wasn't done here.  They didn't do that.

19   They're trying to bootstrap this into something it

20   isn't.  There's a Supreme Court case that I cited, In

21   Re: Recount of Single Certain Voting Machines in a 1984

22   case where the Supreme Court reconciles the two

23   conflicting deadlines that are set forth in Section 3154

24   which allows a Petition for Recount up to the time that

25   the computation and the certification is complete and

1      then allows people five days after the certification and

2      computation is complete to appeal to Court.

3                THE COURT:  He's not arguing -- he's -- yeah,

4      but what he's saying is the certification is improper.

5                MR. CATANIA:  It is the ability --

6                THE COURT:  And you're saying he has two days

7      to appeal --

8                MR. CATANIA:  Challenge that.

9                THE COURT:  -- the procedural aspect of it?

10               MR. CATANIA:  First, yes, if he didn't appeal

11     from it.  And I don't agree with his underlying argument

12     because he's saying that you have to wait five days

13     after the Election Board acts.  And the Supreme Court in

14     Pennsylvania hasn't said that.  They've said that the

15     five day period merely gives people an opportunity to

16     file a Petition for Recount with the Court after the

17     Election Board acts --

18               THE COURT:  All right.

19               MR. CATANIA:  -- and that didn't happen here.

20               THE COURT:  And what case are you relying on,

21     Mr. Lieb?  What was that 2003 case?

22               MR. LIEB:  Yes, Your Honor.  It's In Re:

23     Contest of 2003 General Election for the Office of

24     Prothonotary.  It's 849 A.2nd 230, decided in 2004.  And

25     what that case holds is that among other things, and I

1    have a copy if Your Honor would like, that if a Petition

2    for Recount is filed and it's deemed untimely, but the

3    basis on which it's deemed untimely is a procedurally

4    improper certification that should never have happened,

5    the petition is, in fact, timely if the certification is

6    improper.

7          THE COURT:  Um-hum.  All right.  So that -- so

8    you're challenging the certification.  And what's your

9    response to that in terms of his wanting to call

10   witnesses and produce --

11         MR. CATANIA:  It's an issue that should have

12   been brought up before the Board of Elections so that

13   they could have considered it.  There were members of

14   the Stein campaign at the Board of Elections meeting.

15   That issue was not address to the Board at all.

16   Secondly, they should have filed an appeal on that

17   issue, the second day after election with the Court, the

18   Prothonotary's Office and the Office of Judicial

19   Support.  They didn't do that.  They could have had the

20   option of filing a Petition for a Re-canvass with the

21   Court that Monday.  They didn't do that either.  They're

22   trying to bootstrap their failure to comply with

23   Pennsylvania Law into an argument that is not supported

24   by Pennsylvania Law.

25         THE COURT:  Um-hum, all right.  Comment, Mr.

1    Lieb?

2              MR. LIEB:  Your Honor --

3              THE COURT:  Do you have anything else?

4              MR. LIEB:  No.  I would simply refer Your

5    Honor to that same Decision that I cited and I would

6    reiterate that we were entirely within our rights to

7    file a petition and if the grounds on which the petition

8    was denied was that it was untimely because of

9    certification, the question of the validity of the

10   certification is necessarily implicated in that

11   proceeding.  And that's what this case makes very clear.

12             THE COURT:  All right.  And your petition

13   challenges the certification?

14             MR. LIEB:  No, Your Honor.

15             THE COURT:  No, your appeal, does it challenge

16   the certification?

17             MR. LIEB:  No, Your Honor.  The appeal asserts

18   that the petitions were timely.

19             THE COURT:  Uh-huh, all right.

20             MR. CATANIA:  Your Honor, the timeliness is

21   the timing in which they had to file with the Bureau of

22   Elections.  He's confusing the issue.  It was filed in

23   the wrong place.  It was filed by a Pennsylvania

24   attorney in the wrong place.

25             THE COURT:  Yeah.  He said -- and I guess

1     that's another issue, right?  Even if we were to assume

2     that the certification was improper, you're saying the

3     petition itself was faulty?

4             MR. CATANIA:  Yes, Your Honor.  It wasn't file

5     in the right place.  Once the Election Board acts, their

6     ability to undo the certification is non-existent.

7     There's no law I'm aware of that allows them to revisit

8     the action that they've already taken, once they've

9     certified the election.  The only remedy clearly

10     prescribed in the statute is to appeal to Court and then

11     the Court would have to Order that.  Whether it's a

12     recount or an appeal from the Decision of the Board of

13     Elections.

14             THE COURT:  Well, and they're saying they did

15     that, they appealed.

16             MR. CATANIA:  They did not.  They attempted to

17     file a Petition for Recount with the Bureau, even though

18     they had already certified.  There's no support in the

19     law to allow that.  And we're here today because they've

20     appealed from that Decision, alleging that the Board

21     acted.  The Board didn't act.  It simply said, we don't

22     have a legal ability to do what you're asking us to do,

23     we've already certified it.

24             MR. LIEB:  A couple of points, Your Honor.

25     First of all, with respect to the propriety of filing

15

1    the petitions with the Board of Elections rather than

2    the Court of Common Pleas.  I would refer Your Honor

3    again to a Decision of the Supreme Court of

4    Pennsylvania.  This one is In Re:  Reading School Board

5    Election.  It's 634 A.2nd 170, decided in 1993.  And

6    that case makes quite clear there, there was a

7    Petitioner who had filed a petition in the Board of

8    Elections five days after the completion of the

9    computation of returns and the Supreme Court held that

10   it was proper for him to do so.  So our -- the

11   Petitioner in this case and all of the Petitioner's who

12   went to the Board of Elections or the office on November

13   28, had the ability to file those petitions with the

14   Board of Elections, if it was within five days of the

15   completion of the initial count.  And that's the

16   underlying question that we're attempting to adduce

17   evidence of here is when was that initial count

18   completed?  Were all of the requirements followed such

19   that it counted as a completion --

20             THE COURT:  Well, we have a certification.

21   Isn't the key date that certification?

22             MR. LIEB:  With respect, Your Honor, I don't

23   know that it is.  I think the statute prescribed in

24   1404(e) of the election --

25             THE COURT:  I thought that's what you came in

1    here and said.  You came in and said but for the

2    certification that it's untimely, we would agree, but

3    the certification.  We're challenging the certification.

4              MR. LIEB:  Right.  So, I mean, it's all part

5    of one procedure.  So there's a five day waiting period

6    after which certification may occur and no --

7              THE COURT:  But you're saying there's not a

8    certification yet.

9              MR. LIEB:  We're saying that we have not seen

10   proof that there is a valid certification at this time,

11   correct.

12             THE COURT:  Um-hum, all right.  And you're

13   entitled to proof of the certification.  What gives you

14   entitle to proof?  There is a certification.  What --

15   you don't have a certain period of time where you have

16   to challenge that the actual procedure is taken during

17   the certification?

18             MR. LIEB:  Well, Your Honor, in this

19   proceeding, I think we're certainly permitted to adduce

20   evidence that bears on the question before the Court

21   which is the timeliness of the Recount Petitions that

22   were filed before the Board of Elections on November 28.

23             THE COURT:  And what -- under what rule or

24   what -- where are you entitled to proceed that way?

25   Because I'm not here, you know, you're not here on a

17

1       fishing expedition.  You're not here -- I'm not here

2       sitting as some legislative body sitting here reviewing

3       the processes that were taken towards a certification.

4       That's not the function here.  And I'm not seeing

5       anything or you're not coming forth with anything, it

6       seems to me, that would take us down that road to

7       challenge the certification.  But again, challenging the

8       certification itself, if that's what you're now saying

9       that you need to do, would require that you file

10      something within a certain period of time.

11              MR. LIEB:  Your Honor, we served a Notice to

12      Produce for the signed computation of the election

13      returns.  That document was not produced and I believe

14      Mr. Catania represented that the reason it was not

15      produced is that it does not exist.  If that is so,

16      under Section 404(f) of the Election Code which is 25

17      Purdon's 3154(f), then the computation of the returns

18      has not been properly completed.  That means that the

19      petition would still be timely even if someone filed --

20      walked in and filed it now which -- and it also follows

21      that the certification was not valid because you can't

22      certify until you've waited five days after computation.

23              MR. CATANIA:  Your Honor, may I hand up a copy

24      of the Notice to Attend and Notice to Produce and ask

25      that it be marked?  Because it does not say what Mr.

1      Lieb is arguing that it says.  It asks for the

2      unofficial returns.  The unofficial returns are the

3      machine only returns that are posted to the county

4      website on election night.  It does include absentees.

5      It does not include provisional ballots.  It does not

6      include all the overseas voters.

7                  MR. LIEB:  May --

8                  MR. CATANIA:  What they've asked for doesn't

9      exist.

10                 MR. LIEB:  May I respond, Your Honor?

11                 THE COURT:  Yeah, can I see that?  Go ahead.

12                 MR. LIEB:  So I'm quoting now from Section

13     1404(f) of the Pennsylvania Election Code.  "As the

14     returns from each election district are read, computed"

15     --

16                 THE COURT:  And 1404(f) is what?  25 --

17                 MR. LIEB:  It's 25 Purdon's 3154(f).  "As the

18     returns from each Election District are read, computed,

19     and found to be correct or corrected as aforesaid, they

20     shall be recorded on the blanks prepared for the purpose

21     until all the returns from the various election

22     districts which are entitled to be counted, shall have

23     been duly recorded, when they shall be added together,

24     announced, and attested by the clerks who made and

25     computed the entries respectively, and signed by the

1    members of the county board.  Returns under this

2    subsection shall be considered unofficial for five days.

3    The county board shall submit the unofficial returns to

4    the secretary of the Commonwealth by 5:00 p.m. on the

5    Tuesday following the election" and it goes on.  I did

6    not, respectfully, invent the concept of unofficial

7    returns.  It's right there in the Election Code.  And it

8    makes clear that what that is is a signed computation of

9    all of the district-by-district returns signed by the

10   members of the Board of Elections.

11            THE COURT:  All right.  Anything else, Mr.

12   Catania?

13            MR. CATANIA:  No, Your Honor.

14            THE COURT:  All right.  Anything else,

15   Counsel?

16            MR. LIEB:  We'd like to a call a witness with

17   your permission, Your Honor.

18            THE COURT:  All right.  And what's your offer

19   of proof?

20            MR. LIEB:  Our offer of proof is --

21            THE COURT:  You're calling a witness for what

22   purpose, for discovery deposition?  What's your offer of

23   proof?

24            MR. LIEB:  Sure.  We're calling the witness to

25   testify as to whether -- when unofficial returns were

1    computed, whether they were signed, and how many days

2    passed between the completion of said unofficial

3    returns, and the certification not previously introduced

4    into evidence.

5             THE COURT:  All right.  Mr. Catania?

6             MR. CATANIA:  Your Honor, she's not the only

7    person that's involved in that process.  The computation

8    occurs at the voting machine warehouse in the City of

9    Chester.  It's a bipartisan effort.  It's presided over

10   by Mr. Kerns.  He wasn't subpoenaed or asked to be here

11   today.  Ms. Hagan's job is to assemble all of the

12   returns, the provisional ballots done by Ms. Headley's

13   group, the machine returns done by Mr. Kern's group, and

14   then the absentees done by Ms. Hagan's group and present

15   them to the Board of Elections.  And that they, they as

16   the body with the legal power, can complete the

17   computation by taking the legal action to certify the

18   results.

19            THE COURT:  Well, were the unofficial returns

20   sent or were they not sent?

21            MR. CATANIA:  Well they were sent at different

22   times, Your Honor.

23            THE COURT:  And you're saying they were sent?

24            MR. CATANIA:  Well they are all sent to Ms.

25   Hagan's office.

1            THE COURT:  Um-hum.  And then Ms. Hagan's

2       office sends them out, right?

3            MR. CATANIA:  Assembles them, then the board

4       takes action, they have a meeting, advertised public

5       meeting and they vote to accept them and it's at least

6       theoretically possible that they could make last minute

7       adjustments based upon presentations by people who

8       they've asked for recounts.

9            THE COURT:  All right.  So let's assume for

10      the purposes of argument, that unofficial returns

11      weren't sent according to this statute, right?

12            MR. CATANIA:  For argument's --

13            THE COURT:  For argument's sake.

14            MR. CATANIA:  Sure, sure.

15            THE COURT:  All right.  Where does that leave

16      us?

17            MR. CATANIA:  I don't think it changes

18      anything, frankly.  If they're complaining about an

19      action of the Board of Elections, they had two days

20      after the action to appeal from them.  They did not do

21      that.

22            THE COURT:  And that's pursuant to what

23      section?

24            MR. CATANIA:  3150 -- 25 PF 3157, Your Honor.

25            THE COURT:  Um-hum, all right.  So it's even

1    assuming the unofficial returns were not sent, you had

2    two days to challenge the certification and that wasn't

3    done.

4              MR. LIEB:  But respectfully, Your Honor, under

5    Section 1404(e) of the Election Code which is 25

6    Purdon's 3154(e), the ultimate question that brings us

7    here is whether the petitions filed by Ms. Pennock and

8    other Pennsylvania voters were timely.  And under 25

9    Purdon's 3154(e), a petition for --

10             THE COURT:  So this is a second argument

11   you're making.  Because when you first came in you said,

12   Judge, we're challenging the date of the certification

13   because yeah, I would agree that if the certification

14   date were correct, right, we're untimely, but we're

15   challenging the certification itself.  So now you're

16   arguing something different.  Correct?

17             MR. LIEB:  I think I probably changed my

18   emphasis a bit, but I think the overall point is that if

19   the unofficial returns were not compiled properly in

20   accordance with the statute, then it would follow both

21   that the certification was invalid and that our

22   petitions are --

23             THE COURT:  Well then let's proceed now with

24   the assumption that the certification was proper and it

25   was certified what date was it?

1          MR. CATANIA:  The 23rd of November, Your

2     Honor.

3          THE COURT:  The 23rd of November, all right?

4     So let's take it from there.  What's your argument?

5          MR. LIEB:  So, Your Honor, if the

6     certification was proper and it happened five days after

7     the completion of the computation of the returns --

8          THE COURT:  No, no, no, no.  Oh, so you're

9     using completion of the returns.  No, we're -- we --

10    this jumping off point under this is the certification

11    and you will have certain time to do something after the

12    certification.  Correct?

13         MR. LIEB:  Your Honor, if I could just turn

14    your attention to Section 1404(e) which is the --

15         THE COURT:  All right.  Which is what again?

16         MR. LIEB:  25 Purdon's 3154(e) which is the

17    provision under which these petitions were filed.

18         THE COURT:  All right, go ahead.

19         MR. LIEB:  What that provision says is that

20    voters can petition for a recanvass --

21         THE COURT:  Where are you in the section?

22    Where are you reading from?

23         MR. LIEB:  Well I was just paraphrasing, but I

24    was about to --

25         THE COURT:  You can't paraphrase a statutory

1    section.

2            MR. LIEB:  Okay.  So I'll just --

3            THE COURT:  There's no paraphrasing of a

4    statutory section.  So point me exactly what you're

5    reading and then talk about it.

6            MR. LIEB:  Okay.  I am about 15 words in

7    beginning upon petition of three voters of any district,

8    3154(e).

9            THE COURT:  Okay, go ahead.

10           MR. LIEB:  Upon petition of three voters of

11   any district, verified by affidavit, that an error,

12   although not apparent on the face of the returns has

13   been committed therein or on its own motion, not

14   relevant, the county board shall at any time prior to

15   the completion of the computation of all returns, summon

16   the election officers of the district and shall conduct

17   a recount or recanvass of the ballots -- of all ballots

18   cast.  So that was the statutory provision invoked by

19   the citizens who went in to the Elections Bureau on

20   Monday, November 28.  There is -- so the initial

21   question with respect to timeliness is whether the

22   compilation -- sorry, the computation of all the returns

23   of the county was completed.  And reading that along

24   with 3154(f) just below which we read a short while ago,

25   what it means for the -- all the returns for the county

1    to be compiled is that --

2            THE COURT:  Well, let me ask you this.  It

3    starts out and it says whenever it shall appear that

4    there is a discrepancy in the returns of any election

5    district, all right?  So it has a premise that you

6    didn't read the first part of it.  Your premise is

7    whenever it appears that there is a discrepancy in the

8    returns.  So tell me where there appears to be a

9    discrepancy in the returns of any election district.

10           MR. LIEB:  The next word, however, Your Honor

11   is or, or upon petition of three voters of any district

12   verified by affidavit then in error, although not

13   apparent on the face of the return.

14           THE COURT:  Yeah, okay, right.

15           MR. LIEB:  So it's --

16           THE COURT:  So what is the error?

17           MR. LIEB:  So the error is that the voting

18   machines that were used are fundamentally not secure,

19   are susceptible to both intentional in inadvertent error

20   and interference, and that there is a good faith basis

21   to believe based upon the views of leading computer

22   scientists and experts in the field that these machine

23   are not secure and that the result is inherently not

24   trustworthy absent further inquiry to make sure that the

25   machines were functioning as intended.

1          THE COURT:  All right.  So in other words,

2     you're not saying there was an error so to speak, you're

3     saying that potentially, there's a problem with the

4     system or the voting machines?

5          MR. LIEB:  Well, I guess what I'm saying is

6     that the people who walked in to the Elections Bureau on

7     November 28 or the people who signed documents that were

8     walked in, swore in affidavits that they had a good

9     faith belief that there was an error committed on the

10    face of the returns and that belief was based at least

11    in part, on the fact that the machine results --

12         THE COURT:  Well, I mean, you're reading a

13    statute.  The statute says an affidavit as to an error.

14    What are the errors that these -- what are the errors

15    that this affidavit attests to?  And where are those

16    three people to tell us where the error?  Because that's

17    the premise.  Because if you don't have a premises as to

18    an error, I mean these statutes are written specifically

19    for people to understand and the Election Boards to

20    understand what they need to do.  And, therefore, if you

21    don't have a foundation, you don't have a basis, then

22    every single election could turn into this kind of a

23    discovery approach.  So there has to be some foundation

24    with an error that you can point to to say yeah, there

25    could be a problem here.  Somebody who voted in the, you

1    know, you have a machine here were 600 people voted and

2    I have 199 people voting for the democrat and three

3    voting for the republican, and I have two other machines

4    where it's 50/50 and very close.  That affidavit would

5    indicate an error that we have to look at that machine.

6    That's the type of error that we have to see some

7    affidavit of.  But this seems to be a general attack on

8    the system.  And the system may be at fault, but that's

9    not the error that this statute is pointing to, it seems

10   to me, when I read this section.

11             MR. LIEB:  A couple of responses, Your Honor.

12             MR. CATANIA:  Your Honor, may I be heard or --

13             THE COURT:  First of all, let him respond

14   while it's on his mind.

15             MR. CATANIA:  Sure.

16             MR. LIEB:  And then, of course, you can be

17   heard Mr. Catania.  Go ahead, Counsel.

18             MR. CATANIA:  I think first, the example that

19   Your Honor gave, I think is an excellent example of what

20   it would look like for there to be a discrepancy in the

21   returns that are sort of evident on the face of the

22   returns, right?  You have 600 votes, 200 registered

23   voters.  So I think that's sort of path one that's

24   contemplated by Section 1404(e).  Path two is what the

25   voters who submitted affidavits did which is the other

1     path which is if it's not apparent on the race of the

2     returns.  I think their belief that there was an error

3     is based on, you know, a sworn affidavit of leading

4     computer scientists who has studied these machines

5     extremely carefully, who has concluded that if someone

6     wanted to engage in any kind of malfeasance, it would be

7     extremely easy to do so.

8               THE COURT:  And --

9               MR. LIEB:  The -- well, I'm sorry.

10              THE COURT:  Go ahead, go ahead.

11              MR. LIEB:  The voters who signed these

12    affidavits and came in petitioning for a recanvass, you

13    know, didn't have -- some of them did have specific

14    knowledge of specific things that went wrong in their

15    polling places that were part of their basis for filing

16    these affidavits.  They didn't necessarily detail those

17    in their affidavits, but I don't believe that the

18    statute requires them to do that.  There's no language

19    in there that, you know, talks about specifying the

20    details or providing any prima facie evidence or

21    anything like that.  So I think some people did have

22    specific errors that they saw in their polling place,

23    you know, a light here, an error there.  I don't know

24    what was in the minds of all the citizens who brought

25    those petitions in.  I do know that they provided sworn,

1    verified affidavits that they believed that an error had

2    been committed and that belief was based in part on

3    highly reputable experts serious legitimate concerns

4    about the integrity of the machines.

5         THE COURT:  Right.

6         MR. LIEB:  I don't think the error was

7    particularized in all cases, but I don't think the

8    statute requires that the error be particularized in all

9    cases.

10        THE COURT:  All right.  Mr. Catania, you

11   wanted to say something?

12        MR. CATANIA:  Your Honor, there are two

13   appellants here, Jill Stein and Sharon Pennock.  We

14   don't believe that Jill Stein has standing and we ask

15   that she be stricken.  Under the section that the

16   Petitioners or the Appellants are relying on, Jill Stein

17   was not a resident of that precinct, so she should not

18   be a proper party to this matter.  Even assuming if Mr.

19   Lieb's arguments are correct, once the Election Board

20   acted on the 23rd, the remedy was to file something with

21   the Court.  Nothing was filed with the Court.  We

22   shouldn't be here today.  It's a simple procedural

23   issue.  They didn't file correctly.  An attorney didn't

24   file it correctly.  They filed in the Bureau of

25   Elections that had no legal ability to address the

1    issues that they raised.  They already acted.

2          THE COURT:  Um-hum, um-hum.  So you're saying

3    based on this last discussion regardless, they had a

4    foundation to file the affidavit forming --

5          MR. CATANIA:  No, no --

6          THE COURT:  -- a proper foundation?

7          MR. CATANIA:  Evan assuming that he is

8    correct, it doesn't matter.  We shouldn't be here today

9    because it was not properly brought before you in a

10   timely fashion.  They filed in the wrong place, assuming

11   he is correct.  I don't concede that issue.

12         THE COURT:  And what should they have filed in

13   the right place?  What should they have filed?  Where

14   should they have filed it and when --

15         MR. CATANIA:  They should --

16         THE COURT:  -- and under what section?

17         MR. CATANIA:  They could have filed under

18   Section I think it's 3261(a) of the Election Code asking

19   the Court of Common Pleas to order a recount.  And at

20   that point, they would have to prove and introduce

21   evidence of their ability to demand a recount.  That's

22   the remedial purpose of that statute.  Any time a Court

23   is asked to overturn the action of what is the Executive

24   Branch of the Delaware County Government, they certified

25   the election --

1          THE COURT:  Right.  And so then the foundation

2     of that discussion is assuming a proper certification,

3     where are we with this?  And this is the basis for the

4     argument that counsel was making and that is -- and

5     that's where we were discussing where we were and then

6     how he circles back and gets back to the section that

7     he's -- the discussion, 25-3154(e).  So you're saying

8     25-3154(e) wouldn't apply at that point?

9          MR. CATANIA:  It doesn't apply once the Board

10    acts.  35 -- 3154 is not relevant, once the Board votes

11    to certify the results.

12         THE COURT:  All right.  And anything else,

13    because I'm ready to take this under advisement.

14         MR. LIEB:  I would just briefly say, Your

15    Honor, that the question number one, is under 3154(e)

16    has the completion of the computation of all of the

17    returns for the county been done in the manner that

18    complies with the statute.  And the answer under 3154(f)

19    is no, not unless the unofficial returns were signed.

20    That means the 3154(e) period hasn't yet run, the

21    petitions were timely, and they should be heard.

22         THE COURT:  All right.

23         MR. CATANIA:  The unofficial returns were

24    signed which transform them legally into the official

25    returns.  That's the conclusion.

1          THE COURT:  Do you agree that the unofficial

2     returns were signed?

3          MR. LIEB:  No, Your Honor.  They're two

4     separate --

5          THE COURT:  How do we know the unofficial

6     returns were signed, Mr. Catania?

7          MR. CATANIA:  The returns can't be official

8     unless they're blessed by, accepted by, the Delaware

9     County Board of Elections.  That makes them official.

10     The state returns is a process that occurs in

11     Harrisburg, but the Delaware County returns are made

12     official by the entity with the legal power to take that

13     action and that's the Delaware County Board of Elections

14     which they did at a duly advertised public meeting.

15          MR. LIEB:  Mr. Catania is conflating two steps

16     in a two step process.  The first step is the

17     computation.  The computation means you add up all the

18     district-by-district results, they get complied and

19     announced in one centralized form and then the Board of

20     Elections signs them.  Computation is done.  At that

21     point, the Board of Elections is no longer sitting as

22     the return board counting up the results of the

23     election.  Then, there is a five day waiting period.

24     That five day waiting period can only be triggered once

25     the computation is done.  At the end of the five day

1    waiting period, it's permissible to then certify the

2    results of the election which is the step that Mr.

3    Catania is talking about.  There are two steps.  There

4    are signatures of the Board of Elections required at

5    both steps.  It's the return board finishes its duties,

6    it signs the computation.  There's a waiting period

7    where anybody who wants to challenge the -- wants to

8    raise any issues can raise the issues and then there's

9    the certification. The only evidence that's been adduced

10   today and the reason that we had served a Notice to

11   Appear and the Notice to Produce is of the

12   certification.  And, in fact, they admitted that the

13   unofficial returns which were described in 3154(f) were

14   never signed.  So this is a two step process and based

15   upon everything we've heard today, it appears that they

16   jumped directly to Step 2.  And in the absence of Step

17   1, the petitions are timely.

18              THE COURT:  Um-hum, all right.  So --

19              MR. CATANIA:  Even if that's true, the remedy

20   was to appeal to Court and they didn't.

21              THE COURT:  Um-hum.  All right.  I have it,

22   thank you.

23              MR. LIEB:  Thank you, Your Honor.

24              THE COURT:  I'll take it under advisement.

25              MR. CATANIA:  Thank you, Your Honor.

1                    THE COURT:  You're welcome.

2                                    ***

3            [End of Proceeding]

4

```
1                    C E R T I F I C A T E

2          I, Michael Freeman, hereby certify that the
3     proceedings and evidence are contained fully and
4     accurately on multi-track recording; that the recording
5     was reduced to typewriting by my direction; and that
6     this is a correct transcript of the same.
7
8
9                        _____
10                       Michael Freeman, Administrator
11                       Court Reporters
12
13         DIAZ TRANSCRIPTION SERVICES, hereby certifies that
14    the attached pages represent an accurate transcript of
15    the electronic sound recording of the proceedings in the
16    Court of Common Pleas of Delaware County, Pennsylvania,
17    in the matter of:
18
19
20                           IN RE:
21               RECOUNT AND/OR RECANVASS OF THE
22            VOTE FOR PRESIDENT OF THE UNITED STATES
23              AND FOR UNITED STATES SENATE IN THE
24               NOVEMBER 8, 2016 GENERAL ELECTION
25
26
27                       #2016-010508
28
29
30                         BY:
31
32                       Traci Calaman
33
34                       Traci L. Calaman
35                       Transcriber for
36                       Diaz Transcription Services
37
38         The foregoing record of the proceedings upon the
39    hearing of the above cause is hereby approved and
40    directed to be filed.
41
42                       _____
43                                      Judge
44

45
```