# Exhibit 52

2016-28344-0014 12/12/2016 12:06 PM #11077932
Opinion
Rcpt#Z2969975 Fee:$0.00
Mark Levy - MontCo Prothonotary

Court of Common Pleas of Montgomery County

| | |
|---|---|
| Glen Gaddy, et al., Petitioners | : No. 16-28344 (Pa. C.P. Montg. County Dec. |
| | : 1, 2016), *appeal filed*, No. 1964 C.D. 2016 |
| vs. | : (Pa. Commw. Ct. Dec. 7, 2016) |
| | : In re: Consolidated Petitions to Recount |
| Montgomery Cty. Bd. of Elections, Resp't | : and/or Re-Canvass Votes |

## OPINION

Moore, S.J.                                                                                                           December 12, 2016

On November 28, 2016, three voters from each of seventy-eight electoral districts in Montgomery County, Pennsylvania, filed petitions to recount and/or re-canvass votes cast in those districts in the November 8, 2016, general election, for the offices of President of the United States, Vice President of the United States, and United States Senator. The petitions cited as authority for the relief they requested provisions of the Pennsylvania Election Code, 25 P.S. §§ 3154, 3262.

The Court immediately scheduled a hearing on the petitions for November 30, 2016. At the scheduled proceeding the Court entertained argument on behalf of Petitioners from counsel for Jill Stein, Green Party candidate for President in the 2016 election; and contra the petitions, by attorneys for the Montgomery County Board of Elections, the Republican Party, President-Elect Donald J. Trump, Vice-President-Elect Michael R. Pence, and twenty electors.

On preliminary motion of the Board of Elections, with the agreement of all parties in attendance, the Court consolidated the seventy-eight petitions to one docket pursuant to Pa.R.C.P. 213(a). At the conclusion of the proceeding, after all parties had been given full opportunity to make their presentations, the Court denied the petitions, as so consolidated; the written order of the Court was entered on the docket December 1, 2016.

THIS DOCUMENT WAS DOCKETED AND SENT ON 12/12/2016

On December 7, 2016, Petitioners filed a notice of appeal of the Court's order to the Commonwealth Court of Pennsylvania. On December 8, the Commonwealth Court ordered that the record of proceedings, including the transcript and a brief opinion with reasons for the order, be certified to that Court by Tuesday, December 13, 2016; the transcript of the hearing was filed on an expedited basis the same day, December 8, and this Court now submits this opinion in compliance with the Commonwealth Court's order.

In Montgomery County, all votes are cast on electronic voting machines, "DREs" as the parties referred to them. The machines neither read nor produce paper ballots or records of individual votes cast; the machines tabulate the votes internally based on entries on screens or boards activated by the voter's digital touch or punch. *Cf. Banfield v. Cortes*, 631 Pa. 229, 110 A.3d 155 (2015) (reviewing history of voting machines in Pennsylvania and upholding Secretary of the Commonwealth's certification of DREs for use in Pennsylvania elections).

With respect to judicial proceedings to recount or re-canvass votes cast on such machines based on allegations of fraud or error generally, the Pennsylvania Election Code provides, at 25 P.S. § 3262 (emphasis added):

> (a) Judicial proceedings shall be as follows:
>
> (1) Except as set forth in clause (2), the court of common pleas, or a judge thereof, of the county in which any election district is located, *shall make visible the registering counters of the voting machine or machines used in such election district at any primary or election, and without unlocking the machine against voting, shall recanvass the vote cast therein,* if three qualified electors of the election district shall file a petition, duly verified by them, alleging that, upon information which they consider reliable, they believe that fraud or error, although not manifest on the general return of votes made therefrom, was committed in the canvassing of the votes cast on such machine or machines. It shall not be necessary for the petitioners to specify in their petition the particular act of fraud or error they believe to have been committed, nor to offer evidence to substantiate the allegations of their petition.
>
> . . . .

(a.1) Every petition for the recanvassing of votes cast in the voting machine, or voting machines of an election district, under the provisions of this section, shall be filed in the office of the prothonotary of the proper county accompanied by a deposit of cash in the amount of fifty ($50) dollars, or by a bond signed by the petitioners as principals and by a corporate surety to be approved by the court in the amount of one hundred ($100) dollars, conditioned upon the payment to the county treasurer for the use of the county of the sum of fifty ($50) dollars, in the event that upon the recanvassing of the votes cast in a voting machine or voting machines, it does not appear that fraud or substantial error was committed in the canvassing of the votes cast on such machine or otherwise in connection with such voting machines.

. . . .

(b.1) If, upon the recanvassing of the votes in any voting machine, it shall appear that fraud or substantial error was committed in the computation of the votes cast on the voting machine or otherwise in connection with such voting machine, it shall be the duty of the court to certify such fact to the prothonotary, and thereupon the prothonotary shall return to the petitioners the said sum of fifty ($50) dollars, or if the petitioners shall have filed a bond, in lieu of cash, to mark said bond cancelled and notify the petitioners that he has done so.

(b.2) If, upon the recanvassing of the votes in any voting machine under the provisions of this section, it shall not appear that fraud or substantial error was committed in the computation of the votes cast in the voting machine or otherwise in connection with such voting machine, the persons upon whose petition such voting machine was recanvassed shall forfeit to the county the sum of fifty ($50) dollars. If said petitioners shall have deposited the said sum in cash with the prothonotary at the time of filing the petition, the prothonotary, upon certification of the court that fraud or substantial error or otherwise in connection with such machine was not discovered, shall pay said sum deposited with him to the county treasurer, and if the petitioners shall have filed with their petition a bond in the sum of one hundred ($100) dollars, it shall be the duty of the county treasurer forthwith to collect from the principals or surety on said bond the sum of fifty ($50) dollars and costs of suit, and for this purpose he is hereby authorized to institute any necessary legal proceedings. When so collected, the said sum of fifty ($50) dollars shall be paid over to the county treasurer.

(c) Voting machines may be recanvassed under the provisions of this section at any time within twenty days after the date of the primary or election at which they were used.

Section 3154 of the Code, although not directly relevant to the proceedings now before the Court because it applies to petitions submitted to a county board of elections before the

3

computation of all returns for the county is completed rather than to subsequent judicial proceedings, contains many parallel provisions, some of which offer particular insight into the mechanical aspects of the "recount or recanvass," 25 P.S. § 3154(e), that the Code authorizes to be performed on voting machines:

> (1) In a county in which an election district uses voting machines, all of the following apply:
>
> (i) The county board shall:
>
> (A) make a record of the number of the seal upon the voting machine and the number on the protective counter or other device;
>
> *(B) make visible the registering counters of such machine; and*
>
> *(C) without unlocking the machine against voting, recanvass the vote cast on the machine.*
>
> (ii) If, upon such recanvass, it shall be found that the original canvass of the returns has been correctly made from the machine, and that the discrepancy still remains unaccounted for, the said board, with the assistance of the custodian, in the presence of the election officers and the authorized candidates and representatives, shall unlock the voting and counting mechanism of the machine, and shall proceed thoroughly to examine and test the machine to determine and reveal the true cause or causes, if any, of the discrepancy in returns from such machine. Each counter shall be reset at zero (000) before it is tested, after which it shall be operated at least one hundred times. After the completion of such examination and test, the custodian shall then and there prepare a statement, in writing, giving in detail the result of the examination and test, and such statement shall be witnessed by the persons present, and shall be filed with the said board.

25 P.S. § 3154(e)(1)(i)-(ii) (emphasis added).

Thus, under the Pennsylvania Election Code, the authorized "recount or recanvass" of votes cast on voting machines, whether done under judicial order pursuant to section 3262 or under the purview of the county election board pursuant to section 3154, is simply the mechanical process of rerunning the count to determine whether it corresponds to the original "canvass" of the vote reported by the officers of the given electoral district. If the "recount"

done on the machine does correspond to the original "canvass" from that district, but there are still discrepancies, for example, between the number of votes counted and the number of electors who voted, the board of election takes the further steps of unlocking the voting and counting mechanism of the machine and examining and testing it, as described in 3154(e)(1)(ii).

But such a "recount or recanvass" is not what Petitioners requested this Court to authorize be done. Indeed, they maintained and admitted before the Court that such a mechanical "recount or recanvass" would be wholly inadequate to detect or reveal the fraud or error in the election that they alleged.

Rather, the petitioners claimed, using supporting affidavits from computer experts and studies from other states indicating that the County's DRE voting machines could be easily "cyber-hacked," as well as reports from the U.S. Department of Justice and other sources of attempted cyber-interference with the computer records of the Democratic Party and the electoral process of this country, that foreign powers, notably Russia, had fraudulently attempted to "fix" the election of November 8, 2016, using Internet-based forms of meddling with electronic voting systems and machines in the United States. The petitioners had no evidence, and offered none, that such electronic voting fraud had been perpetrated in any particular electoral district in Montgomery County, or indeed anywhere. Rather, they speculated, from the alleged vulnerability of Montgomery County's voting machines, together with reports that Russia was trying to sway the election in the direction that it went combined with pre-election polls indicating it would go the other way, that such fraud and manipulation of the Montgomery County DREs had taken place. Based on this speculation, the petitioners sought from the Court an order authorizing their computer experts to perform a forensic analysis of the County's voting

5

machines in the seventy-eight districts involved to determine whether the electronic fraud and manipulation that the petitioners suspected, or something like it, had occurred.

However, nothing in Pennsylvania's Election Code, under which Petitioners brought their petitions, authorized this Court to order that the forensic audit of the voting machines the petitioners requested be done. Indeed, in response to the Court's question at the hearing "[A]re there any cases in Pennsylvania which authorized forensic analysis of the voting equipment?" (Pet. Recount Recanvass Tr. 13:17-19, Nov. 30, 2016) Petitioners' counsel responded:

> There is no case where it has been asked. There's no case where it has been denied. There is no case where it has been litigated to my knowledge.
>
> I have not seen a case squarely on point. I think this Court would be the first to address this issue.
>
> I would suggest to the Court that, you know, this Election Code largely from, I believe, the 1930's[,] this was written before the internet. It was written before people even knew about the possibility of interfering with the vote or such a thing as hacking.

(Pet. Recount Recanvass Tr. 13:20-14:8.)

In fact, this Court takes judicial notice that sections 3154 and 3262 of the Election Code, under which Petitioners proceeded, were both amended by the Pennsylvania General Assembly in 2004, when the Internet and computer "hacking" had already become well-ensconced in the general public lexicon. More importantly, "The jurisdiction of the courts in election contests is not of common law origin but is founded entirely upon statute, and therefore it cannot be extended beyond the limits defined by Acts of Assembly." *In re Granting Malt Beverage Licenses*, 331 Pa. 536, 538, 1 A.2d 670, 671 (1938) (unanimous opinion), *cited in Rinaldi v. Ferrett*, 941 A.2d 73, 78 (Pa. Commw. Ct. 2007) ("[T]he statutory provisions set forth at length above constitute the exclusive means for challenging the accuracy of election results. Moreover, well-established case law dictates strict adherence to the statutory requirements for pursuing any

6

of the avenues set forth above."); *accord, e.g., In re Jones,* 505 Pa. 50, 62–63, 476 A.2d 1287, 1293 (1984) (per curiam) ("The courts have been granted limited (not plenary) authority by the legislature over the election process. . . . The authority to regulate the election process is vested in the Legislature. Because our jurisdiction in the area flows from statute rather than common law, it cannot be extended by implication beyond the prescription of the act from which it originates." (citations omitted)). Therefore, this Court had no power to go beyond the remedies authorized by the Election Code to grant Petitioners' request to order a forensic analysis of the County's voting machines.

The Pennsylvania Election Code also erected another barrier to Petitioners' contest of the election that they failed to surmount. Section 3263 of the Code provides, in part,

> (a) (1) Any petition to open a ballot box or to recanvass the votes on a voting machine or an electronic voting system pursuant to sections 1701 and 1702 [25 P.S. §§ 3161-3162] shall be filed no later than five (5) days after the completion of the computational canvassing of all returns of the county by the county board. If any error or fraud is found the court shall grant the interested parties an additional five (5) days to file petitions requesting additional ballot boxes to be opened or voting machines or electronic voting systems to be recanvassed.
>
> (i) *Except as set forth in subclause (ii):*
>
> *(A) a recount or recanvass shall include all election districts in which ballots were cast for the office in question; and*
>
> *(B) petitions, accompanied by the appropriate money or bond, must be filed in each election district in accordance with this act.*
>
> *(ii) Subclause (i) shall not apply if a petitioner under section 1701 or 1702 pleads that a particular act of fraud or error occurred and offers prima facie evidence supporting the allegation.*

25 P.S. § 3263(a) (emphasis added).

Under this provision, voters challenging the results of an election without prima facie evidence *"that a particular act of fraud or error occurred"* may not cherry-pick the districts in

7

which they make their challenge. Rather, *"a recount or recanvass shall include all election districts in which ballots were cast for the office in question,"* id. § 3263(a)(1)(i)(A) (emphasis added), and *"petitions, accompanied by the appropriate money or bond, must be filed in each election district in accordance with this act,* id. § 3263(a)(1)(i)(B) (emphasis added). Here, Petitioners failed to offer proof sufficient to make out a prima facie case that the cyber-hacking they suspected affected any of the County's voting machines; all they offered was speculation, based on the theoretical possibility of such hacking and the circumstantial evidence of an alleged Russian interest in influencing the election and the failure of the election results to match pre-election polling. This is not prima facie evidence "that a particular act of fraud or error occurred," as required under 25 P.S. § 3263(a)(1)(ii). Consequently, under the statute, Petitioners were obliged to bring their election contest in *"all election districts in which ballots were cast for the office in question,"* id. § 3263(a)(1)(i)(A) (emphasis added), and file a petition, accompanied by the appropriate money or bond, in each such election district, in accordance with the act, *id.* § 3263(a)(1)(i)(B). Since the elections Petitioners challenged were statewide races for President, Vice President, and United States Senator, Petitioners, without prima facie evidence of a particular act of fraud or error, had to bring petitions complying with the Code in each electoral district statewide to get the "recount or recanvass" they sought under the Code.

Section 3263 suggests yet another defect in the petitions: They were not "accompanied by the appropriate money or bond . . . in accordance with [the] act." 25 P.S. § 3263(a)(1)(i)(B). As set forth above, the Code provides, in subsection 3262(a.1), that,

> Every petition for the recanvassing of votes cast in the . . . voting machines of an election district . . . shall be filed in the office of the prothonotary of the proper county accompanied by a deposit of cash in the amount of fifty ($50) dollars, or by a bond signed by the petitioners as principals and by a corporate surety to be approved by the court in the amount of one hundred ($100) dollars, conditioned

8

> upon the payment to the county treasurer for the use of the county of the sum of fifty ($50) dollars . . . .

25 P.S. § 3263(a.1).

Here, Petitioners failed to deposit $50 cash or file a $100 bond for each of the seventy-eight petitions, representing seventy-eight electoral districts, filed. Petitioners argued that they substantially complied with this provision by paying a separate filing fee ($270), as required by the Prothonotary, for each of the seventy-eight petitions, which they had tried to file as one. However, the Prothonotary's filing fees serve a different purpose than the cash or bond required by the Election Code. The filing fees support the Prothonotary's operations and allow that office to keep functioning as the Court's official filing office in civil matters. The cash or bond required by the Election Code to be filed with each "recount/recanvass" petition instead serves the distinct purpose of reimbursing the county treasurer for costs incurred in the election challenge (together with court costs, 25 P.S. § 3262(b.2)) should the contest fail to show fraud or substantial error in the election count. 25 P.S. § 3262(a.1), (b.2). Should such fraud or error be found, the Prothonotary returns the cash deposited to the petitioner or cancels the bond. Therefore, the Prothonotary's filing fee, which is kept by the Prothonotary, is no substitute for the cash or bond required by the Election Code, which the Prothonotary must pay out to the County or the petitioning voters depending on the results of the challenge.

Because the filing fee of $270 Petitioners paid with each of the seventy-eight petitions were far more than the cash or bonds required by the Code, and because this Court consolidated the petitions under Pa.R.C.P. 213(a) immediately after they were filed, which suggests the possibility that they could have been filed originally to one docket with only one filing fee, *compare* Pa.R.C.P. 213(a) (providing for consolidation of actions involving a common question of law or fact or arising from the same transaction or occurrence) *with* Pa.R.C.P. 2229(a)

9

(allowing persons to join together as plaintiffs in one action where they assert any right to relief arising from same transaction or occurrence or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action), Petitioners' failure to deposit cash or post bonds may have been a defect in procedure that could have been remedied rather than a jurisdictional flaw in the petitions. Nevertheless, the failure of the petitions to conform to the requirements of the Election Code in the relief they requested and the breadth of the voting districts covered was fatal to them.

Accordingly, the Court ruled properly in denying the petitions. We respectfully request that the Commonwealth Court affirm our order to that effect.

**BY THE COURT:**

*Bernard A. Moore*

**Hon. Bernard A. Moore, S.J.**

Copies mailed 12/*/16 to:
Ilann M. Maazel, Esq.
Lawrence Otter, Esq.
Nicole Forzato, Esq.
Lawrence Tabas, Esq.
Jonathan S. Goldstein, Esq.
Rebecca L. Warren, Esq.
Bradford Richman, Esq.

*M. Palmer*
Secretary

**MARK LEVY**
**PROTHONOTARY**
MONTGOMERY COUNTY COURT HOUSE
P.O. BOX 311
NORRISTOWN, PENNSYLVANIA 19404-0311

Date: 12/15/14   Time: 2pm
ECBA Rec'd: _____ CB: _____
By: Mail/Hand/Fax/FedEx/Other

ILANN M MAAZEL
600 FIFTH AVENUE
10TH FLOOR
NEW YORK, NY 10020

UNITED STATES POSTAGE
PITNEY BOWES
02 1M        $ 00.67⁵
0004255199   DEC 13 2016
MAILED FROM ZIP CODE 19401

10020$2323 C005