IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN, et al. | : | |
|     Plaintiffs, | : | CIVIL ACTION |
|         v. | : | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 (PD) |
|     Defendants. | : | |

## <u>ORDER</u>

AND NOW, this            day of                , 2017, upon consideration of the motion of the Defendants Secretary of the Commonwealth Cortés and Commissioner Marks to dismiss Plaintiffs' Amended Complaint, Plaintiffs' response and cross motion for summary judgment, and Defendants' response to Plaintiffs' submission, it is hereby ORDERED that the Defendants' motion to dismiss is GRANTED, and Plaintiffs' cross motion to summary judgment is deemed withdrawn.  Plaintiffs' Amended Complaint is hereby DISMISSED with prejudice.


BY THE COURT:


_____
PAUL DIAMOND,  J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JILL STEIN , et al.                          :
      Plaintiffs,                          :    CIVIL ACTION
          v.                              :
PEDRO A. CORTÉS, in his capacity as          :
Secretary of the Commonwealth, et al.        :    NO. 16-6287
      Defendants.                          :


**RESPONSE TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTIONTO DISMISS AMENDED COMPLAINT**

Defendants Secretary Pedro A. Cortés and Commissioner Jonathan Marks oppose plaintiffs' cross motion for summary judgment and reply in support of the Defendants' motion to dismiss Plaintiffs' Amended Complaint, and incorporate by reference the attached memorandum of law and the Defendants' motion to dismiss with its incorporated memorandum of law.

Wherefore, this Court should grant the relief as set forth in the proposed order.

Respectfully submitted,

JOSH SHAPIRO
Attorney General


/s/ Sue Ann Unger
_____

                      Sue Ann Unger
Office of Attorney General        Senior Deputy Attorney General
21 S. 12th Street, 3rd Floor       Attorney I.D. No. 39009
Philadelphia, PA 19107           Kenneth Joel
215-560-2127; fx: 717-772-4526    Chief Deputy Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL STEIN , et al. | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| PEDRO A. CORTÉS, in his capacity as | : | |
| Secretary of the Commonwealth, et al. | : | NO. 16-6287 |
| Defendants. | : | |

**BRIEF IN RESPONSE TO PLAINTIFFS' CROSS MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

## I.    Introduction

Plaintiffs' Amended Complaint asserts four causes of action:  (1) equal protection; (2) due process; (3) First Amendment; and (4) equal protection/due process.  ECF 75-1, Counts I-IV. Regardless of the legal theory pressed, Plaintiffs' constitutional argument reduces to the following—"the election system in Pennsylvania, in its totality, is unconstitutional because it deprives voters of their right to have their votes counted through a combination of unreliable machines and an inability to verify the vote."  ECF 75-1 at 16.  *See also* ECF 75-1 at 1 (claiming that the Election Code authorizes "the use of junk voting machines that did not accurately count votes" and that the Code erects "a series of impossible barriers to voters' efforts to have their votes counted").  To support the invalidation of the Election Code—"in its totality"—Plaintiffs stitch together the alleged observations of a few voters in Montgomery County on election day, the number of "no votes" recorded in Montgomery County, and the alleged experience that some Montgomery voters had with non-party local officials relating to their post-election efforts. Plaintiffs' broadly woven tapestry of unconstitutionality quickly unravels, however, when the

threads used to create it are subjected to an analytical pull.  In the end, no stitching of conclusory rhetorical attacks[1] can save Plaintiffs' Amended Complaint from dismissal.

Defendants filed a motion to dismiss and a supporting brief.  As this Court had conducted a preliminary injunction hearing, we properly relied on materials introduced there.  We did not intend for our motion to be one for summary judgment and, as discussed below, it should not be converted to such.  Plaintiffs' "cross-motion" should be deemed withdrawn.

## II.    Plaintiffs Cannot Avoid Previous Rulings In This Litigation

Predictably, Plaintiffs try to avoid this Court's previous conclusions that they were not likely to succeed on the merits of their constitutional challenges.  Plaintiffs' key contention in this regard is to say that the previous decision rested on the rejection of the claim that hacking had occurred to Pennsylvania voting machines and that the Amended Complaint does not rely upon any allegations of hacking.  *See* ECF 75-1 at 6, 16.  True enough, Plaintiffs claimed that Pennsylvania voting machines had been hacked; however, this Court flatly rejected that contention. *Stein v. Cortés*, --- F. Supp. 3d ---, ---, 2016 WL 7188624, *13-*15 (E.D. Pa. Dec. 12, 2016).  Regardless, Plaintiffs' attempts to side-step this Court's findings and rulings veer wide.

Plaintiffs initiated this litigation by filing a Complaint.  ECF 1.  Plaintiffs also sought injunctive relief.  *See* ECF 4-5.  To support their motion, Plaintiffs submitted reams of materials including many of the declarations and other documents on which they now rely.  *Compare* ECF 6-13; ECF 75-1, ¶¶ 24, 26-30, 32-33, 35-43, 44-46, 48-52, 54-56, 62-67, 70, 73-74, 81-87, 89, 91-92, 94-100, 102-03, 105-12, 115 (all citing to various materials that were part of the record at the

---

[1]    *See, e.g.*, ECF 75-1 at 1 (right off the bat Plaintiffs attack:  "[u]nfortunately, not every vote matters to the chief election officials of the Commonwealth of Pennsylvania").  *See also* ECF 75-1 at 29 (claiming that Defendants "offer no response other than 'tough luck'").

time of the injunction hearing).  The parties appeared before this Court and Plaintiffs introduced further evidence through the testimony of one of their experts.  *See* Hrg. Tr.

During the hearing, Plaintiffs specifically argued—based on all of the "evidence" tendered—that the combination of several factors demonstrated that they would likely be successful on the merits.  For example, at the hearing, Plaintiffs made clear that their constitutional challenges needed to be assessed "in combination" and "not in isolation."  Hrg. Tr. at 30, 31. Further, Plaintiffs argued that where a state law provides for a specific right, federal constitutional protections automatically and necessarily attach to the state-created right.  Hrg. Tr. at 30-31. Additionally, Plaintiffs claimed that, in Montgomery County, voting machines did not work and that, more generally, Pennsylvania's voting machines were vulnerable and there was no paper trail for a particular voter to verify that her vote had been properly cast.  Hrg. Tr. at 32-33.  As for the post-election processes, Plaintiffs maintained that the process was a maze that was too difficult to understand and follow.  Hrg. Tr. at 33-40.

Far from being different, these are the exact same positions that Plaintiffs raise in their current briefing.  Plaintiffs are quite clear that their challenges must be viewed as a "confluence" of the same things:  vulnerable and hackable voting machines; machines that failed to record votes; the practical impossibility of securing a statewide recount or contest; the burdensome processes that make a meaningful recount illusory; the absence of information from the Secretary about recount processes and deadlines; the almost entirely fruitless efforts required of voters seeking recounts.  *See* ECF 75-1 at 2.  *See also* ECF 75-1 at 16 (noting the central point in this litigation to be the election system in Pennsylvania is unconstitutional in its totality because of the "combination of unreliable machines and an inability to verify the vote"); ECF 75-1 at 24-32 (same).  And, Plaintiffs repeatedly discuss the use of Montgomery County voting machines on Election Day, the "no vote" concern, and the purported inability to obtain a recount or contest the

election.  *See* ECF 75-1 at 12-13 (discussing the use of Montgomery County voting machines and the purported nullified right to a recount or contest).

This Court already rejected Plaintiffs' same interwoven arguments as it concluded, quite correctly, that Plaintiffs will be unlikely to succeed on the merits of their constitutional claims. Specifically, this Court recognized that, like now, Plaintiffs were arguing that the "use of electronic voting machines raises concerns of tampering" and the "'Election Code, as applied by defendants and the [E]lection [B]oards, poses such barriers to verifying the vote as to deny the people of Pennsylvania the fundamental right to have their vote counted.'" *Stein*, --- F. Supp. 3d ---, ---, 2016 WL 7188624, *11 (E.D. Pa. Dec. 12, 2016); *see also id.* at *12 (noting that Plaintiffs' constitutional claims are based on the theory that Pennsylvania's recount provisions, taken together, impose a severe burden on their right to vote).   After canvassing precedent from the Supreme Court and the Third Circuit, this Court rightly concluded:   "Plaintiffs have failed to demonstrate a likelihood of prevailing on the merits of these claims."  *See generally id.* at *11-*13.

Plaintiffs also try to avoid our use of the information that was introduced into evidence at the injunction hearing by contending that this evidence cannot be considered unless this Court converts the motion to dismiss to a motion for summary judgment.  *See* ECF 75-1 at 5-6.  We cited controlling Third Circuit precedent for our position that including information used at the preliminary injunction hearing to resolve a motion to dismiss is proper.  *See Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) ("a district court's findings and conclusions on a preliminary injunction motion could 'have preclusive effect if the circumstances make it likely that the findings are "sufficiently firm" to persuade the court that there is no compelling reason for permitting them to be litigated again").  *See also McTernan v. City of York, Pa.*, 577 F.3d 521, 530-31 (3d Cir. 2009); *Commodity Futures Trading Comm'n v.*

6

*Bd. of Trade*, 701 F.2d 653, 657 (7th Cir. 1983) ("findings made in preliminary injunction decisions have preclusive effect 'if the circumstances make it likely that the findings are accurate [and] reliable") (quoted with approval by *Hawksbill*).

As shown above, the issues before this Court at the injunction hearing are the same as presented here and the information provided at the injunction hearing is also the same as advanced through the Amended Complaint.  As such, Plaintiffs' reliance on an inmate case—where the defendants attached materials to support the defense that the inmate failed to administrative exhaust his remedies pursuant to the PLRA—is nothing like what we have here and does not require conversion of our motion to dismiss into a motion for summary judgment.

## III.    Stein and Reitz Lack Standing

Stein and Reitz next argue that they have standing to bring all of the constitutional claims asserted.  This Court previously concluded that they do not and neither has offered any persuasive argument to warrant revisiting this conclusion.

### A.    Stein Lacks Standing

Stein claims that it "is a virtual statistical certainty that some of the uncounted votes were for [her]."  ECF 75-1 at 8.  From this conclusion, she argues that she either has standing in her own right—because any lost vote is harm—or on behalf of voters to challenge Pennsylvania's Election Code in its totality.  Stein's contentions are factually and legally incorrect and we address her points below.

*First*, as it relates to a possible loss of votes, Stein uses:  (1) the observations of a few voters in Montgomery County who believe that their votes did not count because of a lit "no vote" light while they were voting; and (2) the "no vote" statistics from Montgomery County.  *See* ECF 75-1 at 7-8.  Looking at the facts alleged, however, Howe admits that she wanted to vote for a straight Democrat ticket; thus, there could be no harm to Stein.  ECF 71, ¶ 84.  Knight and

Kupka—while not identifying their chosen candidate—certainly do not affirmatively assert that they tried to vote for Stein.  ECF 71, ¶¶ 85-86.  As for Cook—who did vote for Stein—she does not allege that there was any problem with a "no vote" light when she voted.  ECF 71, ¶¶ 13, 15, 23 (of all the allegations relating to Cook and none assert an actual problem with voting).

This is insufficient to confer standing to invalidate Pennsylvania's Election Code in its totality.  Indeed, the entire factual focus of the Amended Complaint is Montgomery County.  For example, when making their pitch that Reitz has alleged sufficient facts to establish standing, Plaintiffs state that Reitz voted in Montgomery County and, as such, he was "treated unequally from Pennsylvania voters in counties with well-functioning voting systems."  ECF 75-1 at 12.  As such, these allegations certainly do not establish Stein's standing to invalidate Pennsylvania's Election Code in its totality.[2]  Further, even if there had been an issue with certain voting machines in Montgomery County, there is no basis to claim that only Stein was impacted.  And, even if Stein got all of the 4,087 "no votes," the Green Party—which is not even a litigant here—certainly would not have leapt from 0.86% of the Pennsylvania electorate who voted for Stein to the state-wide 2% threshold or the 5% federal threshold.

*Second*, Stein's legal analysis is similarly thin.  To that end, she cites no case establishing that, as a candidate, she has standing sufficient to assert a constitutional right to demand a forensic examination of voting machines or a state-wide recount—because there is no such constitutional right.  "The right to have one's vote counted does not, however, encompass the right to have one's vote verified through a mandatory statewide recount."  --- F. Supp. 3d at ---, 2016 WL 7188624, *11.  Indeed, agreeing with the Eastern District of Michigan, this Court concluded:  "[t]here is no

---

[2]     At most, these allegations suggest that there may have been an issue with certain machines in Montgomery County.  As previously discussed, the Election Code allows voters to petition the Secretary to examine the voting systems.  *See* 25 P.S. § 3031.5.  Plaintiffs have not invoked this provision.

case law recognizing an independent federal right to a recount that either this Court or the parties have come across, in the absence of actual deprivation of voting rights."   --- F. Supp. 3d at ---, 2016 WL 7188624, *11 (further quotations omitted); *see also id*. at *12 ("[d]ue process limitations on the manner by which elections may be conducted are also separate from any 'right' to a mandatory recount").

Stein's candidate standing cases are unremarkable as they all arose in the context of a candidate seeking access to, or placement on, a ballot.  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 361-63 (3d Cir. 2014) (challenge brought by candidates to provisions setting signature requirements to gain ballot access); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639-41 (3d Cir. 2003) (candidate had standing to challenge statute governing ballot access fees); *LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2001) (ballot access case); *Nader v. Blackwell*, 545 F.3d 459, 471 (6th Cir. 2008) (candidate seeking access to the ballot); *Schulz v. Williams*, 44 F.3d 48, 52-53 (2d Cir. 1994) (a candidate challenged another candidate's placement on the ballot because including the other candidate may siphon votes).  It seems obvious that a candidate would have standing to challenge provisions that may prevent—or make harder—ballot access.

Dr. Stein, who did not testify or submit a declaration in this case, now claims injury in fact just because she ran for office.  Stein's logic would mean that a write-in candidate who received a single vote has an injury-in-fact that would give her standing to contest a state-wide election.  As explained above, Plaintiffs rely only on ballot access cases to argue for standing.  Even for that type of case, however, the Fourth Circuit has held that a candidate lacks competitive standing. *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 633 (4th Cir. 2016) ("[b]ecause neither Virginia law nor the Plan gives Moxley "a legally protected interest" in determining the nomination method in the first place, he fails to make out "an invasion of a legally protected

interest," *i.e.* actual injury); *Haynes v. Ottley*, No. CV 2014-70, 2014 WL 5469308, *5 (D.V.I. Oct. 28, 2014).

*Third*, Stein cannot create her own standing through her Pennsylvania supporters.[3]  Again, it is well settled that "constitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973).  *See also Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) ("when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction" and a litigant may not normally "rest his claim to relief on the legal rights or interests of third parties"); *Oh v. Phila. Cnty. Bd. of Elections*, 2008 WL 4787583, *7 (E.D. Pa. Oct. 31, 2008) (noting that a losing candidate "cannot rest his claim to relief on the legal rights or interests of the voters" as it would amount to a "generalized grievance shared in substantially equal measure by all or a large class of citizens and is not sufficient to confer standing") (further quotations omitted).[4]

*Fourth*, Stein's lack of standing is underscored by the very nature of her claims.  She factually takes issue with certain machines in Montgomery County and wants to have a forensic examination of voting machines throughout the Commonwealth but she never actually challenges the provisions of the Election Code authorizing the use of electronic voting machines and she seeks this mandatory relief from Defendants who do not have the authority to order counties to open up their machines for Stein's forensic treasure hunt.  She challenges provisions of the

---

[3]     Clearly, she cannot have standing for the millions of Pennsylvanians who did not vote for her.

[4]     *Pa. Psych. Soc'y, v. Green Springs Health Servs., Inc.*, 280 F.3d 278 (3d Cir. 2002), is not an election case and, rather, involved a physician association looking to assert a claim on behalf of its physician members who, in turn, alleged that a policy harmed them economically and also made it harder to treat patients.  And *Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973), involved a restriction that prevented a candidate from running for office and, in this context, the candidate could raise claims on behalf of voters who supported him.

Election Code that provide the requirements and process for an election contest and an election recount but if she succeeds in striking these provisions there will be no ability for any Pennsylvania voter to contest any election or seek a recount of any election—at least until the General Assembly, if it so chooses, decides to enact new legislation to provide for such a process. *See also* Hrg. Tr. at 37 (Q: "could Pennsylvania simply say we are not going to provide for a recount….would that violate some provision of the federal Constitution?"  A: "Probably not").

As the Third Circuit has made clear, "'standing is not dispensed in gross'" and, thus, a "plaintiff who raises multiple causes of action 'must demonstrate standing for each claim he seeks to press.'"  *In re Schering Plough Corp.*, 678 F.3d 235, 245 (3d Cir. 2012) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Put another way, "the standing inquiry requires a careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Id*.  Since the particular claims raised by Stein against Cortés and Marks cannot result in relief to her, she lacks standing and the Amended Complaint must be dismissed.

Plaintiffs cannot avoid these conclusions by claiming that our discussion of remedy is premature.  See ECF 75-1 at 32-34.  That is not the point we are making.  While a court cannot grant a permanent injunction without first finding liability, nothing impedes the Court from determining that none of the proposed remedies are possible or suitable and therefore dismissing the case rather than entertain an academically philosophical discussion of liability without the possibility of a remedy.

Plaintiffs rely upon *Astrazeneca AB v. Mutual Pharmaceutical Co.,* 89 F. App'x 239, 240 (Fed. Cir. 2004)—a case that dismissed an appeal as being premature; however, it is inapposite. In that case, the district court decision determining liability was called a final judgment because

the court had not yet entered an injunction when an appeal was filed. Rather, as demonstrated above, case law requires dismissal—for lack of standing—where the challengers are not injured and will not gain relief. Such is also the underpinnings of cases rejecting claims on mootness grounds because a judgment in plaintiff's favor that does not grant relief would be merely advisory. *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir.2004) (explaining that a case must be dismissed on mootness grounds if it becomes "impossible for the court to grant any effectual relief whatever to a prevailing party") (quotation omitted); *Gov't of V.I. v. Hatchette*, No. CIV.A.1999-047, 2002 WL 169209, at *4 (D.V.I. Jan. 30, 2002) ("[i]n the absence of any means of granting Hatchette effective relief in this matter [because the Government Employees Service Commission lacked the authority], we must dismiss this appeal as moot") (citation omitted); *see also Chong v. Dist. Dir., INS*, 264 F.3d 378, 383–84 (3d Cir.2001) ("[m]ootness issues must be resolved even when not raised by the parties, before turning to the merits").

A case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 132 S.Ct. 2277, 2287 (2012) (internal quotation marks omitted). The lack of necessity for Plaintiffs' requested relief moots the case, especially when Plaintiffs can follow Pennsylvania's procedure and petition the Secretary to examine the voting system which includes the voting machines. *See e.g. 24th Senatorial Dist. Republican Comm.*, 820 F.3d at 633 ("[b]ut even if we assume Moxley has a legally protected interest, he still fails to demonstrate how that injury is redressable by a decision of this Court").

As for the requested declaratory relief, Defendants rely upon *Green v. Mansour*, 474 U.S. 64, 72 (1985); *Great Lakes Co. v. Huffman*, 319 U.S. 293 (1943) (holding that a declaratory judgment was not available to obtain a determination of the constitutionality of a state tax even though the relevant federal statute prohibited federal courts only from issuing injunctions against

the collection of such taxes); *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (holding that a declaratory judgment declaring a state criminal statute unconstitutional was unavailable where it would have much the same effect as an injunction prohibiting enforcement of the statute), and *New Jersey Educcation Association v. New Jersey*, No. 11-cv-5024, 2012 WL 715284, *11 (D.N.J. Mar. 5, 2012); *see Haynes v. Ottley*, No. CV 2014-70, 2014 WL 5469308, at *7 (D.V.I. Oct. 28, 2014) (where the requested declaratory relief was simply a means to obtain injunctive relief and the proposed plaintiffs could not attain their desired relief, the court denied a motion for leave to amend the complaint as futile).

Whether the standing analysis is thus considered directly or through a perspective of there being a lack of remedy, Stein's claims cannot be pursued.

### B.     Reitz Lacks Standing

Many of the same arguments foreclose Reitz's claims in this litigation.

*First*, while Reitz argues that he was "forced to vote on unsecure, error-prone machines" he has not factually alleged that he had any problem with casting his vote.  ECF 71, ¶¶ 10, 15, 115, 116 (all of the allegations mentioning Reitz and none alleging that he had any trouble voting). Further, his reference to two Tenth Circuit cases misses the mark.  *Citizen Center v. Gessler*, 770 F.3d 900, 913-14 (10th Cir. 2014) concluded that there was standing for an equal protection claim where it had been factually alleged that the plaintiff's ballot had been traced but that other ballots had not.  Such allegations are strikingly at odds with what Reitz says about his vote this year. Further, the allegations of disparate treatment in *Gessler* were insufficient to raise a First Amendment claim because the voter intended to vote and, thus, there had been no chilling of his

13

rights.[5]  *American Civil Liberties Union of New Mexico v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008), involved a far different challenge to a Voter ID law that required those voting in person to have ID but not requiring the same for absentee voters.

*Second*, Reitz argues that he was "arbitrarily prevented from exercising a right conferred by state law"—presumably, the right to seek a recount and the right to contest an election. ECF 75-1 at 12.   Reitz's factual basis for his conclusion that he was "arbitrarily prevented" from exercising such "rights" is that the Montgomery County Board of Elections rejected his petition on timing grounds and that a court dismissed his petition for failing to pay a fee.  As for the contest that he filed, he argues that he withdrew it because the Commonwealth Court set a $1 million bond.  ECF 75-1 at 12-13.[6]  Significantly, the actions that Reitz alleges actually deprived him of his rights were undertaken by others who are not party to this litigation.   And this fact distinguishes Reitz's arguments from those raised by Stein in Michigan.  *Cf. Stein v. Thomas*, --- F. Appx. ---, 2016 WL 7131508 (6th Cir. 2016) (the provision at issue was a statutory two-day waiting period before a recount could start and delaying the recount by this time would mean that it could not get done in time and, thus, the statutorily imposed waiting period deprived the plaintiff of the ability to have the recount done).[7]

*Third and fourth*, speculation as to what may happen to Reitz in future elections or some generalized claim that the circumstances were unconstitutional—even though there is no factual

---

[5]      Reitz offers no argument as to how his use of Montgomery County's voting machines impeded his due process or First Amendment rights.

[6]      As this Court found, Commonwealth Court ordered the posting of a bond after the hearing was to occur and even stated that it would modify the bond for good cause shown.  *See Stein*, --- F. Supp. 3d at ---, 2016 WL 7188624, *3.

[7]      The nature of Reitz's claims also distinguishes this case from *LaRoque* where the challenged provision prohibited a candidate's ability to participate in a referendum.

allegation that Reitz was actually burdened by the voting machines—simply does not suffice to establish standing.

## IV.     Howe, Knight, Cook, and Kupka Lack Standing

As Defendants demonstrated in our previous brief, since Stein and Reitz lack standing, this Court lacks subject matter jurisdiction and, accordingly, Stein and Reitz cannot add new plaintiffs to shore up this deficiency.   The cases on which Stein and Reitz rely all deal with substituting plaintiffs in class action matters and, thus, do not change this conclusion.   *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *Trowbridge v. Cuomo*, 2016 WL 7489098 (S.D.N.Y. Dec. 21, 2016); *Oetting v. Heffner*, 2015 WL 9190629 (E.D. Pa. Dec. 17, 2015).   As for Cook, no reasoned argument is presented—instead, the entirety of the discussion is tucked into a footnote.   *See* ECF 75-1 at 14 n.7.   Case law holds that such arguments should not be considered. *See*, *e.g.*, *Lunn v. Prudential Ins. Co. of Am.*, 283 F. Appx. 940, 943 (3d Cir. 2008); *Lavorgna v. Potter*, 2007 WL 1173675, *3 n.1 (W.D. Pa. Apr. 18, 2007).   And, in any event, for the same reasons that Reitz lacks standing so, too, does Cook.

As for Howe, Knight, and Kupka, these three Montgomery County voters allege that when they went to vote a light next to the "no vote" option was lit.   *See* ECF 71, ¶¶ 84-86.   They further speculate that their vote was not properly counted.   *See* ECF 71, ¶¶ 11-12, 14.[8]   Based on this single observation and their speculation, they argue that they have standing to raise a host of constitutional claims that are aimed at the electronic voting machines, the recount process, and the contest process.   Howe, Knight, and Kupka did not try to contest the election.   Similarly, Howe, Knight, and Kupka did not seek a recount in Montgomery County.   Absent such facts, they lack

---

[8]     Plaintiffs close their eyes to the distinction between a lit no-vote box and a light next to the no-vote box, and the mere fact that a light next to a box may have been lit does not mean that the no-vote was actually cast.

any ability to challenge these provisions of state law because, put simply, they have not been harmed by these provisions. Moreover, nowhere in the Amended Complaint is there any specific challenge to the provision of Pennsylvania law that allows the use of electronic voting machines. As with Stein and Reitz--Howe, Knight, and Kupka cannot require Defendants to compel counties to open up their machines for a forensic examination, and invalidation of the recount and contest provisions will mean that there will be no voter-initiated recount or contest. Because the reasons Stein and Reitz lack standing equally apply to Howe, Knight, and Kupka, they cannot be added as plaintiffs and the Amended Complaint must be dismissed.

## V.     Plaintiffs Cannot Get the Relief They Want from Defendants

Defendants are hiding from nothing, and this case is far different than the *Constitution Party* case where the challenge was to ballot access. Defendants' point is that Plaintiffs ask this Court to order the cracking open of electronic voting machines in any number of the 67 counties of the Commonwealth. *See* ECF 71, Prayer for Relief (asking this Court to "[e]njoin Defendants to permit forensic examination by Plaintiffs of electronic voting machines and systems used in Pennsylvania, including in Montgomery County").[9] This clearly is mandatory injunctive relief and is an extraordinary request. Without counties that own/operate/maintain the machines and without manufacturers that have interests in their proprietary information, there is no ability for this Court to provide this extraordinary mandatory relief. *See Snyder v. Millersville Univ.*, No..

---

[9]     That these parties are needed to afford the relief that Plaintiffs request seems patent. As such, the burden shifts to Plaintiffs to demonstrate why the parties cannot be joined, to otherwise negate the need for joinder, and to actually join the needed parties upon court order. *See Kendall v. Superior Court of V.I.*, No. 3:10-CV-00109-CVG-RM, 2012 WL 4620085, *1 (D.V.I. Oct. 3, 2012); *see* Wright & Miller § 1609 ("when an initial appraisal of the facts reveals the possibility that an unjoined party whose joinder is required under Rule 19 exists, the burden devolves on the party whose interests are adverse to the unjoined party to negate this conclusion and a failure to meet that burden will result in the joinder of the party or dismissal of the action"); *Wilson v. The Canada Life Assur. Co.*, No. 4:08-CV-1258, 2009 WL 532830, *7 (M.D. Pa. Mar. 3, 2009)).

07-CV-1660, 2008 WL 5093140, *12 (E.D. Pa. Dec. 3, 2008) (citing *Okpalobi v. Foster*, 244 F.3d

405, 431 (5th Cir.2001) ("if the suit is against the wrong officials, no claim for injunctive relief

has been stated")); *see also Williams v. Dovle*, 494 F.Supp.2d 1019, 1024 (W.D.Wis.2007) ("a

claim for injunctive relief can stand only against someone who has the authority to grant it").  We

have noted this deficiency time and time again.  Plaintiffs have chosen not to correct it.[10]  They

should be provided with no further chances to do so.[11]

## VI.    Plaintiffs' Constitutional Challenges Fail[12]

Plaintiffs exalt the right to vote and the right to have those votes counted.  In this, Plaintiffs

and Defendants completely agree and on November 8, 2016, millions of Pennsylvanians went to

the polls, cast ballots, and elected a variety of public officials who were inaugurated and who now

serve.  On this there is really no dispute and Plaintiffs' speculation about hacking and observations

about lights and "no-votes" in Montgomery County does not suggest otherwise.   In the end,

---

[10]     This conclusion is not changed by the fact that the Secretary has the authority to examine voting machines and approve voting machines, upon a properly submitted request.  *See* 25 P.S. § 2621(b); 25 P.S. § 3031.5.  Plaintiffs have not asked that the Secretary examine the machines— they want an order compelling the 67 counties to permit Plaintiffs' "experts" to crack open the machines and perform a forensic examination—whatever that is.  Indeed, Plaintiffs' demand, if granted, would actually require the Secretary to abdicate his duty as the voting machines would be subjected to the acts of Plaintiffs and their cadre of "experts" over whom the Secretary has no control.  In short, allowing a forensic examination by Plaintiffs' team would result in the inability to use such machines in the future as custodial control would have been broken.

[11]     Plaintiffs cite *Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.*, 635 F.3d 87 (3d Cir. 2011) and argue that the mandatory injunctive relief requested is available to them because Defendants can simply work with 67 counties and manufacturers.  *See* ECF 75-1 at 20-21.  Notably, in that case, the plaintiff had previously settled claims involving access to the stations with the City of Philadelphia.  635 F.3d at 98.  Further, the Third Circuit found important the fact that the issue of necessary parties was only raised late in the process and that the City had never sought to intervene to protect its interests.  *Id*.  As such, the Third Circuit rejected SEPTA's position that the City was needed in the litigation.

[12]     Plaintiffs take two pages to argue against the *Rooker-Feldman* doctrine.  While this Court analyzed the issue in its previous opinion, Defendants did not advance that argument in our Motion to Dismiss—although, as a jurisdictional issue, this Court certainly can consider it *sua sponte*—and we offer no further position on it.

Plaintiffs' cobbled constitutional contentions fail because: (1) there is no constitutional right to a paper ballot or a paper-verified ballot or a forensic examination of electronic voting machines; (2) there is no constitutional right to a state-wide recount or contest; and (3) even if such rights existed, the Election Code's allowance of electronic voting machines is constitutional and the myriad of post-election challenge processes available in Pennsylvania pass muster.

### A.     Pennsylvania Is Constitutionally Required To Regulate Elections

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections" because "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (further quotations omitted). "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58, 364 (1997); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citing *Burdick[*, 504 U.S. at 433]; *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)). As decided shortly before the election by Judge Pappert, Pennsylvania's "Election Code contains numerous provisions designed to maintain and uphold the integrity of the vote." *Republican Party of Pa. v. Cortés*, No. CV 16-05524, 2016 WL 6525409, at *2 (E.D. Pa. Nov. 3, 2016). And, in sum, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

### B.     Pennsylvania's Legitimate Regulations

To fulfill its constitutional obligation, the Commonwealth—in 1937—enacted the Election Code. *See Banfield v. Cortés*, 110 A.3d 155, 159 (Pa. 2015) (referencing the initial Election Code in 1937). Initially, Pennsylvania allowed voting through paper ballots or mechanical lever

machines.  *Id*.  In 1980, the General Assembly amended the Election Code to allow for the use of electronic voting machines.  *Id*. at 159 (citing 25 P.S. §§ 3031.1-3031.22.  In 2002, Congress enacted the Help America Vote Act ("HAVA") to reform the country's voting process in the wake of issues that arose in the 2000 presidential election.  *Id*. at 160.  Each of the 67 counties retained the option of choosing its voting system so long as the chosen system met federal and state requirements.  *Id*. at 160.  The Secretary certifies that systems comply with the law and, from there, the counties may choose from among certified systems and independently procure such systems for use in their respective election districts.  *Id*. at 160 (citing 25 P.S. § 2621(b) and 25 P.S. § 3031.4).  The local boards of election then appoint custodians to prepare the chosen voting system for use.  *Id*. at 160 (citing 25 P.S. § 3031.10).

The Election Code sets forth a variety of post-election methods to challenge the results. For example, if the election is decided by less than 0.5%, the Secretary automatically orders a state-wide recount.  *See* 25 P.S. § 3154(g)(1)(i).  The Commonwealth pays for this effort.  *See* 25 P.S. § 3154(g)(8).  Under the Election Code, the Secretary must, by 5:00 pm on the second Thursday after Election Day, order the state-wide recount.  *See* 25 P.S. § 3154(g)(2).  The Secretary must also notify each candidate and each county chair.  *See* 25 P.S. § 3154(g)(3).  The recount must be held by the third Wednesday following the election.  *See* 25 P.S. § 3154(g)(5)9ii). It must be completed by noon on the following Tuesday.  *See* 25 P.S. § 3154(g)(5)(iii).   Given this and given the need to conclude elections, there can be no doubt that the 0.5% threshold is a rational exercise of line drawing.

Beyond this, the Election Code allows for voters to contest the election.  *Stein*, --- F. Supp. 3d at ---, 2016 WL 7188624, *2 (citing 25 P.S. §§ 3291, 3351, 3456; 42 Pa.C.S. § 764).  To contest an election, 100 or more voters must file a petition with Commonwealth Court.  *Id*.  The petition must be filed within 20 days of Election Day.  *Id*.  The petition may be supplemented with

at least five affidavits stating, under oath, that the "'election was illegal and the return thereof not correct.'"  *Id*. at *2 (quoting 25 P.S. §§ 3456-3457).  The redress for a successful contest is setting aside the election and the petitioners must post a bond "'conditioned for the payment of all costs which may accrue in said contested nomination or election proceeding.'"  *Id*. at *2 (quoting 25 P.S. § 3459).

In addition, the Election Code provides two more methods for voters to seek a recount/recanvass.  *Id*. at *2.  First, voters may petition the County Board of Elections.  *Id*. at *2 (citing 25 P.S. § 3154(e).  These petitions must be supported by affidavits from three voters in an individual precinct and must aver that fraud or error not apparent on the face of the returns has occurred.  *Id*.  The petition must be filed before the county completes its computation of all returns.  *Id*.  A rejection by the County Board can be appealed to Common Pleas Court.  *Id*. at *2 (citing 25 P.S. § 3157(a); *Rinaldi v. Ferrett*, 941 A.2d 73, 76-77 (Pa. Cmwlth. 2007)).  And, second, voters may petition directly to Common Pleas Court.  *Id*. at *2 (citing 25 P.S. § 3261-3262).  Three voters from the same precinct must verify that fraud or error not apparent from the election return was committed in the vote tabulation.  *Id*. at *2 (citing 25 P.S. § 3261(a)).  Those petitioning must remit either $50 or a $100 bond.  *Id*. at *2 (citing 25 P.S. § 3262(b.2)).  These petitions must be filed within five days after the completion of the County Board's computation of the vote.  *Id*. at *2 (citing 25 P.S. § 3263(a)(1)).

## C.    Pennsylvania's Decision to Permit Electronic Voting Machines Is Constitutional

As it relates to the use of electronic voting machines, Plaintiffs argue that the use of these machines constitutes a constitutional violation because there is "no way to verify that the machine properly recorded their vote, and no way to determine whether the machine was compromised."  ECF 75-1 at 24.  First, Defendants note that Plaintiffs have not actually challenged the provision

20

of the Election Code that permits for the use of such machines.  Further, Plaintiffs' argument is not supported by case law.

In *Weber v. Shelley*, 347 F.3d 1101 (9thCir. 2003), the Ninth Circuit addressed a constitutional challenge to electronic voting machines that were being used in California.  While noting that the right to vote is fundamental, the Court noted that "it is also clear that states are entitled to broad leeway in enacting reasonable, even-handed legislation to ensure that elections are carried out in a fair and orderly manner."  *Weber*, 347 F.3d at 1105.  *See also Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) ("there must be a substantial regulation of elections if they are to be fair and honest" and states have broad leeway in "enact[ing] comprehensive and sometimes complex election codes" that "govern … the voting process itself"); *Storer v. Brown*, 415 U.S. 724, 730 (1974) ("as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes").

Given these maxims, the Ninth Circuit concluded that it is well within the discretion of the Legislature to make a policy choice between paper ballots and electronic voting machines.  Indeed, such a decision is not "subject to strict scrutiny simply because [a] particular balloting system may make the possibility of some kinds of fraud more difficult to detect."  *Weber*, 347 F.3d at 1106.  "Rather, the question is whether using a system that brings about numerous positive changes (increasing voter turnout, having greater accuracy than traditional systems, being user friendly, decreasing the number of mismarked ballots, saving money, etc.), but lacks a voter-verified paper ballot, constitutes a 'severe' restriction on the right to vote."  *Id*.  And to this question, the Ninth Circuit answered:  "We cannot say that use of paperless, touchscreen voting systems severely restricts the right to vote.  No balloting system is perfect.  Traditional paper ballots, as became evident during the 2000 presidential election, are prone to overvotes,

undervotes, 'hanging chads,' and other mechanical and human errors that may thwart voter intent. *Bush v. Gore*, 531 U.S. 98 (2000).  Meanwhile, touchscreen voting systems remedy a number of these problems, albeit at the hypothetical price of vulnerability to programming 'worms.'"  *Id*.  In the end, the Court reasoned that "it is the job of democratically elected representatives to weigh the pros and cons of various balloting systems.  So long as their choice is reasonable and neutral, it is free from judicial second-guessing….California made a reasonably, politically neutral and non-discriminatory choice to certify touchscreen systems as an alternative to paper ballots.  Likewise, Riverside County in deciding to use such a system.  Nothing in the Constitution forbids this choice."  *Id*. at 1107.[13]

This same analysis was used by the Pennsylvania Supreme Court to conclude that the use of electronic voting machines did not violate constitutional rights. True enough, *Banfield* is a state court decision relating to provisions of the Pennsylvania Constitution; however, Plaintiffs offer nothing to suggest that the state standards are different than the federal ones.   Indeed, the Pennsylvania Supreme Court relied on federal case law in reaching its constitutional conclusions. *See Banfield*, 110 A.3d at 175-78.   In *Banfield v. Cortés*, 110 A.3d 155 (Pa. 2015), the Pennsylvania Supreme Court was presented with a significant evidentiary record regarding electronic voting machines.[14]   After rejecting various other claims, the Supreme Court turned to the constitutional challenges.  In rejecting those challenges, the Court used federal case law and concluded that "the Election Code bestows upon the Secretary the responsibility to choose between several voting systems with varying advantages and disadvantages" and "we see no

---

[13]     *Weber* relied on many other federal decisions for support.  *See Weber*, 347 F.3d at 1107 n.2.

[14]     The duration of the *Banfield* litigation counsels against relitigating those claims in this post-election litigation because, if the timeline of the *Banfield* case is any guide, Plaintiffs' challenge may drag on until the 2024 election, at which point the 2016 results are assuredly moot.

reason to interfere with the Secretary's discretion in certifying the DREs at issue absent a showing that the decision was unreasonable or discriminatory." *Id*. at 178.

The fact that the provision of the Election Code allowing electronic voting machines is constitutional is not altered by the observations of a few Montgomery County voters or "no-votes" that were recorded in Montgomery County.  Plaintiffs offer absolutely no allegation regarding other machines that were used in Pennsylvania and, indeed, they concede machines in other counties were "well-functioning."  ECF 75-1 at 12.  Further, if Plaintiffs really believe that the machines in Montgomery County were defective, they can petition the Secretary to examine the system.  In other words, the answer is not to invalidate the totality of the Election Code.  *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) (recognizing the "canon of constitutional avoidance" as being a directive to avoid "serious constitutional" questions when possible).[15]

### D.    Pennsylvania's Post-Election Processes Are Constitutional

Plaintiffs also challenge provisions relating to post-election challenge processes and they argue that these provisions, when combined together, impose arbitrary and unreasonable hurdles. As before, Plaintiffs' challenges fail.[16]

---

[15]    This is not to say that other policy choices could not be constitutionally made in the future. Our point is that the provision of the Election Code allowing for electronic voting machines—which have not been specifically challenged—is constitutional.

[16]    Plaintiffs assert that "[n]ot once have Defendants claimed a statewide recount is even *possible*."  ECF 75-1 at 30.  They appear to be unfamiliar with the 2011 race for the Democratic nomination for a seat on the Commonwealth Court, in which the "impossible" statewide recount was not only possible, but, in fact, occurred.  Scott Kraus, *Recount ordered in Democratic primary for Commonwealth Court*, Morning Call (Allentown, Pa.), May 28, 2011, http://articles.mcall.com/2011-05-28/news/mc-pa-court-recount-20110528_1_pittsburgh-lawyer-statewide-races-votes ("the Pennsylvania Department of State has ordered a recount in the close-fought Democratic primary for a spot on Commonwealth Court"); Tim McNulty, *Boockvar wins recount*, Early Returns, Pitt. Post-Gazette (June 8, 2011, 11:40 AM), http://earlyreturns.sites.post-gazette.com/index.php/early-returns-20/53-post-gazette-staff/2878-boockvar-wins-recount.

As detailed above, the Election Code provides many post-election avenues of challenge for voters.  For example, where the result is close—less 0.5% of the total vote—the Secretary must direct a state-wide recount at the Commonwealth's expense.[17]  25 P.S. § 3154(g)(1)(i); 25 P.S. § 3154(g)(8).  The Election Code also allows for a state-wide election contest if certain requirements are met.  *Stein*, --- F. Supp. 3d at ---, 2016 WL 7188624, *2 (citing 25 P.S. §§ 3291, 3351, 3456; 42 Pa.C.S. § 764).[18]  Beyond these options, the Election Code provides two more methods for voters to seek a recount/recanvass and adverse decisions can be further appealed.  *Id*. at *2 (citing to the Election Code).  In all, then, there are at least four post-election ways to take issue with an election and all of these ways are solely creations of state law.  *See Stein*, --- F. Supp. 3d at ---, 2016 WL 7188624, * 11 ("[t]he right to have one's vote counted does not, however, encompass the right to have one's vote verified through a mandatory statewide recount").  Indeed: "There is no case law recognizing an independent federal right to a recount that either this Court or the parties have come across, in the absence of actual deprivation of voting rights."  *Id*. at *11 (citing, among other things, Plaintiffs' counsel's concession from the Preliminary Injunction hearing).[19]

As with any election challenge, certain requirements must be met such as affidavits setting forth factual information and, given the ramifications of success, bonds or filing fees.  Because "'there must be a substantial regulation of elections if they are to be fair and honest and if some

---

[17]     While the Presidential election in Pennsylvania was close, it did not come within this legislatively set threshold—the difference between Mr. Trump and Secretary Clinton was 44,292 votes, which equated to 0.72% of the 6,115,402 total votes cast.

[18]     Dr. Stein and Reitz, on the very last day, tried to contest the election but later abandoned that effort as they had failed to file the statutorily-required affidavits.  A defect that was sure to be fatal to their case.  *See Morrison v. Shealer*, 128 A. 87 (Pa. 1925); *In re N. Union Twp. Election*, 95 A. 421 (Pa. 1915).

[19]     This is one reason why Plaintiffs' reliance on ballot access cases misses the mark.  Certainly, candidates and political parties and supporters have First Amendment rights—and other rights—to join together and access election ballots.  No case, however, has held that a candidate or party or supporter or voter has a constitutional right to a state-wide recount.

sort of order, rather than chaos, is to accompany the democratic processes,'" Pennsylvania "has developed its own statutory framework by which voters may challenge elections, a framework courts have applied for decades without any hint that the required procedures might violate the Constitution." *Stein*, --- F. Supp. 3d at ---, 2016 WL 7188624, at *12 (first quotation from *Storer v. Brown*, 415 U.S. 724, 730 (1974 and second point citing numerous Pennsylvania cases).  In light of the "'important regulatory interest' in "ensuring that election challenges are swiftly and fairly resolved to preserve 'the integrity of the vote'" such reasonable and nondiscriminatory requirements are constitutional.  *Id*. at *12 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

Apparently, though, Plaintiffs want easier ways to challenge elections.  Plaintiffs support this request not through an examination of the statute—which sets forth clear standards—but by observations of folks who claim to have been confused over what they may have been told by local officials.  *See* ECF 75-1 at 1, 12, 24, 27, 28, 31.  The language of the Election Code is quite clear and, in any event, Plaintiffs have not sued such local officials in this litigation.  Further, Plaintiffs' troubles meeting filing deadlines under the Election Code may stem from their own delay.  For example, while Plaintiffs observed the voting machines on the day of the election and while the unofficial results were known at least as of November 9, 2016, Stein's fundraising campaign for a recount did not commence for fully another two weeks and, for reasons best known to themselves, Plaintiff Reitz (represented by the same counsel as in this matter) and his co-plaintiffs declined to petition the court for a contest until November 28.  *In re Matter of the 2016 Presidential Election*, No. 659 M.D. 2016 (Pa. Commw. Ct.).

Beyond all of this, the fact remains that this Court cannot rewrite the statute to Plaintiffs' liking.  For example, it cannot reduce the size of a fee/bond or lessen the number of petitioners that are needed to mount a challenge.  If Plaintiffs prevail, what will happen is that the challenged

provisions of the Election Code will be stricken and enjoined.  And, there will either be no process for contesting an election or challenging an election or seeking a recount; or there will be the ability for a single person—regardless of the election results—to file a piece of paper with no facts and no fee and no bond and require the Commonwealth and 67 counties to undertake significant post-election efforts.

This is yet another reason why Plaintiffs' reliance on ballot access cases is wholly misplaced.  In such cases, the end result was an increased ability to access a ballot where voters could then have options in the voting booth.  Here, votes have been cast and, if successful, there will either be no basis to challenge or contest elections or seek a recount—because the provisions will have been stricken and enjoined—or a single person will be able to file an unverified piece of paper with no fee and impose on the Commonwealth and the 67 counties the immense burdens associated with such litigation.  Plaintiffs' rejoinder that this will not occur misses the point as success by them will eliminate any limiting principle for such challenges.

## VII.   CONCLUSION

This Court should dismiss Plaintiffs' Amended Complaint with prejudice, and deem Plaintiffs' Cross Motion as moot, as set forth in the attached proposed order.

<div style="margin-left:40%">

Respectfully submitted,

JOSH SHAPIRO
Attorney General

/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009

</div>

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone:  215-560-2127
Fax:  717-772-4526

Kenneth Joel
Chief Deputy Attorney General

**CERTIFICATE OF SERVICE**

I, Sue Ann Unger, hereby certify that the Defendants' motion has been filed electronically on April 14, 2017, and is available for viewing and downloading from the Court's Electronic Case Filing System.  Plaintiffs' counsel is on the Court's electronic email notice list and has thus been served.



By:   /s/ Sue Ann Unger
      Sue Ann Unger
      Senior Deputy Attorney General
      Attorney I.D. No. 39009

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107
Telephone:  (215) 560-2127
Fax:  717-772-4526