UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JILL STEIN, RANDALL REITZ, ROBIN HOWE,
SHANNON KNIGHT, EMILY COOK, and
KIMBERLY KUPKA,

                    Plaintiffs,

        -against-                                        No. 16-CV-6287 (PD)

PEDRO A. CORTÉS, in his official capacity as
Secretary of the Commonwealth; and JONATHAN
MARKS, in his official capacity as Commissioner
of the Bureau of Commissions, Elections, and
Legislation,

                    Defendants.


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**



Montgomery McCracken Walker & Rhoads LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-7684

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ...................................................................................ii-iv

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ...............................................................................................................2

    I.      THE COURT SHOULD DECIDE CROSS-MOTIONS FOR SUMMARY
           JUDGMENT ............................................................................................2

    II.     THESE PLAINTIFFS ARE THE RIGHT PEOPLE TO BRING THIS CASE ......3

          A.      Stein .................................................................................................3

          B.      Reitz and Cook...............................................................................5

          C.      The Disenfranchised Voters.........................................................6

    III.    UNSPECIFIED ADDITIONAL PARTIES ARE NOT NECESSARY, BUT
           EVEN IF THEY WERE, DISMISSAL IS NOT THE REMEDY..........................7

    IV.    DEFENDANTS FAIL TO JUSTIFY THE BURDENS THE ELECTION CODE
           IMPOSES ON THE RIGHT TO VOTE................................................................8

          A.      The Burdens Are Severe ................................................................9

          B.      The State's Unidentified Interests Are Insufficient ...................11

CONCLUSION..........................................................................................................11

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Appeal of Bradley*,
    42 A.2d 155 (Pa. 1945) .................................................................................. 11

*Banfield v. Cortés*,
    110 A.3d 155 (Pa. 2015) ................................................................................ 9

*Belitskus v. Pizzingrilli*,
    343 F.3d 632 (3d Cir. 2003) .......................................................................... 4

*Citizen Ctr. v. Gessler*,
    770 F.3d 900 (10th Cir. 2014) ...................................................................... 5

*Common  Cause/Ga. v. Billups*,
    553 F.3d 1340 (11th Cir. 2009) .................................................................... 6

*Const. Party of Pa. v. Aichele* (*Constitution Party I*),
    757 F.3d 347 (3d Cir. 2014) .......................................................................... 4

*Const. Party of Pa. v. Cortés* (*Constitution Party II*),
    824 F.3d 386 (3d Cir. 2016) .......................................................................... 7

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991) ........................................................................................ 7

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) ..................................................................... 3, 6

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ..................................................................... 3, 6

*Hassan v. City of New York*,
    804 F.3d 277 (3d Cir. 2015) .......................................................................... 5

*In re Pazdrak's Contested Election*,
    137 A. 109 (Pa. 1927) ................................................................................... 11

*In re Reading Sch. Bd. Election*,
    634 A.2d 170 (Pa. 1993) .............................................................................. 10

*In re Recount of Ballots Cast in General Election on Nov. 6, 1973*,
    325 A.2d 303 (Pa. 1974) .............................................................................. 11

*In re Rockefeller Props., Inc.*,
  184 F.3d 280 (3d Cir. 1999) ................................................................................ 3

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
  11 F.3d 399, 404-05 (3d Cir. 1993) .................................................................... 8

*Kendall v. Superior Court*,
  No. 3:10-CV-00109, 2012 WL 4620085 (D.V.I. Oct. 3, 2012) ......................... 8

*LaRoque v. Holder*,
  650 F.3d 777 (D.C. Cir. 2011) ........................................................................... 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 5

*McTernan v. City of York*,
  577 F.3d 521 (3d Cir. 2009) ............................................................................... 2

*Nader v. Blackwell*,
  545 F.3d 459 (6th Cir. 2008) ............................................................................. 4

*Olshansky v. Montgomery Cnty. Election Bd.*,
  412 A.2d 552 (Pa. 1980) .................................................................................. 11

*Pa. Psych. Soc'y v. Green Spring Health Servs., Inc.*,
  280 F.3d 278 (3d Cir. 2002) ............................................................................... 5

*Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*,
  913 F.2d 64 (3d Cir. 1990) ................................................................................. 6

*Rogers v. Corbett*,
  468 F.3d 188 (3d Cir. 2006) .......................................................................... 9, 11

*Schulz v. Williams*,
  44 F.3d 48 (2d Cir. 1994) ................................................................................... 4

*Shays v. FEC*,
  414 F.3d 76 (D.C. Cir. 2007) ............................................................................. 4

*Stewart v. Blackwell*,
  444 F.3d 843 (6th Cir. 2006) ............................................................................. 6

*Weber v. Shelley*,
  347 F.3d 1101 (9th Cir. 2003) ........................................................................... 9

*Wilson v. Canada Life Assur. Co.*,
  No. 4:08-CV-1258, 2009 WL 532830 (M.D. Pa. Mar. 3, 2009) ....................... 8

**Rules and Statutes**

25 P.S. § 3154 ............................................................................................................ 10

25 P.S. § 3263 ............................................................................................................ 10

25 P.S. § 2621(b) ......................................................................................................... 7

Fed. R. Civ. P. 19 ........................................................................................................ 8

## PRELIMINARY STATEMENT

Defendants would like the Court to adopt their version of the facts—in which Pennsylvania's voting machines are reliable, voters were not disenfranchised in the 2016 election, and the post-election recount process is remotely functional—without introducing any evidence to support it.  That is not how the law works.

On this motion, there is no genuine dispute of material fact as to all of the following issues:

- Electronic voting machines without voter verification used across most of the Commonwealth are unreliable.

- Whether due to malfunction or malfeasance, those machines disenfranchised Pennsylvania voters of all political stripes in November 2016, including voters who intended to vote for Plaintiff Jill Stein.

- Because they are unreliable, the machines are likely to disenfranchise voters again.

- The process for voters to ensure that their votes count is prohibitively burdensome.  The deadlines to request a recount are secret, unknown even to the Commonwealth's top election officials, and routinely misapplied at the county level.  Courts can and do impose prohibitively high costs and fees.  Filing petitions in every precinct across the Commonwealth is logistically impossible.

The question before the Court is whether it is constitutional to compel voters to vote on unreliable machines that fail to count their votes, and then to erect arbitrary and irrational obstacles that eviscerate the procedures available to them to make their votes count.  The question answers itself: No.  The undemocratic election system administered by Defendants violates the Constitution.  Plaintiffs' cross-motion for summary judgment should be granted.

1

**ARGUMENT**

**I.   THE COURT SHOULD DECIDE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Defendants continue to dispute what is alleged in the pleadings, while justifying it by citing cases that concern the preclusive effect of preliminary injunction rulings.  *See* Defs.' Opp'n (Dkt. #78) at 6.  But granting preclusive effect to preliminary findings and resolving factual disputes in Defendants' favor on a Rule 12(b)(6) motion are two different things.  Neither is proper here.

Cases in which preliminary injunction findings can be preclusive are "rare."  *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009).  Preclusion is not appropriate unless "the issues on the two motions [are] exactly the same."  *Id.*  Here, the issues are markedly different.  On the preliminary injunction motion, the Court based its conclusions in part on the fact that Plaintiffs "question[ed] whether Pennsylvania voters were correctly counted, [but did] not so allege."  PI Mem. (Dkt. #55) at 13.  Plaintiffs so allege now.  *See, e.g.*, Am. Compl. (Dkt. #71) ¶¶ 1, 11-12, 14, 88.  The Court's preliminary standing analysis asked whether Plaintiffs had standing to obtain "a hand recount of a sample of paper ballots in optical-scan Counties and a forensic examination of six Counties' election management systems"—a different remedy than Plaintiffs now seek.  PI Mem. at 15.  The preliminary injunction hearing focused on hacking and the feasibility of a remedy.  The Court did not extensively analyze the burdens imposed on voters, and its analysis did not account for the disenfranchisement of voters, which was not originally alleged.  *See id.* at 24.

Defendants cite no authority for the proposition that, when *not* giving preliminary findings preclusive effect, a court may consider evidence outside the pleadings or draw inferences in Defendants' favor in ruling on a Rule 12(b)(6) motion.  Yet that is what Defendants

continue to do.  For instance, Defendants question whether Robin Howe, Kimberly Kupka, and

Shannon Knight were really disenfranchised, Defs.' Opp'n at 15, and claim that Plaintiffs'

difficulty in obtaining a recount was their own fault, *id.* at 25.  The Court must either ignore

these attempts to controvert the pleadings or convert the motion.  *See In re Rockefeller Props.,*

*Inc.*, 184 F.3d 280, 287-88 (3d Cir. 1999).  Defendants' insistence on disputing the allegations of

the Amended Complaint makes conversion the more logical course.

## II.    THESE PLAINTIFFS ARE THE RIGHT PEOPLE TO BRING THIS CASE

Standing is "generally an inquiry about the plaintiff: is this the right person to bring this

claim?"  *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016).  "The injury-in-fact

requirement exists to ensure that litigants have a personal stake in the litigation." *Danvers Motor*

*Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).  Plaintiffs include disenfranchised

voters and a candidate who earned voters that were not counted.  Defendants do not explain who

else could have a more personal stake in this controversy or be better suited to bring this case.

### A.    Stein

Defendants' attacks on Stein's standing are without merit.  Defendants virtually abandon

their argument that she must have a realistic chance of winning an election to challenge how it is

administered.  Instead they resort to disputing the facts without evidence and mischaracterizing

Plaintiffs' requested relief.

Defendants originally claimed that Stein lacked standing because she had no chance of

victory in the presidential election.  In response, Plaintiffs cited a host of cases authorizing third-

party candidates to challenge election administration practices without regard to their ultimate

chances of success, including on the basis that a candidate suffers injury-in-fact when deprived

of the ability to compete for votes.[1]  The most Defendants can say is that those cases involve ballot access (true, of course) and that "[i]t seems obvious that a candidate would have standing to challenge provisions that may prevent—or make harder—ballot access."  Defs.' Opp'n at 9.  But it seems equally, if not more, obvious that a candidate would have standing to challenge election administration practices that deprive her of votes she earns.  Defendants offer no principled reason why a candidate should have to have a realistic chance of victory to challenge vote-counting procedures, but not to challenge ballot access procedures.  No such reason exists.

Instead, on the basis of mere say-so, Defendants seem to question that Stein was deprived of votes she earned.  *See id.* at 7-8.  But Plaintiffs introduced evidence that: (1) voters who wanted to vote for candidates saw their votes recorded as "no votes"; (2) there were an inexplicably high number of "no votes"; and (3) it is virtually certain that some of the erroneous "no votes" were really for Stein.  Defendants introduce no evidence calling any of these facts into question.  Whether the *named Plaintiffs* who saw the "no vote" light meant to vote for Stein is irrelevant.  On this record, there is no genuine dispute of material fact that Stein was deprived of votes she earned.

Defendants also claim that the undercounting of Stein's votes cannot confer standing "to demand a forensic examination . . . or a state-wide recount."  *Id.* at 8.  But it plainly *does* confer standing to seek declaratory and injunctive relief concerning the provisions of the Election Code that caused Stein to be deprived of votes.  *See* Am. Compl. at 38-39 (prayer for relief).  At this point, Plaintiffs do not even seek a recount at all.  *See id.*

---

[1] *See* Plfs.' Opp'n 9 (citing *Const. Party of Pa. v. Aichele* (*Constitution Party I*), 757 F.3d 347, 361-63 (3d Cir. 2014); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639-41 (3d Cir. 2003); *LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2011); *accord Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2007); *Nader v. Blackwell*, 545 F.3d 459, 471 (6th Cir. 2008); *Schulz v. Williams*, 44 F.3d 48, 52-53 (2d Cir. 1994).

Finally, Defendants fail to meaningfully challenge the application of the three-factor test for third-party standing. *See* Pltfs.' Mem. (Dkt. #75) at 10. Stein has standing to assert voters' rights because she suffered injury-in-fact; she has a sufficiently close relationship with voters; and ballot secrecy hinders voters' ability to protect their own rights. *See Pa. Psych. Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288-89 (3d Cir. 2002).

### B.     Reitz and Cook

Defendants fundamentally misunderstand the principle that unequal treatment, in and of itself, constitutes injury-in-fact. *See, e.g.*, *Hassan v. City of New York*, 804 F.3d 277, 289-90 (3d Cir. 2015); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 913-14 (10th Cir. 2014). Defendants try to distinguish *Gessler* on the basis that the plaintiff's ballot in that case had been traced. *See* Defs.' Opp'n at 13. That is wrong. In *Gessler*, the organizational plaintiff "did not allege that its members were among those whose ballots were traced." *Gessler*, 770 F.3d at 911. It therefore lacked standing to bring claims based on the possibility that a member's ballot was traced; that injury was too speculative. *See id.* at 912-13. But the organizational plaintiff had standing to bring equal protection claims because "[m]embers who live in counties that use traceable ballots are treated differently than members who live in counties that use untraceable ballots." *Id.* at 914. Exactly the same logic applies to Randall Reitz and Emily Cook. Whether or not they were disenfranchised, they are treated unequally—and suffer injury-in-fact—because they are forced to vote on unreliable electronic machines that may disenfranchise them while others are not.

Defendants similarly misapply the law in asserting that Reitz lacks standing to challenge the deprivation of his state law rights because "others who are not party to this litigation" were responsible. Defs' Opp'n at 14. Reitz need only suffer a deprivation that is fairly traceable to Defendants' administration of the Election Code. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This standard is more relaxed than a "requirement of tort causation," and no

"close causal link" is required.  *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990).  Defendants cannot seriously dispute that the denial of Reitz's state law right to a recount is fairly traceable to them.  The Election Code *creates and authorizes* the burdens that denied Reitz a recount: the administration of secret, shifting deadlines by county officials and the imposition of prohibitive costs and fees by courts.

Finally, Defendants merely assert that being forced to vote under unconstitutional circumstances and being subjected to a risk of future disenfranchisement do not confer standing.  *See* Defs.' Opp'n at 14-15.  But they ignore the cases holding that these injuries confer standing.  *See Common  Cause/Ga. v. Billups*, 553 F.3d 1340, 1351-52 (11th Cir. 2009); *Stewart v. Blackwell*, 444 F.3d 843, 854 (6th Cir. 2006), *vacated as moot*, 473 F.3d 692 (6th Cir. 2007).

## C.      The Disenfranchised Voters

Defendants' attack on the standing of Howe, Knight, and Kupka has no force.  As an initial matter, Defendants are wrong on the facts: Kupka not only sought a recount in her precinct and was denied, but also organized hundreds of *other* voters in submitting recount petitions.  *See* Am. Compl. ¶ 14; *id.* Ex. 21 ¶ 7.  More fundamentally, Defendants question these voters' standing only by ignoring the basic theory of Plaintiffs' case.  Defendants bizarrely complain that there is "no specific challenge to the provision of Pennsylvania law that allows the use of electronic voting machines."  Defs.' Opp'n at 16.  The whole idea of this lawsuit is that the use of unreliable electronic voting machines with no voter verification and the imposition of impossible obstacles to voters' efforts to have their votes counted, taken together, amount to an unconstitutional election administration system.  Defendants cite no legal authority suggesting that disenfranchised voters are the wrong people to bring this challenge.  *Cf. Davis*, 824 F.3d at 348; *Danvers Motor Co.*, 432 F.3d at 291.

While the question is moot because Stein and Reitz have standing to bring at least some claims, thus conferring Article III jurisdiction on the Court when the original Complaint was filed, the addition of Howe, Kupka, and Knight could cure any jurisdictional defect. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). Defendants simply point out that *McLaughlin* was a class action, but fail to explain why the absence of jurisdiction *ab initio* could be cured by amendment in a class action and not an individual action. *See* Defs.' Opp'n at 15.

Defendants also do not object to the Court exercising its authority under Federal Rule of Civil Procedure 21 to add Howe, Knight, and Kupka as plaintiffs to avoid the waste of time and judicial resources that would result from their simply re-filing the same lawsuit in the same court. *See* Pltfs.' Mem. at 15. To the extent necessary, the Court should therefore add Howe, Knight, and Kupka as parties under Rule 21 unopposed.

## III. UNSPECIFIED ADDITIONAL PARTIES ARE NOT NECESSARY, BUT EVEN IF THEY WERE, DISMISSAL IS NOT THE REMEDY

The Third Circuit has directly held that these Defendants are the right people to sue when challenging provisions of the Pennsylvania Election Code—even when other actors distributed throughout the political system play a role in the injury that the Code inflicts. *See Const. Party of Pa. v. Cortés* (*Constitution Party II*), 824 F.3d 386, 391 (3d Cir. 2016) (quoting *Constitution Party I*, 757 F.3d at 367). Defendants try to distinguish this holding on the basis that that case involved ballot access, *see* Defs.' Opp'n at 16, but they do not explain how that distinction makes a difference. Moreover, while Defendants assert that "crack[ing] open" voting machines in the context of this litigation would be a bad idea, *see id.* at 17 n.10, they cannot dispute the critical point that the Election Code gives the Secretary of the Commonwealth sufficient *authority* to manage and access voting systems across the Commonwealth to implement any relief that Plaintiffs obtain in this litigation. *See* 25 P.S. § 2621(b).

7

To the extent Defendants' vague arguments about joinder have any force, the only appropriate remedy is joinder. Where Rule 19 is invoked, the Court must first determine whether absent parties should be joined. If so, and if it is feasible to join them, the Court "*must* order*" that they be made parties. Fed. R. Civ. P. 19(a)(2) (emphasis added). Only if joinder is *not* feasible may the Court contemplate dismissal—and even then only if the absent party is "indispensable" under the equitable inquiry set forth in Rule 19(b). *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404-05 (3d Cir. 1993). Far from establishing some sort of burden-shifting framework in which Plaintiff must prove infeasibility, the cases on which Defendants rely make this very point. *Cf.* Defs.' Opp'n at 16 n.9 (citing *Kendall v. Superior Court*, No. 3:10-CV-00109, 2012 WL 4620085, at *1 (D.V.I. Oct. 3, 2012); *Wilson v. Canada Life Assur. Co.*, No. 4:08-CV-1258, 2009 WL 532830, at *7 (M.D. Pa. Mar. 3, 2009)).

Defendants' free-form complaint that Plaintiffs "cannot get the relief they want" from them is entirely divorced from the text and structure of Rule 19. Defs.' Opp'n at 16-17. Defendants fail to identify the specific parties who must be joined, let alone explain why their joinder would be infeasible but their presence indispensable such that dismissal might be equitable. *See* Fed. R. Civ. P. 19; *Janney Montgomery Scott*, 11 F.3d at 404-05. Defendants' joinder arguments therefore fail.

## IV.    DEFENDANTS FAIL TO JUSTIFY THE BURDENS THE ELECTION CODE IMPOSES ON THE RIGHT TO VOTE

Defendants' merits analysis is remarkable for its failure to engage with the governing law. The Third Circuit has set forth a constitutional test for election cases:

> [The Court's] scrutiny is a weighing process: We consider what burden is placed on the rights which plaintiffs seek to assert and then we balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiffs' rights be burdened. Only after weighing these factors can we decide whether the challenged [action] is unconstitutional.

8

*Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006). "[R]easonable, nondiscriminatory restrictions" upon voters' rights will "generally" be justified by the state's regulatory interests, but "severe" burdens must satisfy strict scrutiny—i.e., they must be narrowly drawn to advance a state interest of compelling importance. *Belitskus*, 343 F.3d at 643.

The issue in this case is not whether the Commonwealth may properly choose between electronic and paper voting systems. *Cf. Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003); *Banfield v. Cortés*, 110 A.3d 155, 159 (Pa. 2015). Nor is the issue whether elections may be reasonably regulated. *Cf.* Defs.' Opp'n at 18. Of course they can, and must be. Rather, there are two questions, both of which Defendants fail to address in the necessary detail. First, do the burdens placed upon Plaintiffs' right to have their votes count fall within the realm of the "reasonable" or rise to the level of the "severe"? And second, are the state's regulatory interests sufficient to justify those burdens?

### A. The Burdens Are Severe

All of the following burdens are established by evidence and uncontroverted, and Defendants fail to explain why they are reasonable even in isolation, let alone collectively.

First, rather than merely carrying a "risk" of failure, *cf. Banfield*, 110 A.3d at 168, the electronic voting machines actually disenfranchised voters in the 2016 presidential election.

Second, to obtain a recount of any vote in a statewide race, 27,474 voters in 9,158 districts throughout Pennsylvania must file notarized petitions with county boards of elections or file 9,158 lawsuits and pay millions of dollars in fees. Any defect in a single filing anywhere

prevents votes from being counted everywhere.  *See* 25 P.S. § 3263(a); Am. Compl. ¶ 60 & Ex. 52.  This is an absurd logistical impossibility.[2]

Third, voters in any given county cannot know when the deadline falls to seek a recount. The deadline is either "prior to the completion of the computation of all of the returns for the county," 25 P.S. § 3154(e), or "[a]t the expiration of five (5) days after the completion of the computation of votes," *id.* § 3154(f).  Defendants have provided erroneous guidance that the former deadline applies, contrary to a ruling of the Pennsylvania Supreme Court.  *Compare* Am. Compl. Ex. 34 *with In re Reading Sch. Bd. Election*, 634 A.2d 170, 172-73 (Pa. 1993).  Either way, no ordinary person knows when the computation of votes in his county will be completed or the five-day period will expire.  At least two large Pennsylvania counties do not even comply with the requirements to complete the computation at all.  *See* Am Compl. ¶¶ 61-64 & Exs. 1, 26, 50, 51.  What Defendants disparage as "observations of folks who claim to have been confused over what they may have been told by local officials," Defs.' Opp'n at 25, is actually uncontested testimonial and documentary evidence that the Election Code requires voters to meet deadlines that no reasonable person could discover.  Defendants conveniently ignore that *they themselves* had no idea when voters had to file their recount petitions.  *See* Am. Compl. ¶¶ 65-67 & Exs. 32A-32D.

Fourth, courts have unlimited discretion to impose prohibitive costs and fees that can thwart any recount or contest effort.  *See, e.g.*, Am. Compl. ¶ 105.

Nothing about any of these burdens is reasonable.  To the contrary, they are severe: in the 2016 presidential election, they deprived Kimberly Kupka and countless other voters of the right to have their votes count.  These burdens are comparable in magnitude to those struck down in

---

[2] Plaintiffs' point is that a statewide *voter-initiated* recount is impossible.  The fact that an automatic recount has previously been triggered by a narrow vote margin does not alter or alleviate the burdens the Election Code imposes on voters' own efforts to have their votes counted.  *Cf.* Defs.' Opp'n at 23 n.16.

*Constitution Party*, and far exceed the impact of the five-dollar fee invalidated in *Belitskus*.[3]  *See Constitution Party II*, 824 F.3d at 393; *Belitskus*, 343 F.3d at 647.

### B.    The State's Unidentified Interests Are Insufficient

These burdens must be balanced against the "precise interests identified by the state" to justify them.  *Rogers*, 468 F.3d at 194.  Defendants vaguely allude to the need for order and the integrity of election results.  *See* Defs.' Opp'n at 24-25.  They fail, however, to identify any "*precise* interests," *Rogers*, 468 F.3d at 194 (emphasis added), or to explain how the chaos-inducing recount provisions of the Election Code advance even the generic goals they mention.  Because there is no justification for the burdens imposed on voters' rights to have their votes counted, the provisions of the Election Code that impose these burdens are unconstitutional.

### CONCLUSION

The Court should convert Defendants' motion to dismiss to a motion for summary judgment and deny it; grant Plaintiffs' cross-motion for summary-judgment; and enter judgment as to liability in favor of Plaintiffs.

---

[3] Nor does the fact that many of the recount provisions of the Election Code have been "applied for decades" without a finding of unconstitutionality, PI Mem. at 24, establish their reasonableness.  As far as Plaintiffs are aware, their constitutionality has not been challenged before.  The cases cited by the Court in noting that these provisions are longstanding do not address whether they are constitutional, separately or collectively.  *See Olshansky v. Montgomery Cnty. Election Bd.*, 412 A.2d 552 (Pa. 1980); *In re Recount of Ballots Cast in General Election on Nov. 6, 1973*, 325 A.2d 303 (Pa. 1974); *Appeal of Bradley*, 42 A.2d 155 (Pa. 1945); *In re Pazdrak's Contested Election*, 137 A. 109 (Pa. 1927).

Dated: April 18, 2017

MONTGOMERY McCRACKEN WALKER &
RHOADS LLP

Gregory M. Harvey
PA Attorney ID 4445
Montgomery McCracken Walker & Rhoads LLP
123 South Broad Street
Philadelphia, PA 19109
Phone: 215-772-7684
Fax: 215-772-7620
Email: gharvey@mmwr.com


EMERY CELLI BRINCKERHOFF & ABADY
LLP

_____/s/_____
Ilann M. Maazel*
Andrew G. Celli, Jr.*
Alison E. Frick*
Douglas E. Lieb*
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
Phone: 212-763-5000
Fax: 212-763-5001
Email: imaazel@ecbalaw.com

* *Admitted pro hac vice*