**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL STEIN, et al., | : |
| | : |
| Plaintiffs, | :    CIVIL ACTION |
| | : |
| v. | :    No. 16-cv-6287(PD) |
| | : |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth, and JONATHAN MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections and Legislation, | : |
| | : |
| Defendants. | : |

**[PROPOSED] ORDER**

AND NOW, this _____ day of 20__, upon consideration of the Philadelphia Board of Elections' and the City of Philadelphia's Motion to Intervene and for Leave to File the Attached Opposition to Plaintiffs' Motion to Enforce the Settlement Agreement, it is hereby ordered that the Motion is GRANTED, the City of Philadelphia and the Philadelphia County Board of Elections may intervene as defendants to this action, and the Philadelphia Board of Elections' and the City of Philadelphia's Opposition to Plaintiffs' Motion to Enforce Settlement Agreement shall be filed on the docket in the above-captioned action.

_____
                                   J

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL STEIN, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| KATHY BOOCKVAR, in her official capacity | : |
| as Secretary of the Commonwealth, and | : |
| JONATHAN MARKS, in his official capacity | : |
| as Commissioner of the Bureau of | : |
| Commissions, Elections and Legislation, | : |
| | : |
| Defendants. | : |

CIVIL ACTION

No. 16-cv-6287(PD)

**MOTION OF THE CITY OF PHILADELPHIA AND THE PHILADELPHIA COUNTY
BOARD OF ELECTIONS TO INTERVENE AS DEFENDANTS AND FOR LEAVE TO
FILE THE ATTACHED OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE
THE SETTLEMENT AGREEMENT**

The City of Philadelphia and the Philadelphia County Board of Elections ("Proposed

Intervenors" or "Movants") move to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) or,

in the alternative, for permissive intervention under Rule 24(b).  Proposed Intervenors further

move for leave to file the Opposition to Plaintiffs' Motion to Enforce Settlement Agreement,

filed herewith as Exhibit A.  Proposed Intervenors incorporate the attached Memorandum of Law

and Exhibits filed herewith in support of this Motion.

Dated: December 17, 2019

/s/ Benjamin H. Field
Divisional Deputy City Solicitor
Attorney I.D. No. 204569
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5024
Fax:    (215) 683-5299
Benjamin.Field@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL STEIN, et al., | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 16-cv-6287(PD) |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth, and JONATHAN MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections and Legislation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF PHILADELPHIA'S
AND THE PHILADELPHIA COUNTY BOARD OF ELECTIONS'
MOTION TO INTERVENE AS DEFENDANTS AND FOR LEAVE TO
FILE THE ATTACHED OPPOSITION TO PLAINTIFFS' MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

TABLE OF CONTENTS

I.   FACTUAL BACKGROUND.................................................................................... 1

II.  ARGUMENT...................................................................................................... 4

   A.  Proposed Intervenors Are Entitled to  Intervene as of Right under Rule 24(A).................. 4

   B.  If the Court Does Not Grant Intervention as of Right,  the Court Should Grant
       Permissive Intervention ........................................................................ 9

III. CONCLUSION................................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98 (M.D. Pa. 2011) ...................................... 8

*Avellino v. Herron*, 991 F. Supp. 730 (E.D. Pa. 1998) ................................................................ 10

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ................................................................... 7, 10

*Hines v. D'Artois*, 531 F.2d 726 (5th Cir. 1976) .......................................................................... 7

*In re Community Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005) ..................................................... 4

*In re Fine Paper Antitrust Litig.*, 695 F.2d 494 (3d Cir. 1982) .................................................... 4

*Kleissler v. Forest*, 157 F.3d 964 (3d Cir. 1998) .......................................................................... 8

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) ........................................ 6

*McKay v. Heyison*, 614 F.2d 899 (3d Cir. 1980) .......................................................................... 9

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir.
    1995) .................................................................................................................................. 4, 6

*Neusse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) ......................................................................... 7

*Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1980) .................................................................... 7

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .............................................................. 8

*U.S. v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014) ................................................ 7

*United States v. Alcan Aluminum Inc.*, 25 F.3d 1174 (3d Cir. 1994) .......................................... 5

*Waste Management of Pa. v. City of York*, 162 F.R.D. 34 (M.D. Pa. 1995) .............................. 10

*Yip v. Pagano*, 606 F. Supp. 1566 (D.N.J. 1985)....................................................................... 10

**Statutes**

25 P.S. § 2621 ................................................................................................................................ 8

25 P.S. § 2642 ........................................................................................................................... 7, 8

**Other Authorities**

Division of Voter Registration, Pennsylvania Dep't of State, *2019 Voter Registration
    Statistics* (Nov. 5, 2019)...................................................................................................... 6

Hearing on S.B. 48 Before the S. Comm. on State Government, 2019-2020 Regular
    Session (Pa. March 26, 2019) (statement of Acting Secretary Kathy Boockvar).................... 1

Statement of Governor Tom Wolf (Feb. 21, 2019) ....................................................................... 1

**Rules**

Fed. R. Civ. P. 24 ...................................................................................................................... 1, 4

**Treatises**

7C Wright & Miller, *Federal Practice & Procedure* (3d ed. 2019)............................................. 4

The City of Philadelphia and the Philadelphia County Board of Elections move to intervene as defendants as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, for permissive intervention under Rule 24(b).  Should this Court deny intervention, the proposed intervenors request that their opposition be considered on an amicus basis.

In support of their Motion, proposed intervenors state the following:

## I.    FACTUAL BACKGROUND

On December 5, 2016, Plaintiffs filed a complaint alleging Defendants violated Plaintiffs' right to vote in violation of the Equal Protection Clause, Substantive Due Process, and the First Amendment in relation to the November 8, 2016 General Election.  Plaintiffs further filed a Motion for Preliminary Injunction on December 6, 2016, asking this Court to order a recount.  The Plaintiffs' Motion for Preliminary Injunction was denied by this Court on December 12, 2016 and Plaintiffs did not appeal that ruling.  The Defendants then filed a Motion to Dismiss on January 10, 2017.  In response, Plaintiffs, joined by four Pennsylvania voters, filed an amended complaint on February 14, 2017, adding new Plaintiffs.

During this same period, the Commonwealth of Pennsylvania, through the Governor's Office and the Department of State, encouraged counties to acquire new voting systems to ensure that by the 2020 General Election, voters in Pennsylvania would be able to use systems that provided an auditable paper record of votes cast.  (*See*, *e.g.*, Hearing on S.B. 48 Before the S. Comm. on State Government, 2019-2020 Regular Session (Pa. March 26, 2019) (statement of Acting Secretary Kathy Boockvar), *available at* https://stategovernment. pasenategop.com/wp-content/uploads/sites/30/2019/03/boockvar.pdf (testifying that Department of State directed counties last April to purchase new voting systems with auditable paper ballots); Statement of Governor Tom Wolf (Feb. 21, 2019), https://www.media.pa.gov/Pages/ State-Details.aspx?newsid=321 (last visited, December 16, 2019) (lauding voting officials'

1

commitment to "ensuring that all voters will be voting on systems with voter-verifiable paper ballots and meeting the highest standards of security and accessibility by 2020").)

This Court, on September 7, 2018, granted Defendants' Motion to Dismiss in part and Plaintiffs and Defendants began to engage in settlement negotiations.  On November 28, 2018 the parties entered into a Settlement Agreement that provided, in most relevant part, that the Secretary of the Commonwealth will only certify new voting systems for use in Pennsylvania if they meet the following criteria:

    a.  The ballot on which each vote is recorded is paper;
    b.  They produce a voter-verifiable record of each vote; and
    c.  They are capable of supporting a robust pre-certification auditing process.

(Settlement Agreement (ECF 112-1), ex. A ¶ 2.)  The Settlement Agreement also provided that the Secretary of the Commonwealth would direct Pennsylvania counties to implement voter-verifiable paper ballot systems by the 2020 primary elections.  (*Id.* ¶ 3.)  Just two days later, on November 30, 2018, the acting Secretary of the Commonwealth of Pennsylvania certified the ExpressVote XL voting system as safe for use by voters in the Pennsylvania elections and compliant with the requirements of the Election Code.

At this same time, Philadelphia had been hard at work on a procurement process to acquire a new voting system for use in elections in Philadelphia.  (Nesmith-Joyner Decl. (ECF 123-3) ¶¶ 3-5.)  As part of that work, Philadelphia issued a Request for Proposals through which voting system companies could bid on the contract for a new voting system of Philadelphia.  (*Id.* ¶¶ 9, 15.)  Contractor bids were received in late December 2018, reviewed through the City's Best-Value process, and the Board of Elections made a determination on February 20, 2019, that the ExpressVote XL should be used for elections in Philadelphia beginning with the November 2019 General Election.  (*Id.* ¶¶ 15-17; Lynch Decl. (ECF 123-2), ex. 1 at 2.)

Philadelphia then began the extensive project of implementing the ExpressVote XL voting system for use in the 831 polling locations for the 1703 individual election divisions throughout the City.  (Lynch Decl. ¶ 26.)  In reliance on the Secretary's certification, roughly 3,750 ExpressVote XL machines were purchased by the City of Philadelphia between April and August of 2019 for use in the November 5, 2019 election.  (*Id.*, ex. 2 at 2.)  No challenge under the Pennsylvania Election Code to the Board of Elections determination was brought by Plaintiffs or anyone else in a court of competent jurisdiction.  By July 15, 2019, the City had received 35 truck shipments of the ExpressVote XL.  (*Id.*)

On July 16, 2019 Free Speech for People, the National Election Defense Counsel, and Citizens for Better Elections sent a letter on behalf of Pennsylvania voters to the Secretary of the Commonwealth requesting reexamination of the ExpressVote XL system.  That petition argued that the ExpressVote XL violates the Settlement Agreement.  (Maazel Decl. (ECF 112-1) at 43.)  A subsequent examination occurred, and the ExpressVote XL was recertified by the Secretary on September 3, 2019.  On July 29, 2019, approximately eight months after the initial certification, and approximately two weeks after the above-referenced letter was sent to the state, Plaintiffs first advised Defendants of their belief that the certification of the ExpressVote XL system violated the terms of the Settlement Agreement.  The Defendants responded to the Plaintiffs in writing on September 12, 2019, advising that they disagreed with Plaintiffs' representation and stating the specific basis for their determination of compliance.

Over ten weeks later, and following the November 2019 General Election, the Plaintiffs filed a Motion to Enforce the Settlement Agreement, accompanied by declarations in support of their motion, on November 26, 2019.  Plaintiffs' Motion seeks an order causing the ExpressVote XL machines which have been acquired for use in Philadelphia to be decertified.  This Court

3

ordered on November 26, 2019 that Defendants respond to Plaintiffs' motion by December 12, 2019.  Upon request from the proposed intervenors, this Court further ordered that any motion for intervention or amicus filing be submitted on or before December 17, 2019.

## II.   ARGUMENT

### A.   Proposed Intervenors Are Entitled to Intervene as of Right under Rule 24(a)

In order to intervene as of right, the prospective intervenor must establish: (1) that the application for intervention is timely; (2) that the applicant has a sufficient interest in the litigation; (3) that the asserted interest may be affected or impaired as a practical matter by the disposition of the action; and (4) that the interest is not adequately represented by an existing party in the litigation.  Fed. R. Civ. P. 24(a)(2); *In re Community Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005).  Proposed intervenors meet all of these requirements.

*The motion to intervene is timely.* — The timeliness of a motion to intervene is determined from a totality of the circumstances.  Three factors for the courts to consider are (1) the stage of the proceedings, (2) the prejudice the delay may cause the parties, and (3) the reason for the delay.  *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). The consideration of the stage of the proceedings is directly linked to the potential prejudice of delay to the parties.  *Id.* at 370.  Accordingly, intervention has been allowed as late as after entry of judgment, for the purpose of allowing for appeal, and even while appeal is pending.  *See* 7C Wright & Miller, *Federal Practice & Procedure* § 1916, n.23-25 (3d ed. 2019) (citations omitted).

Although it is true that Movants did not seek to intervene as parties to the litigation, which resulted in the Settlement Agreement at issue, until after the settlement, this Motion is

nonetheless timely.  Movants had no need at the time of the litigation was initially filed to move for intervention.  When the Settlement Agreement was entered into and this case was dismissed, the Board of Elections had not yet determined what voting system should be used in Philadelphia on a forward-going basis and the City had not entered into any contract for such a machine.  The machines procured by the City of Philadelphia were obtained after the Settlement Agreement had been finalized, relying upon the Secretary's post-settlement certification of the ExpressVote XL. The substantial interests of the Proposed Intervenors did not arise until, at the earliest, the Plaintiff's Motion to Enforce the Settlement Agreement was filed on November 26, 2019, challenging a voting system selected and procured in the interim.  Notably, Plaintiffs' filing occurred just three weeks after the City had successfully implemented an entirely new voting system, allowing Philadelphia voters to interface and familiarize themselves with the new machines for the first time.

At all times between September 30, 2018 and November 26, 2019, this matter was closed and no intervention of any sort was warranted.  Furthermore, at no time prior to November 26, 2019, did Plaintiffs seek any action in this Court that could directly impact the Philadelphia Board of Elections' or the City's interests in fair and orderly elections, their voting system contract, or, most importantly, ensuring that Philadelphia's voters are able to express their will at the polls in 2020 and beyond.  Because the interest of the proposed intervenors arose as a result of the new filing of November 26, 2019, the timeliness requirement is satisfied.  On the same day Plaintiffs filed their Motion, this Court ordered that Defendants respond to Plaintiffs' Motion by December 12, 2019, and this Motion to Intervene timely followed.  *See United States v. Alcan Aluminum Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994) (motion is timely filed in relation to the point at which the applicant knew, or should have known, of the risk to its rights).

*The City of Philadelphia and the Philadelphia County Board of Elections have a sufficient interest in the litigation that could be impaired as a practical matter by disposition of the action.* — In order to establish a sufficient interest for intervention the proposed intervenor must establish "'an interest relating to the property or transaction which is the subject of the action.'" *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (quoting *Mountain Top Condo. Ass'n*, 72 F.3d at 366). The City of Philadelphia clearly has sufficient interest in the litigation. As of November 5, 2019, the City has 1,062,606 registered voters, over 8% of the total population of registered voters in the state of Pennsylvania. (Division of Voter Registration, Pennsylvania Dep't of State, *2019 Voter Registration Statistics* (Nov. 5, 2019), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Docume nts/2019%20Election%20VR%20Stats%20%20final.pdf). As discussed above, after the Settlement Agreement was entered into, the Commonwealth certified the ExpressVote XL under the Pennsylvania Election Code for use in elections in the Commonwealth. Only at that point did the Philadelphia Board of Elections and the City move forward with the procurement of the ExpressVote XL and use of the system in the November 2019 General Election, a process that was complete before Plaintiffs filed their Motion to Enforce Settlement Agreement.

Were the relief Plaintiffs seek granted, the interests of the Board of Elections and the City in the litigation could be substantially impaired. The Board of Elections expended significant resources and work in implementing the new voting system. Ordering that system to be decertified would create the real possibility that Philadelphia's voters would face insurmountable challenges and confusion at the polls. In addition, the City would be harmed as it has entered into a multi-million dollar contract for the acquisition of roughly 3,750 ExpressVote XL machines between April and August of 2019 and ongoing operation of those machines.

6

The members of the Philadelphia County Board of Elections also have a presumed interest arising out of their duties as public officials.  The Board is comprised of three elected City Commissioners who are responsible for conducting elections and establishing policies to administer voter registration that are consistent with federal and state election and voter registration laws.  A public official has a sufficient interest to intervene as of right if his rights and duties, as defined by Pennsylvania law, may be affected directly by the disposition of the litigation.  *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987).[1]  Under the Pennsylvania Election Code, the Board has jurisdiction over the conduct of the primaries and elections in Philadelphia County.  25 P.S. § 2642(a).  They are specifically required to properly equip polling places and purchase election equipment of all kinds.  25 P.S. § 2642(b)-(c).  Should this Court rescind certification of the ExpressVote XL, it would substantially interfere with the Board's ability to carry out its duties.

*The existing defendants cannot adequately represent the interests of the City of Philadelphia and the Philadelphia County Board of Elections*. — Inadequacy of representation is established where movants have similar interests to one of the parties, but those interests sufficiently diverge so that the party cannot give due attention to the movant's interests.  *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014).  To qualify for intervention, "an

---

[1] Other courts have found that public officials have sufficient interest to intervene where the subject of the suit came within the scope of their official duties.  *See Harris v. Pernsley*, 820 F.2d at 602 (citing *Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1980) (finding that Attorney General charged with administration of immigration laws had sufficient interest to intervene in action involving determination of individuals' future citizenship), *Hines v. D'Artois*, 531 F.2d 726, 738 (5th Cir. 1976) (state examiner for the civil Service has right to intervene where relief sought by plaintiff involved changes in the civil service examination), *Neusse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (state banking commissioner had an interest in action in which the federal law incorporated the substance of the state law because the litigation involved "the nature and protection of the state policy")).

intervenor need only show that representation *may* be inadequate, not that it is inadequate." *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98, 100 (M.D. Pa. 2011) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  Although the proposed intervenors have similar interests to the Defendants, the duties of the Department of State and County Boards of Elections under the Election Code are distinct.  *Compare* 25 P.S. § 2621, *with id.* § 2642 (while Secretary is responsible for examining and approving voting machines, the county board must equip polling places and purchase, preserve, store, and maintain voting machines).  And it is the City which has assumed the financial and other contractual responsibilities based on the Commonwealth and Department of State's certification of the ExpressVote XL for use in Pennsylvania.  In short, while Philadelphia shares with the Commonwealth an interest in safe, fair, and orderly elections in Pennsylvania, the range of other complex governmental and contractual rights, responsibilities, interests, and obligations are not identical.  *See Kleissler v. Forest*, 157 F.3d 964, 973-74 (3d Cir. 1998).  As a result, they may take positions and present legal arguments that differ from those of the City and the Board of Elections.  While the Defendants are certainly capable of presenting a robust defense, they do not have the same financial interest in the litigation as the City of Philadelphia, which could suffer incredible financial loss should the machines they purchased in reliance on the Secretary's certification be decertified.  Nor do they share the responsibility the Election Code ascribes to the County Board of Elections for the conduct of elections in Philadelphia.

The generalized interest of the Defendants may not provide adequate representation to the specific interests of the proposed intervenors.  Accordingly, the City of Philadelphia and the Philadelphia County Board of Elections should be permitted to intervene as of right.

**B.   If the Court Does Not Grant Intervention as of Right,
the Court Should Grant Permissive Intervention**

Should this Court determine that the circumstances do not warrant intervention as of right, the proposed intervenors move for permissive intervention.  For permissive intervention under Rule 24(b), the Court should consider whether the original parties share with the intervenor common questions of law or fact, and whether they will be prejudiced by the intervention.  *McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980).  As outlined above, this Motion to Intervene was timely filed and thus will not unduly prejudice or delay the original parties.  Furthermore, the arguments of the proposed intervenors regarding compliance with the Settlement Agreement involve common issues of law and fact as those already before this Court. Permitting intervention will allow the Court to evaluate all competing claims and arguments simultaneously, with all interested parties at the table.  Should the Court determine that intervention of right is not warranted, the proposed intervenors request that permissive intervention be granted.

**III.   CONCLUSION**

For the foregoing reasons, Movants respectfully requests that this Court grant the Motion to Intervene and grant leave to file the attached Memorandum of Law in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement on the above-captioned docket.  The proposed intervenors acknowledge that the procedural posture of this litigation is rather unusual.  As such,

should this Court deny intervention, the proposed intervenors request that their submissions be considered on an amicus basis in the alternative.[2]

Dated: December 17, 2019

/s/ Benjamin H. Field
Divisional Deputy City Solicitor
Attorney I.D. No. 204569
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 683-5024
Fax:    (215) 683-5299
Benjamin.Field@phila.gov

---

[2] A district court has broad discretion to permit amicus curiae to participate in a pending action where the information offered is "timely and useful." *Waste Management of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (citing *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir. 1986)). Permission may be advisable where third parties can contribute to the court's understanding. *Avellino v. Herron*, 991 F. Supp. 730 (E.D. Pa. 1998) (citing *Harris*, 820 F.2d at 603). In the instant action, the City of Philadelphia and the Philadelphia County Board of Elections have unique and specific information on the cost and procurement process of the ExpressVote XL machines. They also have pertinent information regarding the planning and implementation phases of conversion to new voter systems in the City of Philadelphia that may be useful to the Court.

**CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I served a true and correct copy of the

foregoing Motion upon all counsel of record as a result of filing such document(s) electronically.

Such document is therefore available for viewing and/or downloading pursuant to the Court's

ECF system and is served pursuant to FRCP Rule 5(b) and Local Civil Rule 5.1.2.

BY:   /s/ Benjamin Field
Divisional Deputy City Solicitor

Dated: December 17, 2019

11