UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JILL STEIN, RANDALL REITZ, ROBIN HOWE,
SHANNON KNIGHT, and EMILY COOK,

                 Plaintiffs,

  -against-

KATHY BOOCKVAR, in her official capacity as
Acting Secretary of the Commonwealth; and
JONATHAN MARKS, in his official capacity as
Commissioner of the Bureau of Commissions,
Elections, and Legislation,

                 Defendants.

No. 16-CV-6287 (PD)

**PLAINTIFFS' RESPONSE TO MERITS BRIEF OF INTERVENORS CITY OF PHILADELPHIA AND PHILADELPHIA COUNTY BOARD OF ELECTIONS**

       Plaintiffs previously responded to the merits of Intervenors' arguments in their response to the motion to intervene (Dkt. #134). Consistent with the Court's order (Dkt. #136) directing Plaintiffs to file any response by 10:00 am on December 28, 2019, Plaintiffs restate those arguments here.

I. **INTERVENORS ARE RESPONSIBLE FOR THE CORRUPT RUSH TO BUY AND IMPLEMENT THE EXPRESSVOTE XL—BUT NOT FOR THE COSTS OF REPLACING IT**

       In their opposition papers, Intervenors portray themselves as responsible stewards of "taxpayer funds" who undertook "herculean" efforts to provide Philadelphia voters with new state-of-the-art voting machines, now purportedly jeopardized by Plaintiffs' efforts to enforce the Settlement Agreement. *E.g.*, Philadelphia Opp'n (Dkt. #131-1) at 2. This self-glorifying narrative bears little resemblance to reality.

After an exhaustive investigation, the Controller of the City of Philadelphia documented "significant issues with the procurement process" for the ExpressVote XL.  Ex. A at 2 (Controller's investigative report).  The Controller found:

- ES&S engaged in undisclosed lobbying of the Commissioners who chose the ExpressVote XL as Philadelphia's voting system.  *Id.* at 9-10.

- ES&S made campaign contributions to the Commissioners who chose the ExpressVote XL as Philadelphia's voting system, which ES&S failed to disclose on mandatory disclosure forms.  *Id.* at 11-13.  Such nondisclosures were considered *disqualifying* for other vendors competing for similar contracts, but not for ES&S.  *Id.* at 14.

- The Commissioners who chose the ExpressVote XL as Philadelphia's voting system had potential conflicts of interest.  *Id.* at 20.

- Commissioners lobbied and given money by ES&S exerted "pressure" on members of the technical selection committee to favor the ExpressVote XL.  *Id.* at 24.

- Even though the City Law Department and the Controller both concluded that Philadelphia's contract with ES&S was "voidable" because of ES&S's failure to make mandatory disclosures, the Board of Elections declined to exercise its right to void the contract.  *Id.* at 21-22.

- In awarding the contract to ES&S, the City violated its governing Best Value Guidelines for procurement.  *Id.* at 2, 6-7.

What's more, Intervenors continued to press forward with their implementation of the ExpressVote XL even while a substantial petition to decertify the system was pending before the Secretary of the Commonwealth between July and September of 2019.  *See* Philadelphia Opp'n 14 ("During that time Philadelphia continued and completed the work of implementing its new voting system . . . .").  It did so despite the risk that the Secretary might decertify the system.  It did so despite the absence of any time pressure, as no requirement exists that counties implement new voting systems until 2020.  It did so even though other less expensive, more reliable voting systems were better choices under its Best Value Guidelines for procurement.

And it did so against the advice of its own Law Department and Controller that it could *void* its contract with ES&S because of ES&S's noncompliance with mandatory disclosure requirements.

In short, for whatever reason, Philadelphia seems to have been in a considerable hurry to buy as many ExpressVote XL machines as possible, irrespective of the law or the consequences. To blame Plaintiffs for this deeply flawed decision-making process is laughable.

Fortunately, the contract between Philadelphia and ES&S contains clear language that *ES&S*—not the taxpayer—bears responsibility for replacement costs if the Secretary of the Commonwealth decertifies the ExpressVote XL. The contract provides:

> Equipment and Provider Software modifications or replacements necessary due to decertification by . . . the Commonwealth of Pennsylvania . . . **must be provided to City at no cost or it must be replaced with a certified system at no cost.** [ES&S] shall be liable to City for any and all reasonable costs incurred to obtain and utilize such replacement voting systems and/or alternative voting methods for all elections occurring until the equipment is re-certified, reapproved or City terminates [the contract] for cause and procures new equipment.

Ex. B art. XII (emphasis added).

Thus, if the Court orders Defendants to decertify the ExpressVote XL, ES&S will bear the cost of providing Philadelphia with new, compliant voting systems. Philadelphia taxpayers will not—at least assuming that Philadelphia chooses to assert its contractual rights this time around, rather than continue funneling millions of taxpayer dollars to political benefactors.

At least one other Pennsylvania county has already officially expressed its regret at having purchased the ExpressVote XL. Yesterday, in a unanimous nonpartisan vote, the Northampton County Board of Elections expressed "no confidence" in the ExpressVote XL, given the lack of voter confidence in the system. Ex. C. Such an outcome should remind the

Court that the democratic costs of continuing to use machines that do not instill voter confidence in the integrity of the result exceeds the economic cost of replacing them.

## II. INTERVENORS' FEW NEW ARGUMENTS ON THE MERITS ARE WRONG

Intervenors' legal arguments on the merits are almost entirely derivative of Defendants' and do not require a separate response. Three narrow points warrant scrutiny, however.

First, Intervenors are entirely wrong to call the parties' Settlement Agreement and its paper ballot requirement "aspirational." Philadelphia Opp'n 16. There is nothing aspirational about it. The Secretary will only certify new voting systems if they use paper ballots. Agreement ¶ 2(a). The Secretary will also direct counties to implement new voting systems by 2020. *Id.* ¶ 3. Taken together, these requirements will result in every Pennsylvania voter using paper ballots in time for the 2020 elections. *See id*.

Second, Intervenors' suggestion that Plaintiffs should have challenged the ExpressVote XL based upon coverage in the *Philadelphia Inquirer* is inconsistent with the notice and information-sharing provisions of the parties' settlement agreement. *Cf.* Philadelphia Opp'n 17-18. The Agreement sets forth a clearly defined process for information-sharing between the parties to enable Plaintiffs to monitor compliance with the Agreement. Defendants are required to make Plaintiffs aware of testing of voting systems and to provide Plaintiffs with an opportunity to be heard in connection with that testing. *See* Agreement ¶¶ 14-15. Consistent with the Agreement, Plaintiffs made repeated efforts over a course of many months to get testing videos of the ExpressVote XL that would enable their expert to evaluate the system. It is understandable that Intervenors, as nonparties to the Agreement, would be unaware of Plaintiffs'

4

efforts and Defendants' stonewalling.  *See* Maazel Reply Decl. (Dkt. #133-1) Exs. A-D.  But media coverage is no substitute for the notice provisions of the Agreement.

Finally, Intervenors have no legal basis for their suggestion that Plaintiffs' construction of the Settlement Agreement would render it unenforceable.  *See* Philadelphia Opp'n 21-22.  By law, the Secretary of the Commonwealth has the discretion to certify voting systems that comply with the Pennsylvania Election Code.  The Settlement Agreement circumscribes the Secretary's discretion and constrains the Secretary to approve only voting systems that use paper ballots, produce voter-verifiable records of each vote, and can support robust pre-certification auditing.  *See* Agreement ¶ 2.  The only question before the Court is what these terms mean.  Intervenors cite no authority for the proposition that a public official cannot limit her office's discretion or commit to exercise that discretion in a certain manner by agreement.

Dated: December 28, 2019

EMERY CELLI BRINCKERHOFF &
ABADY LLP

/s/
_____
Ilann M. Maazel, Esq.*
Douglas E. Lieb, Esq.*
600 Fifth Avenue, 10th Floor
New York, NY 10020
Phone: 212-763-5000
Fax: 212-763-5001
Email: imaazel@ecbalaw.com

\* *Admitted pro hac vice*

MONTGOMERY McCRACKEN
WALKER & RHOADS LLP

John G. Papianou, Esq.
Brett Waldron, Esq.
1735 Market Street
Philadelphia, PA 19103
Phone: 215-772-7389

*Attorneys for Plaintiffs*
