UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

JILL STEIN, RANDALL REITZ, ROBIN HOWE, SHANNON KNIGHT, and EMILY COOK,

        Plaintiffs,

  -against-

KATHY BOOCKVAR, in her official capacity as Acting Secretary of the Commonwealth; and JONATHAN MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections, and Legislation,

        Defendants.

No. 16-CV-6287 (PD)

---

## PLAINTIFFS' PRE-EVIDENTIARY HEARING MEMORANDUM

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Montgomery McCracken Walker & Rhoads LLP
1735 Market Street
Philadelphia, PA 19103
(215) 772-1500

Pursuant to the Court's December 20, 2019 Order (Dkt. #136) and Local Civil Rule 16.1(c), to the extent it applies here, Plaintiffs submit this memorandum in advance of the January 21, 2019 evidentiary hearing.

## I.     NATURE OF THE ACTION AND BASIS FOR JURISDICTION

Plaintiffs brought this action under 42 U.S.C. § 1983, alleging that Pennsylvania's use of outdated, unreliable voting systems and certain provisions of its Election Code violated their constitutional rights.  On November 28, 2018, the parties entered into a settlement agreement, which the Court retained jurisdiction to enforce.  *See* Dkt. #110; *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994).  On November 26, 2019, Plaintiffs moved for an order directing Defendants to specifically perform their obligations under the Settlement Agreement by decertifying a voting system manufactured by Election Systems & Software ("ES&S") called the Express Vote XL.  The Court *sua sponte* ordered an evidentiary hearing on eight enumerated factual issues.  *See* Dkt. #136.

## II.    BRIEF STATEMENT OF THE FACTS RELEVANT TO THE PROCEEDING

The parties' Settlement Agreement is designed to ensure that "every Pennsylvania voter in 2020 uses a voter-verifiable paper ballot."  Agreement ¶ 3.  It permits Defendants to certify new voting systems for use in Pennsylvania only if: (a) "[t]he ballot on which each vote is recorded is paper," *i.e.*, the system uses "paper ballots," *id.* ¶¶ 2(a), 3; (b) the system "produce[s] a voter-verifiable record of each vote," *id.* ¶ 2(b); and (c) the system is "capable of supporting a robust pre-certification auditing process" to verify the accuracy and integrity of election results before the results are certified, *id.* ¶ 2(c).  The Agreement further requires the Secretary to "direct each county in Pennsylvania to implement these voting systems by the 2020 primaries."  *Id.* ¶ 3.  When Defendants intend to conduct on-site certification testing of new voting systems, the Agreement provides that they "shall ensure" that Plaintiffs are made aware of the testing." *Id.*

1

¶ 4(a).  Plaintiffs "will appoint a person to attend" any such testing, and "the representative may provide written or oral comments to the Secretary concerning the certification of any Voting Systems."  *Id.* ¶ 4(b).

In the mode certified for use in Pennsylvania, the ExpressVote XL works as follows:

1. A card is inserted into the machine to tell the machine which elections the voter can vote in.
2. The machine displays those elections and the candidates running in them on a touchscreen.
3. The voter makes her choice of candidate(s) in those races on the touchscreen, then presses "print."
4. The machine prints a paper summary card.
5. The summary card includes (a) a series of bar codes that are supposed to reflect the voter's choices and (b) a written record of the voter's choices.
6. The machine scans the *bar code* on the summary card.
7. The voter can, with some difficulty, review the summary card through glass.
8. If the voter approves what she sees, she presses a button to cast her vote.
9. The vote recorded from the bar code is saved and tabulated.
10. The summary card goes back into the machine and is deposited and stored.

Thus, while the voter makes his or her choices on a touchscreen, the system actually counts the summary card, which looks like this:

[Image of an ExpressVote XL paper ballot summary card showing barcodes at the top and a list of races with selections including Straight Party Ticket (NO SELECTION); Judge of the Superior Court: Amanda Green-Hawkins, Daniel D McCaffery; Judge of the Court of Common Pleas: Jennifer Schultz, Anthony Kyriakakis, Tiffany Palmer, NO SELECTION (x4); Judge of the Municipal Court: David H Conroy; Mayor: (blank); City Commissioners: Billy Ciancaglini, NO SELECTION (x2); Register of Wills: NO SELECTION; Sheriff: NO SELECTION; Council at-Large: Sherrie Cohen, Joe Cox, Kendra Brooks, Nicolas O'Rourke, NO SELECTION; District Council 2nd District: NO SELECTION; Superior Court Retention - Anne E Lazarus: YES; Superior Court Retention - Judy Olson: YES; Commonwealth Court Retention - Kevin Brobson: YES; Commonwealth Court Retention - Patricia A McCullough: YES; Common Pleas Retention - Daniel Anders: YES; Common Pleas Retention - Ida Chen: NO SELECTION; Common Pleas Retention - Robert P Coleman: NO; Common Pleas Retention - Roxanne E Covington: YES; Common Pleas Retention - Richard J Gordon: YES; Common Pleas Retention - Glynnis D Hill: NO SELECTION; Common Pleas Retention - Karen Shreeves-Johns: YES; Common Pleas Retention - Diane R Thompson: YES; Common Pleas Retention - Donna M Woelpper: NO SELECTION; Common Pleas Retention - Sheila Woods-Skipper: NO SELECTION; Municipal Court Retention - Martin S Coleman: NO SELECTION; Municipal Court Retention - Jacquelyn Frazier-Lyde: NO; Municipal Court Retention - Henry Lewandowski: NO; Municipal Court Retention - Wendy Lynn Pew: NO SELECTION; Municipal Court Retention - T Francis Shields: NO SELECTION; Proposed Constitutional Amendment: NO; Proposed Charter Change Question: NO; Proposed City Bond Question: NO.]

The scanner reads the bar code, not the words, to tabulate the vote. Bar codes are not comprehensible to voters. Only words are comprehensible to voters. The ExpressVote XL therefore does not allow the voter to verify that his actual vote has been properly recorded. Unlike ordinary paper ballots, the ExpressVote XL interposes computer software between the voter's intention and the official record of his or her vote. The voter cannot be sure whether the marking on the page accurately reflects his or her intentions.

A successful hack could cause the ExpressVote XL to produce summary cards that deviate from voters' intended votes, whether by remarking ballots or casting rejected votes. If such an attack occurred, the summary card would match the machine count, but neither would match voters' actual choices.

On November 30, 2018, the Secretary of the Commonwealth initially certified the ExpressVote XL for use in Pennsylvania. On January 29, 2019, Plaintiffs, through their designee Dr. J. Alex Halderman, asked Defendants to provide video of the testing of the ExpressVote XL, as well as the testing of other systems. Defendants did not respond. Plaintiffs renewed their request on February 21, March 7, May 9, May 16, May 28, and June 4. In his March 7 request, Dr. Halderman wrote: "I'm writing again to ask when the other videos will be available. Since many counties are looking to purchase machines, . . . time is of the essence."

On July 16, 2019, a group of Pennsylvania voters petitioned the Secretary of the Commonwealth to decertify the ExpressVote XL. The Secretary then performed a mandatory reexamination of the system. The recertification testing was held offsite, and Plaintiffs were not given notice of it or an opportunity to participate.

Plaintiffs provided Defendants with notice of potential noncompliance with the Agreement on July 29, 2019. On September 3, 2019, the Secretary recertified the ExpressVote XL. On September 12, 2019, Defendants responded to Plaintiffs' notice of noncompliance. The parties continued the meet-and-confer process by exchanging correspondence on October 1, October 30, November 10, and November 13.

III.   **RELIEF SOUGHT**

Plaintiffs request that the Court issue an order directing Defendants to specifically perform their obligations under the Settlement Agreement by decertifying the ExpressVote XL on an appropriate timetable to avoid disruption to impending elections.

IV.   **WITNESS LIST**

Plaintiffs may call the following witnesses, while reserving the right not to call any witnesses on this list and the right to call impeachment and/or rebuttal witnesses, and also requesting the right to supplement their witness list on the issues of feasibility (*i.e.* question H on

the December 20 order, Dkt. #136) and of laches after Defendants present evidence on these affirmative defenses (*see infra* § VI.C):

Jill Stein.  Dr. Stein is a Plaintiff in this action.  She has knowledge of Plaintiffs' understanding of the terms used in the settlement agreement; Plaintiffs' reasons for seeking to enforce the settlement agreement; and the timing of Plaintiffs doing so.

Kathy Boockvar (potentially adverse).  Ms. Boockvar is the Secretary of the Commonwealth.  She has knowledge of Defendants' understanding of the terms used in the settlement agreement/parol evidence concerning the same; the certification of the ExpressVote XL; whether the ExpressVote XL complies with the settlement agreement; and the potential impact of Plaintiffs' requested relief on the 2020 election.

Jonathan Marks (potentially adverse).  Mr. Marks is the Deputy Secretary of the Commonwealth for Elections and Commissions.  He has knowledge of Defendants' understanding of the terms used in the settlement agreement; the certification of the ExpressVote XL; and whether the ExpressVote XL complies with the settlement agreement.

Timothy Gates (potentially adverse).  Mr. Gates is Chief Counsel to the Pennsylvania Department of State.  He has knowledge of Defendants' understanding of the terms used in the settlement/parol evidence of the same and the timing of Plaintiffs' efforts to enforce the settlement agreement.

Kathleen Kotula (potentially adverse).  Ms. Kotula is Executive Deputy Chief Counsel to the Pennsylvania Department of State.  She has knowledge of Defendants' understanding of the terms used in the settlement/parol evidence of the same; Plaintiffs' efforts to obtain information about the ExpressVote XL; and the timing of Plaintiffs' efforts to enforce the settlement agreement.

<u>Vienna Linderman</u>.  Ms. Linderman is a registered voter in Philadelphia County who used the ExpressVote XL to vote in 2019.  She has knowledge of how the system works and whether the vote is voter-verifiable in practice under real-world conditions.

<u>Joni Lipson</u>.  Ms. Lipson is a registered voter in Philadelphia County who used the ExpressVote XL to vote in 2019.  She has knowledge of how the system works and whether the vote is voter-verifiable in practice under real-world conditions.

<u>Scott McCarthy</u>.  Mr. McCarthy is a registered voter in Philadelphia County who used the ExpressVote XL to vote in 2019.  He has knowledge of how the system works and whether the vote is voter-verifiable in practice under real-world conditions.

<u>Any witness listed by another party</u>.

<u>Rebuttal witnesses</u>.

<u>Impeachment witnesses</u>.

## V. REQUEST FOR JUDICIAL NOTICE

The Court should take judicial notice of the definitions of the following terms in the Pennsylvania Election Code, *see Moore v. Reco Equip. Inc. Emp. Welfare Benefit Plan*, No. 16-CV-1017, at *2 n.1 (W.D. Pa. Apr. 3, 2017) (taking judicial notice of statute):

- "Paper ballot" means a printed paper ballot which conforms in layout and format to the voting device in use.  25 P.S. § 3031.1.
- "Ballot card" means a card which is compatible with automatic tabulating equipment and on which votes may be registered.  25 P.S. § 3031.1.

The court should also take judicial notice of the fact that humans generally cannot read bar codes.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial

6

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

VI.     **SPECIAL COMMENT CONCERNING RELEVANT LEGAL ISSUES**

Consistent with Local Civil Rule 16.1(c)(7), Plaintiffs provide the following "[s]pecial comments regarding legal issues" that may be relevant to the hearing.

   A.   **Parol Evidence Is Admissible for Limited Purposes Under Pennsylvania Law**

The admissibility of parol evidence to interpret a contract is a matter of substantive law, not procedural law, and is therefore governed by state law if state law governs the underlying claim. *See Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Inv.*, 951 F.2d 1399, 1404-05 (3d Cir. 1991). Here, pursuant to the Settlement Agreement, Pennsylvania law applies. Agreement ¶ 23.

Under Pennsylvania law, parol evidence about the meaning of the Settlement Agreement may be admitted for two purposes.

First, certain limited kinds of parol evidence may be admitted to determine whether the Agreement contains a latent ambiguity—that is, an ambiguity not apparent on the face of the document. *See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93-94 (3d Cir. 2001). That inquiry is "confined to determining 'the parties' linguistic reference,'" such as whether the term "dollars" refers to Canadian or American dollars. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (quoting *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 n.12 (3d Cir. 1980)).

7

Second, if the Court concludes that the terms of the Settlement Agreement are ambiguous (whether patently or latently), the Court may admit parol evidence to aid in determining the parties' intent.  *See Kripp v. Kripp*, 849 A.2d 1159, 1165 (Pa. 2004).

**B.  Only Evidence Concerning the Parties' Objective Manifestations of Intent, Not Their Subjective Undisclosed Thoughts, Is Admissible to Interpret the Settlement Agreement**

Under Pennsylvania law, evidence of the parties' undisclosed subjective intentions is *not* admissible parol evidence in construing the terms of a contract, and the Court should neither admit nor consider it.  Only outward manifestations of the parties' intent are relevant in construing a contract:

> [O]ral statements by parties of what they intended written language to mean should be excluded.  This is so because the intention of a party relevant to the formation of a contract is the intention manifested by him rather than any undisclosed intention.  Thus, it was the documentary evidence of [the party's] words and conduct before, during, and after the transaction that was relevant, not his testimony of what his undisclosed intention was at the time he wrote those words and engaged in that conduct.

*Spatz v. Nascone*, 424 A.2d 929, 942 (Pa. Super. Ct. 1981); *accord Motor Coils Mfg. Co. v. Am. Ins. Co.*, 454 A.2d 1044, 1049 (Pa. Super. Ct. 1982) (excluding testimony about party's undisclosed subjective understanding); *Prusky v. Prudential Ins. Co. of Am.*, No. 00-CV-2783, 2001 WL 34355665, at *26 (E.D. Pa. Oct. 30, 2001) ("In ascertaining the intent of the parties, [i]t is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter.").

**C.  Defendants Bear the Burden on the Affirmative Defenses**

In its December 20 order, the Court noted that Plaintiffs, as the moving parties, would present their case first and that Defendants would have the opportunity to supplement their witness list after Plaintiffs presented evidence.  However, Defendants bear the burden of

8

proving unreasonable delay and prejudice with respect to their affirmative defense of laches and their claim that it is not feasible to change systems for the November 2020 election. *See Commonwealth ex rel. Pa. Att'y Gen Corbett v. Griffin*, 946 A.2d 668, 677 (Pa. 2008).

Several of the questions set forth in the Court's December 20 order appear to be geared primarily toward the issue of laches, including "What did Plaintiffs know about the ExpressVote XL system when the Department of State apparently first considered it in September 2018?" and "What effect would granting Plaintiffs' motion have on voting in the November 2020 election?" Dkt. #136. The Court also asked about the issue of feasibility: "What effect would granting Plaintiffs' motion have on voting in the November 2020 election?" *Id.*

Plaintiffs respectfully submit that, if Defendants are granted the opportunity to supplement their witness list on matters about which Plaintiffs bear the burden of proof, Plaintiffs should be given the reciprocal opportunity to supplement their witness list after Defendants present their affirmative case on these issues. *See Int'l Bus. Machines Corp. v. Groupon, Inc.*, No. 16-CV-122, 2018 WL 3007662, at *2 (D. Del. June 15, 2018) (setting forth trial order of proof providing for plaintiff's response to defendant's affirmative defenses after presentation of both sides' case-in-chief); *Compolongo v. Celotex Corp.*, 681 F. Supp. 261, 265 (D.N.J. 1988) (noting the potential need for "rebuttal testimony" after defendants present "conduct-related affirmative defenses").

### D. Plaintiffs Retain Their Applicable Privileges

Plaintiffs retain, have not waived, and intend to assert as necessary their applicable privileges, including the attorney-client privilege for confidential client communications, attorney work product protection, and protection from disclosure for communications with experts. Pennsylvania law governs the first; federal law the latter two.

9

<u>Attorney-Client Privilege</u>.  Because the sole claims and defenses at issue on Plaintiffs' motion are questions of state law, Pennsylvania law governs any questions of attorney-client privilege that may arise at the hearing.  *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").  As a matter of Pennsylvania statutory law, "[i]n a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 P.S. § 5928.

If they intend to argue that the privilege has been waived or that some exception to it applies, Defendants would bear the burden of proof.  *See Salsman v. Brown*, 51 A.3d 892, 894-95 (Pa. Super. Ct. 2012).  In *Bonds v. Bonds*, 689 A.2d 275 (Pa. Super. Ct. 1997), on a motion to enforce a settlement agreement, the movant called her attorney as a witness.  In the course of his testimony, the attorney refreshed his recollection by looking at his file.  *Id.* at 277.  All of the attorney's testimony "related to communications which were not confidential and which were not protected by the attorney-client privilege." *Id*.  At no time did the attorney testify concerning confidential communications.  The Superior Court held that the movant had not waived the attorney-client privilege, and that the adverse party was not entitled to see or examine the attorney about any privileged materials in his file.  According to the Superior Court, the idea that counsel's testimony about nonconfidential matters had waived the privilege was "preposterous" and "not supported by case law." *Id.* at 277-78.  That logic would apply with even greater force here, where Plaintiffs have not offered their counsel as witnesses and any examination of counsel would happen at Defendants' initiative.

10

Work Product Doctrine.  "Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodies in Fed. R. Civ. P. 26(b)(3)."  *United Coal Cos. v. Powell Constr. Corp.*, 839 F.2d 958, 966 (3d Cir. 1988); *accord Arthurs v. Beard*, No. 07-CV-862, 2009 WL 10728519, at *2 (W.D. Pa. 2009); 8 Wright & Miller, Federal Practice & Procedure § 2023 (3d ed. 2008).

Under federal law—specifically, *Hickman v. Taylor*, 329 U.S. 495 (1947), and its progeny—work product protection extends to the "intangible" mental impressions and opinions of counsel in connection with litigation, even when those thoughts and opinions are not memorialized in tangible documents.  *Id.* at 511; *see United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010) ("*Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3).").  Fact work product is discoverable only "upon a showing of need and hardship."  *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).  "'[C]ore' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney . . .' is 'generally afforded near absolute protection from discovery.'"  *Id.* (quoting *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)).  Core work product "is discoverable only upon a showing of rare and exceptional circumstances."  *Id.*

That an attorney's opinions or mental impressions may have been developed in connection with the possible settlement of a pending action does not alter their status as attorney work product.  *See Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 692 (E.D. Pa. 1986) (attorney opinion concerning settlement of litigation protected by work product doctrine); *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 478-49 (E.D. Pa. 2008) (facts contained in memorandum concerning settlement shielded by work product doctrine); *see also Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 623 F. Supp. 301, 306 (M.D. Pa. 1985)

(memoranda concerning settlement proposals protected by Privacy Act exception for attorney work product).

<u>Experts</u>.  Communications with a nontestifying expert in connection with settlement negotiations, or reports or other materials prepared by a nontestifying expert in connection with settlement negotiations, are privileged.  *See Stewart Title Guar. Co. v. Owlett & Lewis, P.C.*, 297 F.R.D. 232, 239-40 (M.D. Pa. 2013).  There are no disclosed testifying experts in connection with the settlement agreement or this motion, and to the extent there were, all communications with those experts would be privileged except to the extent they concerned compensation or identified facts or assumptions on which the expert relied in forming an opinion.  *See* Fed. R. Civ. P. 26(b)(4)(c).

Dated: January 13, 2019

                        EMERY CELLI BRINCKERHOFF & ABADY LLP

                        _____/s/_____
                        Ilann M. Maazel, Esq.*
                        Douglas E. Lieb, Esq.*
                        600 Fifth Avenue, 10th Floor
                        New York, NY 10020
                        Phone: 212-763-5000
                        Fax: 212-763-5001
                        Email: imaazel@ecbalaw.com

                        * *Admitted pro hac vice*

                        MONTGOMERY McCRACKEN WALKER & RHOADS LLP

                        John G. Papianou, Esq.
                        Brett Waldron, Esq.
                        1735 Market Street
                        Philadelphia, PA 19103
                        Phone: 215-772-7389

                        *Attorneys for Plaintiffs*