IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL STEIN, et al., | : |
| | : CIVIL ACTION |
| Plaintiffs, | : |
| | : No. 16-cv-6287(PD) |
| v. | : |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth, and JONATHAN MARKS, in his official capacity as Commissioner of the Bureau of Commissions, Elections and Legislation, | : |
| Defendants. | : |

### DEFENDANTS' SUBMISSION PURSUANT TO PARAGRAPH 7 OF THE DECEMBER 20, 2019 ORDER

In its Order entered December 20, 2019 [ECF 136] (the "Order"), the Court directed the parties to "address whether hearing testimony will be required from the lawyers who negotiated the Agreement and subsequently monitored and addressed compliance questions." (Order ¶ 7.) The Court also directed the parties to "address whether testifying would disqualify those lawyers and their firms from serving as counsel in these proceedings." (*Id.*)

As set forth in more detail below, the impending evidentiary hearing scheduled for January 21, 2020 (the "Hearing"), raises precisely the concerns that animate Rule of Professional Conduct 3.7, which generally prohibits lawyers from representing a client at a hearing in which the lawyer is likely to be a necessary witness. At the center of the parties' motion papers, and of the "factual questions" enumerated in the Court's Order scheduling the Hearing (Order ¶ 4), are (a) the communications between Plaintiffs and Defendants regarding the formation of their Settlement Agreement and (b) the timing of Plaintiffs' Motion. Plaintiffs' counsel – in

particular, Ilann Maazel, who consistently took the lead for Plaintiffs on those communications – is an essential witness with regard to those discussions. Although it is conceivable, depending on the course of the hearing, that Mr. Maazel may not need to be disqualified as counsel, whether that will in fact be the case depends in significant part on factors beyond Defendants' control. Accordingly, Defendants request that this issue be explored further by the Court and the parties at the telephone conference that the Court has tentatively scheduled for Thursday, January 16, 2020.

### I. THE SUBJECT MATTER OF THE HEARING DIRECTLY IMPLICATES THE CONCERNS BEHIND RULE 3.7

Pennsylvania Rule of Professional Conduct 3.7, known as the Advocate-Witness Rule, provides that, with certain exceptions not pertinent here, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." Pa. R.C.P. 3.7(a). Here, Plaintiffs have made their counsel's communications with Defendants' counsel a central focus of their Motion to Enforce the Settlement Agreement. For example, Plaintiffs argue that, notwithstanding the Agreement's language and structure (*see* ECF 123, at 22-26), the parties intended the term "paper ballot" to mean something other (and far narrower) than that "the ballot on which each vote is recorded is paper." (*See* ECF 112-1, Ex. A ¶¶ 2-3.) And Plaintiffs deny that, during the parties' settlement discussions, they approved Defendants' certification of the XL – despite the emails between counsel in which Defendants sought Plaintiffs' feedback on the voting machines then being considered for certification, including the ExpressVote XL, and Mr. Maazel and Plaintiffs' expert, Dr. Halderman, provided that feedback. (*See* ECF 123, at 11-13; ECF 133, at 9 n.2.) Plaintiffs also rely on counsel-to-counsel communications that occurred after the Settlement Agreement was signed. Most notably, in seeking to excuse their long delay in filing their Motion, Plaintiffs invoke "the parties' extensive meet-and-confer process" (ECF 133,

at 1) and "private good-faith discussions" (*id.* at 7), as well as efforts by Mr. Maazel and Dr. Halderman to obtain certain videos from Defendants (*id.* at 8-9).

That Mr. Maazel is a key fact witness is only underscored by the factual questions on which the Court directed the parties to "be prepared to call witnesses." (Order ¶ 4.) Those questions include:

- a. What did the Parties to the November 28, 2018 Settlement Agreement mean when they employed the following terms in the Agreement: "paper ballot," "voter-verifiable record of each vote," and "capable of supporting a robust pre-certification auditing process";

- b. In the months leading up to the November 28, 2018 Settlement Agreement, what were the Parties' communications regarding the type of voting machine systems the Department of State was considering, and Plaintiffs' evaluation, comments, or criticisms of these systems;

…

- e. What did Plaintiffs know about the ExpressVote XL system when the Department of State apparently first considered it in September 2018;

…

- g. Why did Plaintiffs wait until November 26, 2019 to file their Motion to Enforce the Agreement[.]

The witnesses with knowledge probative of the answers to these questions are, of course,

- the individuals on each side who negotiated the Settlement Agreement;

- the individuals on each side who communicated with the other side regarding the type of voting machine systems the Department of State was considering, and about Plaintiffs' evaluation of those systems;

- the individuals on Plaintiffs' side who were most knowledgeable about the ExpressVote XL system in the period before the Settlement Agreement was signed; and

- the individuals on Plaintiffs' side who have knowledge of the alleged communications on which Plaintiffs rely to excuse their delay in filing the Motion.

3

For each of these categories, it is plain that Mr. Maazel is the key witness on Plaintiffs' side of this dispute (along with, as to some issues, Dr. Halderman). Mr. Maazel is the person who negotiated the Settlement Agreement on Plaintiffs' behalf; he is the one who (with Dr. Halderman) discussed with Defendants the specific voting machine systems being examined by the Department of State, and provided Plaintiffs' feedback on those systems; and he is the one who engaged in the relevant communications with Defendants in 2019.

Where, as here, a dispute calls for examination of parol evidence regarding a contract (including a settlement agreement) or alleged contract, and lawyers are the only ones with direct knowledge of the contract negotiations, courts have repeatedly held that those lawyers are "likely to be necessary witnesses" and thus cannot serve as counsel at the hearing. For example, in *Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23 (D. Mass. 2006), the court disqualified plaintiff's "two attorneys [because they] are the only people who will be able to testify on the plaintiff's behalf about the settlement negotiations with the defendants, the correspondence that went back and forth between the parties, the meetings that were had between the plaintiff's counsel and defense counsel and the strategic decisions made during the settlement process." *Id.* at 30. The court noted that in *Carta*, as is the case here, "[e]ven the plaintiff herself likely would not be able to testify about such matters since they were undertaken by the attorneys themselves, not by the plaintiff …." *Id.* Because the two lawyers "were actively involved in the negotiations underlying th[at] lawsuit, can testify to facts about which no one else can testify and have personal knowledge of matters that will be necessary to prove the plaintiff's claims," "there [was] a solid basis for holding that they will be necessary witnesses and as such must be disqualified from acting as counsel to the plaintiff." *Id.* at 30-31. Notably, the *Carta* court observed that this conclusion held regardless of whether "there are defense

4

witnesses who could testify about the same facts and circumstances that the plaintiff's counsel could testify about." *Id. Accord, e.g.*, *Brennan v. Indep. Blue Cross*, 949 F. Supp. 305, 309-10 (E.D. Pa. 1996) (lawyer "likely to be a necessary witness … with regard to the contractual issues that surround the alleged waiver" and therefore had to be disqualified from serving as counsel).

## II. WHETHER MR. MAAZEL SHOULD BE DISQUALIFIED FROM SERVING AS COUNSEL AT THE HEARING MAY DEPEND ON INFORMATION NOT YET KNOWN TO DEFENDANTS, AND WARRANTS FURTHER DISCUSSION BETWEEN THE PARTIES AND THE COURT

Given the issues enumerated in Paragraph 4 of the Court's Order, Defendants have identified as hearing witnesses (among others) Kathleen Kotula and Timothy Gates (*See* ECF 141). These attorneys served as Defendants' counsel with respect to the underlying Settlement Agreement and were directly involved in pre- and post-settlement communications with Plaintiffs' counsel relating to the issues set forth in the Court's Order. Neither attorney will serve as counsel at the Hearing.

Surprisingly, Plaintiffs' Pre-Hearing Memorandum does not list *any* non-adverse witness competent to testify about those communications. (*See* ECF 143, at 5-6.) Nor will Plaintiffs call Dr. Halderman, despite his undeniable centrality to the issues on which the Court wishes to hear testimony.[1] (*See id.*) Indeed, it appears that Plaintiffs will not offer any witness of their own on the question of, among other things, the meaning of the disputed terms in the Settlement Agreement. Plaintiffs contend that Plaintiff Jill Stein "has knowledge of Plaintiffs' understanding of the terms used in the settlement" (*id.* at 5), but, as Plaintiffs themselves have

---

[1] *See, e.g.*, ECF 123-6 (Unger Decl., Ex. 4) (Dr. Halderman's evaluation of "the voting systems that PA is considering"); ECF 133, at 1, 8-9 (attempting to justify Plaintiffs' delay in filing their Motion by pointing to the time needed for Dr. Halderman to obtain certain "ExpressVote XL testing videos"); *id.* at 6 (insisting that "Plaintiffs' more specific concerns about the ExpressVote XL are indeed supported by 'admissible evidence': the declaration of Plaintiffs' expert, J. Alex Halderman").

5

pointed out, "evidence of the parties' undisclosed subjective intentions," uncommunicated to the other side, "is *not* admissible parol evidence in construing the terms of a contract" (*id.* at 8). So far as Defendants are aware, Dr. Stein was not party to *any* relevant communications between Plaintiffs and Defendants; all such communications were conducted by Plaintiffs' counsel (and/or Dr. Halderman). And Dr. Stein cannot testify about what Mr. Maazel (or, for that matter, Dr. Halderman) told her about his communications with Defendants' counsel. Any such testimony would be both inadmissible hearsay and waive any privilege.[2]

Although it therefore appears that Plaintiffs will not offer (and, at this point, are precluded from offering) any of their own testimony addressing any of the Court's questions regarding, at the very least, the parties' communications, it is not clear whether Rule 3.7 should operate to preclude Mr. Maazel from serving as counsel at the Hearing. For example, if Plaintiffs' witnesses are allowed to introduce testimony about the parties' communications, or about other topics on which Mr. Maazel has important personal knowledge, Defendants may well want to examine him. (Mr. Maazel is listed as an adverse witness in Defendants' Pre-Hearing Memorandum. *See* ECF 141.) The Court may wish to hear Mr. Maazel's testimony irrespective of whether Plaintiffs intend to call him. Or Mr. Maazel may seek to cross-examine Defendants' witnesses by challenging them on the details of communications to which he himself was a party, which would risk precisely the sort of confusion of roles Rule 3.7 is supposed to prevent. *See* Pa. R.C.P. 3.7, cmt. [2].

---

[2] In their Pre-Hearing Memorandum, Plaintiffs make clear that they do *not* intend to waive the attorney-client privilege or work-product protection. (ECF 143, at 10-11.) They further contend that, because they have not listed Dr. Halderman or any other expert as a potential witness, all communications between Plaintiffs and their expert(s) are also privileged. (*Id.* at 12.) Accordingly, even putting aside the hearsay obstacle, it is clear that Dr. Stein cannot testify regarding her communications with Plaintiffs' counsel or Dr. Halderman or the information she purportedly learned thereby.

6

Given all of these unknown variables, Defendants respectfully request that the Court further explore the parties' positions regarding the Rule 3.7 issue (and the related issue of their intentions regarding the Hearing) at a conference prior to the Hearing.

                                                        HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

                                                        By:  /s/ Robert A. Wiygul
                                                            Mark A. Aronchick
                                                            Robert A. Wiygul
                                                            Christina C. Matthias
                                                            One Logan Square, 27th Floor
                                                            Philadelphia, PA 19103
                                                            (215) 568-6200

                                                      TUCKER LAW GROUP
                                                            Joe H. Tucker
                                                           Dimitrios Mavroudis
                                                           1801 Market Street, Suite 2500
                                                           Philadelphia, PA  19103
                                                           (215) 875-0609

                                                           *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 15, 2020, I caused the foregoing Defendants' Submission Pursuant to Paragraph 7 of the December 20, 2019 Order to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

                                                    /s/ Robert A. Wiygul
                                                   Robert A. Wiygul