**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL STEIN, et al., : | |
| : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| v. : | No. 16-cv-6287(PD) |
| KATHY BOOCKVAR, in her official capacity : | |
| as Secretary of the Commonwealth, and : | |
| JONATHAN MARKS, in his official capacity : | |
| as Commissioner of the Bureau of : | |
| Commissions, Elections and Legislation, : | |
| : | |
| Defendants. : | |

**[PROPOSED] ORDER**

AND NOW, this _____ day of January, 2020, upon consideration of Defendants' Motion in Limine to Preclude Unidentified "Rebuttal" Witnesses, Individual Voter Testimony, and Evidence of ExpressVote XL Performance During the November 2019 Elections in Northampton County (the "Motion in Limine"), it is hereby ORDERED that the Motion in Limine is GRANTED.

IT IS FURTHER ORDERED that during the January 21, 2020 evidentiary hearing, Plaintiffs are precluded from 1) calling witnesses they did not identify on their January 12, 2020 witness list; 2) presenting the testimony of individual voters Vienna Linderman, Joni Lipson, or Scott McCarthy; and 3) introducing or making reference to any evidence of the performance of ExpressVote XL voting machines in Northampton County's November 2019 elections.

_____
Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JILL STEIN, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 16-cv-6287(PD) |
| | : | |
| KATHY BOOCKVAR, in her official capacity | : | |
| as Secretary of the Commonwealth, and | : | |
| JONATHAN MARKS, in his official capacity | : | |
| as Commissioner of the Bureau of | : | |
| Commissions, Elections and Legislation, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE UNIDENTIFIED "REBUTTAL"
WITNESSES, INDIVIDUAL VOTER TESTIMONY, AND EVIDENCE OF
EXPRESSVOTE XL PERFORMANCE DURING THE NOVEMBER 2019 ELECTIONS
IN NORTHAMPTON COUNTY**

Defendants hereby move for an Order in Limine precluding Plaintiffs from 1) calling witnesses they did not identify on their January 12, 2020 witness list; 2) presenting the testimony of individual voters Vienna Linderman, Joni Lipson, or Scott McCarthy; and 3) introducing or making reference to any evidence of the performance of ExpressVote XL voting machines in Northampton County's November 2019 elections during the evidentiary hearing on Plaintiffs' Motion to Enforce the Settlement Agreement (ECF 112), to be held on January 21, 2020, and precluding Plaintiffs, their counsel, and their witnesses from referring to such evidence during the hearing. The grounds for this motion are set forth in the accompanying Memorandum of Law.

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Motion in Limine.

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER


By: */s/* Robert A. Wiygul
    Mark A. Aronchick
    Robert A. Wiygul
    Christina C. Matthias
    One Logan Square, 27th Floor
    Philadelphia, PA 19103
    (215) 568-6200


TUCKER LAW GROUP
    Joe H. Tucker
    Dimitrios Mavroudis
    1801 Market Street, Suite 2500
    Philadelphia, PA  19103
    (215) 875-0609

    *Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JILL STEIN, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 16-cv-6287(PD) |
| | : | |
| KATHY BOOCKVAR, in her official capacity | : | |
| as Secretary of the Commonwealth, and | : | |
| JONATHAN MARKS, in his official capacity | : | |
| as Commissioner of the Bureau of | : | |
| Commissions, Elections and Legislation, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION IN LIMINE TO PRECLUDE UNIDENTIFIED "REBUTTAL"**
**WITNESSES, INDIVIDUAL VOTER TESTIMONY, AND EVIDENCE OF**
**EXPRESSVOTE XL PERFORMANCE DURING THE NOVEMBER 2019 ELECTIONS**
**IN NORTHAMPTON COUNTY**

**I.      INTRODUCTION**

The issue before this Court is whether the Commonwealth's certification of the

ExpressVote XL violated the terms of the parties' Settlement Agreement.  To aid in its inquiry

into that issue, this Court has instructed the Parties to present evidence on eight clearly identified

factual questions at a hearing before the Court on January 21, 2020.  The topics the Court has

listed relate to the meaning of the Settlement Agreement's terms, the Parties' conduct,

knowledge, and communications leading up to and surrounding the certification of the

ExpressVote XL system, the timing of Plaintiffs' Motion to Enforce, and the potential

consequences of granting the relief Plaintiffs seek.

Plaintiffs have indicated that they will seek to present evidence that is irrelevant to the

issues before the Court.  In their Pre-Evidentiary Hearing Memorandum, Plaintiffs state that they

intend to call three individual voter witnesses to testify, apparently, about their individual voting experiences.  In their Motion to Enforce the Settlement Agreement ("Motion to Enforce"), Plaintiffs make various factual claims about, and attach documents regarding, the performance of ExpressVote XL voting machines during the November 5, 2019 elections held in Northampton County, Pennsylvania.  This evidence is not relevant to the specific topics identified in this Court's December 20, 2019 Order outlining the subjects of the hearing, or to the broader question of whether the Commonwealth's certification of the ExpressVote XL violated the Settlement Agreement.  These witnesses and this evidence should thus be precluded, and Plaintiffs, their counsel, and their witnesses should be prohibited from referring to any such evidence at the hearing.

Plaintiffs have also defied the Court's instruction to identify their witnesses on the topics the Court has outlined.  Instead, they claim that they have broad latitude to call unidentified "rebuttal" witnesses to testify about the very issues that the Court has identified.  Plaintiffs are incorrect; the Court's Order was clear, and no legal doctrine justifies Plaintiffs' failure to identify their witnesses.

## II.     LEGAL ARGUMENT

### A.     <u>The Court Should Preclude Plaintiffs From Calling Witnesses That They Have Refused to Identify</u>

Plaintiffs improperly seek to reserve a general right to call "Rebuttal Witnesses," and in particular to call unidentified witnesses "on the issues of feasibility…and of laches after Defendants present evidence on these affirmative defenses."  Plaintiffs' Pre-Evidentiary Hearing Memorandum at 4-5.  The Court should not allow Plaintiffs to withhold information about their witnesses.

The Court explicitly ordered the Parties to address the issues of feasibility and laches, to "be prepared to call witnesses (and present evidence) who can address" these issues, and to identify their witnesses on January 13.  *See* December 20, 2019 Order (ECF 136), ¶ 4.  The parties have fully briefed these issues.  There is no element of mystery or confusion as to the Parties' positions, and the Court has made very clear that it wishes to hear evidence from both Parties.  Plaintiffs have all of the information they need at this point to identify the relevant witnesses and evidence for presentation at the hearing.  Plaintiffs' improper request to extend indefinitely their opportunity to identify potential witnesses on these well-defined and specific topics, and call them to testify at the last minute without warning to Defendants, is a transparent attempt to avoid the requirements of this Court's Order.  There is no legal justification for this maneuver, and the Court should not accept it.

Plaintiffs argue that it is more appropriate to have Plaintiffs present their evidence on the defenses of feasibility and laches after Defendants present evidence on these issues.  The Court, however, has already determined how evidence will be presented:  "Plaintiffs, as the moving Parties, will make their hearing presentation first," without exception for affirmative defenses.  Order, ¶ 5.

Plaintiffs also suggest that they are not required to identify their "rebuttal" witnesses.  But there is no generalized, unfettered right to present rebuttal evidence in response to evidence put forward by the opposing party.  Rather, "[t]he 'purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party.'"  *Vay v. Huston*, 725 Fed. Appx. 112, 117 (3d Cir. 2018) (quoting *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974)).  In particular, the Court can decline to hear rebuttal evidence "[w]hen plaintiffs [ ] seek to rebut defense theories which they knew about or reasonably could have anticipated…"  *Koch*

*v. Koch Industries, Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000).  Plaintiffs should not be permitted to reserve the right to sandbag Defendants by invoking the concept of rebuttal evidence in their pre-hearing submission, particularly where the topics to be addressed at the hearing are so narrowly and clearly defined and Plaintiffs have already received a detailed preview of Defendants' theories.

Accordingly, the Court should preclude Plaintiffs from calling unidentified witnesses, "rebuttal" or otherwise, at the hearing.

### B.      Plaintiffs' Individual Voter Witnesses Should Not Be Permitted to Testify

The Court should prohibit Plaintiffs from calling Vienna Linderman, Joni Lipson, and Scott McCarthy—three individuals who are purportedly registered voters in Philadelphia County and who used the ExpressVote XL to vote in 2019—as witnesses at the January 21 hearing because these witnesses are not capable of testifying as to any relevant evidence or giving reliable opinion testimony.  Plaintiffs state that these witnesses "ha[ve] knowledge of how the [ExpressVote XL] system works and whether the vote is voter-verifiable in practice under real-world conditions."  Plaintiffs' Pre-Evidentiary Hearing Memorandum at 6.  Three non-party individuals who each have a singular experience voting on an ExpressVote XL voting machine are not capable of providing reliable, probative testimony regarding whether the machine complies with the Settlement Agreement's criteria.  Their testimony is irrelevant, and is not reliable opinion testimony because it is not helpful to determining a fact in issue.  *See* Fed. R. Evid. 401, 701.

The issue of whether a voter is able to verify her vote when using the ExpressVote XL system depends on a broad-based evaluation of voters' experience with this system.  It requires accounting for many different factors that influence voters' experience when voting on the

ExpressVote XL.  The isolated experiences of three individuals, out of the hundreds of thousands of Pennsylvania voters who cast votes on the ExpressVote XL in November 2019, offer, at best, idiosyncratic, anecdotal windows into the wide range of possible voter experiences using these machines.  The opinions of three individuals who voted in the November 2019 elections in Philadelphia about whether the vote on the ExpressVote XL machine is verifiable do not constitute reliable evidence on this issue.  These opinions do not tend to make it more or less likely that the ExpressVote XL produces a "voter-verifiable record" of each vote as required by the Settlement Agreement.  *See* Fed. R. Evid. 401.  Nor are these opinions helpful to determining whether the ExpressVote XL produces a "voter-verifiable record" of each vote, or any other fact at issue.  *See* Fed. R. Evid. 701.  All the individual voter testimony will do is prolong the hearing, as Defendants will seek to call three (or more) individual voters to testify that they experienced no difficulty with the machines.  This exercise would do nothing to illuminate the dispositive issues, but much to waste the Court's time.

> ### C.    The Court Should Preclude Plaintiffs From Introducing Evidence of The Problems with The Performance of ExpressVote XL Voting Machines During The November 2019 Elections in Northampton County

The Court should preclude evidence of problems with the performance of ExpressVote XL voting machines during the November 2019 elections in Northampton County because it is not relevant to the issues at hand.  That is, this evidence does not tend to make it more or less probable that the Commonwealth's certification of the ExpressVote XL voting machine violated the Settlement Agreement, or bear on any of the specific issues outlined in this Court's December 20, 2019 Order.  *See* Fed. R. Evid. 401.

Plaintiffs utterly fail to explain the relevance of the problems with the performance of the ExpressVote XL voting machines in Northampton County to the question of whether the

certification of this system violated the Settlement Agreement.  Plaintiffs cannot offer any such explanation because none exists.  Plaintiffs fail even to identify specifically what problems occurred with the performance of the ExpressVote XL voting machines in Northampton County.  They vaguely assert that when Northampton County used ExpressVote XL voting machines during the November 2019 elections, "[v]oters reported widespread 'irregularities' with the machine."  Motion to Enforce at 3.  To the extent that Exhibits G, H, and I to the Motion to Enforce shed more light on the precise issues with the Northampton County election, it is clear that the "irregularities" that occurred are completely unrelated to either the ways in which Plaintiffs claim the certification of this voting machine system violates the requirements set forth in the Settlement Agreement or the list of topics this Court has ordered the Parties to address at the hearing.

Plaintiffs assert that certification of the ExpressVote XL voting machine violated the Settlement Agreement because certain structural characteristics of this system are inconsistent with the mandates of the Settlement Agreement.  The "irregularities" experienced in Northampton County involved a few discrete issues which are *not* related to these structural characteristics.  Specifically, there was apparently a tabulation problem which caused votes for certain candidates in certain races to be undercounted, and an issue with the functionality of the touchscreens that voters interact with.  *See* Motion to Enforce, Exhs. G, H, and I; Boockvar Decl. in Support of Defendants' Response in Opposition to Motion to Enforce, ¶ 71; Baumert Decl. in Support of Defendants' Response in Opposition to Motion to Enforce, ¶¶ 61-68.  Neither of these issues could have possibly resulted from, or have been in any way related to, the ExpressVote XL voting machine not producing a "voter-verifiable record of each vote," not using a "paper ballot," or not supporting robust pre-certification auditing of election results.  *See* Motion to

Enforce the Settlement Agreement at 2, 6-7. Much to the contrary, both of these problems reflect temporary disruptions to the proper working order of the ExpressVote XL voting machines in use in Northampton County.

The issues with the performance of the ExpressVote XL voting machines in Northampton County also do not bear on the specific factual questions identified by the Court as the subject of the January 21 hearing. The problems experienced in Northampton County do not illuminate the meaning of the Settlement Agreement terms, the Parties' conduct, knowledge, and communications leading up to and surrounding the certification of the ExpressVote XL system, or the timing of Plaintiffs' Motion to Enforce and potential prejudice resulting therefrom. In fact, it is only because the ExpressVote XL voting machines *do comply* with the requirements set forth in the Settlement Agreement—in that they produce a voter-verifiable record of each vote— that Northampton County was able to properly count the results of the November 5, 2019 elections despite the lapse in the proper functioning of the machines. *See* Motion to Enforce, Exhs. G, H, and I; Boockvar Decl. in Support of Response Motion to Enforce, ¶ 72; Baumert Decl. in Support of Response to Motion to Enforce, ¶¶ 69-70.

Not only is evidence of the malfunctioning of ExpressVote XL voting machines during the November 2019 elections in Northampton County not relevant to the issues that will be before the Court during the hearing, allowing this evidence would likely result in a hotly contested mini-trial within the hearing dedicated to what exactly happened in Northampton County, serving only to waste the Court's time and distract from the real issues at hand. *See* Fed. R. Evid. 403.

7

The Court should therefore preclude the introduction of any evidence relating to the issues with the performance of ExpressVote XL voting machines in Northampton County in November 2019.

### III.        CONCLUSION

Defendants respectfully request that this Court enter the attached Order.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER


By: */s/* Robert A. Wiygul _____
        Mark A. Aronchick
        Robert A. Wiygul
        Christina C. Matthias
        One Logan Square, 27th Floor
        Philadelphia, PA 19103
        (215) 568-6200


TUCKER LAW GROUP
        Joe H. Tucker
        Dimitrios Mavroudis
        1801 Market Street, Suite 2500
        Philadelphia, PA  19103
        (215) 875-0609

        *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2020, I caused the foregoing Defendants' Motion in Limine (to Preclude Unidentified "Rebuttal" Witnesses, Individual Voter Testimony, And Evidence of ExpressVote XL Performance During The November 2019 Elections in Northampton County) and memorandum of law in support thereof to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.


    /s/ Robert A. Wiygul     
Robert A. Wiygul