## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL STEIN, et al., : | |
|        Plaintiffs, : | |
| v. : | Civ. No. 16-6287 |
| : | |
| KATHY BOOCKVAR, : | |
| *in her official capacity as Secretary of the* : | |
| *Commonwealth of Pennsylvania*, et al., : | |
|        Defendants. : | |
| : | |

# O R D E R

As discussed during yesterday's on-the-record conference call, it is hereby **ORDERED** as follows:

**ORDER OF PROOF**

**(1)** The evidentiary hearing scheduled for January 21, 2019 is **CONTINUED** to Tuesday, **February 18, 2020 at 10:00 a.m.**;

**(2)** Plaintiffs shall make the initial presentation at the hearing to be followed by Defendants and Intervenors' responsive presentations. After reviewing Plaintiffs' January 13, 2019 witness list (Doc. No. 143), I determined that Plaintiffs had reserved the bulk of their presentation for rebuttal. As discussed during the conference, any suggestion that Plaintiffs may defer their evidentiary presentation on prejudicial delay or any other issue until after Defendants have made their presentation is incorrect. (See Tr. of 1/16/20 Conf. at 4:4–24.) Because Defendants have already made an adequate showing of prejudicial delay (which I will treat, *arguendo*, as an affirmative defense), Plaintiffs must, in their initial hearing presentation, address prejudicial delay and all the other factual questions raised in my December 20, 2019 Order. Cf. United States v. Am. Radiator & Standard Sanitary Corp., 433 F.2d 174, 195 (3d Cir. 1970) ("The control of the order of proof [is] a matter within the discretion of the court."). Plaintiffs may not

present rebuttal evidence on delay—or the other factual questions—that should have been presented during their initial presentation. Defendants and Intervenors likewise may not save for sur-rebuttal a witness who should have been called during their responsive presentation. If I determine that a Party has improperly reserved a witness for rebuttal or sur-rebuttal, I will preclude that witness from testifying;

**(3)** Plaintiffs shall submit an updated witness list **no later than** Tuesday, January 21, 2020 at 3:00 p.m. Plaintiffs shall identify **all** witnesses who will testify as to the factual questions set out in my December 20, 2019 Order (Doc. No. 136 ¶ 4(a)–(h).) Defendants and Intervenors shall submit their updated witness lists **no later than** Friday, January 24 at 3:00 p.m.;

**(4)** Plaintiffs shall note in their updated witness list Dr. Alex Halderman's availability to testify on February 18, 2020. If Dr. Halderman or any other Plaintiffs' witness is unavailable on February 18, Plaintiffs must note in their updated list dates **before** February 18, 2020 on which the witness is available. As I stated during yesterday's conference, I will begin the evidentiary hearing on that earlier date to accommodate the otherwise unavailable Plaintiffs' witnesses. (1/16/20 Tr. at 26:15–20.) Similarly, if a witness of Defendants or Intervenors is unavailable on February 18, I will hear the testimony of that witness at the earliest available date after the 18th;

### **NEED FOR COUNSEL'S TESTIMONY**

**(5)** In their instant Motion, Plaintiffs rely almost exclusively on Declarations of their counsel, Ilann Maazel, and Dr. Halderman. Mr. Maazel's inclusion is not surprising. As I stated during yesterday's conference, when a court is called upon to interpret and enforce a disputed settlement agreement, the testimony of the lawyers who actually negotiated the agreement invariably becomes necessary. (1/16/20 Tr. at 7:17–23.) That is presumably why Plaintiffs included in their January 13 witness list the Commonwealth lawyers who negotiated the Parties'

Settlement Agreement—Kathleen Kotula and Timothy Gates.  (Doc. No. 143, at 5.)  Yet, in their January 13 list, Plaintiffs included neither Mr. Maazel nor Dr. Halderman.  As confirmed during yesterday's conference, these omissions suggested to Defendants that no responsive presentation would be required on February 18—because Plaintiffs' initial presentation would necessarily fall short.  (Id. at 6:16–21.)  If Plaintiffs' initial presentation proved more substantial than their witness list and offer of proof suggested, however, Defendants would call Mr. Maazel, as Defendants stated in their January 13 witness list.  (See Doc. No. 141, at 2; 1/16/20 Tr. at 6:20–21.)

**(6)** In their January 15 submission, Defendants argued that I should disqualify Mr. Maazel if he testified at the January 21 hearing.  (See Doc. No. 148, at 4–6. ("Mr. Maazel may seek to cross-examine Defendants' witnesses by challenging them on the details of communications to which he himself was a party, which would risk precisely the sort of confusion of roles Rule [of Professional Conduct] 3.7 is supposed to prevent.").)

**(7)** Once I indicated during yesterday's conference that the Parties could not save witnesses for rebuttal and sur-rebuttal, Plaintiffs stated that they would likely call Dr. Halderman at the February 18 hearing, if he is available.  (1/16/20 Tr. at 14:4–5.)  (Dr. Halderman was unavailable for the previously scheduled January 21 hearing.)  In the Halderman Declaration Plaintiffs submitted with the instant Motion, the Doctor addresses issues critical to Plaintiffs: the Parties' negotiations leading to the Settlement Agreement, and Plaintiffs' knowledge of the Commonwealth's decision to certify the ExpressVote XL machines. (See Ex. 2 to Doc. No. 112.) During yesterday's conference, Defendants stated that if Dr. Halderman testified for Plaintiffs, Defendants would likely call Mr. Maazel—whose Declaration includes a discussion of those same critical topics—during their responsive presentation (1/16/20 Tr. at 7:5–16);

**(8)** As contemplated in my December 20, 2019 Order and explained during yesterday's conference, casting Mr. Maazel in two roles—counsel for Plaintiffs and necessary fact witness—is fraught with potential conflict both for Mr. Maazel and his law firm, Emery Celli Brinckerhoff. Mr. Maazel may provide testimony adverse to his clients. Mr. Maazel's colleagues would thus face a dilemma: seek to challenge their partner's credibility, or decline to do so to their clients' detriment. Indeed, such a potential conflict could affect the advice any member of the firm would give Plaintiffs as to whether Mr. Maazel should testify in Plaintiffs' initial presentation. Such inevitable conflicts are among those Rule 3.7 is intended to prevent.

I have the discretion to disqualify counsel when it "is necessary to enforce and serve the intended goals of an applicable disciplinary rule." Adeniyi-Jones v. State Farm Mut. Auto. Ins., 2016 WL 3551486, at *3 (E.D. Pa. June 30, 2016) (internal quotation marks omitted); see also United States v. Miller, 624 F.2d 1198, 1201 (3d. Cir. 1980) ("The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."). Yet, as I discussed during yesterday's conference, disqualification is "an extreme sanction that should not be imposed lightly." Id. (quoting Cipressi v. Bristol Borough, 2012 WL 606687, at *2 (E.D. Pa. Feb. 27, 2002)); (see 1/16/20 Tr. at 6:10–11.)

Because Defendants have not yet finally decided to call Mr. Maazel during their responsive presentation, I will defer deciding Defendants' disqualification request or the disqualification of the Emery law firm until after Plaintiffs have completed their initial presentation on February 18. If Defendants then decide that they will call Mr. Maazel as an adverse witness (as they stated in their January 13 witness list), I may well be compelled to disqualify Mr. Maazel and his firm. Accordingly, Plaintiffs are **ORDERED** to have standby counsel prepared to proceed on February 18 should Mr. Maazel and the Emery firm be disqualified. As I noted during yesterday's

conference, for over three years Montgomery McCracken has served as Plaintiffs' local counsel (1/16/20 Tr. at 8:12–15; see Doc. No. 1);

**MOTIONS *IN LIMINE***

**(9)** As I explained during yesterday's conference, my rulings on these motions are necessarily tentative and could change in light of the evidence actually presented at the February 18 hearing, or if a Party opens the door to evidence I have tentatively excluded. With those caveats in mind, I make the following rulings without prejudice;

    a. Intervenors' Motion *in limine* (Doc. No. 152) is **GRANTED**. Evidence of the City's procurement and bidding processes respecting the machines to be used in the 2020 elections as well as the allegations in the Controller's Report are not relevant to the issues I must address. Evidence of the City's procurement process will be admitted only to the extent that it relates to the likely consequences on the 2020 elections of granting the relief Plaintiffs seek: i.e., ordering the Commonwealth to decertify the ExpressVote XL machines;

    b. Defendants' Motion *in limine* is **GRANTED in part.** Plaintiffs may not call Nonparty Philadelphia voters to testify about the experience each had using the ExpressVote XL during the November 2019 election. As I stated during yesterday's conference, whether the ExpressVote XL creates a "voter-verifiable record" is best determined by examining the machine itself. An individual's personal experience using the machine is not likely to be probative;

    c. Evidence of difficulties experienced in Northampton County with the ExpressVote XL machines will be admitted only to the extent it relates to why Plaintiffs waited until November 26, 2019 to file the instant Motion;

**STIPULATIONS**

**(10)** To the extent possible, the Parties **SHALL** stipulate to undisputed facts. The Parties shall jointly submit a statement of undisputed facts **no later than** **February 11, 2020 at 5:00 p.m.**

                                                                 **AND IT IS SO ORDERED.**

                                                                  */s/ Paul S. Diamond*

January 17, 2019                                                             Paul S. Diamond, J.