



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

```
JILL STEIN, et al,                    .
                                      .   Case No. 16-cv-06287-PD
               Plaintiffs,            .
    vs.                               .   U.S. Courthouse
                                      .   601 Market Street
PEDRO A. CORTES, et al,               .   Philadelphia, PA 19106
                                      .
               Defendants.            .   Thursday, January 16, 2020
                                      .   11:07 a.m.
. . . . . . . . . . . . . . .
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE PAUL S. DIAMOND
UNITED STATES DISTRICT COURT JUDGE

TELEPHONIC APPEARANCES:

For the Plaintiffs:          Emery Celli Brinckerhoff & Abady LLP
                             By:  ILANN M. MAAZEL, ESQ.
                                  DOUGLAS E. LIEB, ESQ.
                                  ZOE SALZMAN, ESQ.
                             600 Fifth Avenue, 10th Floor
                             New York, NY 10020
                             (212) 763-5000

For the Defendants:          Hangley Aronchick Segal & Pudlin
                             By:  ROBERT WIYGUL, ESQ.
                                  CHRISTINA MATTHIAS, ESQ.
                             One Logan Square, 27th Floor
                             18th & Cherry Streets
                             Philadelphia, PA 19103-6933
                             (215) 496-7042

For Philadelphia County      City of Philadelphia Law Department
Board of Elections and       By:  BENJAMIN H. FIELD, ESQ.
City of Philadelphia:             DANIELLE WALSH, ESQ.
                                  MICHAEL WU-KUNG PFAUTZ, ESQ.
                             1515 Arch Street, 15th Floor
                             Philadelphia, PA 19102
                             (215) 683-5024


Audio Operator:              Courtroom ECRO Personnel

TRANSCRIBED BY:              Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46038
                             (855) 873-2223
                             www.accesstranscripts.com

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.



1       (Proceedings commence at 11:07 a.m.)

2           THE COURT:  Good morning, everybody.  This is Judge

3   Diamond.  I appreciate your attending this telephone

4   conference.  Could everybody please identify himself/herself

5   and your clients as a preliminary matter.

6           MR. MAAZEL:  Good morning, Your Honor.  This is Ilann

7   Maazel.  I'm here with my colleagues, Doug Lieb and Zoe

8   Salzman, of Emery Celli Brinckerhoff & Abady, representing the

9   plaintiff.  And Happy New Year, Your Honor.

10          THE COURT:  Thank you.

11          MR. WIYGUL:  Good morning.  This is Robert Wiygul,

12  I'm here with my colleague, Christina Matthias, from Hangley

13  Aronchick, representing the defendant.

14          THE COURT:  I would -- I'm sorry, go ahead.

15          MR. FIELD:  Good morning, Your Honor.  I was just

16  going to announce myself.  It's Benjamin Field representing the

17  Philadelphia Board of Elections and City of Philadelphia, and I

18  am here with my colleagues, Danielle Walsh, and Michael Pfautz.

19          THE COURT:  Thank you.  I was just going to say that

20  as we go forward -- this is on the record.  So as we go

21  forward, whenever anybody speaks, I would ask please that you

22  identify yourself before you say whatever you have to say, just

23  so we can make an accurate record.

24          This is an on-the-record proceeding.  I have not

25  invited the public into my chambers, but the recording of the

3

1    proceeding will be made immediately available on ECF, and I'm

2    ordering a transcript forthwith, which will also be immediately

3    available to the public.  And I've set out the things -- the

4    questions I have and the matters I would like to discuss, and

5    when I get done with all of those, if anybody has anything else

6    he or she wishes to discuss, I'm happy to do so.

7         The first question I would like to address, or issue

8    I would like to address, is the question of the order of proof.

9    The plaintiff is taking the position, with respect to the

10   equitable defense of delay, that it is an affirmative defense

11   and that it -- it appears to me what the plaintiff is saying is

12   it doesn't have to present anything in its presentation.  I'll

13   call it its "case-in-chief," but only in rebuttal because it is

14   the defendant's burden to make out its affirmative defense.

15        I'll assume for the moment that affirmative defense,

16   which is usually used in the context of a complaint and an

17   answer or counterclaim, actually applies in motions practice.

18   I'll assume that.  It does appear to me very clear that

19   plaintiffs -- I'm sorry, that the defendants, with their

20   response to the plaintiffs' motion, that the defendants have

21   made out more than a prima facie case of prejudicial delay that

22   the plaintiffs must explain.

23        In addition, because this is an equitable defense, it

24   affords me a fair amount of discretion in the order of proof.

25   And so I am going to -- I want to be really very clear about

4

1  this, and I will issue a written order sometime today, I hope,
2  to confirm what we say here on the call and perhaps explain
3  more fully the bases of my rulings as I make them.
4        I don't think the defendants have really complied --
5  I'm sorry, I don't think the plaintiffs have really complied
6  with my December 20th order.  I think the plaintiffs are not
7  especially clear on who they are going to call, or whom they
8  are going to call, to answer my factual questions and that they
9  think it's somehow the defendants' burden, at least with
10 respect to delay, and that they'll call -- the plaintiffs will
11 call whomever they think they need to call in rebuttal.  That's
12 not how it's going to work.
13        Both the plaintiff and the defendant -- plaintiffs
14 and the defendants, in what I'll call their cases-in-chief,
15 must call all available witnesses who have anything relevant to
16 say in answer to the questions I posed in my December 20th
17 order.  If either the -- if the plaintiffs fail to call
18 somebody that should have been called on the 21st in their case
19 in chief, if they fail to do that, I won't allow that person to
20 testify in rebuttal.  Same for the defendants.  If they wait
21 until the plaintiff presents its rebuttal witnesses and then
22 call somebody in surrebuttal that they should have called in
23 response to the plaintiffs' presentation, I won't allow that
24 person or persons to testify.
25        So there's no holding back.  You put your best foot

1   forward on the 21st.

2          We come how to Dr. Halderman.  The plaintiffs have

3   known probably since the summer of 2018 that this might go to

4   court, certainly since their own motion to enforce the

5   settlement just after Thanksgiving of last year.  I think they

6   filed their motion on November 26th of last year.  And in their

7   motion, they based their motion essentially entirely on two

8   affidavits.  The affidavit of Dr. Halderman, to which in my

9   counting may be an expert, but I think I got it right.  In a

10  13-page memorandum, the plaintiffs cite to Dr. Halderman nine

11  times, his affidavit, and to Mr. Maazel 14 times.  They also

12  cite to Mr. Garella's affidavit on this kind of voter survey,

13  which as I will explain, I think is not germane to this

14  dispute.  So it appears to me that the plaintiffs, in saying

15  Dr. Halderman is not available, when they -- they have to have

16  known at least since November 26th his testimony would be

17  essential is troubling, to say the least.

18          Mr. Maazel, is Dr. Halderman available to testify

19  later today?

20          MR. MAAZEL:  Thank you, Your Honor.  Here is the

21  issue with Dr. Halderman.  He is in Melbourne, Australia, where

22  he is going to be until January 27th.  He's visiting relatives.

23  He had made these plans long before the hearing was scheduled.

24  And he left the country, you know, for this long-planned trip

25  at the end of December.

1          So that is the issue with Dr. Halderman.  You know,
2   we did not -- certainly when we filed our motion, we didn't
3   know whether or not there would be a hearing.  We certainly
4   couldn't anticipate the date of the hearing.  And this is just
5   his own family situation that he -- that is why we are just
6   unable to bring him to court, Your Honor.
7          THE COURT:  All right.  Well, let's put the question
8   of Dr. Halderman on hold for a moment, and let's talk about
9   you, Mr. Maazel.
10         I recognize that attorney disqualification is a last
11  resort.  It's nothing I even want to address lightly, and I
12  note that the defendants have been especially temperate in this
13  very hot matter by saying, we don't know if Mr. Maazel is --
14  we're going to need to call him as an adverse witness because
15  right now, with the plaintiffs' offer of proof, we don't think
16  they're -- this is how I read what you're saying, Mr. Wiygul.
17  We don't think the plaintiffs are going to make a -- make out a
18  case, so we won't have to call anybody, certainly not
19  Mr. Maazel.  Is that kind of what you're saying?
20         MR. WIYGUL:  I think that -- that is the gist, I
21  believe, Your Honor.
22         THE COURT:  Okay.  Now, Mr. Maazel, it -- my own --
23  as I say, it appears to me that the two princes of Denmark, in
24  the -- in Hamlet here in your motion are you and Dr. Halderman.
25  And your -- and you say you don't think your own testimony is

1 necessary, and Dr. Halderman is in Australia.  I believe the

2 law is that if a lawyer knows that he or she is going to be a

3 necessary witness in a proceeding that he should, or she

4 should, withdraw.

5      What's more, if you are a witness -- so, for

6 instance, Mr. Wiygul, if I continue this hearing until a date

7 when Dr. Halderman is available and he testifies, and if you

8 assume he testifies to what he said in his affidavit, in his

9 sworn statements, does that make it more likely that the

10 defendants are going to need to hear from Mr. Maazel as an

11 adverse witness?

12      MR. WIYGUL:  I think it does, Your Honor, because he

13 was -- for another reason, he was involved in, and in our view,

14 really the point person on the key communications between the

15 parties and also had knowledge regarding, for example, Topics E

16 and G in Your Honor's hearing order.

17      THE COURT:  The -- Counsel, this is not the first

18 motion to enforce a settlement that I've had in the 15 years

19 I've been here, and invariably, what happens -- and it appears

20 to me what happened here is that it's the lawyers who negotiate

21 the settlement agreement, the lawyers become witnesses, and the

22 lawyers therefore cannot continue to represent their clients,

23 nor can their firms.  If the defense calls Mr. Maazel as an

24 adverse witness, how on Earth can Mr. Maazel's law firm examine

25 him?  What if Mr. Maazel -- Mr. Maazel, I have nothing but the

1  highest regard for you.  Please, none of this is intended in

2  any way to reflect adversely on you.  I simply have to apply

3  the law here.

4           And if Mr. Maazel offers testimony that's adverse to

5  his client, how -- his firm is going to be stuck in the

6  position where they either seek to undermine the credibility of

7  a partner in the firm, or if they don't, they may be

8  shortchanging the plaintiffs.  In these circumstances, I just

9  don't see how the Maazel firm -- and I know it calls itself

10 something else, but I'll call it "the Maazel firm" for purposes

11 of this hearing.  I don't see how the Maazel firm can continue.

12          Now, the Maazel firm has Montgomery McCracken as its

13 local counsel, which is one of the biggest firms in the city.

14 If I disqualify you and your firm, Mr. Maazel, can the

15 plaintiffs proceed on the 21st?

16          MR. MAAZEL:  Your Honor, if I could just have my --

17 since I'm the focus of the disqualification question, I think

18 it might be better if my colleague, Doug Lieb, addresses the

19 disqualification issue with Your Honor's permission.

20          THE COURT:  Certainly, but you're simply highlighting

21 why it's unbelievably awkward for you to continue in here as a

22 lawyer, and you just underscored it.

23          Mr. Lieb, please, please proceed.  Can the plaintiff

24 proceed -- plaintiffs proceed on the 21st, on Tuesday, if I

25 disqualify your firm?

1      MR. LIEB:  The answer to that question is no, Your

2  Honor, but we would respectfully submit that there is no basis

3  for disqualification for a couple of reasons.  First of all,

4  Your Honor, the advocate witness rule is a rule about jury

5  confusion.  That's what the case law --

6      THE COURT:  Mr. Lieb --

7      MR. LIEB:  -- from the Pennsylvania Commonwealth

8  Court --

9      THE COURT:  Mr. Lieb.  Mr. Lieb.

10     MR. LIEB:  Yes?

11     THE COURT:  I'm well aware of the law.  This is

12  not -- and I didn't talk about jury confusion, but this has

13  been extended to hearings of this kind, to evidentiary hearings

14  of this kind.  I believe that this puts Mr. Maazel and your

15  firm in a potential conflict situation, and the defendant has

16  just indicated -- I'm not going to wait until Tuesday

17  afternoon, after the plaintiff has presented -- plaintiffs have

18  presented their case, for the defendant to tell me, well, we

19  think we need to call Mr. Maazel, which means the firm is

20  disqualified and what took place on Tuesday morning may be

21  tainted in some way by a potential conflict.  I have to address

22  this now, and it has nothing to do with juror confusion.

23     MR. LIEB:  Your Honor, may I be heard as to the

24  question of whether there is any conflict or potential

25  conflict?

1          THE COURT:  Certainly.

2          MR. LIEB:  There is none, Your Honor, and the reason

3    is as follows.  What Mr. Maazel could testify to if he were

4    called as a witness in this case are the factual contents of

5    his communications with the defendants, the factual contents of

6    who said what at the settlement conference, the factual

7    contents of who said what on telephone calls and

8    meet-and-confers, and the like.  That's basically the scope of

9    his testimony.  He's certainly not going to testify as to

10   privileged communications with his client or experts or his

11   attorney work product and, you know, what he was researching

12   and technically thinking at any given moment when he was

13   drafting an agreement.

14         THE COURT:  And I'm not -- and I am not expecting him

15   to abrogate any privilege, but the things that you just talked

16   about are critical to my resolution of -- or my ruling on your

17   motion.  It's why you have indicated you're calling two

18   Commonwealth attorneys who participated in negotiations.

19   Otherwise, they could just be -- they could just submit

20   affidavits.  You want their testimony.

21         MR. LIEB:  But if I may, Your Honor, under Rule

22   3.7(b), the only grounds for disqualification is if there is a

23   conflict between attorney and client.  And what I do not see,

24   respectfully, Your Honor, and what I do not believe there is

25   any basis in the record to conclude at this point is that

1 Mr. Maazel's truthful testimony about who said what in

2 exchanges with representatives of the Commonwealth in any way

3 poses a risk of a conflict of interest with the client.  Those

4 are facts that occurred.  The interpretation of them may be,

5 you know, what they are, but I guess what I -- what I'm

6 certainly not seeing is that there would be any basis to

7 disqualify the firm, which is -- and a conflict -- an actual

8 conflict, I believe, is required to disqualify the firm.  And

9 respectfully, Your Honor, I don't see any basis to conclude

10 that Mr. Maazel giving truthful testimony about what Sue Ann

11 Unger said on October 5th, 2019 phone call causes a conflict of

12 interest with the client.  And therefore, there would be no

13 basis to disqualify the firm under Rule 3.7(b).

14         THE COURT:  Mr. Lieb, we have examination and

15 cross-examination precisely because testimony is subject to

16 interpretation.  Recollections can be selective.  And again,

17 this -- I'm not personalizing this to Mr. Maazel.  Please, I

18 want to be clear.  But I just don't see how, when your -- when

19 you, meaning the plaintiffs, are saying that this is not what

20 was contemplated in the settlement agreement, that the lawyers

21 who negotiated the settlement agreement aren't necessary, if

22 not indispensable witnesses, and if the defendants' version of

23 the facts is correct -- and you're saying, no, the plaintiffs'

24 version of the facts is correct, but if the defendants' version

25 of the facts is correct and Mr. Maazel tells the truth and

1   that -- and the truth is -- and I don't know what the truth is,

2   I -- that's why we're having a hearing -- and the truth is what

3   the defendants say is correct, then you are going to be in the

4   position of cross-examining your own partner as to whether or

5   not he's telling the truth or he's getting it wrong.  Or you

6   won't cross-examine your own partner because he's your partner

7   and the plaintiffs get shortchanged.   I --

8        MR. LIEB:  Your Honor --

9        THE COURT:  Yes?

10        MR. LIEB:  -- two points, if I may.  First, I think

11   that theoretical possibility exists in every case.

12        THE COURT:  No, it doesn't.  No, it doesn't.  This

13   happens -- these motions to enforce settlements happen once

14   every year or two, and this is the first time I've had the firm

15   that is moving to enforce the settlement where the lawyer is

16   going to have to be witness saying that the firm doesn't have

17   to withdraw.  There's normally not a fight about it.

18        MR. LIEB:  Your Honor, there's also an inquiry here

19   of prejudice to the client of having counsel of choice and

20   counsel who are, you know, who are informed in the matter and

21   have been expert in the matter.  We -- our firm has been lead

22   counsel on this case since the day leading -- since the day

23   following the 2016 election, as Your Honor will recall.

24   Mr. Papianou is obviously an excellent lawyer, but his firm has

25   not been involved in any of the substantive preparation from

1  the -- for the hearing and looking into the legal issues and

2  all the like.  So I think it would be highly prejudicial to the

3  client and to the client's ability to present an effective case

4  to disqualify members of our firm other than Mr. Maazel at this

5  late date.

6          THE COURT:  Well, I believe that if I gave you three

7  or four weeks to obtain new -- gave your clients three or four

8  weeks to obtain new counsel, this is a fairly -- this hearing

9  really doesn't call upon people with enormous expertise in the

10  areas you're talking about it.  It's a question -- it's to

11  answer the questions that I posed in my letter, and those

12  questions are really fairly straightforward and simple, and

13  there are a limited number of witnesses.  But it does seem to

14  me that you have -- I have a number of choices here and a very

15  limited number of choices.

16          I can disqualify your firm and give your clients a

17  month from the 21st, a month from Tuesday, to find new counsel,

18  and I'm assuming that would be, I believe, the 18th of February

19  would be a month from Tuesday, and also to determine whether or

20  not Dr. Halderman is available on that day.  And if he's not,

21  we'll move the hearing up to an earlier day.  Or what I could

22  do is I could tell you that it seems more likely than not to me

23  that it -- by the -- after you rest, meaning the plaintiffs

24  rest, I'll continue the hearing for a month.  And after the

25  plaintiffs rest, presumably after I -- Mr. -- I think you can

1   answer this, Mr. Maazel, although Mr. Lieb, you're free to

2   answer it, too.  If Dr. Halderman is available, are you going

3   to call him?

4           MR. MAAZEL:  I mean, we were likely to call

5   Dr. Halderman, Your Honor.

6           THE COURT:  Okay.

7           MR. MAAZEL:  I'm sorry, this is Ilann Maazel.

8           THE COURT:  Oh, yeah, that's -- and I asked -- sorry,

9   I didn't give you the -- thank you.

10          After Dr. Halderman testifies and after the plaintiff

11  rests, on the 18th of February, Mr. Wiygul or Mr. Aronchick is

12  going to indicate whether or not you're a witness, Mr. Maazel,

13  and I may have to disqualify you and your firm then.  And so

14  I -- and I'm not interested in disqualifying you and your firm,

15  although I do think by giving you a month, you have -- I just

16  don't see the prejudice, but still, it's -- I understand it's

17  not something any judge, it seems to me, wants to do.  It seems

18  to me you're going to have to have -- if you don't want me to

19  disqualify you now, if the Maazel firm doesn't -- thinks I

20  should not disqualify now, which it obviously does, then I --

21  it seems to me you have to have backup counsel ready to proceed

22  at the continued hearing on the 21st.  And if, in fact,

23  Mr. Aronchick, Mr. Wiygul determine they're not going to call

24  Mr. Maazel, then the firm can continue.  If they determine they

25  are going to call Mr. Maazel, then I'll have to address the

1   disqualification of counsel and you have to have backup counsel
2   ready to go because I'm not going to continue this hearing
3   again.
4           MR. LIEB:  In the interest of clarification, Your
5   Honor, in that second option --
6           THE COURT:  Who's speaking?  Who's speaking?
7           MR. LIEB:  This is Douglas Lieb for plaintiffs.  In
8   the interest of clarification, Your Honor, in that second
9   alternative you just described, am I correct to understand that
10  the disqualification decision would be made at the end of
11  plaintiffs' case-in-chief, at which point the defense would
12  make a determination as to whether they wish to call Mr. Maazel
13  or not?
14          THE COURT:  Exactly.  I assume, Mr. Lieb, that from
15  your standpoint, that's the preferable course.
16          MR. LIEB:  We're looking at each other in the room as
17  we're on the phone here with you, Judge, but the immediate
18  consensus of the room seems to be that that would be the
19  preferable course, I think.
20          THE COURT:  All right.  And again, I'm not casting --
21  truly not casting any aspersions here.  Everyone's trying to do
22  the best he or she can for the client.  I understand that.  But
23  this can't be something that the plaintiff and its counsel
24  hasn't thought about a lot since deciding to litigate this.
25  Since it -- the -- when you have a dispute as to what -- a

1  settlement -- what's in a settlement agreement, the people who

2  negotiated the settlement agreement are invariably necessary,

3  if not indispensable, witnesses.

4        But let me move on to the motions in limine, or the

5  motion in limine, and my -- motions in limine are necessarily

6  tentative because I don't have a concrete evidentiary context,

7  and I don't know whether the party that is opposing, for

8  instance, the admission of certain evidence doesn't open the

9  door to that evidence during the course of the actual hearing.

10  So these are necessarily tentative rulings, subject to --

11  they're without prejudice, subject to revision during the

12  course of the hearing.

13        We'll start with the City's procurement process.  The

14  City's procurement process will be admissible at this hearing

15  only to the extent that it answers my question about whether or

16  not granting the plaintiffs' motion, what effect that would

17  have on the -- on voting in Philadelphia in the November

18  election, period.  The way these particular machines were bid

19  and whether or not the process comported with what the

20  plaintiff calls "best practices" in one or another of its -- of

21  their filings and whether or not the city controller's report

22  is accurate or not really has nothing to do with answering the

23  only question that I think touches on the City's procurement

24  process, which is if I order the Secretary of the Commonwealth

25  to decertify these machines, what effect is that going to have,

1  if any, on voting in the November 2020 presidential election,

2  period.

3           The Northampton County experience, and I actually

4  have -- I believe a complaint was filed yesterday in the

5  Commonwealth Court relating to that, which I have in front of

6  me and which I've looked at.  The Northampton County

7  experience, as far as I can tell, has nothing to do with the

8  questions I posed.  And so no evidence of that will be admitted

9  unless somebody opens the door to it or unless the evidentiary

10  context is different than what I contemplate it will be.

11          And the same with the individual voters, none of whom

12  are plaintiffs in this case.  I just don't see what they have

13  to contribute to what the settlement agreement means, what the

14  parties meant in using certain terms which I think are

15  ambiguous, and I just don't see what their testimony -- how

16  their testimony is relevant.

17          Again, once we have an actual evidentiary context and

18  there is a possibility of someone opening the door to

19  something, I'm quite prepared to revisit those tentative

20  rulings.

21          With that, I'm done with the things I wanted to

22  discuss.  If anyone has anything that he or she thinks we need

23  to address right now, please do -- please bring it up.

24          MR. MAAZEL:  Your Honor, Ilann Maazel for the

25  plaintiffs.  Could we just briefly be heard on just a couple of

1  your preliminary in limine rulings?  Because we just haven't

2  had the chance to brief that in any way yet.

3          THE COURT:  Understood.  Go ahead.

4          MR. MAAZEL:  Okay.  On the Northampton question, one

5  way in which we think an aspect of that is relevant is to the

6  timing of plaintiffs' motion to enforce because as I think you

7  saw -- Your Honor saw in the record, there was a colloquy

8  between my law firm and Mr. Gates (phonetic) about the way the

9  machines operated in Northampton and whether that would affect

10 the State's or the Commonwealth's determination to certify or

11 not certify the system.

12          THE COURT:  Mr. Maazel, I'm quite prepared -- I don't

13 even think I need to take judicial notice of it because it's a

14 court filing and -- but in any event, I'm quite prepared to

15 accept that the difficulties in Northampton County were a

16 factor in the timing of your litigation and your clients'

17 decision to proceed.

18          MR. MAAZEL:  That's my only point, Your Honor.

19          THE COURT:  I don't -- yeah.  I don't think you

20 need -- and I don't think Mr. Wiygul or Mr. Aronchick would

21 oppose my taking judicial notice of when those events took

22 place.  The difficulty with the Northampton County machines is

23 what I'm talking about.  I just don't see how that bears on our

24 dispute.  Do you disagree?

25          MR. MAAZEL:  We were not planning on putting evidence

1  of that, Your Honor.

2          THE COURT:  Okay.

3          MR. MAAZEL:  We agree with the Court on that.  As to

4  the --

5          THE COURT:  And again, I would urge -- I apologize

6  to -- for interrupting you, Mr. Maazel.  I would really -- I

7  understand that this is a keenly contested dispute.  I'm hoping

8  it generates more light than heat.  To the extent the parties

9  can stipulate to facts without betraying their clients'

10  interest, of course, it would be very helpful.  And Northampton

11  County's publicly-known difficulties and the dates of those

12  would be something I would -- Mr. Wiygul, I would think that

13  you and your clients could stipulate to.

14          MR. WIYGUL:  I think certainly in terms of the dates,

15  Your Honor, and I'm not sure that there's any actual dispute

16  between the parties about what those issues are.  Certainly, I

17  don't think there's any in the record.  But we have not

18  confirmed that with --

19          THE COURT:  Well, I'm just talking about the dates.

20  I'm just -- and I believe MR. Maazel was just talking about the

21  dates, but that's just an example.  It does seem to me that as

22  I look through the various declarations that have been

23  submitted to me, I can't say that there aren't disputed facts.

24  There are many disputed facts, but there are many facts that

25  are not disputed.  And particularly if I'm going to continue

1  this hearing for a month, it does seem to me the parties could

2  agree on a list of stipulated facts.  That would make my job

3  easier and make for a better result.  If you can't do it, I

4  understand.  I'm simply asking counsel to try.

5         MR. MAAZEL:  And, Your Honor, this is Ilann Maazel.

6  The Court will be pleased to note that the parties -- we

7  anticipated this, and we've already been speaking about

8  stipulations.  We have a draft set of stipulations from the

9  defense, which we are editing and adding to.  And so the

10  parties have the exact same view, I think, as Your Honor, which

11  is let's narrow the issues.  There's a great deal here that's

12  not in dispute, and let's submit the most fulsome

13  stipulation -- joint stipulation that we can to streamline this

14  proceeding.

15         THE COURT:  I'm delighted to hear it.  You're all

16  great Americans.  Is there anything else?  Is there anything

17  else anybody needs to raise?

18         MR. MAAZEL:  Yes, Your Honor.  Just -- on the limine,

19  I was going to get to the voter verifiability question.

20         THE COURT:  Yes.

21         MR. MAAZEL:  The voters we wanted to put on the stand

22  at the hearing.  One issue, of course, in -- that Your Honor's

23  asked the parties to address is what is the meaning of voter

24  verifiability within the agreement, A, and B, does this system

25  violate the settlement agreement.  And part of that is, is this

1  system voter verifiable.  So we thought it would be useful and

2  helpful for the Court to hear from one or more voters who

3  could, themselves, describe their experience with this system

4  at issue and describe whether they could verify their own

5  votes, which goes to the heart of whether the vote is

6  verifiable.

7          THE COURT:  No, it really doesn't, Mr. Maazel.  It

8  goes to whether or not that voter could verify his own or her

9  own vote.  It seems to me that I have to make a factual

10  finding -- maybe I don't, but it does seem to me I have -- I

11  will have to make a factual finding on whether or not this

12  machine creates a record that is voter verifiable, and it

13  wouldn't surprise me if there was a mockup machine in the

14  courtroom for the hearing at which the machine's working.  I

15  have -- you have put in your motion and in other filings,

16  Mr. Maazel, a photograph of what it looks like, what the screen

17  looks like.  I -- it would be probably helpful -- and this, I

18  think, is something the parties could also agree upon, to have

19  an actual machine, and I would look and I would determine

20  whether or not it's voter verifiable and whether or not it's

21  difficult to verify, and if so, how it's difficult.  You

22  have -- your -- you've said on a number of occasions that

23  it's -- it can be verified but with difficulty, and I have to

24  determine whether that's accurate or not, but I'm -- I really

25  don't think the experience of an individual voter sheds much

1  light on that as opposed to having the machine there and I can

2  make a determination, a factual determination.

3          MR. MAAZEL:  I guess our thought, Your Honor -- and

4  that's a very interesting idea that the parties have not

5  discussed, but it sounds like it could be very useful for the

6  Court.  Our thought was that having a voter describe what it

7  was like to vote under real-world conditions would be of use in

8  evaluating whether, you know, this system, in the real world at

9  a real polling place, would be voter verifiable, but I mean,

10  Your Honor is the finder of fact in this proceeding, and so

11  it's certainly the goal of the parties, certainly the

12  plaintiffs' side, to try to help you come to what you believe

13  is a just result.

14          THE COURT:  Well, Mr. Maazel, I kind of -- I mean, I

15  do think you're trying to conform your proof to the

16  questions -- or your argument, I should say, to the questions I

17  posed, but I think the testimony of these witnesses goes more

18  to what you described in your motion as best practices than

19  whether it's voter verifiable.  I am assuming that for some

20  voters -- because you said "with difficulty," just based on

21  what you say, that it's verifiable with difficulty in your

22  motion, it seems to me that for some voters, it'll be

23  difficult, and for others, it may not be.  And your -- it just

24  seems to me to have these voters testify is to have them say

25  these are lousy machines.  And -- because I assume that's what

1  they're going to say, and that's not my job, to determine

2  whether they're good machines or whether there are better

3  machines.

4         So I would -- I am not going to -- and again, this is

5  subject -- this is without prejudice, and this would -- this

6  might be an example, Mr. Maazel, of evidence that you might be

7  able to present in rebuttal, depending on what the defendants

8  present in their case-in-chief, whether or not they open the

9  door to it.  But as I sit here, it just seems to me the

10  experience in a city with -- I forget how many registered

11  voters.

12         Does the -- do the representatives from the City have

13  an estimate of that?  It's in the hundreds of thousands.

14         MR. FIELD:  There are a million -- approximately a

15  million registered voters.  I believe the election voter total

16  was in the couple-hundred-thousand range, 2- to 300,000 at the

17  polls on election day in the last election.

18         THE COURT:  And who just spoke?

19         MR. FIELD:  I'm sorry, Your Honor.  That -- this is

20  Ben Field for the City and the Board of Elections.

21         THE COURT:  Excellent.  I -- yeah, I -- if it's a low

22  turnout or even a moderate turnout, it may be no more than 2-

23  or 300,000, but the experience of two or three people when

24  there are going to be hundreds of thousands voting, it just

25  doesn't seem to me to be germane to the question I raised, and

1   so -- whether or not it's verifiable.  And so -- and what the

2   parties meant when they said "voter verifiable."

3            And so right now, Mr. Maazel, I don't think I'm going

4   to let it in, but as I say, that's subject to revision if the

5   City or the defendants open the door.

6            MR. MAAZEL:  Understood, Your Honor.

7            THE COURT:  Anything else we need to discuss?  I

8   will -- in the order I will issue, it does seem to me the

9   parties are going to have to propound new witness lists, and it

10  might be productive if I ordered the plaintiff to produce its

11  witness list and give the defendants a couple of days to

12  produce a responsive witness list now that they know that --

13  now that everybody knows that you can't save anything for

14  rebuttal or surrebuttal that should be presented in your

15  case-in-chief.

16           And other than that, I'm not sure, is there anything

17  else that the parties think I need to put in my order to -- I

18  mean, I'm going to explain, with dates and so forth, everything

19  we've discussed here.  Is there anything more you think I need

20  to address in the order?

21           MR. MAAZEL:  Your Honor, Ilann Maazel.  One question

22  is just the -- it sounds like the Court is inclined to move the

23  date of the hearing.

24           THE COURT:  The Court is moving the date of the

25  hearing.

1          MR. MAAZEL:  Yes, okay.  I understood that.  And I
2    just -- I'm just wondering -- of course, whatever date the
3    Court picks, as I indicated, we will do everything we possibly
4    can to make sure our witnesses are available.  I just have a
5    small concern that if the Court picked a certain date that, you
6    know, perhaps Dr. Halderman will be off speaking at a
7    conference in Thailand or something, and I -- you know, should
8    I try to find out from him what his -- if there are any dates
9    that are actually impossible first, recognizing that I can't
10   ask him today because he's probably asleep in Melbourne right
11   now, or should we just do everything we can to ensure that he
12   and any other witness is available on whatever date the Court
13   picks?
14          THE COURT:  I would like to do that last thing,
15   Mr. Maazel.
16          MR. MAAZEL:  Understood.
17          THE COURT:  However, I understand that -- I mean, we
18   are going to seek to hear -- we, meaning collectively -- the
19   testimony of the Secretary of the Commonwealth, other public
20   officials, a computer expert who apparently is -- travels a
21   lot, and if a particular witness is not available on a
22   particular day, then I will accommodate that witness.  And
23   since the defendants have to respond to what the plaintiff
24   presents, if a plaintiffs' witness -- and this is -- I'm just
25   thinking aloud with you.  If a plaintiffs' witness is not

1    available on the date which I think I said was the 18th, then

2    we will convene the hearing earlier simply to take the

3    testimony of that witness.  If a defense witness is not

4    available on the 21st [sic], we will recess the hearing and

5    take that testimony after the 21st [sic] so that the parties

6    can proceed on the 21st [sic] with a presentation and a

7    counter-presentation.  That's what I'm thinking, but I'm open

8    to suggestions.

9            MR. MAAZEL:  That makes sense to the plaintiffs, Your

10   Honor.  So is the date the 21st of February?

11           THE COURT:  I'm sorry, it's -- I apologize.  No.

12   It's the 21st of January.  It was the 18th of February.  I

13   apologize.

14           MR. MAAZEL:  Right, understood.

15           THE COURT:  That was Mr. Maazel speaking, for the

16   record, and it's the 18th.  So if a witness is -- plaintiffs'

17   witness is not available at -- on the 18th, I will hear him or

18   her before the 18th.  If a defense witness is not available on

19   the 18th, I will hear him or her obviously as soon as possible

20   after the 18th.  Is that satisfactory to the defendants and the

21   City?

22           MR. WIYGUL:  This is Robert Wiygul for the

23   defendants, Your Honor.  Yes, that sounds like it will work

24   well.

25           MR. FIELD:  Benjamin Field for intervenors, Your

1 Honor.  We agree, as well.

2       THE COURT:  All right, then.  Unless there's

3 something else we need to discuss, as I indicated, I think the

4 recording of this will be immediately available if our

5 technology works right, and the transcript should be available

6 by tomorrow.  I will issue -- I will probably issue the order

7 at the latest tomorrow morning, but it'll probably be later

8 today.  And if there are questions, you -- feel free to pose

9 them.

10       And my thanks to all counsel for the very hard work

11 you're doing.  I hope your clients appreciate your efforts as

12 much as I do.

13       MR. MAAZEL:  Thank you, Your Honor.

14       MR. LIEB:  Thank you, Your Honor.

15       MR. WIYGUL:  Thank you, Your Honor.

16      (Concluded at 11:50 a.m.)

17           * * * * *

18

19

20

21

22

23

24

25

28

# C E R T I F I C A T I O N

I, Alicia Jarrett, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

_____

ALICIA JARRETT, AAERT NO. 428    DATE:  January 17, 2020

ACCESS TRANSCRIPTS, LLC